IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

|  |  |  |
|---|---|---|
| In re: | ) ) | Chapter 11 |
| SUNNOVA ENERGY INTERNATIONAL INC., *et al.*,[1] | ) ) ) ) | Case No. 25-90160 (ARP) |
| Debtors. | ) ) ) | (Jointly Administered) |

**DECLARATION OF RYAN
OMOHUNDRO IN SUPPORT OF THE DEBTORS'
EMERGENCY MOTION FOR ENTRY OF AN ORDER (I)
AUTHORIZING AND APPROVING THE PRIVATE SALE OF THE
NEW HOMES SOLAR ASSETS FREE AND CLEAR
OF LIENS, CLAIMS, ENCUMBRANCES, AND OTHER INTERESTS,
(II) APPROVING THE ASSUMPTION AND ASSIGNMENT OF EXECUTORY
CONTRACTS AND UNEXPIRED LEASES, AND (III) GRANTING RELATED RELIEF**

I, Ryan Omohundro, hereby declare under penalty of perjury as follows:[2]

1. I was appointed Chief Restructuring Officer ("CRO") of the above-captioned debtors and debtors in possession (collectively, the "Debtors") on April 27, 2025. Prior to being appointed CRO, I advised the Debtors in my capacity as Managing Director of Alvarez & Marsal North America, LLC ("A&M"), the proposed financial advisor to the Debtors in the above-captioned chapter 11 cases. The Debtors engaged A&M in March 2025 to help manage the

---

[1] A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://restructuring.ra.kroll.com/Sunnova. The location of Debtor Sunnova Energy International Inc.'s corporate headquarters and the Debtors' service address in these chapter 11 cases is 20 East Greenway Plaza, Suite 540, Houston, Texas 77046.

[2] Capitalized terms used but not otherwise defined in this Declaration shall have the meanings ascribed to them in the Motion, the Order, the *Declaration of Paul Mathews, President and Chief Executive Officer of Sunnova Energy International Inc., in Support of Debtors' Chapter 11 Petitions* (the "Mathews First Day Declaration") and the *Declaration of Ryan Omohundro, Chief Restructuring Officer of Sunnova Energy International Inc., in Support of Debtors' First Day Motions* (the "Omohundro First Day Declaration," and together with the Mathews First Day Declaration, the "First Day Declarations"), filed contemporaneously herewith, as applicable. The "Company" means, collectively, Sunnova Energy International Inc. and its Debtor and non-Debtor subsidiaries and affiliates.

Company's liquidity, identify strategic alternatives to enhance liquidity and profitability, assist with the development of a business plan, and manage the Debtors' contingency planning efforts. In that capacity, and in my capacity as CRO, I have been directly involved in and obtained firsthand knowledge of the events and circumstances leading to these chapter 11 cases.

2. I submit this declaration (this "Declaration") in support of the *Debtors' Emergency Motion for Entry of an Order (I) Authorizing and Approving the Private Sale of the New Homes Solar Assets Free and Clear of Liens, Claims, Encumbrances, and Other Interests, (II) Approving the Assumption and Assignment of Executory Contracts and Unexpired Leases, and (III) Granting Related Relief* (the "Motion"),[3] filed contemporaneously herewith.

3. The statements in this Declaration are, except where otherwise noted, based on (a) my personal knowledge, (b) information I have obtained from other members of the Debtors' management team, employees, advisors, and/or employees of A&M, (c) my review of relevant documents and information concerning the Debtors' operations, financial affairs, and restructuring initiatives, and (d) my experience and knowledge as the Debtors' CRO and as a principal of A&M advising distressed companies for over twenty years. I am over the age of eighteen, and I am authorized to submit this Declaration on behalf of the Debtors. If called upon to testify, I could and would testify competently to the facts set forth herein.

## Professional Qualifications

4. I have over twenty years of experience advising distressed companies and creditors in complex transactions and a deep expertise in the energy, industrial, and services industries. I also have substantial experience helping to stabilize financially distressed companies and

---

[3] The significant terms of the Sale are set forth in greater detail in the Motion. For the avoidance of doubt, any description of the Sale herein or in the Motion is qualified in its entirety by reference to the APA or the Order, as applicable.

developing business plans to accomplish the necessary restructuring of their operations and finances. I have served as lead financial advisor to several complex restructuring transactions totaling more than $30 billion in debt in aggregate, including: *In re Strategic Materials, Inc.*, No. 23-90907 (CML) (Bankr. S.D. Tex. Jan. 18, 2024); *In re MLCRJ LLC*, No. 23-90324 (CML) (Bankr. S.D. Tex. Jul. 10, 2023); *In re Talen Energy Corp.*, No. 22-90054 (MI) (Bankr. S.D. Tex. June 13, 2022); *FTS Int'l, Inc.*, No. 20-34622 (DRJ) (Bankr. S.D. Tex. Jan. 27, 2021); *In re Superior Energy Servs.*, No. 20-35812 (DRJ) (Bankr. S.D. Tex. Jan. 14, 2021); *In re Hi-Crush Inc.*, No. 20-33495 (DRJ) (Bankr. S.D. Tex. Dec. 30, 2020); *In re Arena Energy, LP*, No. 20-34215 (MI) (Bankr. Sept. 25, 2020); *In re Ne. Gas Generation*, No. 20-11597 (MFW) (Bankr. S.D. Tex. July 17, 2020); *In re Weatherford Int'l plc*, No. 19-33694 (DRJ) (Bankr. S.D. Tex. Aug. 22, 2019); *In re Jones Energy*, No. 19-32112 (DRJ) (Bankr. S.D. Tex. May 6, 2019); *New MACH Gen, LLC*, No. 18-11368 (MFW) (Bankr. S.D. Tex. July 2, 2018); and *In re Forbes Energy Servs. Ltd*, No. 17-20023 (DRJ) (Bankr. S.D. Tex. Feb. 15, 2017).

5. I earned a bachelor's degree in business administration and a master's degree in professional accounting from the University of Texas at Austin. I am a Certified Public Accountant, a Chartered Financial Analyst, a Certified Insolvency & Restructuring Advisor, and a Certified Fraud Examiner. I have been employed at A&M since 2006.

### The New Homes Solar Assets

6. I understand that, prior to the Petition Date, Sunnova partnered with certain residential real estate developers to install and connect residential solar systems and energy storage systems for new home construction (the "New Homes Business"). These new-build homes, outfitted with Sunnova's solar installations, allow homeowners to adopt renewable, reliable solar energy from day one. Because the solar systems are integrated into the new home while it is under

construction, and Sunnova primarily utilizes the existing suite of installers associated with the new home build, overall cost is decreased and the construction is significantly more efficient than installing a solar system on a finished home. Through the New Homes Business, Sunnova has collaborated with its real estate developer partners to install more than 1 million solar panels in more than 100,000 new homes.

7. I understand that, typically, Sunnova enters into certain contracts with the end consumer as part of the New Homes Business, pursuant to which Sunnova (i) leases constructed solar energy systems (a "PV System Lease") to end consumers, pursuant to which Sunnova receives a stream of payments, but retains ultimate ownership of the systems; (ii) sells homeowner the solar systems (a "PV System Purchase Contract"), either for cash outright or pursuant to a consumer loan; and/or (iii) sells energy storage systems (a "Storage System Purchase Contract" and together with the PV System Leases and the PV System Purchase Contracts, the "Customer Contracts"). I understand that the Customer Contracts include certain warranties and production guarantees similar to those described in greater detail in the Mathews First Day Declaration and the Customer Programs Motion.[4]

8. One of Sunnova's major partners in the New Homes Business is Lennar Homes, LLC ("Lennar" or the "Purchaser"). Sunnova and Lennar historically operated under certain master contractor agreements (the "Master Contractor Agreements") pursuant to which Sunnova installed solar and energy storage systems on homes developed and owned by Lennar. Pursuant to the terms of the Master Contractor Agreements, Sunnova retained title to the New Homes Solar Assets until installation on the systems was complete and Lennar sold the home. Thereafter,

---

[4] *Debtors' Emergency Motion for Entry of an Order (I) Authorizing the Debtors to Maintain and Administer Their Customer Programs and Honor Certain Prepetition Business Practices Related Thereto and (II) Granting Related Relief* [Docket No. 10] (the "Customer Programs Motion").

4

Sunnova retained the related Customer Contracts, pursuant to which Sunnova generally provided a production guarantee and warranty with respect to the New Homes Solar Assets.

## The Proposed Sale

9. As described more fully in the Mathews First Day Declaration, in early 2025, the Debtors began to experience severe financial and operational distress. In connection with its exploration of strategic alternatives to address its distress, Sunnova conducted a thorough review of its business to determine how to right-size its operational footprint to match its liquidity needs and debt service obligations. As part of this review, Sunnova determined that, given its tightening liquidity, Sunnova could not complete (and therefore could not monetize) in-process New Homes Solar Assets. Accordingly, Sunnova determined to cease further operations under the New Homes Business. Nevertheless, as of the Petition Date, certain New Homes Solar Assets are significantly progressed or, in some cases, nearly complete.

10. In conjunction with evaluating its business units and the viability of each such unit, Sunnova also evaluated various in-court and out-of-court restructuring transactions, which culminated with the filing of these chapter 11 cases and the decision to pursue an expeditious sale process for portions of the Debtors' business. To support this process, the Debtors now seek to immediately monetize the New Homes Solar Assets through the the sale of such assets and the assignment of associated contracts (the "Lennar Sale") to provide crucial liquidity to maintain operations and support these chapter 11 cases.

11. A few days before the Petition Date, the Debtors reached out to Lennar concerning the sale of the New Homes Solar Assets to provide incremental liquidity in these chapter 11 cases. Negotiations progressed quickly and efficiently, with the parties ultimately agreeing on the Lennar Sale of the New Homes Solar Assets in exchange for $16,079,039 (the "Purchase Price"). The

terms of the Lennar Sale are documented in that certain Asset Purchase Agreement, dated as of June 9, 2025, attached as <u>Exhibit 1</u> to the Sale Order (together with all schedules, exhibits, and ancillary documents related thereto, and as amended, modified, or supplemented from time to time, the "<u>Lennar APA</u>").

12. I believe that the Lennar Sale provides the best opportunity to maximize the value of the Debtors' estates, as the Lennar Sale, on the terms set forth in the Lennar APA, constitutes the highest or otherwise best offer for the New Homes Solar Assets and will provide a greater recovery on account of the New Homes Solar Assets for the Debtors' estates than would any other available alternative. The value generated by the Lennar Sale far outweighs any benefits of retaining the New Homes Solar Assets or seeking a third-party purchaser, since the New Homes Solar Assets in their current state are not marketable to third parties without an existing relationship with Lennar. The Debtors act as contractor with respect to Lennar, which owns the underlying construction, and no other solar system installer would be able to step into the Debtors' position without significant operational and financial disruption. Indeed, the fundamental incompatibility between the Debtors' systems and installation equipment and that of any other installer presents a likely insuperable obstacle to any other party purchasing, completing, or otherwise monetizing the Assets. Thus, in their current state, the Assets are not reasonably marketable to third parties. Given the Debtors' urgent need for additional liquidity, the Debtors believe that proceeding to closing on an expedited basis is in the best interests of the Debtors and all parties in interest.

13. Further, the Customer Contracts that are to be assigned pursuant to the Lennar APA are inextricably linked to the New Homes Solar Assets being sold. The Consumer Contracts are the leases and power purchase agreements that generate cash flows on account of the New Homes Solar Assets. Without the Consumer Contracts, the cash flows from the New Homes Solar Assets

would be limited to the ITCs minted when they are placed in service. Accordingly, I believe, based on my experience as a restructuring professional and involvement in other sales transactions, that it is unlikely that any purchaser would want to acquire the New Homes Solar Assets without the Consumer Contracts. The Consumer Contracts are essential to the value of the New Homes Solar Assets and, as such, they are essential to inducing the highest or otherwise best offer for the New Homes Solar Assets.

14. To the best of my knowledge, the Debtors and Purchaser have negotiated and acted at all times in a good-faith, non-collusive, and fair manner, and I am not aware of any facts indicating that either the Debtors or Purchaser is fraudulently entering into the transaction contemplated by the Lennar APA. The Lennar Sale and the Lennar APA are the products of arm's-length negotiations among the parties, and each has been represented by separate counsel. Moreover, to the best of my knowledge, the Purchaser is purchasing the Assets for fair value.

15. The proceeds of the Sale are necessary to fund the Debtors' operations and support these chapter 11 cases. Without this liquidity, the Debtors' will be unable to run an orderly and value-maximizing sale process for the Debtors' remaining assets and business. The Sale is a necessary first step toward accomplishing these crucial goals.

16. Given the details described above and based on my experience as a restructuring professional and involvement in other sales transactions, I believe that the Court should enter the Sale Order and approve the sale to the Purchaser on the terms and conditions set forth in the APA.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Dated: June 9, 2025

/s/ Ryan Omohundro
Ryan Omohundro
Managing Director
Alvarez & Marsal North America LLC