```
1                    UNITED STATES BANKRUPTCY COURT
                      SOUTHERN DISTRICT OF TEXAS
2                          HOUSTON DIVISION

3                                )  CASE NO: 25-90160-arp
                                 )
4    SUNNOVA ENERGY INTERNATIONAL, )  Houston, Texas
     INC.,                       )
5              Debtor.           )  Monday, June 9, 2025
                                 )
6                                )  3:04 PM to 5:49 PM
     ------------------------------)
7

8                     FIRST DAY MOTIONS HEARING

9             BEFORE THE HONORABLE ALFREDO R. PEREZ
                 UNITED STATES BANKRUPTCY JUDGE
10

11   APPEARANCES:

12   For Debtors:            JASON GARY COHEN
                             Bracewell LLP
13                           711 Louisiana Street
                             Houston, TX 77002
14
                             BRIAN SCHARTZ
15                           ANUP SATHY
                             Kirkland & Ellis LLP
16                           333 West Wolf Point Plaza
                             Chicago, IL 60654
17
     For Special Committee of CHARLES R. GIBBS
18   the Board of Directors  McDermott Will & Emery
     of Sunnova TEP          2801 N. Harwood Street
19   Holdings, LLC:          Dallas, TX 75201

20                           KRISTINE MANOUKIAN
                             Schulte Roth & Zabel LLP
21                           919 Third Avenue
                             New York, NY 10022
22
     For Windmar P.V.        THEODORE S. HECKEL
23   Energy, Inc.:           HENRY KEVANE
                             Pachulski Stang Ziehl & Jones LLP
24                           700 Louisiana Street
                             Houston, TX 77002
25
```

```
 1    For Ad Hoc Group of        ROBERT A. BRITTON
      DIP Lenders:               Paul Weiss Rifkind Wharton &
 2                               Garrison
                                 1285 Avenue of the Americas
 3                               New York, NY 10019

 4                               JOHN F. HIGGINS, IV
                                 Porter Hedges LLP
 5                               1000 Main Street
                                 Houston, TX 77002-6336
 6
      For US Trustee:            ANDREW JIMENEZ
 7                               U.S. Department of Justice
                                 515 Rusk Street
 8                               Houston, TX 77002

 9    For Ad Hoc Group of        JOSEPH MARSHALL WELCH
      Sunnova Dealers:           MATT KASLOW
10                               Blank Rome LLP
                                 4 Park Plaza
11                               Irvine, CA 92614

12    For Power Solar, LLC:      JAMES MUENKER
                                 DLA Piper LLP (US)
13                               1900 North Pearl Street
                                 Dallas, TX 75201
14
      For Atlas TEPH Lenders:    AARON COLODNY
15                               White & Case LLP
                                 555 South Flower Street
16                               Los Angeles, CA 90071

17    Court Reporter:            AKEITA HOUSE

18    Courtroom Deputy:          AKEITA HOUSE

19    Transcribed by:            Veritext Legal Solutions
                                 330 Old Country Road, Suite 300
20                               Mineola, NY 11501
                                 Tel: 800-727-6396
21

22

23    Proceedings recorded by electronic sound recording;
      Transcript produced by transcription service.
24

25
```

1          HOUSTON, TEXAS; MONDAY, JUNE 9, 2025; 3:04 PM

2                      (Call to Order)

3          MR. COHEN:  Good afternoon, Your Honor.  Jason

4     Cohen for the Debtors.  May I begin?

5          THE COURT:  Hold on.  Let me just call the case

6     and then we can get started.  So we're here for the 3:00

7     docket, Case Number 25-90160, Sunnova Energy International.

8     And we are here specifically on the first day hearings.

9          So why don't we get -- first we can start

10    appearances of counsel and then we will get started.

11         MR. COHEN:  Good afternoon, Your Honor.  Jason

12    Cohen with Bracewell LLP, here for the Debtors.

13         THE COURT:  Okay.  Mr. Schartz?

14         MR. SCHARTZ:  Good afternoon, Your Honor.  Brian

15    Schartz of Kirkland Ellis LLP, proposed counsel for the

16    Debtors.  I am joined by my partner, Anup Sathy and several

17    colleagues in the room today.

18         THE COURT:  All right.  Good afternoon, Mr.

19    Schartz, Mr. Sathy.  All right.  Who else?

20         MR. GIBBS:  Good afternoon, Your Honor.  This is

21    Chuck Gibbs with McDermott Will & Emery.  I am joined by my

22    colleagues, Kristine Manoukian of Schulte Roth & Zabel.  We

23    are counsel for the Special Committee of the board of

24    directors of Sunnova TEP Holdings and as co-counsel for

25    Sunnova TEP Holdings and several of its subsidiaries.

```
 1              THE COURT:  Good afternoon.  Good afternoon, Ms.
 2    Manoukian.
 3              MR. BRITTON:  Good afternoon, Your Honor.  Bob
 4    Britton, Paul Weiss, on behalf of a group of potential DIP
 5    lenders.
 6              THE COURT:  Good afternoon.
 7              MR. HECKEL:  (indiscernible) Pachulski Stang Ziehl
 8    & Jones (indiscernible).  I am joined by my colleague, Mr.
 9    Henry Kevane.  (indiscernible), Your Honor.  And if you'll
10    allow (indiscernible).
11              THE COURT:  Yeah. So Mr. Heckel, we are having a
12    hard time understanding you.  Why don't you pick up the
13    phone and say it again?  And Mr. Kevane can appear without -
14    - I know they were having problems with the ECF.
15              MR. HECKEL:  Can you hear me okay, Your Honor?
16              THE COURT:  Perfect.
17              MR. HECKEL:  Okay, wonderful.  Thank you.  Again,
18    for the record, Thedore Heckel, Pachulski Stang Ziehl &
19    Jones on behalf of Windmar P.V. Energy, Inc.  And I am
20    joined my colleague, Mr. Henry Kevane.  And thank you, Your
21    Honor, for letting him speak today without the pro hac being
22    entered yet.
23              THE COURT:  Okay, no problem.  All right.  Who
24    else wishes to be heard?
25              MR. JIMINEZ:  Good afternoon, Your Honor.  Andrew
```

1    Jimenez for the United States Trustee.

2              THE COURT:  Good afternoon.

3              MR. WELCH:  Good afternoon, Your Honor.  Can you

4    hear me?

5              THE COURT:  Yes.

6              MR. WELCH:  This is Joseph Welch with Blank Rome

7    on behalf of an Ad Hoc Group of Sunnova Dealers.

8              THE COURT:  Good afternoon.

9              MR. MUENKER:  Good afternoon, Your Honor.  This is

10   James Muenker of DLA Piper appearing on behalf of Power

11   Solar, LLC, also one of the Sunnova dealers.

12             THE COURT:  All right.  Anyone else wish to make

13   an appearance?  Wait a second.  Hold on.  There's one more

14   person.

15             MR. COLODNY:  Good afternoon, Your Honor.  Aaron

16   Colodny from White & Case on behalf of WCO International

17   Subco (indiscernible) and (indiscernible) WCO 1

18   (indiscernible) LLP.  We are the Atlas TEPH lenders.

19             THE COURT:  All right.  Thank you.

20             MR. HIGGINS:  Good afternoon, Your Honor.  John

21   Higgins, Porter Hedges, co-counsel with Paul Weiss for the

22   potential DIP lenders.

23             THE COURT:  Okay.  So if anybody else wishes to

24   make an appearance, please hit five-star one time.

25             MR. KASLOW:  Good afternoon, Your Honor.  This is

 1    Matt Kaslow from Blank Rome joining Joesph Welch on behalf
 2    of the Ad Hoc Group.
 3          THE COURT:  Okay.  So just for planning purposes,
 4    what I'm going to do is I would like to go through the
 5    motions that were filed overnight first.  Then I want to
 6    take about an hour break and then come back and hear the
 7    other things.  I was going to do that even before I got the
 8    objection.  But I want to spend some time reviewing that.  I
 9    just have not had a chance to with my schedule today to
10    actually review that.  So I am going to -- if we can get
11    through the original matters and then we can take a -- you
12    know, we'll figure it out.  I need probably 45 minutes to an
13    hour to review all of that.
14          MR. SCHARTZ:  Okay.  Thank you, Your Honor.  This
15    is Brian Schartz from Kirkland & Ellis, proposed counsel to
16    the Debtors.  We appreciate that approach and frankly may
17    use the time during that break be well spent because we did
18    not have time to talk to the Blank Rome side about the
19    relief we are seeking and the objection that they filed.  So
20    we'll have a conversation with them in the meantime and
21    maybe find some peace.
22          THE COURT:  Yeah.  And at some point I really want
23    to understand -- attached to Mr. Omohundro's declaration
24    there was a budget.  And it looked like these -- those two
25    financing sales, et cetera, needed to be -- to plug the

1    hole, I definitely want to understand that before we take a

2    break.

3              MR. SCHARTZ:  Understood.  Okay.  I'm going to

4    start this off, Your Honor.  And thank you to you and your

5    staff and the Office of the United States Trustee for all

6    their patience.  We filed one of the affiliated debtor

7    entities' what we call test developer, more than a week ago,

8    on June 1st.

9              THE COURT:  I've never seen a slow motion filing.

10   I thought it was in reverse there for a while.

11             MR. SCHARTZ:  At some point I think time stopped

12   for us and started going backwards as well.  It's been a

13   long, hard road.  Let's leave it at that.

14             And I'm going to get to the punchline.  We're not

15   going to do a big, long presentation.  I want to take a

16   moment and just sort of ground you on where we stand and

17   then walk you through a few things.  I'll try to address at

18   least in broad strokes your question around Omohundro.  But

19   just to sort of put things in perspective.

20             We are on an odd footing, but we actually see a

21   path forward to sort of right-side this whole thing.  So I'm

22   going to try and contextualize that quickly.

23             No slides today.  I think we have enough paper and

24   we need to move quickly.

25             Before I do that, I do want to make just a couple

1    introductions.  So Mr. Paul Matthews, the company's CEO.

2    Mr. Matthews submitted a declaration.  That's at Docket

3    Number 17 also in support of the first day pleadings.

4    You'll see him there with a red tie on with the Sunnova logo

5    in the background.  There he is raising his hand.

6         THE COURT:  Yeah.  And by the way, I read that

7    declaration. That was the first thing I read.  I thought

8    that it was very helpful in putting everything into context

9    before I even looked at the motions.  So thank you very

10   much, Mr. Matthews.  I thought that was very well done and

11   informative.

12        MR. SCHARTZ:  Thank you, Judge.  And that's why

13   we're going to sort of gloss over some of the detail there

14   because I had a feeling you would have read it already.

15        Ms. Robyn Liska is the company's CFO.  And I

16   believe she is there as well.  She doesn't have a

17   declaration, but she has been in the trenches with us

18   working around the clock and I wanted to introduce her as

19   well.

20        And then Mr. RineOmahandro who is here with me in

21   New York from Alvarez & Marsal.  He is acting as the

22   company's chief restructuring officer.  Mr. Omohundro

23   submitted actually two declarations.

24        THE COURT:  Right.  And I've read one.  I've read

25   of them.  So that's one of the reasons I need a break.

1          MR. SCHARTZ:  I'm going to guess you read Docket

2     Number 25.

3          THE COURT:  Right.

4          MR. SCHARTZ:  Docket Number 27 is as it relates to

5     the warehouse motion.  So that's sort of the sum and

6     substance of what we'll put forward for evidentiary stuff

7     when we get there.  Everyone's here and ready to testify if

8     needed.

9          Look, you have already kind of hinted at where I

10    wanted to start, which is we filed a case and, you know,

11    you've never really seen this, file one entity and then come

12    in five days later or seven days later.  I'm going to talk

13    about why we did that in a second.  But just to

14    contextualize where we are.

15         Your Honor, sometimes we come into these cases, we

16    have an RSA, a restructuring support agreement, we have a

17    clear -- clear-ish path forward.  There's one or two big

18    issues we've got to work out.  Maybe we have a sense where

19    the case is going.  I have one of those cases pending before

20    you right now.  I missed the hearing last week, and now you

21    know why.

22         Judge, this is not that type of case, at least not

23    yet.  And it's not for a lack of effort.  Sunnova writ

24    large, not just the four debtors, but the entire

25    organization, has grown into the second-largest by market

1    share residential solar company in the United States.  It's

2    a huge achievement.  But it also means that it's an

3    extremely complicated capital structure.  There's nearly $9

4    billion of funded debt among the debtors and the affiliated

5    non-debtor entities.  We have spent the last two months

6    literally working around the clock.  All of April, all of

7    May, the first two days of June.  I can't believe it's June

8    9th.  Really trying to extend runway, find liquidity and

9    engage with major stakeholders.  If you are a major

10   stakeholder and you feel like you haven't gotten enough

11   attention from us, we apologize, because we're just trying

12   to deal with the best we can with a very large, complicated

13   capital structure.

14         Who we have talked to include bondholders, the

15   warehouse lenders, the tax equity investors, dealers, ABS

16   lenders, home builder partners.  We've tried to cover the

17   gamut in order to set this on the right path.  It was a huge

18   amount of ground to cover, Juge, in the short amount of time

19   that we had.

20         And what we learned was that bringing all of the

21   stakeholders together in a clear, coherent fashion in the

22   time that we have probably wasn't going to happen.  So while

23   we don't have an RSA though, and we do have a bunchy of

24   issues that we need to address as we sit here today, I want

25   to make it really clear that we are cautiously confident

1   that we will get there with the continued support of our

2   stakeholders.  And we do have a plan, even if it's not

3   documented, in a restructuring support agreement.

4          Because to be clear, we -- and I mean the royal

5   we, the debtor advisors, the board, the management team, we

6   all see a huge amount of value in this company.  That value

7   sits within the asset base.  You read the first day

8   declarations.  Asset Co, which sits under the ABS facility.

9   That value sits within the service space and it also sits

10  within the warehouse.  There's a huge amount of value here.

11         But we're also cognizant that a lot of people,

12  Judge, stand to lose a lot of money if it's not done right.

13  Many people have lost their jobs, too.  Over the last week

14  alone we terminated over 700 employees.  That's almost --

15  just over 50 percent of the workforce.  You know, we were

16  there with the management team working alongside them.  Not

17  a decision that we make lightly.

18         Dealers are owed over $470 million.  Sorry, $347

19  million.  Corporate bonds are owed nearly $2 billion.  It'ds

20  a long list of stakeholders.

21         We owe it to everyone to do what we can to

22  maximize value here.  And we intend to run a fair process, a

23  transparent process, going to be a sale process with the

24  singular goal of achieving something that maximizes value.

25         And that means, Judge, we're going to take things

1    in pieces.  Right?  The first two motions that we filed are

2    the first step.  The warehouse motion, the one to which the

3    Blank Rome group just objected to, that's all just one step

4    that really moves we think in the right direction to

5    actually not strip away folks' rights like the dealers are

6    worried we're doing, but to actually maximize value.  And

7    we'll talk to them about that, like I said, in the hour that

8    we have between this.

9          Chances are, Judge, we're going to need your help

10   throughout this process.  We're probably going to ask to be

11   in front of you again this week, potentially as soon as

12   tomorrow if you'll have us.  We filed another motion.  It's

13   at -- let me make sure I'm getting this correctly -- Docket

14   Number 55 to sell some unencumbered assets to a homebuilder

15   called Lennar.  The team has been working all night to get

16   that done.  That also will net us proceeds of about $16

17   million.  Again, that's not up for today.  We'll get there.

18   But it's just an example of how we're going to need to come

19   to you in bite-sized pieces.

20         We commenced the cases today simply because we

21   weren't going to resolve everything.  And for lack of a

22   better phrase, we just had to get on with it.  And

23   specifically we filed the debtor entity TEP developer before

24   all the other entities because that entity pushed out nearly

25   (indiscernible) dollars in value to dealers within the 90-

1    day period before the day that we filed it.  So we wanted to

2    preserve potential preference claims that could be valuable.

3    I'm not saying that we're going to sue a bunch of people,

4    but as we figure out who is supposed to get what, it felt

5    important to use the Section 547 claims to the extent they

6    exist and make sure that those are being maximized and value

7    is being maximized for everyone

8            We also launched a marketing process last week for

9    the company's assets that says that we think they're

10   valuable.  The company's proposed investment banker at

11   Moelis launched that process and we expect to see approval

12   of bid procedures for that process in very short order.

13           In addition, after we filed TEP Developer, we

14   spent the whole week working around the clock trying to

15   knock everything down that we could.  Today's agenda

16   reflects what we were able to knock down.  We've got the

17   Atlas deal papered, barely in time.  I apologize.  We did

18   get it done.  We got the Lennar deal papered and filed and

19   the agenda is limited towards that.  We do need the cash.

20   And those two buckets of relief, Lennar and Atlas, when you

21   put them together, they represent about $30 million of net

22   unencumbered cash that's on top of the nearly 13-and-a-half

23   that we have as we sit here today.  That's all intended to

24   put us on the right path and get us going forward in this

25   case.

```
 1              Which then brings us to the next point.  Because I
 2    don't have a DIP motion on file.  But you heard from Paul
 3    Weiss.  They're representing a potential DIP lender group.
 4    My colleague, Mr. Britton from Paul Weiss, we've been
 5    screaming at each other for days.  I say that lovingly.  We
 6    really do appreciate them engaging with us.  They've been
 7    extremely constructive.  We are working with them on the
 8    combination DIP and stalking horse bid for essentially the
 9    entire company.  Just to set the floor, stick to the
10    (indiscernible) situation, send the right market -- send the
11    right message, excuse me, and make sure that we're pressing
12    forward on the right basis.
13              We couldn't quite get there.  We just ran out of
14    time.  We're playing whack-a-mole.  We knocked down the
15    dominoes as we could.
16              From the Debtor's perspective, and I hope the same
17    from Mr. Britton's client's perspective, that deal still has
18    likes.  We intend to continue the discussions with that
19    group of investors in earnest and in good faith like we've
20    been doing on both sides.  So as much as I'd love to go home
21    and get some rest, we're probably going to go back to our
22    desk after this hearing, very quickly turn to those
23    discussions and see if we can knock that into place.
24    Because I think we're close.  The issues are discrete.
25              If we can get that deal done, and I hope we do, we
```

1    likely will ask to be back before Your Honor again to seek

2    interim relief.  So now all of the asks and imposition on

3    your time are really stacking up, right?  With the DIP

4    motion, maybe a bid procedures motion being filed.  We'll

5    talk about the timing for that.  We've got the Lennar motion

6    that needs to be scheduled, and we've got the Atlas motion

7    which we're trying to hear today.

8         Again, we thank you in advance.  Bear with us, but

9    I promise there is a plan and we're going to get this on the

10   right path.

11        The fact of the matter, Judge, is that we have --

12   the role on the Debtor's side, we've scoured this market for

13   two months.  We've considered and we will continue to

14   consider any and all proposals for financing or sales and

15   evaluate whether they work for this company.

16        So that's the game plan.  It's coming into place.

17   And my hope is, my sincere hope -- and I think it's more

18   than just a hope, I think it's a realistic point of view --

19   is that in a couple days we'll be in front of you, we'll be

20   having a hearing that we'd hoped we'd have today.  We just

21   ran out of time.  And then we'll have a timeline.  Maybe

22   I'll have a nice little presentation about where we think

23   this is going.  And that's the plan.

24        One more -- yes.

25        THE COURT:  Just in terms of timing.  Tomorrow and

```
1    Wednesday are going to be difficult for me to have hearings.

2    But I could do a virtual hearing 8:30 Central Time on

3    Thursday morning.  And I would have about an hour-and-a-half

4    at that time if that works for you.

5             MR. SCHARTZ:  I think, Judge, we will -- we're

6    takers on many issues in the Debtor's seat, so we'll take

7    that.  And we thank you for that.  So I hope it works for

8    everyone else.

9             One more sort of very important issue that I just

10   want to tee up.  One of the things that we've learned as

11   we've gone through and talked to everyone that we can about

12   the capital raise process and the stalking horse bid

13   process, this is a very highly-structured capital structure.

14   And what we've learned is that we are probably going to need

15   some level of consent within the capital structure to really

16   unlock the value.  Right?  That ABS is a good example.

17   We're working on that.  They're actually working with Davis

18   Polk.  I didn't see Davis Polk on.  But we're going to work

19   with them on that.

20            There's also a consent issue working with KKR,

21   which they're did a rescue financing in March.  That topic

22   has built into it the issue -- the issue of a consent has

23   built into it also the issue of release.  Because someone is

24   not necessarily going to consent to something if you're not

25   going to get a release.  And we're going to develop that
```

```
 1   quickly and bring it to a head because that potentially will
 2   be the main event in this case, or one of the main events in
 3   this case, whether or not that release is appropriate.
 4           I raise it now not because I'm looking for an
 5   advisory decision, just to look around the corner, let you
 6   see what may be coming.  We're going to tee it up on the
 7   firmest footing we can.
 8           There is a special committee that you heard about
 9   down at T.  They are working with the Schulte Roth firm.
10   There is another special committee up at the parent company
11   that is populated by Mr. Tony Horton and Mr. Jeff Stein.
12   And not to make this more complicated, they're working with
13   their own independent counsel at Kobre & Kim.  So the
14   release issue, at least in our minds, the Debtor mind, is
15   really going to be the remit of the special committee.  And
16   they're working on that in earnest.  And we're going to try
17   and tee that up as quickly as possible.
18           When we talk about liquidity in this case, what
19   we're trying to do is make everything sort of line up with
20   the last week of June, sort of the -- before the Fourth of
21   July.  We're giving the best we can to say this is the DIP
22   on a final basis, this is the stalking horse bid, these are
23   the bid procedures, this is what we do or don't need on the
24   release.  We don't know yet.  I don't want to prejudge it.
25   And have that heard at the end of June.  So that's what
```

1    we're working towards.  And I want Your Honor to hear it and

2    I frankly want everyone else to hear it so when they call me

3    up on June 29th and they complain that they didn't know what

4    we were doing, I'll say go read the transcripts from June

5    9th.  But that's what we're trying to do.

6            Like I said, Your Honor, I normally would have a

7    flashy presentation, a bunch of timelines and detail.  We

8    frankly just -- I started working on it last night and this

9    morning and I said I don't think we need this.  I'm going to

10   dispense with it today.  If you have any questions, please

11   do ask them.  And we look forward to getting Sunnova writ

12   large on the best footing possible so we can maximize the

13   value for all stakeholders.

14           So thank you for that intro.  If you do have any

15   questions, please do ask them.  And that is where we think

16   we are going, and we hope to achieve that goal.

17           THE COURT:  No, I thought with respect to the

18   motions that I've reviewed, I thought they were relatively

19   straightforward.  I did have the one question on the budget.

20   And it's my understanding that the second day hearings,

21   assuming it works, are going to be July 1st at 9:00 a.m.

22   virtually.

23           MR. SCHARTZ:  Yes.  Is there any -- let me look at

24   my calendar real fast.

25           THE COURT:  That's a Tuesday.  June 30th is a

1    Monday.

2              MR. SCHARTZ:  Yes, sir.  Again, we'll take what we

3    can get is the Debtor's view.  And --

4              THE COURT:  I could probably do it June 30th in

5    the afternoon if you need that.

6              MR. SCHARTZ:  Well, at the risk of negotiating

7    with the judge from the podium, always dangerous, maybe we

8    start June 30th and we see where we get going into July.

9              THE COURT:  Okay.

10             MR. SCHARTZ:  What we don't want to have happen is

11   ruin everyone's Fourth of July weekend and lose that time.

12   Because time is money, as you know.

13             THE COURT:  Okay.  So we'll do -- again, this will

14   be virtual.  June 30th at 1:00 p.m. Central.

15             MR. SCHARTZ:  Thank you, Judge.  We really do

16   appreciate that.  Okay.

17             I am going to let anyone else who would like to

18   say something at the beginning, since that's what I did and

19   it's only fair.  And with that, I am going to then turn the

20   podium over to the presenter.  We're going to turn to the

21   non-Atlas motions.  Right?  But anyone else wants to say

22   something, we'll let them do that and then we'll move to the

23   motions, Your Honor.

24             THE COURT:  All right.  So anyone who wants to

25   make in essence an opening statement, we'll hear from you

1    now.

2              MR. BRITTON:  Good afternoon, Your Honor.  Bob

3    Britton again, Paul Weiss, on behalf of the potential DIP

4    lenders.

5              Your Honor, I appreciate all of Mr. Schartz's

6    comments.  We are in fact working with the Debtors on the

7    terms of the potential DIP financing.  And I will avoid

8    getting into any particulars around terms because that's an

9    ongoing negotiation.  But at a very high level it would

10   involve a small initial draw on the DIP at the outset upon

11   interim approval followed by the balance of the loan being

12   funded at final approval contemporaneously with the Debtors

13   and the DIP lenders receiving those consents that Mr.

14   Schartz referred to earlier.  That entire DIP loan, as Mr.

15   Schartz alluded to, is predicated upon the terms of a

16   stalking horse APA which would be subject to higher and

17   better offers in the Debtor's marketing process.

18             We anticipate that unless a higher offer comes in

19   and the Debtors accept it, the entire amount of principal,

20   interest, and fees on that DIP loan would be satisfied

21   through the credit bid for the entire Sunnova enterprise.

22             Because that DIP loan and because that -- because

23   that DIP loan is predicated upon purchasing the Sunnova

24   enterprise as a going concern, it is critical from our

25   perspective -- and time is of the essence in getting that

1      agreement agreed and approved by Your Honor.  And so we will

2      be taking Mr. Schartz up on his offer to reengage

3      immediately following today's hearing and we hope to be in

4      front of you Thursday morning during the time that you

5      kindly offered.

6            No assurances, Your Honor, that we'll get there,

7      but I am optimistic, as is Mr. Schartz.

8            THE COURT:  All right.  Thank you.

9            MR. MUENKER:  Good afternoon, Your Honor.  James

10     Muenker of DLA Piper again on behalf of Powers Solar LLC.

11           Your Honor, you referenced earlier an objection

12     that was raised by an ad hoc group of dealers I think

13     shortly before the hearing.  We also filed a limited

14     objection that actually goes to I think the first set of

15     motions that Your Honor has suggested we take it up first.

16     That objection hit the docket probably shortly after this

17     hearing began.

18           I just want to preview that with you, Your Honor.

19     We haven't had a chance to have a conversation with Debtor's

20     counsel about it.  We are certainly willing to see if we can

21     resolve our issues.

22           But in a nutshell, Your Honor, Powers Solar is one

23     of we believe the Debtor's largest dealers.  They are owed

24     tens of millions of dollars in connection with work that

25     they performed for the Debtors prior to the bankruptcy.  And

1    specifically as it relates to the limited objection that we

2    filed, they are owed in excess of $10 million in connection

3    with projects that were conducted in Puerto Rico in

4    connection with a special program that is alluded to and

5    talked about in some of the Debtor's first-day declarations

6    where certain funding and grants were made available to pay

7    for the design and installation and implementation of some

8    projects down in Puerto Rico.  And our client, Powers Solar,

9    was involved in some of those projects.

10          We have some questions and some concerns about

11   those funds and where those funds presently exist to the

12   extent that the Debtor is in possession of some of those

13   funds that came from the Department of Energy and questions

14   as to whether or not they intend to utilize those funds in

15   connection with the motions that they filed.  Our limited

16   objection primarily deals with our concern that we believe

17   there are questions as to whether if they are in possession

18   of some of those funds currently, whether those constitute

19   property of the estate or whether they are actually being

20   held in trust and earmarked for the payment of contractors

21   such as our client.

22          Specifically the contracts that our client entered

23   into with the Debtor make specific reference to the fact

24   that those funds are going to be used, the funds that are

25   received from the Department of Energy are going to be used

1    to pay our claims.  And there's other provisions in that

2    agreement that we think give rise to a direct claim against

3    those funds.

4         So as with -- certainly appreciate the comments

5    that have been made by Debtor's counsel.  We want to be

6    cooperative.  We hope this case is successful.  But we're

7    very early.  And as the Court has observed and Debtor's

8    counsel has observed, there's no DIP financing currently.

9    We don't know where this case exactly is going to go.  And

10   what we're trying to do is just make sure that our interests

11   aren't impaired irrevocably on the first day of the case and

12   our rights and interests in any of those funds are

13   preserved.

14        So that's our issue.  Hopefully it's something we

15   can engage with the Debtors and come up with some language.

16   But that's our concern for today.

17        THE COURT:  All right.  Anyone else?  All right.

18   Go ahead, Mr. Schartz.

19        MR. SCHARTZ:  Your Honor, I made a bit of an

20   amateur mistake I am embarrassed to say.  I think we should

21   more Mr. Matthews' declaration into evidence and Mr.

22   Omohundro's.  At least Docket Number 25.  Maybe we hold back

23   Docket Number 27 right now because that's the declaration on

24   the motion that is contested, and we can take it out after

25   the break.  But at least move in Docket Number 17 and Docket

1    Number 5 for evidentiary purposes for the first part of the

2    hearing.

3              THE COURT:  All right.  Does anyone object to the

4    admission of the declaration at Docket Number 17 and Docket

5    Number 25, Docket Number 17 from Mr. Matthews and Docket 25

6    from Mr. Omohundro, as their direct testimony in connection

7    with the evidentiary basis of -- the evidentiary support for

8    the first-day motions?  All right.  Hearing no objections.

9              So when we get to the appropriate motion to the

10   extent anyone wants to cross-examine, we can cross-examine,

11   you can cross-examine at that time.  Most of the motions are

12   relatively administrative in nature.  So they'll be admitted

13   subject to cross-examination at the appropriate time if

14   necessary.

15             MR. SCHARTZ:  Understood and thank you.  What I

16   would propose we do as we go through -- I apologize, I

17   missed the gentleman's name from DLA Piper who represents

18   Polar Solar Power --

19             THE COURT:  Mr. Muenker.

20             MR. SCHARTZ:  Why don't we go through all --

21   excuse me?

22             THE COURT:  Mr. Muenker.

23             MR. SCHARTZ:  Oh.  You're better than me.  Why

24   don't we do all of the motions and we'll take customer

25   programs after the break and we'll talk to him.  But keep

```
1    talking about the customer programs motion.  So we'll take
2    that up during the break and see if we can resolve his issue
3    as well.  So we'll cover everything other than customer
4    programs and Atlas motion right now.  We'll have the break,
5    Your Honor, and then we'll come back and see if we've
6    resolved some stuff, and you'll read everything that you
7    didn't have a chance to read.  Does that work?
8              THE COURT:  That works for me, yeah.
9              MR. SCHARTZ:  Okay.  I am going to pass the podium
10   to my colleague, Ms. Margaret Reiney.  Thank you.
11             MS. REINEY:  Good afternoon, Your Honor.  Can you
12   hear me okay?
13             THE COURT:  Yes, I can.
14             MS. REINEY:  Okay, great.  For the record,
15   Margaret Reiney of Kirkland& Ellis, proposed counsel to the
16   Debtors.  Your Honor, it's a privilege to be before you
17   again this afternoon.
18             I echo Mr. Schartz in thanking the Court for its
19   time today.  I would also like to thank the Office of the
20   United States Trustee.  As Your Honor mentioned, this is a
21   unique filing and they were very patient with us as the
22   filings kind of trickled in throughout the week.  So we are
23   very appreciative of their support.
24             Your Honor, the first item I would like to take up
25   today is the cash management motion.  This was filed at
```

1    Docket Number 9.  This motion seeks to maintain the critical

2    components of the cash management system in the ordinary

3    course.  As Mr. Schartz mentioned, this is a rather unique

4    case with many of these entities serving as non

5    (indiscernible) in this very complex structure.

6          As of the petition date the cash management system

7    was comprised of 525 bank accounts and only 24 of those are

8    actually debtor accounts.  Eight banks maintain the Debtor's

9    bank accounts, but only $75,000 out of the $13.5 million are

10   at non-authorized depositories.

11         As Your Honor also saw, the motion seeks a number

12   of -- or the authority to conduct a number of intercompany

13   transactions given the unique nature of this case and this

14   structure.  We will be tracing and ascertaining these

15   intercompany transactions, but we believe that ordinary

16   course relief is really key here.

17         So with that, Your Honor, I would be happy to

18   answer any questions, but we would respectfully request

19   entry of the cash management order.

20         THE COURT:  All right.  Does anyone else wish to

21   be heard?

22         MR. MUENKER:  Your Honor, James Muenker of DLA

23   Piper on behalf of Powers Solar again.  Certainly happy to

24   take the Debtor's counsel up on their offer to have a

25   conversation offline.  I think technically our issues are

1     potentially implicated by this motion as well though, not

2     just the vendor motion.  The reason I say that is because

3     one of the accounts that's identified in the cash management

4     motion is in Mr. Matthews' I think first day declaration.

5     I'm sorry, it's identified in the bank account motion at

6     Page 8.  And there's an account that's called the Government

7     Incentives Collection Account that is maintained at JP

8     Morgan.  And it's my understanding from the Debtor's

9     representations in that motion that funds in that account

10    include the DOE funds that I was referring to earlier in our

11    limited objection.  And there's also a reference in the

12    motion that the Debtors manually from time to time transfer

13    money out of that account into a main dealer payment

14    account.

15          And so that's the issue that we have, is making

16    sure that we understand whether there are currently funds in

17    that account and what the Debtors intend to do with that.

18    It's not clear from I think the cash management motion

19    exactly how cash is going to move within the system.  But we

20    are obviously concerned about the potential comingling of

21    funds where there might be a right -- you know, they're not

22    property of the estate or there's a specific claim about

23    those funds.

24          So subject to that, if we could reserve that for

25    the conversation that we're going to have with the Debtors,

1    I don't have any other objection or issue or concern about

2    the motion, but I don't want to have this motion approved

3    and then somehow have waived that issue.

4            MS. REINEY:  Your Honor, we're happy to discuss

5    Mr. Muenker's --

6            MR. KEVANE:  Your Honor, may I follow up on that

7    as well?  Henry Kevane, Your Honor, with Pachulski Zang

8    Ziehl & Jones for Windmar PV Energy.

9            Like Mr. Muenker's client, our client is also a

10   large dealer in Puerto Rico and we also have many

11   outstanding claims for completed projects.  But we too are a

12   beneficiary of the Department of Energy grant.  And we have

13   many projects that are at various stages of completion.

14   Some of them finished and the payment requests have been

15   submitted to the Department of Energy for reimbursement by

16   the grant, and others that have not yet reached that stage

17   for submittal and reimbursement.

18           So the comments raised by counsel for Powers Solar

19   also apply to Windmar PV Energy and we too would like to

20   make sure that the pass-through nature of that program

21   remains unaffected and that those projects can continue in

22   the ordinary course of business and be reimbursed according

23   to the terms of that (indiscernible).  Thank you, Your

24   Honor.

25           THE COURT:  Anyone else?  Go ahead.

```
 1                MS. REINEY:  Your Honor, I would propose that we
 2    take this conversation offline too during the break and we
 3    can revisit this motion along with the customer programs
 4    motion if that's okay with Your Honor.
 5                THE COURT:  Okay, yeah.  No problem.
 6                MS. REINEY:  Great.  Next I will go to Docket
 7    Number 15.  This is the critical vendors motion.  By this
 8    motion, the Debtors request the authority to settle claims
 9    under certain dealer contracts and pay $9 million on an
10    interim basis on account of certain prepetition critical
11    vendor claims.
12                As Your Honor might be able to tell from the
13    recent objections, much of this case is going to center
14    around the company's relationships with dealers and the go-
15    forward relationships as well.
16                This motion seeks to set up kind of the procedural
17    framework for settling any dealer claims pursuant to
18    Bankruptcy Rule 9019.  This motion also requests the
19    authority to pay certain critical vendors whose services
20    largely to O&M suppliers, IT tech and servicing, and billing
21    support.
22                Your Honor, we have shared this motion with the
23    U.S. Trustee and various stakeholders and would respectfully
24    request entry of the interim order.
25                THE COURT:  All right.  Does anyone else wish to
```

1    be heard with respect to the critical vendor motion?

2              MR. COLODNY:  Your Honor, this is Aaron Colodny on

3    behalf of the Atlas lenders.

4              THE COURT:  Yes.

5              MR. COLODNY:  Your Honor, the critical vendor

6    motion is one part and the (indiscernible) motion is another

7    part of the settlement with dealers.  I represent Atlas in

8    its capacity as lenders, and I'll use Atlas as a shorthand

9    for the jumble of long words that go with our corporate

10   entities.

11             But essentially what we -- the position that we've

12   found ourselves in is we are the warehouse lenders that

13   advances some of the funds to pay the dealers.  We receive

14   the contracts.  And then upon the completion, the systems

15   that come down.  And we do not have privity with the

16   dealers.  Sunnova has privity with the dealers.  So one of

17   the things that our motion attempts to do is to give us the

18   right to step in to negotiate with the dealers and the

19   Debtors who have the privity and the claims against the

20   dealers will also be a part of those negotiations

21   necessarily to some extent.

22             To the extent that we are able to settle the

23   Debtor's claims and we can come to a global resolution, I

24   think this critical vendor motion is part of that.  It

25   provides the framework by which the Debtors will settle with

```
 1   the dealers.  Our motion is separate and apart from that and
 2   would provide us with the right to negotiate with the
 3   dealers on behalf of the warehouse lenders.  And so they are
 4   two parts of a three-part system which focuses on our sale,
 5   settlement, and the critical vendor motion.  And I just
 6   don't want that to get lost by pushing the Atlas motion,
 7   which I understand has an objection against it to the back
 8   of the line.  And so I think that all of these parts work
 9   together when you kind of look at them.  And that's going to
10   be part of the intricate dance we have here to make sure
11   that we are able to appropriately address the dealer claims
12   both from a warehouse perspective and from a Debtor
13   perspective.  And I'm happy to provide you with more
14   background on our warehouse facility, but I just didn't want
15   to sit silently when one piece of the puzzle was discussed
16   and not the second.
17             THE COURT:  Based on my review of the motion, it
18   sets the framework for the dealer settlements, but the $8
19   million is all for critical vendors on an interim basis and
20   then there's some 503(b)(9) and some other smaller amounts.
21   But there's no amount allocated to any dealer settlements
22   pursuant to this motion at this time.
23             MR. COLODNY:  Absolutely, Your Honor.  That's
24   correct.
25             THE COURT:  Okay.  All right.  Somebody else was
```

```
 1    going to say something.  Yeah, Mr. Kevane.

 2             MR. KEVANE:  Hi again.  Henry Kevane with

 3    Pachulski Stang on behalf of Windmar P.V. Energy.

 4             The one feature of the motion for the dealer

 5    settlements that does raise a concern on our part goes back

 6    to this DOE program as well.  And that is that the dealer

 7    settlement motion says no work should continue on any

 8    project that is uncomplete unless and until a particular

 9    dealer has reached a dealer settlement now with Atlas in its

10    capacity as an agent of proxy for the Debtors.

11             We would like to and do believe we ought to be

12    able to continue the completion of DOE projects in the

13    ordinary course of business because funding for those

14    projects on completion comes from a grant given by the

15    United States Department of Energy to Sunnova.  So they're

16    all fully paid for and they do not need to be paused while

17    dealer settlements are worked out, principally because Atlas

18    will not be paying any of those DOE projects on completion.

19             So our request is that that language in the

20    interim order that requires all work on all projects that

21    are incomplete not extend so far as to capture DOE projects

22    that are subject to payment under separate processes.

23             MS. REINEY:  Your Honor, may I respond?

24             THE COURT:  Yes.

25             MS. REINEY:  Thank you.  We are happy to speak
```

1    offline with this gentleman as well.  But I wanted to note

2    that the Debtors are reluctant to incur administrative

3    claims.  As the Court is aware, we are coming into these

4    Chapter 11 cases without a DIP and with very limited

5    potential funding.  So we included this language in the

6    orders just to note that express consent was needed before

7    administrative claims were incurred on a post-petition

8    basis.

9              THE COURT:  All right.  So this is an interim

10   order for the next three weeks.  And I am sensitive to both

11   concerns.  But I don't -- to the extent that the -- it's

12   just an absolute pass-through.  I think that can be worked

13   out and adjusted by the time of the final hearing.  To the

14   extent that there is a concern about incurring

15   administrative expenses because work has continued and it

16   turns out that it isn't a pass-through, then I think that

17   will be the subject of the final hearing.

18             But I think in the interim, I don't think that the

19   Debtor should take the risk of incurring the administrative

20   expense when it may be clear to you all, but it's not clear

21   to me exactly whether it is a pass-through or whether they

22   would incur an administrative expense.

23             So I am going to go ahead and approve it.

24   Obviously this will be the topic of conversation for the

25   final hearing.  And to the extent that the parties reach

1    some accommodation and make an agreement, I am happy to

2    enter an amended interim order and then we can consider it

3    at the final hearing.

4           MS. REINEY:  Great.  Thank you so much, Your

5    Honor.  I am going to cede the podium to my colleague, Mr.

6    Ryan.  But I will be joining you back a little bit later.

7    Thank you, Your Honor.

8           THE COURT:  All right.  Just give me a minute here

9    to actually enter that order.  All right.  That order has

10   been entered.

11          MR. RYAN:  Thank you, Judge.  Good afternoon, Your

12   Honor.  For the record, Jimmy Ryan of Kirkland & Ellis,

13   proposed counsel to the Debtors.

14          Your Honor, I am pleased to be in front of you

15   again this afternoon.  I will be walking the Court through

16   the next four items on the agenda, starting with the

17   Debtor's wages motion which was filed at Docket Number 5 and

18   is Item Number 8 on the agenda.

19          Your Honor, before I begin, I want to echo the

20   sentiments of Mr. Schartz and Ms. Reiney and most

21   importantly, Your Honor, I want to thank every current and

22   former employee at (indiscernible) for their relentless

23   efforts and commitment to advancing Sunnova's mission of

24   powering energy independence.

25          Your Honor, as a result of the hundreds of

1    employees that have worked for the company over the past 13

2    years, Sunnova has become the second-largest residential

3    solar company in the United States.  I've had the pleasure

4    to meet dozens of members of the Sunnova team over the

5    course of this process and I look forward to working with

6    them as these Chapter 11 cases progress.

7            Your Honor, as you may have read in our papers and

8    as Mr. Schartz alluded to earlier, in early April the

9    company had to make the difficult decision to terminate

10   approximately 300 employees and furlough one-third of the

11   workforce due to tightened liquidity and disquiet regarding

12   the company's future.

13           As negotiations progressed, however, it became

14   clear that a full recapitalization of the business was

15   unlikely and so the company again had to make the difficult

16   decision to institute a reduction in the workforce to

17   reflect the reality of the company's ongoing situation which

18   resulted in approximately 720 more notices going out a

19   couple of weeks ago.

20           Your Honor, all told the company has laid off

21   approximately 1,000 employees year to date, which is

22   anticipated to save the company approximately $81 million an

23   annualized basis.  These employees will be eligible for

24   wages and benefits during the notice period.  But for those

25   who remain with the company, it is vital that they likewise

1    get their wages and benefits.

2            Your Honor, we recognize that this is a very

3    difficult situation for all of those involved and it is the

4    company's top priority to ensure that everybody who was

5    terminated as a result of this situation is paid what they

6    are owed.  Satisfying these wage and related obligations was

7    the focal point of our negotiations leading to the petition

8    date.  And we continue to believe that these Chapter 11

9    cases should not be funded on the backs of employees, many

10   of whom have been with the company for nearly a decade.

11           So, Your Honor, we filed the wages motion which

12   seeks customary relief to pay wages and benefits for

13   prepetition and postpetition amounts owed.

14           Notably, Your Honor, we are not seeking to pay any

15   insiders over the cap, but we are seeking to pay

16   approximately 80 former rank and file employees over the cap

17   pursuant to the final order only.

18           Your Honor, we shared the motion with the U.S.

19   Trustee's Office and various stakeholders before today's

20   hearing and I believe we are moving forward here on a fully-

21   consensual basis.  So unless you have any questions, I would

22   ask that you enter the order as is proposed.

23           All right.  Does anyone else wish to be heard with

24   respect to the wages motion?  All right, thank you.

25           So I have reviewed the wages motion and this is a

1    difficult situation based on the significant reductions in

2    force.  So I think it's appropriate that the court enter

3    this and it's an exercise of the Debtor's fiduciary duty.

4    So I am going to grant the motion.  So give me a minute to

5    sign it.

6              MR. RYAN:  Thank you, Judge.

7              THE COURT:  Again, all the second days are going

8    to be June 30th at 1:00 with the objection deadline the week

9    before.

10             MR. RYAN:  Okay.  Thank you.

11             THE COURT:  All right.  That's been signed and

12   sent to docketing.

13             MR. RYAN:  Thank you, Your Honor.  Your Honor, the

14   next item on the agenda that I would like to take the Court

15   through is the Debtor's schedules and statements extension

16   motion which was filed at Docket Number 8.  And I believe

17   it's Number 9 on the agenda.

18             Your Honor, here the Debtors are seeking a 45-day

19   extension from the 14-day deadline to file their schedules

20   and statements for a total of 59 days from the petition

21   date, which I believe brings the new deadline to August 6th.

22             In addition, the Debtors are also requesting an

23   extension to file their initial reports under Bankruptcy

24   Rule 2015.3 to the exact same day.

25             Your Honor, this is routine customary first day

1    relief and the Debtors have been working with their advisors

2    to prepare the schedules and statements as much as they can

3    leading to the petition date.  But obviously with everything

4    going on, we didn't have time to complete them.  And so we

5    respectfully request you grant the extension.  I would note

6    that the order was shared with the United States Trustee's

7    Office prior to today's hearing and they did not have any

8    comments.

9               THE COURT:  Mr. Jimenez, anything on this order?

10              MR. JIMENEZ:  Thank you, Your Honor.  Andrew

11   Jimenez for the United States Trustee.  No comments, Your

12   Honor.  We will work with the Debtors on the deadline they

13   have requested, Your Honor.

14              THE COURT:  All right.  Does anyone else wish to

15   be heard on the SOFA extension motion?  All right.

16              I have reviewed the motion.  I think in a case of

17   this size with the very, very complicated structure and the

18   fact that although there's only four debtors, under Rule

19   2015.3 you have to file information with respect to all the

20   non-filed debtors, I think the extension is appropriate.  So

21   I am going to go ahead and sign that.

22              MR. RYAN:  Thank you, Your Honor.

23              THE COURT:  All right.  It's been sent to

24   docketing.

25              MR. RYAN:  Your Honor, the next item on today's

1   agenda is the Debtor's taxes motion which was filed at

2   Docket Number 12 and is item number 10 on the agenda.

3          Your Honor, through this motion, the Debtors are

4   seeking customary first day relief to pay approximately

5   $15.3 million in prepetition amounts owed on account of

6   certain taxes and fees and to continue to pay their tax

7   obligations on a postpetition basis in the ordinary course

8   of business.

9          Your Honor, we shared this motion with the United

10  States Trustee's Office and various stakeholders prior to

11  today's hearing and we have incorporated all comments that

12  we have received.  And so I believe that we are moving

13  forward here on a fully consensual basis.  So unless you

14  have any questions, I would respectfully request that you

15  enter the proposed form of order.

16          THE COURT:  The taxes are just being paid in the

17  ordinary course.  They are not being accelerated, right?

18  They're just being paid when due?

19          MR. RYAN:  That's correct, Your Honor.

20          THE COURT:  Okay.  Anyone else wish to be heard on

21  the taxes motion?  Okay.

22          The amount -- I have reviewed the motion.  The

23  amount of taxes compared to the size of this case appears to

24  be reasonable.  So I am going to go ahead and grant the

25  motion.  Give me a minute.

1           All right.  That's been signed and sent to

2      docketing.

3           MR. RYAN:  Thank you, Judge.  The next item and my

4      final item for today is the Debtor's creditor matrix motion

5      which was filed at Docket Number 7 and is item number 11 on

6      the agenda.

7           Your Honor, measured by the sheer size of the

8      Debtor's business, it follows that several of the

9      administrative and procedural provisions in the Bankruptcy

10     Code such as the requirements that each debtor file a

11     creditor matrix would be unduly burdensome on the debtors in

12     these Chapter 11 cases.

13          Your Honor, in addition, the size and complexity

14     of the Debtor's business also means that they are in

15     possession of various commercially-sensitive and personally-

16     identifiable information particularly in light of the fact

17     that this is a residential solar company with customers in

18     the hundreds of thousands.

19          So, Your Honor, essentially what we are asking for

20     is a redaction of -- is the -- okay.  Essentially what we

21     are asking for is essentially a redaction of the customer

22     list that is basically individuals in their homes.  We've

23     shared this motion with the United States Trustee's Office

24     in advance of today's hearing and we didn't receive any

25     comments.  So I believe that we are moving forward here on a

1    fully-consensual basis.  So with that, unless you have any

2    questions, I would respectfully request that you enter the

3    order.

4             THE COURT:  All right.  Anyone else wish to be

5    heard on the creditor matrix motion?  All right.

6             I think under the circumstances the relief

7    requested with respect to redaction of the customer base,

8    which is obviously a key asset of these estates I think is –

9    – and personally-identifiable information which you probably

10   have to do anyways, I think it's a reasonable request.  And

11   I'll go ahead and grant the motion.

12            MR. RYAN:  Thank you, Your Honor.

13            THE COURT: All right.  All right.

14            MR. RYAN:  All set?  Thank you, Judge.  I will now

15   cede the podium to my colleague, Mr. Felton.

16            MR. FELTON:  Good afternoon, Your Honor.  Can you

17   hear me all right?

18            THE COURT:  I can hear you fine.

19            MR. FELTON:  Your Honor,  my name is Nathan Felton

20   of Kirkland & Ellis on behalf of the Debtors.  It's a

21   pleasure to be before you today for the first time.  I'll be

22   taking us through the balance of today's agenda.  First up

23   for me, Your Honor, is the Debtor's NOL motion which was

24   filed at Docket Number 11 and is Item Number 12 on the

25   agenda.

1           Your Honor, the NOL motions and procedures that

2      are part of the order are an important tool for preserving

3      one of the Debtor's most valuable assets at this point,

4      which is their tax attributes.

5           As Your Honor noted in our papers, the Debtors

6      have approximately $1.4 billion of federal NOLs, $375

7      million of general business tax credits and $302 million of

8      163(j) carryforwards.

9           As Your Honor is aware, the Debtors could lose

10     these tax attributes if they experience what's called an

11     ownership change during these Chapter 11 cases.  And I

12     understand from my tax colleagues that once a tax attribute

13     is lost, it's generally lost forever.

14           So by the order we seek to approve certain

15     procedures that will allow the Debtors to monitor certain

16     ownership shifts that could change into ownership changes

17     and object to ownership shifts and allow us to essentially

18     protect these important tax attributes.

19           And in each case in doing so if there is a

20     declaration of a substantial shareholder that's filed, the

21     Debtors would have 20 days to object in connection with the

22     U.S. Trustee as well.

23           With this motion, usually a topic of notices comes

24     up.  We've calculated notice to reach far and wide.  We

25     shared the order with the U.S. Trustee.  They did not have

1    any comments to the NOL motion or the NOL order.  So I

2    understand we are going forward on a fully-consensual basis

3    here.

4              And with that, Your Honor, unless you have any

5    questions, we respectfully request entry of the NOL order

6    and proposed procedures so we can protect these important

7    tax attributes.

8              THE COURT:  All right.  Does anyone else wish to

9    be heard?  All right.  I have reviewed the NOL motion and

10   order.  The company has almost $2 billion of tax attributes.

11   I think under the Clean Lines -- or if I recall the case,

12   courts have held that tax attributes are property of the

13   estate and that they can be protected pursuant to an NOL

14   order.

15             What this order does is it creates procedures so

16   that there isn't an inadvertent loss of the tax attributes

17   by someone who is a sufficiently large shareholder creating

18   a 382 change of control.

19             So I will go ahead and grant the motion.  So give

20   me a minute.

21             Okay, that order has been signed and sent to

22   docketing.

23             MR. FELTON:  Thank you, Your Honor.  Next up, Your

24   Honor, is the Debtor's insurance motion which is filed at

25   Docket Number 6 and is item number 13 on the agenda.

1          Your Honor, the Debtor's insurance and surety

2     programs are very important to the Debtor's ongoing business

3     operations.  As Your Honor noted in the pleadings, the

4     Debtor spent approximately $26 million per year on average

5     on account of those programs seeking authority to pay

6     prepetition liability on account of them in an amount of

7     approximately $7.6 million.

8          The Debtors maintain in the ordinary course

9     approximately 40 insurance policies and 120 surety bonds.

10    The surety bonds roughly bucketed in three different

11    categories which are consumer financing bonds -- those were

12    new to me -- operational licensing bonds, and performance

13    and payment bonds.  Those are the type of surety bonds

14    you're probably used to seeing in these cases.

15         And as Your Honor is aware, maintaining adequate

16    insurance coverage during these cases is not entirely

17    optional for the debtors.  In many instances the surety

18    bonds and insurance policies that I outlined for you are

19    required by local and state jurisdictions.  Section 1112 of

20    the Bankruptcy Code requires or allows for the conversion or

21    dismissal of these cases for the failure to maintain

22    appropriate insurance.  And the U.S. Trustee guidelines also

23    require it.

24         We shared the proposed order with the U.S. Trustee

25    and they had some light comments which we have incorporated.

1    So I understand that we're proceeding here at this point on

2    a fully consensual basis.  And unless Your Honor has any

3    questions, we respectfully request entry of the insurance

4    order so that the Debtors can continue the critical coverage

5    that they need to operate their businesses during these

6    Chapter 11 cases.

7           THE COURT:  All right.  Does anyone else wish to

8    be heard on the insurance motion?  All right.

9           I think maintaining insurance and paying the

10   insurance as needed is critical and in the both U.S. Trustee

11   guidelines and the Code have consequences for not having

12   insurance, so I think this is a proper exercise of the

13   Debtor's business judgment.  So give me a minute.

14          All right, that order has been signed and sent to

15   docketing.

16          MR. FELTON:  Thank you, Your Honor.  Next up is

17   the Debtor's utilities motion which is filed at Docket

18   Number 14 and is item number 14 on the agenda.

19          Your Honor, the Debtors request entry of an order

20   confirming that the adequate assurance procedures provide

21   the Debtor's utility providers with adequate assurance of

22   payment within the meaning of Sections 366 of the Bankruptcy

23   Code.

24          Your Honor, we view this motion as relatively easy

25   in this case.  Most of the Debtor's utilities are paid

1    through their leases.  The Debtors only pay 11 utilities

2    directly.  Those categories of gas, heat, electricity, waste

3    disposal, those sorts of things.

4           The Debtors spend only approximately $27,000 per

5    month on utilities.  So we are requesting to place a grand

6    total of $13,516 into a newly-created segregated adequate

7    assurance account within 20 days.

8           Of course if we subsequently identify a utility

9    provider, we'll provide notice of these procedures within

10   five days.  Don't expect that to happen in this case given

11   the small universe of the Debtor's utility obligations.

12          We shared the order with the U.S. Trustee and they

13   had some very light comments which we have incorporated into

14   the proposed order before Your Honor today.

15          So unless Your Honor has any questions, we

16   respectfully request entry of the utilities order so that

17   the Debtors can comply with Section 366 of the Code and can

18   be assured that the utility providers will not discontinue

19   service during these Chapter 11 cases.

20          THE COURT:  And so the only question I had in

21   Paragraph 13 is with respect to any subsequently-identified

22   utility provider.  I still think you have to comply with the

23   30-day period.  So in other words, they have to have

24   adequate assurance within the 30 days.

25          MR. FELTON:  Thirteen of the order.  Let me just

1    pull that up, Your Honor.

2         THE COURT:  Yeah.  That's where you talk about...

3         MR. FELTON:  Sorry.  So in Paragraph 13 what is

4    the language that you believe is missing?  We're happy to --

5         THE COURT:  So I don't think you can add a utility

6    provider after 30 days and comply with 366.  The way I read

7    366 is you have to provide adequate assurance within 30

8    days.  So that's -- you know, they serve a copy of this

9    order...

10        MR. FELTON:  So we -- Your Honor, I think

11   prepetition we -- given the size of the utility obligations,

12   we don't expect -- we honestly would be shocked if there are

13   any subsequently-identified utility providers.  But we are

14   happy to strike that provision from the order, Your Honor.

15        THE COURT:  No, I don't -- I mean, people miss

16   utilities and you could do it.  But I think you just need to

17   do it within 30 days.

18        Here's what I'll do.  I'll add a paragraph -- I'll

19   add to Paragraph 26, which is the retention of -- and the

20   Court will set a hearing within 30 days of this filing to

21   the extent necessary so that you know that you have the 30-

22   day cutoff.  So let me just make that edit.

23        Okay.  I just added.  And the Court will set a

24   hearing to the extent necessary within 30 days of the

25   petition date for any subsequently-identified utility

1   provider.  So let me -- with that -- anyone have any other

2   questions on the utilities motion.  All right.  I will --

3             MR. JIMENEZ:  Your Honor, Andrew Jimenez for the

4   U.S. Trustee.  I just want to clarify because we had Case

5   Number 25-90160 was filed yesterday.  But we had a previous

6   finding in another case a week before.  This is the jointly-

7   administered case.  So I guess we are to read that the

8   filing date would be the one that was filed yesterday.

9             THE COURT:  Yes.

10            MR. FELTON:  That's correct.

11            THE COURT:  My understanding was that there was no

12   utility provide for the one that was filed previously.

13            MR. JIMENEZ:  Okay.  Thank you, Your Honor.

14            MR. FELTON:  Yes, that's correct, Your Honor.

15            THE COURT:  Yeah.  The petition date -- yeah, it

16   is yesterday.  Let me just help with June 8th.  All right.

17            I'm going to go ahead and approve the utilities

18   order.  I think this is required by 366 of the Bankruptcy

19   Code.  So I will -- I have signed it and sent to docketing.

20            MR. FELTON:  Thank you, Your Honor.  And of course

21   we appreciate your help getting that right, which we always

22   try to do on our orders.  So thank you for that.

23            Finally, Your Honor, is the Debtor's automatic

24   stay motion which was filed at Docket Number 13 and which is

25   item number 15 on the agenda.

1              Your Honor, pursuant to the automatic stay motion,

2       we are simply seeking your help reaffirming what would

3       otherwise be true, which is that the worldwide automatic

4       stay exists, the antidiscrimination provisions of the

5       Bankruptcy Code, and the prohibition against the ipso facto

6       provisions are enforceable by the terms in connection with

7       the Bankruptcy Code and on a worldwide basis.

8              The Debtors primarily operate within the

9       continental United States, as Your Honor is aware.  But the

10      Debtors have operations elsewhere including in Puerto Rico.

11             But even for those creditors located in the

12      continental United States, they may of course not know for

13      instance that the ipso facto provisions are unenforceable.

14      We do this of course every day, most of the world does not.

15             So what we're really asking for pursuant to this

16      motion is for your help enforcing the company's rights in

17      bankruptcy.  We're not seeking to expand or enlarge any

18      rights that we otherwise would not have.  We're simply

19      asking the Court to reiterate what would otherwise be true.

20             The U.S. Trustee had no comments to this order

21      when we shared it with them.  So we understand that we're

22      going forward here on a consensual basis.

23             And with that, Your Honor, we would respectfully

24      request entry of the automatic stay order so that the

25      Debtors may enforce their rights (indiscernible) to that

1    question.

2              THE COURT:  All right.  Anyone else wish to be

3    heard?

4              These usually were called comfort orders, and I

5    love cases that have comfort orders.  So this is the -- in

6    essence it is the restatement of the automatic stay.

7    Usually you see it more in the international context.  But

8    under the circumstances I think it's appropriate just to

9    restate what the law is.

10             All right.  I have signed it and sent it to

11   docketing.

12             MR. FELTON:  Thank you, Your Honor.  With that, I

13   think that concludes the items that we have before recess.

14   I'll cede the podium to Mr. Schartz if he would like to say

15   anything else.  Otherwise, that's it from me.  Thank you,

16   Your Honor.

17             MR. SCHARTZ:  Good afternoon, again, Your Honor.

18   Brian Schartz.  So I think we'll take an hour break now

19   unless you need more time.

20             MR. JENKINS:  Your Honor?

21             THE COURT:  Yes.

22             MR. JENKINS:  Before we take a break, I just want

23   to raise one question because I think it relates to the

24   break.  This is Dennis Jenkins.  I'm sorry to interrupt.

25   But just before we break, I'll let -- let Kirkland finish

1    and then I just have one question.

2          MR. SCHARTZ:  That was it unless Your Honor needed

3    more time or less time.  But I think an hour to go see if we

4    can knock down issues on by my count customer programs, the

5    vendor motion, and the Atlas motion.  So we've got sort of

6    three things.  And we'll either resolve it hopefully or

7    we'll tell you what the points of friction are.  And

8    obviously, Judge, you can raise it or (indiscernible) you

9    would like to raise.

10          Go ahead, Mr. Jenkins.

11          MR. JENKINS:  Thank you again.  This is Dennis

12    Jenkins of Willkie Farr & Gallagher.

13          Your Honor, I got a call a couple of moments

14    before this hearing started and my client didn't even have

15    authority yet to hire anyone.  But they are indeed unsecured

16    creditors and raised a question related to the Atlas motion

17    that I think is important.  And I hope maybe I just

18    misunderstood.  If you'll indulge me, I haven't had a chance

19    yet to be retained or file a motion pro hac vice.  But can I

20    proceed to ask that question?

21          THE COURT:  Sure, go ahead.

22          MR. SCHARTZ:  Mr. Jenkins -- sorry, Your Honor.

23    What I would just suggest is that we call you in the break

24    and see if we can just talk to you real fast.  And then we

25    can put it on the record.

```
 1              MR. JENKINS:  Yes.

 2              MR. SCHARTZ:  Everyone's got questions about this

 3     one, so we need to do some work on our end.

 4              Judge, if you want to hear it, go for it,

 5     obviously.  But just a suggestion.

 6              MR. JENKINS:  That's fine.

 7              THE COURT:  Okay.  So we will -- it's now 4:21.

 8     Why don't we take a break until 5:30.  And then we'll come

 9     back and finish up with the other three motions.

10              MR. SCHARTZ:  Thank you, Your Honor.  we

11     appreciate it.  See you soon.

12              THE COURT:  Okay.  So we are in recess until 5:30.

13              (Recess)

14              THE COURT:  All right.  Everyone please keep their

15     phones on mute until you have a chance to talk.  Otherwise

16     I'm going to have to -- well, I'm going to go ahead and

17     invoke the -- mute them.  And so hit five-star one time to

18     be unmuted, please.

19              MR. SCHARTZ:  Okay, Your Honor.  Brian Schartz

20     from Kirkland & Ellis on behalf of the Debtors.  Can you

21     hear me?

22              THE COURT:  Yes, I can hear you.  So we are back

23     for the continuation of Sunnova Energy International Inc.'s

24     first day hearings, Case Number 25-90160.  Go ahead, Mr.

25     Schartz.
```

1              MR. SCHARTZ:  Thank you so much.  So I am going to

2      try and see if we can cut through this.  It's 6:30 p.m.

3      Eastern and we still have lots to do today.  I have a DIP

4      and stalking horse waiting for me.  So let me see if I can

5      just move this along relatively quickly even though I didn't

6      present the motions and we didn't get to Atlas.

7              So just on the Atlas sale motion/settlement

8      motion, Your Honor, we, the Debtors and counsel to Atlas had

9      productive conversations with a number of the lawyers for

10     the dealers.  I think there's a bit to talk about and

11     everyone feels that there's something there to get this done

12     and get it done rather quickly.

13             What we've proposed -- and I'm sticking my neck

14     out here -- is there any way, Judge, we could come back and

15     talk to you tomorrow?  I know you said you don't have time

16     until a couple days from now, but we do need the money.

17     That fact has not changed.  We do need the money and we do

18     need to sort this out.  I think that with the benefit of

19     even just 24 hours or less than 24 hours we could have a

20     working out of this situation that gets us in a better spot.

21     That's kind of point one.

22             THE COURT:  Unfortunately this is not something

23     that I can change, that I can move.  And so I'm pretty much

24     out all day tomorrow.  And I can't -- I really can't do

25     anything about that.  I could try to see if I could get

1   Judge Lopez to hear it, but I don't know what his schedule

2   is or even if he is in town.  But I could probably do late

3   Wednesday afternoon around 5:00 Central.  That's probably

4   the first time I can do something.

5           MR. SCHARTZ:  Okay, Judge.  Don't want to -- I

6   don't want to impose on Judge Lopez too.  So I would be

7   inclined to take -- I want to talk about the other motions.

8           THE COURT:  Okay.

9           MR. SCHARTZ:  Let me pause and see if anyone else

10  who I have been talking to for the last hour has anything

11  they want to say about that timing and then I'll turn to

12  customer programs and cash management.

13          MR. WELCH:  Your Honor, can you hear me?  This is

14  Joseph Welch with Blank Rome.

15          THE COURT:  Yes, I can.

16          MR. WELCH:  My understanding is that Your Honor's

17  first availability is this Wednesday at 5:00 p.m. Central.

18  Did I hear that correctly?

19          THE COURT:  That's correct.

20          MR. WELCH:  Your Honor, that would be acceptable

21  to our group.  We would welcome the extra time to work

22  through many of the issues that we started discussing over

23  the last hour.  And we do appreciate Your Honor's indulgence

24  for giving us that time.

25          MR. WELCH:  I guess, Your Honor, the only question

```
 1    I would have is of probably Mr. Omohundro of whether the
 2    Debtors have enough money to make it that far.  And
 3    understanding that your availability is the real key here.
 4    But I just want to make sure that we're not going to lose
 5    the company.
 6            MR. SCHARTZ:  Mr. Omohundro is on the line across
 7    the hallway for me in his own room.  And I think we can make
 8    it, but Mr. Omohundro, please kick me under the table if
 9    that's not right.
10            THE COURT:  Hold on a second.  Yeah, there you go.
11            MR. OMOHUNDRO:  Good afternoon, all.  Yes, we
12    could get 24 to 48 hours.
13            MR. SCHARTZ:  Okay, thank you.  All right, so --
14            MR. KEVANE:  Your Honor, just one more thing.
15    It's Henry Kevane for Windmar P.V. Energy.
16            THE COURT:  Yes, go ahead.
17            MR. KEVANE:  I was waiting for this matter to be
18    called.  We didn't file an objection, but we do have the
19    same or similar objections that were raised by the ad hoc
20    Sunnova group concerning the disposition of the company's
21    rights to settle the outstanding claims of the dealers.  So
22    we would like to be included in those discussions as well.
23    We can avoid the need to come in on Wednesday and still have
24    open issues.
25            THE COURT:  All right.  Okay.
```

1          MS. KOVSKY-APAP:  Your Honor, Deb Kovsky for Pulte

2     Homes.  We also did not file an objection given the time but

3     had reached out to Debtor's counsel.  The (indiscernible)

4     had reached out over the weekend and I reached out during

5     the break.  Pulte also has concerns and some limited

6     objections with respect to certain properties.  We would

7     also like to be included in those discussions.  And the

8     timing is fine for us.

9          MR. JIMENEZ:  Your Honor, Andrew Jimenez for the

10    U.S. Trustee.  I just want to take a moment to share with

11    the Court the concerns that the U.S. Trustee had previously

12    shared to the Debtor with the sale motion.  Your Honor,

13    because this is not a typical motion that you file on the

14    first day and get relief on the first day.  So we have

15    concerns about that because we are talking about the

16    disposition of assets in the first day.  Which, Your Honor,

17    is prohibited under Bankruptcy Rule 6003.  And I just want

18    the Debtor and the parties to keep that in consideration.

19         We don't have a committee here in place yet to

20    wait on a motion of this importance.  I understand the

21    Debtor's concern about the need to obtain cash to continue

22    operations and to fund the plan.  But this is not the only

23    source of funding for the Debtor.  The Debtor also previewed

24    today that I think maybe tomorrow they will file a DIP

25    motion.  So there are other components of financing in this

1    reorganization, Your Honor.  This is not the only one.  And

2    I want the Court to keep that in consideration given the

3    limitations that we have under this position of

4    (indiscernible) the first day under Bankruptcy Rule 6003.

5    Thank you, Your Honor.

6         THE COURT:  Yeah.  And Mr. Jimenez, that's really

7    the reason why I asked about the budget that was attached to

8    Mr. Omohundro's declaration, his declaration in support of

9    the first day hearings.  And the Debtor would have to show

10   immediate and irreparable harm in order to be able to do

11   this under 6003 because it's generally prohibited.  And my

12   question was the way the budget forecast here shows that

13   without the $15 million, they're basically out of money at

14   the end of the week.  So obviously I am going to need

15   testimony on that at the time of the hearing.

16        MR. WELCH:  And, Your Honor, that's our concern as

17   well.  I believe I voiced that before.  But the primary

18   purpose, one of the purposes of this, was to provide cash to

19   these debtors so that they could operate and bridge.  And

20   we've sat for quite some time, you know, concerned, as most

21   lenders would be.  So watching the cash dwindle.  And part

22   of this -- part of the key reasons behind the sale is to

23   provide cash to fund the administrative expenses of this

24   case.

25        MR. SCHARTZ:  Like I said, Judge, we're going to

1    need your help.  We have a lot of work to do.  Frankly, I

2    don't want to spend a bunch of time right now litigating

3    over issues that I think we'll be able to resolve.  We need

4    the money.

5            THE COURT:  Understood.

6            MR. SCHARTZ:  If we don't get to a point where

7    it's resolved Wednesday at 5:000 p.m. Central, then we'll be

8    prepared to put forward our evidence and see if we can get

9    Your Honor to enter the order.  Because we're going to have

10   to do that.

11           My hope is that it will be resolved, but it is

12   what it is right now.  And I think we need to frankly move

13   on from the hearing and go work on some other stuff that is

14   extremely pressing right now.  And I say that with all

15   respect.

16           Any reaction to that, Judge, or questions?

17           THE COURT:  No, no.  Hopefully it will be

18   resolved.  But if not, we'll have a hearing at 5:00 on

19   Wednesday.

20           MR. SCHARTZ:  Okay, all right.  Let's turn now to

21   cash management and customer programs.  My colleague, Ms.

22   Reiney, presented these motions but I'm going to see if I

23   can just push through real fast.  And she had a whole series

24   of conversations, but I'm going to see if I can just cut

25   through it.

1              Right now the cash management motion, which is

2       Docket Number 9, is already in an interim order.  The

3       customer programs motion is not.  What we would propose is

4       that we also make the customer programs motion an interim

5       order and add to both the customer programs motion and the

6       cash management motion language that addresses the concern

7       regarding the DOE.  And I'm not representing that this works

8       for anyone because we've been moving so fast.  And I don't

9       know if it does.  But I'm just trying to cut through it

10      because, again, we're running out of time.  And we have a

11      lot of stuff we still have to do.

12             The language is the following.  Something like

13      this.  Both interim orders, cash management, which is Docket

14      Number 9 motion, and customer programs, which is Docket

15      Number 10.  Notwithstanding anything to the contrary

16      contained herein, it would be that each order to the extent

17      that the Debtors have or received funds on account of the

18      Department of Energy programs, defined terms of DOE funds,

19      including about limitations to any DOE funds that are

20      collected in the government incentives collection account

21      and the main dealer payment account.  The Debtors shall seek

22      further order of the court prior to disbursement or use.

23             Additionally -- and if anyone else wants to add

24      their name.  Again, any particular dealers, rights, claims

25      of interest are expressly preserved.

```
 1              And so we understand the concern.  I think we have
 2     some work to get people comfortable with that.  The point is
 3     though we need to have obviously access to the bank accounts
 4     at least for the limited cash that we have.  I think it's
 5     important that we get on the right footing as it relates to
 6     customer programs.  We're going to continue the dialogue
 7     with folks on an interim basis as it relates to both
 8     motions.  And if folks want to be heard earlier, they can be
 9     heard earlier.  Or we'll set it for final hearing.  But
10     again, I am trying to be as utilitarian as possible and as
11     fair as possible because we still have a lot of stuff we
12     have to get done tonight.  And that's not just me being
13     tired.  I am tired.  It's just me trying to move on to the
14     next steps and preserve people's rights if we're hearing
15     them correctly.
16              THE COURT:  All right.  Any reactions?  Go ahead.
17              MR. KEVANE:  Your Honor, I think that we are
18     disappointed that that's the outcome because every
19     indication that we had from the Debtors was that this
20     federal program would continue unaffected by the
21     commencement of a bankruptcy and that we as the dealers
22     participating in this program ought to continue to work.
23     But under the circumstances, as long as all the funds are
24     frozen and they're not misused, then we will have a chance
25     to explain why we have earned those remittances and they
```

```
1    should be turned over to us.  And we would ask that Windmar

2    P.V. Energy Inc. also be added as a party preserving its

3    rights under that provision.

4              THE COURT:  All right.  Anything further?

5              MR. MUENKER:  Your Honor, James Muenker, DLA

6    Piper, on behalf of Power Solar.  We did work with the

7    Debtors during the break on that language.  That language is

8    acceptable to our client.  And like the comments from Mr.

9    Kevane, we hope to be in a position soon to be back in front

10   of Your Honor with something that gets those funds flowing

11   to their intended recipients as soon as possible.

12             THE COURT:  All right.  Mr. Schartz, are you going

13   to get someone just to upload the two revised orders?  And

14   if you can get them done tonight, I'll get them in tonight

15   or first thing in the morning.  And then I'm basically out

16   of pocket the rest of the day through Wednesday.

17             MR. SCHARTZ:  We will get it tonight.  I promise

18   you.

19             THE COURT:  All right.  All right.  So on the

20   basis of -- I'm sorry.  Go ahead, Mr. Schartz.

21             MR. SCHARTZ:  And thank you.  I should have said

22   thank you.

23             THE COURT:  So on the basis of the announcement

24   with respect to, number one, making the customer programs

25   order an interim order -- and again, the hearing date would
```

1   be June 30th at 1:00 with the objection deadline a week

2   before on the 23rd.  And the reservation of rights and the

3   in essence the freezing of the issues relating to the

4   government program  monies, I don't think that that creates

5   a situation where people's rights are impacted negatively.

6   Obviously I can understand why the dealers would want to

7   continue to work and make money.  I think that's reasonable.

8   But under the circumstances I also think that for this

9   interim period it makes sense to maintain the status quo and

10  allow the Debtor to, A, continue the cash management system

11  which they are going to need anyways, and B, continue

12  customer programs to the extent that they want to maintain a

13  going concern, especially if there is a sale or a potential

14  sale in the works.  But with all that, I will go ahead and

15  grant those after I review them when they're entered -- when

16  they're filed.

17          So is there anything further we can do today?

18          MR. SCHARTZ:  That is it, Your Honor.  Thanks

19  again for the time and we will see you on Wednesday at 6:00

20  Eastern, 5:00 p.m. Central.  And hopefully we'll have more

21  stuff worked out than what we had coming into today, and we

22  appreciate your help today.

23          THE COURT:  And that will be a virtual hearing as

24  well.  So I think pretty much everything this week is going

25  to have to be virtual.  All right.  Thank you.  All right.

Page 63

1    thank you.  All right.  We are in recess.  Thank you.

2            (Proceedings adjourned at 5:49 p.m.)

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                          <u>CERTIFICATION</u>

2

3      I certify that the foregoing is a correct transcript from

4      the electronic sound recording of the proceedings in the

5      above-entitled matter.

6

7      *Sonya M. Ledanski Hyde*

8

9

10     Sonya Ledanski Hyde

11

12

13

14

15

16

17

18

19

20     Veritext Legal Solutions

21     330 Old Country Road

22     Suite 300

23     Mineola, NY 11501

24

25     Date:  June 20, 2025