United States Bankruptcy Court
Southern District of Texas

**ENTERED**

July 23, 2025

Nathan Ochsner, Clerk

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| SUNNOVA ENERGY INTERNATIONAL INC., *et al.*,[1] | ) | Case No. 25-90160 (ARP) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) | **Re: Docket No. 466** |

### ORDER AUTHORIZING THE
### (I) RETENTION AND EMPLOYMENT OF
### ALVAREZ & MARSAL NORTH AMERICA, LLC,
### (II) DESIGNATION OF RYAN OMOHUNDRO AS CHIEF RESTRUCTURING
### OFFICER, (III) PROVISION OF ADDITIONAL PERSONNEL FOR DEBTORS, EACH
### EFFECTIVE AS OF THE PETITION DATE, AND (IV) GRANTING RELATED RELIEF

Upon the application (the "<u>Application</u>")[2] of the above-captioned debtors and debtors in possession (collectively, the "<u>Debtors</u>") for entry of an order (this "<u>Order</u>") authorizing the Debtors to: (a) retain and employ Alvarez & Marsal North America, LLC (together with employees of its professional service provider affiliates (all of which are wholly-owned by its parent company and employees), its wholly-owned subsidiaries and independent contractors, "<u>A&M</u>"); (b) designate Ryan Omohundro as CRO; and (c) provide additional Engagement Personnel for the Debtors, each pursuant to the terms of the engagement letter by and among the Debtors and A&M, dated as of April 27, 2025 (the "<u>Engagement Letter</u>"), a copy of which is attached hereto as **Exhibit 1**, which terminated and superseded the Initial Engagement

---

[1] A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/Sunnova. The location of Debtor Sunnova Energy International Inc.'s corporate headquarters and the Debtors' service address in these chapter 11 cases is 20 East Greenway Plaza, Suite 540, Houston, Texas 77046. "<u>Sunnova</u>" or the "<u>Company</u>" means, collectively, Sunnova Energy International Inc. and its Debtor and non-Debtor subsidiaries and affiliates.

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Application.

Letter, all as more fully set forth in the Application; and upon consideration of the Omohundro Declaration; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and the *Order of Reference to Bankruptcy Judges* from the United States District Court for the Southern District of Texas, entered May 24, 2012; and this Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b); and this Court having found that it may enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of this proceeding and the Application in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the relief requested in the Application is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and this Court having found that the Debtors' notice of the Application and opportunity for a hearing on the Application were appropriate and no other notice need be provided; and this Court having reviewed the Application and having heard the statements in support of the relief requested therein at a hearing before this Court (the "Hearing"); and this Court having determined that the legal and factual bases set forth in the Application and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor, it is **HEREBY ORDERED THAT**:

1.      Pursuant to sections 327(a) and 328(a) of the Bankruptcy Code, Bankruptcy Rules 2014 and 2016, Bankruptcy Local Rules 2014-1 and 2016-1, and the Complex Case Procedures, the Debtors are authorized to retain and employ A&M, designate Ryan Omohundro as CRO of the Debtors, and engage A&M to provide additional Engagement Personnel for the Debtors, effective as of the Petition Date, in accordance with the terms and conditions set forth in the Engagement Letter.

2.      The terms of the Engagement Letter, including, without limitation, the compensation provisions and Indemnification Agreement, are reasonable terms and conditions of employment and except as modified herein, are hereby approved.

3.      Notwithstanding anything to the contrary in the Engagement Letter, the Court does not, by entry of this Order, award to A&M, or authorize the entitlement to the award to A&M of, the Completion Fee in accordance with Section 4(d) of the Engagement Letter; *provided*, *however*, that A&M may seek approval of the Completion Fee in a separate application or in an application for final allowance of compensation and reimbursement of expenses pursuant to paragraph 3 herein, and all parties in interest reserve the right to object to any entitlement of A&M to the same.

4.      Upon the entry of this Order, Mr. Omohundro shall be empowered and authorized to carry out all duties and responsibilities set forth in the Engagement Letter.

5.      A&M shall file statements or applications, as applicable, for monthly, interim, and final allowance of compensation and reimbursement of expenses pursuant to the procedures set forth in sections 330 and 331 of the Bankruptcy Code, such Bankruptcy Rules and Bankruptcy Local Rules as may then be applicable, and any applicable orders and procedures of the Court.

6.      In the event that, during the pendency of these chapter 11 cases, A&M seeks reimbursement for any attorneys' fees and/or expenses, the invoices and supporting time records from such attorneys shall be included in A&M's fee applications and such invoices and time records shall be in compliance with the Bankruptcy Local Rules and subject to approval of the Court under the standards of sections 330 and 331 of the Bankruptcy Code, without regard to whether such professional(s) have been retained under section 327 of the Bankruptcy Code; *provided* that A&M shall not seek reimbursement from the Debtors' estates for any fees incurred in defending any of A&M's fee applications in these chapter 11 cases.

7.      To the extent there is any inconsistency between the terms of the Engagement Letter, the Application, and this Order, the terms of this Order shall govern.

8.      The indemnification provisions contained in the Engagement Letter are approved subject to the following:

(a)     A&M shall not be entitled to indemnification, contribution, or reimbursement for services other than those described in the Engagement Letter and the Application, unless such services and indemnification therefor are approved by the Court;

(b)     The Debtors shall have no obligation to indemnify A&M, or provide contribution or reimbursement to A&M, for any claim or expense that is either: (i) judicially determined (the determination having become final) to have arisen from A&M's gross negligence, willful misconduct, fraud, or breach of fiduciary duty (if any); (ii) settled prior to a judicial determination as to A&M's bad faith, gross negligence, breach of fiduciary duty (if any), self-dealing or willful misconduct, but determined by this Court, after notice and a hearing pursuant to subparagraph (c) infra, to be a claim or expense for which A&M is not entitled to receive indemnity under the terms of the Engagement Letter;

(c)     If, before the earlier of: (i) the entry of an order confirming a plan of reorganization in these chapter 11 cases (that order having become a final order no longer subject to appeal); and (ii) the entry of an order closing these chapter 11 cases, A&M believes that it is entitled to the payment of any amounts by the Debtors on account of the Debtors' indemnification, contribution, and/or reimbursement obligations under the Engagement Letter(as modified by this Order), including, without limitation, the advancement of defense costs, A&M must file an application therefor in this Court, and the Debtors may not pay any such amounts to A&M before the entry of an order by this Court approving the payment.  This subparagraph (c) is intended only to specify the period of time under which the Court shall have jurisdiction over any request for fees and expenses by A&M for indemnification, contribution, and/or reimbursement, and not to limit the duration of the Debtors' obligation to indemnify A&M.  All parties in interest shall retain the right to object to any demand by A&M for indemnification, contribution, and/or reimbursement; and

(d)     Irrespective of subparagraphs (a)-(c) above, the Debtors are permitted to indemnify those persons serving as corporate officers on the same terms as provided to the Debtors' other directors and officers under the corporate bylaws and applicable state law, along with insurance coverage under the Debtors' director and officer insurance policies.

9.      Notice of the Application as provided therein shall be deemed good and sufficient notice of such Application and the requirements of the Bankruptcy Rules, the Bankruptcy Local Rules, and the Complex Case Procedures are satisfied by such notice.

10.      Notwithstanding any Bankruptcy Rule to the contrary, the terms and conditions of this Order are immediately effective and enforceable upon its entry.

11.      The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Order in accordance with the Application.

12.      This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

Signed: July 23, 2025

Alfredo R Pérez
United States Bankruptcy Judge

## **Exhibit 1**

**Engagement Letter**



**Alvarez & Marsal Holdings, LLC**
2100 Ross Avenue, 21st Floor
Dallas, TX 75201
Phone: +1 214 438 1000
Fax: +1 214 438 1001

April 27, 2025

Paul Mathews
Chief Executive Officer
Sunnova Energy International Inc.
20 Greenway Plaza
Houston, TX 77046

Dear Mr. Mathews:

This letter confirms and sets forth the terms and conditions of the engagement between Alvarez & Marsal North America, LLC ("A&M") and Sunnova Energy International Inc. ("Sunnova") and its subsidiaries (collectively, the "Subsidiary Group") and its assigns and successors (jointly and severally, the "Company"), including the scope of the services to be performed and the basis of compensation for those services.  Effective as of the date of this Agreement, the Company and A&M agree that the prior engagement agreement between A&M and Sunnova dated as of March 18, 2025 (the "Prior Agreement") is hereby terminated in accordance with its terms and replaced in its entirety with this Agreement.  Upon execution of this letter by each of the parties below and receipt of the retainer described below, this letter will constitute an agreement between the Company and A&M (the "Agreement").

1.    Description of Services

    (a) Officers.  In connection with this engagement, A&M shall make available to the Company:

        (i)    Ryan Omohundro to serve as the Chief Restructuring Officer (the "CRO"); and

    (b) A&M will provide additional employees of A&M and/or its affiliates and wholly-owned subsidiaries ("Additional Personnel") as required (collectively, with the CRO, the "Engagement Personnel"), to assist the CRO in the execution of the duties set forth more fully herein.  It is anticipated that the Engagement Personnel activities in cooperation with the Company shall include the following:

        (i)    *assistance in assessing and supporting your treasury team in support of its near-term cash management efforts;*

Sunnova Energy International Inc.
April 27, 2025
Page 2

    (ii)    *assistance to the Company related to the due diligence effort inherent to the liability management and restructuring process, including interfacing with creditor advisors and providing coordination / support to the overall information request workstream;*

    (iii)    *assistance to the Company and its advisors in contingency planning efforts as part of its overall liability management and restructuring mandate;*

    (iv)    *assist the Company with vendor management and negotiation of payment terms;*

    (v)    *assistance related to implementation of potential asset sales;*

    (vi)    *report to the Company's Board; and*

    (vii)    *perform such other services as requested or directed by the board of the directors of the Company (the "Board") or other Company personnel as authorized by the Board, and agreed to by A&M that is not duplicative of work others are performing for the Company.*

It is A&M's understanding that the Company and Subsidiary Group are coordinating their respective liability management and restructuring efforts that A&M's services are meant to support and therefore the Services are not intended to consist of matters in which any member of a Subsidiary Group is adverse to the Company.

(c) In connection with the Services to be provided hereunder, from time to time A&M may utilize the services of employees of its affiliates, subsidiaries and independent contractors. Such affiliates are wholly owned by A&M's parent company and employees. Further, A&M personnel providing services to the Company may also work with other A&M clients in conjunction with unrelated matters subject to the provisions in Section 8.

2.    <u>Information Provided by the Company and Forward Looking Statements</u>

The Company shall use all reasonable efforts to: (i) provide A&M with access to management and other representatives of the Company; and (ii) to furnish all data, material, and other information concerning the business, assets, liabilities, operations, cash flows, properties, financial condition and prospects of the Company that A&M reasonably requests in connection with the services to be provided to the Company to the extent within the Company's possession or control. A&M shall rely, without further



Sunnova Energy International Inc.
April 27, 2025
Page 3

independent verification, on the accuracy and completeness of all publicly available information and information that is furnished by or on behalf of the Company and otherwise reviewed by A&M in connection with the services performed for the Company. The Company acknowledges and agrees that A&M is not responsible for the accuracy or completeness of such information and shall not be responsible for any inaccuracies or omissions therein. A&M is under no obligation to update data submitted to it or to review any other areas unless specifically requested by the Board to do so.

You understand that the Services to be rendered by A&M may include the preparation of projections and other forward-looking statements, and numerous factors can affect the actual results of the Company's operations, which may materially and adversely differ from those projections. In addition, A&M will be relying on information provided by the Company in the preparation of those projections and other forward-looking statements.

3.  Limitation of Duties

A&M makes no representation or guarantee that, inter alia, (i) an appropriate restructuring proposal or strategic alternative can be formulated for the Company (ii) any restructuring proposal or strategic alternative presented to the Company's management or the Board or Responsible Officers will be more successful than all other possible restructuring proposals or strategic alternatives, (iii) restructuring is the best course of action for the Company or (iv) if formulated, that any proposed restructuring plan or strategic alternative will be accepted by any of the Company's creditors, shareholders and other constituents. Further, A&M does not assume any responsibility for the Company's decision to pursue, or not pursue any business strategy, or to effect, or not to effect any transaction. A&M shall be responsible for assistance with the implementation only of the restructuring proposal or strategic alternative approved by the Board or Responsible Officers and only to the extent and in the manner authorized by and directed by the Board or Responsible Officers and agreed to by A&M.

4.  Compensation

(a) A&M will receive fees based on the following hourly rates:

| | |
|---|---|
| Managing Directors | $1,100 - 1,575 |
| Directors | 850 - 1,100 |
| Associates | 625 - 825 |
| Analysts | 450 - 600 |



Sunnova Energy International Inc.
April 27, 2025
Page 4

Such rates shall be subject to adjustment annually at such time as A&M adjusts its rates generally, and A&M will provide the Company with advance notice of any adjustments.

(b) In addition, A&M will be reimbursed for its reasonable and documented out-of-pocket expenses incurred in connection with this assignment, such as travel, lodging, meals, messenger and wireless charges. A&M also charges a flat rate of 4% of professional fees to cover otherwise unbilled items such as telephone and conferencing charges, computer use, technology and software license fees, research subscriptions and other internal services. All fees and expenses will be billed on a weekly basis or, at A&M's reasonable discretion, more frequently. Invoices are payable within five (5) days of receipt.

(c) The Company shall on the date hereof remit to A&M a retainer in the amount of $500,000 (the "Retainer") which shall be credited against any amounts due at the termination of this engagement and the remaining balance promptly returned upon the satisfaction of all obligations hereunder. The Retainer will be held in a segregated non-interest-bearing account (which may hold other A&M and A&M affiliate client retainers), separate from the general account to which A&M will direct payment of ongoing fees and expenses. Absent your agreement to the contrary, A&M may only draw on the Retainer (or a portion thereof) in order to apply to invoices that are due and payable or other amounts due under this Agreement or as the Company may otherwise agree and Company will be informed of such application of the Retainer. If a Retainer is to be increased or decreased, the foregoing shall apply.

(d) In addition to the hourly compensation, A&M will be entitled to incentive compensation in the amount of $4,000,000 (the "Completion Fee") payable upon the earlier of (x) and the consummation of a Chapter 11 plan of reorganization; and (y) the sale, transfer, or other disposition of all or a substantial portion of the assets or equity of the Company in one or more transactions.

5. <u>Term</u>

(a) This Agreement will apply from the commencement of the Services referred to in Section 1 and may be terminated with immediate effect by either party without cause by written notice to the other party.

(b) A&M normally does not withdraw from an engagement unless the Company misrepresents or fails to disclose material facts, fails to pay fees or expenses, or



Sunnova Energy International Inc.
April 27, 2025
Page 5

makes it unethical or unreasonably difficult for A&M to continue performance of the engagement, or other just cause exists.

(c) On termination of the Agreement, any reasonable and documented fees and out-of-pocket expenses invoiced to the Company and due to A&M shall be remitted promptly (including fees and expenses that accrued prior to but are invoiced subsequent to such termination).

(d) If the Company terminates this Agreement without "Cause" or if A&M terminates this Agreement for "Good Reason", A&M shall also be entitled to receive the Completion Fee upon the occurrence of the event specified in Section 4(d) if such event occurs within 6 months of the termination. "Cause" shall mean gross negligence, willful default or fraud by A&M; "Good Reason" shall mean the Company's misrepresentation of or failure to disclose material facts, failure to pay fees or expenses when due (or circumstances indicating to A&M that fees or expenses will not be paid when due), circumstances such that it is unethical or unreasonably difficult for A&M to continue performance of the engagement, or other just cause.

(e) The provisions of this Agreement that give the parties rights or obligations beyond its termination shall survive and continue to bind the parties.

6.   No Audit

Company acknowledges and agrees that A&M and Engagement Personnel are not being requested to perform an audit, review or compilation, or any other type of financial statement reporting engagement that is subject to the rules of the AICPA, SEC, or other state or national professional or regulatory body.

7.   No Third Party Beneficiary

The Company acknowledges that all advice (written or oral) provided by A&M to the Company in connection with this engagement is intended solely for the benefit and use of the Company (limited to its Board and management) in considering the matters to which this engagement relates. The Company agrees that no such advice shall be used for any other purpose or reproduced, disseminated, quoted or referred to at any time in any manner or for any purpose other than accomplishing the tasks referred to herein without A&M's prior approval (which shall not be unreasonably withheld), except as required by law.



Sunnova Energy International Inc.
April 27, 2025
Page 6

8.    <u>Conflicts</u>

A&M is not currently aware of any relationship that would create a conflict of interest with the Company or those parties-in-interest of which you have made us aware. Because A&M and its affiliates and subsidiaries comprise a consulting firm (the "<u>Firm</u>") that serves clients on a global basis in numerous cases, both in and out of court, it is possible that the Firm may have rendered or will render services to or have business associations with other entities or people which had or have or may have relationships with the Company, including creditors of the Company. The Firm will not be prevented or restricted by virtue of providing the services under this Agreement from providing services to other entities or individuals, including entities or individuals whose interests may be in competition or conflict with the Company's, provided the Firm makes appropriate arrangements to ensure that the confidentiality of information is maintained in accordance with the confidentiality provisions of this Agreement and provided that A&M will not represent the interests of any such entities or individuals directly in connection with the Company's liability management or restructuring matters on which A&M is providing Services. Each of the entities comprising the definition of Company (each, a "<u>Company Entity</u>") acknowledges and agrees that the services being provided hereunder are being provided on behalf of each of them and each of them hereby waives any and all conflicts of interest that may arise on account of the services being provided on behalf of any other Company Entity. Each Company Entity represents that it has taken all corporate action necessary and is authorized to waive such potential conflicts of interest.

9.    <u>Confidentiality / Non-Solicitation</u>

A&M and Engagement Personnel shall keep as confidential all non-public information received from the Company in conjunction with this engagement, except: (i) as requested by the Company or its legal counsel; (ii) as required by legal proceedings or (iii) as reasonably required in the performance of this engagement and not otherwise in contravention of any express instruction given by the Company or the Company's counsel; *provided* that if A&M is required to disclose such non-public information under clause (ii) of this sentence, A&M will promptly notify the Company of the existence, terms, and circumstances regarding such requirement (unless prohibited by subpoena, court order, or applicable law from doing so) so that, if appropriate, the Company may at its sole discretion seek an appropriate protective order, at the Company's sole cost and expense, prior to A&M's disclosure of such information. All obligations as to non-disclosure shall cease as to any part of such information to the extent that such information is or becomes public other than as a result of a breach of this provision. The Company, on behalf of itself and its subsidiaries and affiliates and any person which may acquire all or substantially all of its assets agrees that, until two (2) years subsequent to

Sunnova Energy International Inc.
April 27, 2025
Page 7

the termination of this engagement, it will not solicit, recruit, hire or otherwise engage any employee of A&M or any of its affiliates who worked on this engagement while employed by A&M or its affiliates ("Solicited Person"). Should the Company or any of its subsidiaries or affiliates or any person who acquires all or substantially all of its assets extend an offer of employment to or otherwise engage any Solicited Person and should such offer be accepted, A&M shall be entitled to a fee from the Company equal to the Solicited Person's hourly client billing rate at the time of the offer multiplied by 4,000 hours for a Managing Director, 3,000 hours for a Senior Director and 2,000 hours for any other A&M employee. The Company acknowledges and agrees that this fee fairly represents the loss that A&M will suffer if the Company breaches this provision. The fee shall be payable at the time of the Solicited Person's acceptance of employment or engagement.

10.   <u>Indemnification and Limitations on Liability</u>

The Company shall indemnify the Engagement Personnel acting as officers (the "Indemnified Professionals") to the same extent as the most favorable indemnification it extends to its officers or directors, whether under the Company's bylaws, its certificate of incorporation, by contract or otherwise, and no reduction or termination in any of the benefits provided under any such indemnities shall affect the benefits provided to the Indemnified Professionals. The Indemnified Professionals shall be expressly covered as officers under the Company's existing director and officer liability insurance policy(ies) and such coverage shall be primary to any insurance or indemnification made available to the Indemnified Professionals by A&M or resulting from the Indemnified Professionals' employment with A&M. Prior to the effective date of this engagement and as a condition of A&M accepting this engagement, the Company shall make such policy(ies) and all amendments thereto available to A&M for review and approval. The Company shall also maintain such insurance coverage for the Indemnified Professionals for a period of not less than six years following the date of the termination of the Indemnified Professionals' services hereunder. Company shall furnish evidence of any subsequent renewals of the applicable policy(ies) and shall give thirty (30) days' prior written notice to A&M of cancellation, non-renewal, or material change in coverage, scope, or amount of such director and officer liability policy. The provisions of this section are in the nature of contractual obligations and no change in applicable law or the Company's charter, bylaws or other organizational documents or policies shall affect the Indemnified Professionals' rights hereunder. The attached indemnity and limitation on liability provisions are incorporated herein and the termination of this agreement or the engagement shall not affect those provisions, which shall remain in full force and effect.



Sunnova Energy International Inc.
April 27, 2025
Page 8

11.     Joint and Several Liability

Each Company Entity hereby acknowledges and agrees that they are each jointly and severally liable to A&M and its affiliates for all of the Company's representations, warranties, covenants, liabilities and obligations set forth in the Agreement.   Any beneficiary of this agreement may seek to enforce any of its rights and remedies hereunder against any or all Company Entities in any order at any time in its sole discretion.

12.     Privacy and Data Protection.

In the provision of Services under this Agreement, A&M may Process certain Company Personal Data.  Capitalized terms used herein but not otherwise defined in the Agreement or in paragraph (b), below, shall have the meanings ascribed in paragraph (e), below.

(a)   Mutual Obligations.  A&M and Company shall each comply with Data Protection Laws applicable to their respective Processing of Company Personal Data.

(b)   A&M Obligations.  (i) A&M shall Process Company Personal Data on behalf of Company as reasonably necessary to providing the Services, which Company acknowledges consist of the services as described in the Agreement.  (ii) A&M shall implement and maintain appropriate physical, technical, and organizational safeguards reasonably designed to protect the confidentiality and security of Company Personal Data, and to protect Company Personal Data against a Personal Data Breach.  (iii) For purposes of this clause (iii), the terms "consumer", "business", "business purpose", "commercial purpose", "sell", and "share" shall have the meanings ascribed under the California Consumer Protection Act of 2018, as amended by the California Privacy Rights Act of 2020 ("CCPA") and, where applicable, other relevant Data Protection Laws.  A&M shall not: (A) sell or share Company Personal Data; (B) retain, use, or disclose Company Personal Data for any purpose other than for providing the Services; (C) retain, use, or disclose Company Personal Data for a commercial purpose other than for providing the Services, or as otherwise permitted under Data Protection; (D) retain, use, or disclose Company Personal Data outside of the direct business relationship between Company and A&M, except as otherwise permitted under Data Protection Laws; or (E) combine Company Personal Data it receives from, or on behalf of, Company with Personal Data that it receives from, or on behalf of, another person or persons, or collects from its own interaction with the consumer, except as otherwise provided under Data Protection Laws.  A&M shall provide the same level of privacy protection to Company Personal Data as required of businesses under applicable Data Protection Laws and will notify Company if it determines that it can no longer meet its obligations under applicable Data Protection Laws.   A&M and Company shall promptly notify and



Sunnova Energy International Inc.
April 27, 2025
Page 9

reasonably assist the other if it receives a request from a consumer seeking to exercise individual rights (e.g., access, deletion) with respect to Company Personal Data, including by providing all information reasonably necessary and within its possession or control to enable the other to comply with the request.  Company shall have the right to take reasonable and appropriate steps to ensure that A&M Processes Company Personal Data in a manner that is consistent with Company's obligations under applicable Data Protection Laws; specifically, Company shall have the right to monitor A&M's compliance with its privacy and data protection obligations herein through written questionnaires once every 12 months.  Company shall have the right, upon no less than ten (10) business days' written notice, to request documentation from A&M demonstrating A&M's compliance with its privacy and data protection obligations herein, and to take other reasonable and appropriate steps to stop and remediate any unauthorized use of Company Personal Data by A&M.  (iv)  Notwithstanding anything in this paragraph (b) to the contrary, and without limiting in any manner the confidentiality provisions of this Agreement, the Company acknowledges and agrees: (A) A&M may disclose Company Personal Data to A&M's affiliates to assist A&M in Processing Company Personal Data as reasonably necessary to providing the Services; (B) A&M has Company's general authorization for the engagement of sub-processors to assist A&M in Processing Company Personal Data as reasonably necessary to providing the Services; provided, each sub-processor shall be subject to written agreement that complies with applicable Data Protection Law and is no less protective than as set forth herein; and (C) where reasonably necessary to provide the Services or as instructed by Company, A&M may disclose Company Personal Data to Company's other advisors, constituents, and/or counterparties in the matter for which Company engaged A&M to provide the Services.

(c)  Company Obligations.  (i) Company confirms that it has established all rights (including, where relevant, providing a privacy notice and obtaining any necessary consents) necessary under applicable Data Protection Laws for A&M to provide the Services under the Agreement.  (ii) Company shall not do or permit anything to be done, through any act or omission, in providing or making available to A&M any Company Personal Data, that would cause A&M or any of its affiliates to contravene or incur any liability under any Data Protection Laws.  (iii) If Company's transfer of Company Personal Data to A&M would be prohibited by the EU General Data Protection Regulation 2016/679 of the European Parliament and of the Council ("GDPR") or other Data Protection Laws in the absence of an adequacy decision, standard contractual clauses, or other permitted transfer mechanism, Company shall be responsible for ensuring that appropriate safeguards are in place including, where applicable, by entering into standard contractual clauses with A&M.  (iv)  Company shall use its reasonable efforts, where practicable, to limit the Personal Data that it provides or makes available to A&M to information that is necessary and relevant for A&M's performance of the Services, including by removing and/or de-identifying datasets, and to notify A&M in



Sunnova Energy International Inc.
April 27, 2025
Page 10

advance regarding categories, types and volume of Personal Data that it will provide or make available so that the parties can implement appropriate data transmission, handling and storage safeguards. (v) If Company is a covered entity or business associate as defined under the Health Insurance Portability and Accountability Act of 1996 (HIPAA), Company shall not disclose protected health information (PHI) or electronic protected health information (ePHI) to A&M (in its own capacity as a business associate) unless and until the parties have entered into a mutually acceptable HIPAA business associate agreement, which will supersede this Privacy and Data Protection Provision with respect to such PHI/ePHI.

(d)   Deidentified Data.   To the extent A&M is permitted under the Agreement to deidentify, anonymize and/or aggregate Company Personal Data ("Deidentified Data"), Company acknowledges that A&M undertakes such actions in connection with and for the purpose of performing the Services, and Deidentified Data shall not be considered Company Personal Data.

(e)   Definitions.   (i) "Data Protection Laws" means all laws, rules and regulations pertaining to the privacy and security of Personal Data, including but not limited to CCPA and GDPR; (ii) "Personal Data" means all "personal data", "personal information", "personally identifiable information", "special categories of data", "sensitive personal information", and similarly defined terms under Data Protection Laws; (iii) "Company Personal Data" means any Personal Data that Company provides or makes available to A&M, or that A&M collects directly from individuals, in connection with A&M's performance of the Services (but excluding contact details about Company's personnel that A&M processes to manage the business relationship with Company); (iv) "Process" has the meaning under applicable Data Protection Laws, and in all events means to collect, access, analyze, use, store, transfer (including by remote access), or disclose by transmission; and (v) "Personal Data Breach" has the meaning under applicable Data Protection Laws, and in all events means any breach of security leading to the accidental or unlawful destruction, loss, alteration, unauthorized disclosure of, or access to, Personal Data.

13.   Miscellaneous

This Agreement (together with the attached indemnity provisions), and all claims, proceedings or causes of action (whether in contract, tort or statute) that may be based upon, arise out of or relate to this Agreement, or the negotiation, execution or performance of this Agreement or the services provided hereunder (the "Related Matters"), shall be governed by, and enforced in accordance with, the internal laws of the State of New York, including its statutes of limitations, without regard to principles of conflict of law that would defer to the laws of another jurisdiction.



Sunnova Energy International Inc.
April 27, 2025
Page 11

The Company and A&M agree to waive trial by jury in any action, proceeding or counterclaim brought by or on behalf of the parties hereto with respect to any Related Matters. The Company and A&M agree, to the extent permitted by applicable law, that any action with respect to any Related Matters shall be brought and adjudicated exclusively in the United States District Court for the Southern District of New York or, if such court lacks jurisdiction, in the New York state courts with jurisdiction over New York, New York; that those courts shall have exclusive jurisdiction over any Related Matters; to submit to the personal jurisdiction of such courts; and to waive any and all personal rights under the law of any jurisdiction to object on any basis (including, without limitation, inconvenience of forum) to jurisdiction or venue in any legal proceeding.

This Agreement shall be binding upon A&M and the Company, their respective heirs, successors, and assignees, and any heir, successor, or assignee of a substantial portion of A&M's or the Company's respective businesses and/or assets, including any Chapter 11 Trustee. This Agreement incorporates the entire understanding of the parties with respect to the subject matter hereof and may not be amended or modified except in writing executed by the Company and A&M. The Company agrees that A&M may aggregate information provided by or on behalf of the Company during this engagement with information provided by or on behalf of others and use and disclose that information in de-identified form as part of research and advice, including, without limitation, benchmarking services. Notwithstanding anything herein to the contrary, A&M may with the Company's prior written consent or upon a public announcement by the Company of A&M's engagement in connection with the matters contemplated by this Agreement, reference or list the Company's name and/or logo and/or a general description of the services in A&M's marketing materials, including, without limitation, on A&M's website.

Sunnova Energy International Inc.
April 27, 2025
Page 12

If the foregoing is acceptable to you, kindly sign the enclosed copy to acknowledge your agreement with its terms.

Very truly yours,

Alvarez & Marsal North America, LLC

By:    _Ryan Omohundro_

Ryan Omohundro
Managing Director

Accepted and agreed:

Sunnova Energy International Inc. on behalf of itself
and its subsidiaries

By:    _Paul Mathews_

Mr. Paul Mathews
Chief Executive Officer



Sunnova Energy International Inc.
April 27, 2025
Page 13


## **INDEMNIFICATION AND LIMITATION ON LIABILITY AGREEMENT**

This indemnification and limitation on liability agreement is made part of an agreement, dated March 18, 2025 (which together with any renewals, modifications or extensions thereof, is herein referred to as the "Agreement"), by and between Alvarez & Marsal North America, LLC ("A&M") and Sunnova Energy International Inc. together with its subsidiaries (jointly and severally, the "Company"), for services to be rendered to the Company by A&M.

A.     The Company agrees to indemnify and hold harmless each of A&M, its affiliates and their respective shareholders, members, managers, employees, agents, representatives and subcontractors (each, an "Indemnified Party" and collectively, the "Indemnified Parties") against any and all documented losses, claims, damages, liabilities, penalties, obligations and expenses, including the costs for counsel or others (including employees of A&M, based on their then current hourly billing rates) in investigating, preparing or defending any action or claim, whether or not in connection with litigation in which any Indemnified Party is a party, or enforcing the Agreement (including these indemnity provisions), as and when incurred, caused by, relating to, based upon or arising out of (directly or indirectly) the Indemnified Parties' acceptance of or the performance or nonperformance of their obligations under the Agreement; provided, however, such indemnity shall not apply to any such loss, claim, damage, liability or expense to the extent it is found in a final judgment by a court of competent jurisdiction (not subject to further appeal) to have resulted primarily and directly from such Indemnified Party's gross negligence, bad faith, fraud, or willful misconduct.  The Company also agrees that (a) no Indemnified Party shall have any liability (whether direct or indirect, in contract or tort or otherwise) to the Company for or in connection with the engagement of A&M, except to the extent that any such liability for losses, claims, damages, liabilities or expenses are found in a final judgment by a court of competent jurisdiction (not subject to further appeal) to have resulted primarily and directly from such Indemnified Party's gross negligence, bad faith, fraud, or willful misconduct and (b) in no event will any Indemnified Party have any liability to the Company for special, consequential, incidental or exemplary damages or loss (nor any lost profits, savings or business opportunity). The Company further agrees that it will not, without the prior consent of an Indemnified Party, settle or compromise or consent to the entry of any judgment in any pending or threatened claim, action, suit or proceeding in respect of which such Indemnified Party seeks indemnification hereunder (whether or not such Indemnified Party is an actual party to such claim, action, suit or proceedings) unless such settlement, compromise or consent includes an unconditional release of such Indemnified Party from all liabilities arising out of such claim, action, suit or proceeding. Any Indemnified Party will not, without the prior consent of the Company (which consent shall not be unreasonably withheld, conditioned, or delayed), settle or compromise or consent to the entry of any judgment in any pending or threatened claim, action, suit, or proceeding in respect of which such Indemnified Party seeks indemnification hereunder (whether or not such Indemnified Party is an actual party to such claim, action, suit, or proceeding).



Sunnova Energy International Inc.
April 27, 2025
Page 14

B.      These indemnification provisions shall be in addition to any liability which the Company may otherwise have to the Indemnified Parties.  In the event that, at any time whether before or after termination of the engagement or the Agreement, as a result of or in connection with the Agreement or A&M's and its personnel's role under the Agreement, A&M or any Indemnified Party is required to produce any of its personnel (including former employees) for examination, deposition or other written, recorded or oral presentation, or A&M or any of its personnel (including former employees) or any other Indemnified Party is required to produce or otherwise review, compile, submit, duplicate, search for, organize or report on any material within such Indemnified Party's possession or control pursuant to a subpoena or other legal (including administrative) process, the Company will reimburse the Indemnified Party for its reasonable and documented out of pocket expenses, including the reasonable and documented fees and expenses of its counsel, and will compensate the Indemnified Party for the time reasonably expended by its personnel based on such personnel's then current hourly rate (subject to providing the Company with reasonable proof documenting such time expenditures).

C.      If any action, proceeding or investigation is commenced to which any Indemnified Party proposes to demand indemnification hereunder, such Indemnified Party will notify the Company with reasonable promptness in writing (email to suffice) and in no event later than fourteen (14) days of receiving notice of such action, proceeding, or investigation; provided, however, that any failure by such Indemnified Party to notify the Company will not relieve the Company from its obligations hereunder, except to the extent that such failure shall have actually prejudiced the defense of such action.  The Company shall promptly pay reasonable and documented expenses reasonably incurred by any Indemnified Party in defending, participating in, or settling any action, proceeding or investigation in which such Indemnified Party is a party or is threatened to be made a party or otherwise is participating in by reason of the engagement under the Agreement, upon submission of invoices therefor, whether in advance of the final disposition of such action, proceeding, or investigation or otherwise.   Each Indemnified Party hereby undertakes, and the Company hereby accepts its undertaking, to repay any and all such amounts so advanced if it shall ultimately be determined that such Indemnified Party is not entitled to be indemnified therefor.  If any such action, proceeding or investigation in which an Indemnified Party is a party is also against the Company, the Company may, in lieu of advancing the expenses of separate counsel for such Indemnified Party, provide such Indemnified Party with legal representation by the same counsel who represents the Company, provided such counsel is reasonably satisfactory to such Indemnified Party, at no cost to such Indemnified Party; provided, however, that if such counsel or counsel to the Indemnified Party shall determine that due to the existence of actual or potential conflicts of interest between such Indemnified Party and the Company such counsel is unable to represent both the Indemnified Party and the Company, then the Indemnified Party shall be entitled to use separate counsel of its own choice, and the Company shall promptly advance its reasonable and documented expenses of such



Sunnova Energy International Inc.
April 27, 2025
Page 15

separate counsel upon submission of invoices therefor.   Nothing herein shall prevent an Indemnified Party from using separate counsel of its own choice at its own expense.   The Company will be liable for any settlement of any claim against an Indemnified Party made with the Company's prior written consent, which consent shall not be unreasonably withheld.

D.      In order to provide for just and equitable contribution if a claim for indemnification pursuant to these indemnification provisions is made but it is found in a final judgment by a court of competent jurisdiction (not subject to further appeal) that such indemnification may not be enforced in such case, even though the express provisions hereof provide for indemnification, then the relative fault of the Company, on the one hand, and the Indemnified Parties, on the other hand, in connection with the statements, acts or omissions which resulted in the losses, claims, damages, liabilities and costs giving rise to the indemnification claim and other relevant equitable considerations shall be considered; and further provided that in no event will the Indemnified Parties' aggregate contribution for all losses, claims, damages, liabilities and expenses with respect to which contribution is available hereunder exceed the amount of fees actually received by the Indemnified Parties pursuant to the Agreement.   No person found liable for a fraudulent misrepresentation shall be entitled to contribution hereunder from any person who is not also found liable for such fraudulent misrepresentation.

E.      In the event the Company and A&M seek judicial approval for the assumption of the Agreement or authorization to enter into a new engagement agreement pursuant to either of which A&M would continue to be engaged by the Company, the Company shall promptly pay the reasonable and documented expenses reasonably incurred by the Indemnified Parties, including reasonable and documented attorneys' fees and expenses, in connection with any motion, action or claim made either in support of or in opposition to any such retention or authorization, whether in advance of or following any judicial disposition of such motion, action or claim, promptly upon submission of invoices therefor and regardless of whether such retention or authorization is approved by any court.   The Company will also promptly pay the Indemnified Parties for any reasonable and documented expenses reasonably incurred by them, including attorneys' fees and expenses, in seeking payment of all amounts owed it under the Agreement (or any new engagement agreement) whether through submission of a fee application or in any other manner, without offset, recoupment or counterclaim, whether as a secured claim, an administrative expense claim, an unsecured claim, a prepetition claim or a postpetition claim.

F.      Neither termination of the Agreement nor termination of A&M's engagement nor the filing of a petition under Chapter 7 or 11 of the United States Bankruptcy Code (nor the conversion of an existing case to one under a different chapter) shall affect these indemnification provisions, which shall hereafter remain operative and in full force and effect.



Sunnova Energy International Inc.
April 27, 2025
Page 16

G.      The rights provided herein shall not be deemed exclusive of any other rights to which the
Indemnified Parties may be entitled under the certificate of incorporation or bylaws of the
Company, any other agreements, any vote of stockholders or disinterested directors of the
Company, any applicable law or otherwise.

SUNNOVA ENERGY INTERNATIONAL          ALVAREZ & MARSAL NORTH AMERICA,
INC. on                               LLC
behalf of itself and its subsidiaries


By: _____          By: _____
Name: Mr. Paul Mathews                Name: Ryan Omohundro
Title:   Chief Executive Officer      Title:   Managing Director

