United States Bankruptcy Court
Southern District of Texas

**ENTERED**

July 31, 2025

Nathan Ochsner, Clerk

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| SUNNOVA ENERGY INTERNATIONAL INC., *et al.*,[1] | ) | Case No. 25-90160 (ARP) |
|  | ) |  |
| Debtors. | ) | (Jointly Administered) |
|  | ) |  |
|  | ) |  |

**ORDER (I) AUTHORIZING
THE SALE OF CERTAIN OF THE
DEBTORS' ASSETS TO THE STALKING HORSE
BIDDER FREE AND CLEAR OF ALL LIENS, CLAIMS,
ENCUMBRANCES, AND INTERESTS, (II) AUTHORIZING
THE DEBTORS TO PERFORM THEIR OBLIGATIONS
UNDER THE ASSET PURCHASE AGREEMENT, (III) AUTHORIZING
THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY
CONTRACTS AND UNEXPIRED LEASES, AND (IV) GRANTING RELATED RELIEF**

Upon the motion (the "Motion"), [2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") for entry of an order (this "Sale Order"):  (a) authorizing the sale of substantially all of the Debtors' Assets (the "Sale"), other than the Excluded Assets (as defined in the APA) (such assets, the "Acquired Assets"), free and clear of all liens, claims, encumbrances, and interests; (b) approving the WholeCo Stalking Horse Agreement (such agreement, as amended, the "APA") by and among the Debtors party thereto, Solaris Assets, LLC, Solaris ABS, LLC, and Solaris Borrower, LLC (together with any successors, permitted

---

[1]   A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/Sunnova.  The location of Debtor Sunnova Energy International Inc.'s corporate headquarters and the Debtors' service address in these chapter 11 cases is 20 East Greenway Plaza, Suite 540, Houston, Texas 77046.

[2]   Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion, the Bidding Procedures, or the APA, as applicable.

assigns, or designees, the "Purchaser"),[3] a copy of which APA was filed at Docket Nos. 238 and 560; (c) authorizing the assumption and assignment of certain executory contracts and unexpired leases in connection with the Sale; and (d) granting related relief; and upon the First Day Declarations; and this Court having entered the bidding procedures order on July 11, 2025 (the "Bidding Procedures Order") approving, among other things, the Bidding Procedures, the Sale and Auction Notice, the Successful Bidder Notice, and authorizing the Debtors to enter into the APA and approving the Bid Protections; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Order of Reference to Bankruptcy Judges* from the United States District Court for the Southern District of Texas, entered May 24, 2012; and this Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b); and this Court having found that it may enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and this Court having found that the Debtors' notice of the Motion and opportunity for a hearing on the Motion were appropriate and no other notice need be provided; and this Court having reviewed the Motion and having heard from all parties in interest who wished to be heard regarding statements in support of or objections to the relief requested therein at a hearing before this Court on July 31, 2025 (the "Sale Hearing") to consider approval of the Sale pursuant to the terms of the APA; and this Court having determined that the legal and factual bases set forth in the Motion and at the Sale Hearing establish just cause for the relief granted herein;

---

[3]   The term "Purchaser" as used in this Sale Order means the WholeCo Stalking Horse Bidder.

and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor, it is **HEREBY FOUND THAT:**

A. <u>Jurisdiction and Venue</u>. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334, and venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. § 157(b).

B. <u>Findings and Conclusions</u>. The findings and conclusions set forth herein constitute this Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

C. <u>Bases for Relief</u>. The statutory and other legal bases for the relief provided herein are sections 105(a), 363, 365, 503, and 507 of title 11 of the United States Code, 11 U.S.C. §§ 101—1532 (the "<u>Bankruptcy Code</u>"), and rules 2002, 6004, 6006(a), 9007, 9008, and 9014 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"), and rules 4002-1(e) and 9013-1 of the Bankruptcy Local Rules for the Southern District of Texas (the "<u>Bankruptcy Local Rules</u>"). The consummation of the transactions contemplated by the APA and this Sale Order is legal, valid, and properly authorized under all applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Bankruptcy Local Rules, and the Debtors and the Purchaser have complied with all of the applicable requirements of such sections and rules with respect to such transactions.

D. <u>Final Order</u>. This Sale Order constitutes a final order within the meaning of 28 U.S.C. § 158(a). Notwithstanding Bankruptcy Rules 6004(h) and 6006(d), this Court expressly finds that there is no just reason for delay in the implementation of this Sale Order, waives any

stay, and expressly directs entry of judgment as set forth herein.  In the absence of a stay pending appeal, the Purchaser, being a good faith purchaser under section 363(m) of the Bankruptcy Code, may close the Sale contemplated by the APA at any time after the entry of this Sale Order and shall not be subject to the stay provided by Bankruptcy Rules 6004(h) and 6006(d).

E.       Notice.  As evidenced by the affidavits or certificates of service and publication notice filed with this Court, proper, sufficient, and timely notice of the Motion, the Bidding Procedures, the Auction, the Sale (and all transactions contemplated in connection therewith), the Sale Hearing, and the assumption and assignment of the Assigned Contracts specified as of the date hereof to the Purchaser pursuant to the APA, the Cure Costs, the Sale Hearing, and all deadlines related thereto, have been provided in accordance with sections 102(1), 363, and 365 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 6006, 9007, 9008, and 9014, Bankruptcy Local Rules 2002-1 and 4002-1, in compliance with the Bidding Procedures Order, to all interested persons and entities, including, but not limited to, the following:  (i) Paul, Weiss, Rifkind, Wharton & Garrison LLP, counsel to the Purchaser; (ii) Milbank LLP, counsel to KKR Credit Advisers (US) LLC, on behalf of certain funds and accounts managed or advised by it and its affiliates with respect to the KKR Term Loan Agreement ("KKR"); (iii)White & Case, LLP, counsel to the Atlas TEPH Lenders; (iv) Arnold & Porter Kaye Scholer LLP, counsel to the DIP Agent; (v) proposed counsel for the Committee, Blank Rome LLP and Willkie Farr & Gallagher LLP; (vi) Schulte Roth & Zabel LLP, counsel to the Special Committee of the Board of Directors of Sunnova TEP Holdings, LLC, and co-counsel to Sunnova TEP Holdings, LLC and its subsidiaries; (vii) the United States Trustee for the Southern District of Texas; (vii) all counterparties to the Assumed Contracts; (viii) all persons and entities known by the Debtors to have asserted any lien, claim, encumbrance, or other interest in any Acquired Asset; (ix) all

affected federal, state, and local regulatory and taxing authorities; (x) all persons or entities known by the Debtors and their advisors to have recently expressed an interest in a transaction with respect to any of the Acquired Assets; (xi) all of the Debtors' known creditors (for whom identifiable information and addresses are available to the Debtors); and (xii) all parties that have requested notice in these chapter 11 cases pursuant to Bankruptcy Rule 2002. The notices described above are good, sufficient, and appropriate under the circumstances, and no further or other notice of the APA, the Auction, the Sale, or the Sale Hearing, is or shall be required. The disclosures made by the Debtors concerning the APA, the Auction, the Sale, and the Sale Hearing are similarly complete and accurate. The requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

F.      All interested parties have been provided with timely and proper notice of the identity of the Purchaser, the terms of the APA, the KKR Consent, the Sale, and the relevant deadlines related thereto, in accordance with the requirements of the Bidding Procedures Order.

G.      The Sale and Auction Notice, substantially in the form attached to the Bidding Procedures Order as Exhibit 2, was (i) published on the Debtors' case website, (ii) served on all parties required to receive such notice under the Bidding Procedures Order and applicable rules, and (iii) published in *The New York Times* (national edition), the *Financial Times* (global edition), and the *San Juan Daily Star*, as reflected in the affidavits of publication filed on July, 18, 2025 [Docket Nos. 453, 454, 455], in accordance with the Bidding Procedures Order. The Sale and Auction Notice was sufficient and proper notice to any other interested parties, including those parties whose identities are unknown to the Debtors. Service of the Sale and Auction Notice was appropriate and reasonably calculated to provide all interested parties with timely and proper notice of any proposed Sale Transaction and the Bidding Procedures and the dates and deadlines

5

related thereto.  With respect to any parties that may have claims against the Debtors, but whose identities are not reasonably ascertainable by the Debtors, the publication of the Sale and Auction Notice was sufficient and reasonably calculated under the circumstances to reach such parties.

H.      The Debtors filed and served the Cure Notice [Docket No. 456], which identified, among other things, the Cure Costs for each of the Contract Counterparties to the Assigned Contracts.  The service of the Cure Notice was good, sufficient, and appropriate under the circumstances, and fully compliant with the Bidding Procedures Order.  Subject to the filing of any Supplemental Assumption and Cure Notice (as applicable), no further notice need be provided in connection with the Debtors' assumption and assignment to the Purchaser of the Assigned Contracts, including with respect to adequate assurance of future performance or the Cure Costs. The Bidding Procedures Order provides all Contract Counterparties to the Assigned Contracts listed on the Cure Notice with an adequate opportunity to object to the assumption and assignment of the Assigned Contracts and the Cure Costs (including by raising objections related to the adequate assurance of future performance or whether applicable law excuses the Contract Counterparty from accepting performance by, or rendering performance to, the Purchaser for purposes of section 365(c)(1) of the Bankruptcy Code).

I.      In accordance with the Bidding Procedures and applicable rules, the Debtors filed the Successful Bidder Notice [Docket No. 560] with this Court, served it on all parties that received notice of the Motion, and published it on their case website.  Publication of the Successful Bidder Notice was appropriate and reasonably calculated to provide all interested parties with timely and proper notice of the outcome of the Auction, including the identities of the Successful Bidder and Back-Up Bidder, as applicable.

J.        The notices described in the foregoing Paragraphs E–I are good, sufficient, and appropriate under the circumstances, and no other or further notice of the Bidding Procedures, the Auction, the Sale, the assumption and assignment of the Assigned Contracts specified as of the date hereof to the Purchaser pursuant to the APA, the Cure Costs, the Sale Hearing, and all deadlines related thereto is or shall be required.

K.        Compliance with Bidding Procedures.  On July 11, 2025, this Court entered the Bidding Procedures Order approving the Bidding Procedures for, among other things, the Acquired Assets.  The Bidding Procedures provided a full, fair, and reasonable opportunity for any entity or Person to make an offer to purchase the Acquired Assets.  The Debtors and the Purchaser complied with the Bidding Procedures and the Bidding Procedures Order in all respects except as properly waived in the exercise of the Debtors' fiduciary duties in accordance with the Bidding Procedures.  The Purchaser subjected its bid to competitive bidding in accordance with the Bidding Procedures and the Bidding Procedures Order.

L.        Auction.  On July 23, 2025, pursuant to the Bidding Procedures approved by this Court, the Debtors and their advisors hosted an Auction to solicit higher or otherwise better bids than the WholeCo Stalking Horse Bid.  On July 29, 2025, the Debtors filed the *Notice of (I) Conclusion of the Auction, (II) Designation of the Successful Bidder, and (III) Filing of Amendment to WholeCo Stalking Horse Purchase Agreement* [Docket No. 560].  On July 30, 2025, the Debtors filed the *Notice of Filing of Auction Transcript* [Docket No. 578].

M.        Sale Process.  The Sale of the Acquired Assets to the Purchaser pursuant to the Bidding Procedures is duly authorized under sections 363(b)(1) and 363(f) of the Bankruptcy Code, Bankruptcy Rule 6004(f), and Bankruptcy Local Rules 2002-1 and 4002-1. The Debtors have conducted all aspects of the sale process in good faith and in compliance with

the Bidding Procedures, the Bidding Procedures Order, and applicable law.  The Bidding Procedures and the Auction were hereby duly noticed, substantively and procedurally fair to all parties, and conducted in a diligent, non-collusive, fair, and good-faith manner.

N.      The Bid Deadline passed at 4:00 p.m. (prevailing Central Time), on July 21, 2025, pursuant to the Bidding Procedures and Bidding Procedures Order.  The Debtors commenced the Auction on July 23, 2025, at 12:00 p.m. (Prevailing Central Time), in accordance with the Bidding Procedures and Bidding Procedures Order.  As established by the record of the Sale Hearing, the bidding and related procedures established by the Bidding Procedures Order have been complied with in all material respects by the Debtors and the Purchaser.  The Debtors and their professionals adequately marketed the Acquired Assets and conducted the marketing and sale process.  The Bidding Procedures afforded a full, fair, and reasonable opportunity for any Person to make a higher or otherwise better offer to purchase the Acquired Assets, and as of the date hereof, the APA constitutes the best or otherwise highest offer for the Acquired Assets, and the Purchaser's purchase of the Acquired Assets was effectuated on a commercially reasonable basis.

O.      Credit Bid.  Pursuant to the Bidding Procedures, applicable law, including Bankruptcy Code sections 363(b) and 363(k), and in accordance with the *Final Order (I) Authorizing the Debtors to Obtain Postpetition Financing, (II) Granting Liens and Providing Superpriority Administrative Expense Claims, (III) Modifying the Automatic Stay, and (IV) Granting Related Relief*, dated July 11, 2025 [Docket No. 414] (the "DIP Order"),[4] and a written direction letter to the DIP Agent by the Required Lenders under the DIP Financing Agreement, the DIP Agent was validly authorized and directed to Credit Bid the DIP Obligations

---

[4]    Capitalized terms used in this Credit Bid section but not otherwise defined herein shall have their respective meanings ascribed to such terms in the DIP Order.

for the Acquired Assets and assign and transfer such Credit Bid to the Purchaser. No additional or further evidence of the Purchaser's ability to include the Credit Bid as consideration for the Sale Transaction pursuant to the APA is required. The Credit Bid, plus the cash consideration and assumption of the Assumed Liabilities, was a valid and proper offer pursuant to the Bidding Procedures Order, the Bidding Procedures, and Bankruptcy Code sections 363(b) and 363(k). There is no cause to limit the amount of the Credit Bid pursuant to section 363(k) of the Bankruptcy Code.

P.        Consummation of the Credit Bid shall fully discharge any and all DIP Obligations (as defined in the DIP Financing Agreement) outstanding under the DIP Financing Agreement upon the Closing other than as specifically provided for in paragraph 65 hereof.

Q.        Extensive Efforts by the Sellers. As of June 3, 2025, immediately preceding the Petition Date, the Sellers, with the assistance of their counsel, investment banker, and other advisors, conducted extensive marketing efforts for the Assets, contacting 187 potential bidders for a sale of all or substantially all of the Sellers' assets. The Sale Transaction contemplated by the APA is the result of the Sellers' extensive efforts in seeking to maximize recoveries for the benefit of their stakeholders.

R.        KKR Consent. KKR agreed, pursuant to the terms of the Amended and Restated KKR Consent Agreement, dated July 16, 2025, by and among KKR, the DIP Lenders, certain of the Debtors, and certain non-Debtor subsidiaries (the "KKR Consent") and subject to the satisfaction of the conditions set forth therein, to provide certain consents and instructions necessary to effectuate the Sale Transactions contemplated by the APA. The KKR Consent was a material component of the negotiations surrounding the Transaction Agreements (as defined below), constituted a condition to the Purchaser's participation in the Sale, and remains valid,

9

binding, and in full force and effect as of the date hereof, subject to the terms and conditions contained therein.

S.      ABS Lenders Consent.  Prior to the Auction and the Sale Hearing, holders of certain asset-backed or loan-backed notes issued by certain affiliates or subsidiaries of Sunnova Energy International, Inc. (such holders, the "ABS Lenders" and such notes, the "Notes") agreed, pursuant to the terms of a written consent and subject to the satisfaction of the conditions set forth therein, to provide certain consents and instructions necessary to effectuate the Sale Transactions contemplated by the APA (the "ABS Lenders Consent").  The ABS Lenders Consent was a material component of the negotiations surrounding the Transaction Agreements, constituted a condition to the Purchaser's participation in the Sale, and remains valid, binding, and in full force and effect as of the date hereof, subject to the terms and conditions contained therein.

T.      Validity of Transfer.  The transfer of the Acquired Assets to the Purchaser will be a legal, valid, and effective transfer of the Acquired Assets, and will vest the Purchaser with all legal, equitable and beneficial right, title, and interest of the applicable Sellers in and to the Acquired Assets, free and clear of all Claims (other than as expressly provided herein).  The consummation of the Sale Transaction is legal, valid, and properly authorized under all applicable provisions of the Bankruptcy Code, including, without limitation, sections 105(a), 363(b), 363(f), 363(m), 365(b), and 365(f) of the Bankruptcy Code, and all of the applicable requirements of such sections have been complied with in respect of the Sale Transaction.

U.      Corporate Authority.  The Acquired Assets that are owned by Debtor entities constitute property of the Debtors' estates and title thereto is vested in the Debtors' estates within the meaning of section 541 of the Bankruptcy Code.  The Debtors:  (i) have full corporate or other organizational power and authority to execute the APA, and the Sale to the Purchaser has been

duly and validly authorized by all necessary corporate action; (ii) have all of the corporate or other organizational power and authority necessary to consummate the Sale and all transactions contemplated by the APA; (iii) have taken all corporate or other organizational action necessary to authorize and approve the APA and consummate all transactions contemplated thereby; and (iv) require no consents or approvals, other than those expressly provided for in the APA, the KKR Consent, and the ABS Lenders Consent in order to consummate such transactions.

V.      The APA and the definitive documents needed to consummate the Sale (the "Transaction Agreements") are valid and binding contracts enforceable pursuant to their terms.  The Transaction Agreements, the Sale itself, and the consummation thereof shall be specifically enforceable against and binding upon (without posting any bond) the applicable Debtors, their estates, and any chapter 7 or chapter 11 trustee appointed in these chapter 11 cases, and shall not be subject to rejection or avoidance by the foregoing parties or any other Person.

W.      No Fraudulent Transfer.  Neither the Sellers nor the Purchaser entered into the APA or the transactions thereunder with fraudulent intent or for purposes of hindering, delaying, or defrauding creditors under the Bankruptcy Code or the laws of the United States, any state, territory, or possession, including Puerto Rico and the District of Columbia—including, but not limited to, statutes or common law doctrines governing fraudulent conveyance and fraudulent transfer claims.

X.      The Sellers are the sole and lawful owner of the Acquired Assets.  To the extent that a Debtor owns the Acquired Assets contemplated to be sold under the APA, in accordance with section 363(f) of the Bankruptcy Code, the transfer of each of such Acquired Assets to the Purchaser (or its designee) pursuant to the APA and this Sale Order shall constitute, as of the Closing Date (as defined in the APA), a legal, valid, binding and effective transfer of the Acquired

11

Assets, which transfer vests or will vest the Purchaser (or its designee) with all right, title, and interests of the Debtors in the Acquired Assets free and clear of all Claims and Encumbrances (other than Permitted Encumbrances and Assumed Liabilities). Claims in the APA are defined by referencing the definition of "claim" in section 101(5) of the Bankruptcy Code, and the breadth of such definition includes, but is not limited to, all debts arising under, relating to, or in connection with any act of the Debtors or claims, liabilities, obligations, demands, guaranties, options, rights, contractual commitments, restrictions, restrictive covenants, covenants not to compete, rights to refunds, escheat obligations, interests, and matters of any kind and nature, whether arising prior to or subsequent to the commencement of these chapter 11 cases, and whether imposed by agreement, applicable law, equity, or otherwise (including, without limitation, rights relating to Claims and Encumbrances, as such terms are defined in the APA) (i) that purport to give to any party a right of setoff or recoupment against, or a right or option to effect any forfeiture, modification, profit sharing interest, right of first offer, right of first refusal, purchase or repurchase right or option, or termination of, any of the Debtors' or the Purchaser's interests in the Acquired Assets, or any similar rights, (ii) in respect of taxes owed by the Debtors for periods prior to the Closing Date including, but not limited to, sales, income, use, or any other type of tax, or (iii) in respect of restrictions, rights of first refusal, charges, or interests of any kind or nature, if any, including, without limitation, any restriction of use, voting, transfer, receipt of income, or other exercise of any attributes of ownership relating to, accruing, or arising at any time prior to the Closing Date, with the exception of the Assumed Liabilities.

Y.   <u>Business Judgment</u>.  Good and sufficient reasons for approval of the APA and the transactions to be consummated in connection therewith and hereunder have been articulated, and entry into the APA and consummation of the Sale is in the best interests of the Sellers, the Debtors

12

and their estates, their creditors, and other parties in interest.  The Debtors have demonstrated compelling circumstances for the Sale outside (i) the ordinary course of business, pursuant to section 363(b) of the Bankruptcy Code and (ii) a plan of reorganization or liquidation (as the case may be), in that, among other things, the immediate consummation of the Sale is necessary and appropriate to preserve and to maximize the value of the Debtors' estates.

Z.      The Sale must be approved and consummated promptly in order to preserve the viability of the Debtors' business and to maximize the value of the Debtors' estates.  Time is of the essence to implement the APA and to consummate the Sale contemplated thereby without any interruption.  Given all of the circumstances of these chapter 11 cases and the adequacy and fair value of the Purchase Price (as defined below), the proposed Sale constitutes a reasonable and sound exercise of the Debtors' business judgment and should be approved.

AA.     No Sub Rosa Plan.  The Sale of the Acquired Assets pursuant to the APA neither impermissibly restructures the rights of the Debtors' creditors or equity interest holders nor impermissibly dictates the terms of a chapter 11 plan of the Debtors.  The APA and the Sale do not constitute a *sub rosa* chapter 11 plan.

BB.     Satisfaction of Bankruptcy Code Requirements.  The consummation of the Sale and the assumption and assignment of the Assigned Contracts are legal, valid, and properly authorized under all applicable provisions of the Bankruptcy Code, including, without limitation, sections 105(a), 363, and 365 of the Bankruptcy Code, and all of the applicable requirements of such sections have been complied with in respect of the Sale and the transactions contemplated thereby.

CC.     Highest or Otherwise Best Offer.  The Sellers conducted the bidding process in accordance with, and have otherwise complied in all material respects with, the Bidding Procedures and the Bidding Procedures Order.  The Bidding Procedures afforded a full, fair, and

13

reasonable opportunity for any person or entity to make a higher or otherwise better offer to purchase the Acquired Assets.  The Bidding Procedures were duly noticed and the Sale was conducted in a non-collusive, fair, and good-faith manner, and a reasonable opportunity was given to any interested party to make a higher or otherwise better offer for the Acquired Assets.  The Sale Transactions contemplated by the APA constitute the highest or otherwise best offer for the Acquired Assets and will provide a greater recovery for the Debtors' estates than would be provided by any other available alternative.  The Sellers' determination that the Sale Transactions contemplated by the APA constitute the highest or otherwise best offer for the Acquired Assets is a valid and sound exercise of their fiduciary duties and constitutes a valid and sound exercise of the Sellers' business judgment.

DD.    Consideration.  The consideration provided by the Purchaser pursuant to the APA, the KKR Consent, and this Sale Order (a) was negotiated at arm's length, (b) is fair and reasonable, (c) is the highest or otherwise best offer for the Acquired Assets, (d) was effectuated on a commercially reasonable basis, and (e) constitutes reasonably equivalent value and fair consideration (as those terms are defined in each of the Uniform Voidable Transactions Act (formerly the Uniform Fraudulent Transfer Act), Uniform Fraudulent Conveyance Act, and section 548 of the Bankruptcy Code) under the laws of the United States, any state, territory, or possession, including Puerto Rico and the District of Columbia.

EE.    Purchaser.  On the terms and subject to the conditions contained in the APA, the Purchaser agreed to provide, as aggregate consideration for the Acquired Assets (the "Purchase Price"), comprising:  (i) the assumption of Assumed Liabilities, *plus* (ii) all principal amount of the Loans (under and as defined in the DIP Financing Agreement) including any interest or Funding Fee (under and as defined in the DIP Financing Agreement) paid-in-kind, then

14

outstanding at Closing under the DIP Financing Agreement (subject to adjustments under the DIP Financing Agreement), and any accrued and unpaid fees (other than Agent Obligations and the DIP Lender Professional Fees and Expenses) (each, as defined in the DIP Financing Agreement) and interest at the time of Closing (the "Credit Bid Amount") *plus* (iii) an amount equal to $25,000,000 *plus or minus*, as applicable, the Aggregate Early Closing Adjustment Amount. The Purchaser, as assignee and transferee of the Credit Bid from the DIP Agent, has the right under section 363(k) of the Bankruptcy Code, and was authorized by the Bidding Procedures Order and the DIP Order, to credit bid up to the full amount of the DIP Obligations. For the avoidance of doubt, the Credit Bid Amount is valid and proper consideration pursuant to sections 363(b) and 363(k) of the Bankruptcy Code, the Bidding Procedures Order, and the DIP Order.

FF.     The allocation of the Purchase Price, determined in accordance with the APA, are valid and enforceable for all purposes. The Purchaser's and the Sellers' allocations of the Purchase Price are the good faith determination of the value thereof.

GG.     No Successor or Other Derivative Liability.   Except as otherwise expressly provided herein or in the KKR Consent or the ABS Lenders Consent, upon Closing, the Purchaser shall not have any liability (including, but not limited to, any successor liability) or other obligation of any of the Sellers, including any liability or obligation arising under or related to the sale and transfer of the Acquired Assets to the Purchaser or with respect to the Excluded Liabilities, other than the Assumed Liabilities. In connection with the consummation of the Sale Transactions contemplated under the APA: (i) the Purchaser will not be a continuation of any Seller and its respective estate, there will not be substantial continuity between the Purchaser and the Sellers, nor continuity of enterprise between the Sellers and the Purchaser; (ii) the Purchaser will not be holding itself out to the public as a continuation of the Sellers or their respective estates; (iii) the

15

Sale Transactions do not amount to a consolidation, merger, or *de facto* merger of the Purchaser and the Sellers and/or their estates; and (iv) the Purchaser is not and shall not be a successor or assignee of the Sellers or their estates for any purpose, including, but not limited to, under any federal, state, or local statute or common law, or revenue, pension, ERISA, tax, labor, employment, unemployment, compensation, environmental, escheat or unclaimed property laws, or other law, rule, or regulation (including, without limitation, filing requirements under any such laws, rules, or regulations), or under any products liability law or doctrine with respect to the Sellers' liability under such law, rule, or regulation or doctrine or common law, or under any product warranty liability law or doctrine with respect to the Sellers' liability under such law, rule, or regulation, or doctrine, and the Purchaser shall have no liability or obligation under the Comprehensive Environmental Response Compensation and Liability Act and shall not be deemed to be a "successor employer" for purposes of the Internal Revenue Code of 1986, Title VII of the Civil Rights Act of 1964, as amended, the Age Discrimination in Employment Act, the Americans with Disability Act, the Family Medical Leave Act, the National Labor Relations Act, the Labor Management Relations Act, the Older Workers Benefit Protection Act, the Equal Pay Act, the Civil Rights Act of 1866 (42 U.S.C. 1981), the Worker Adjustment and Retraining Notification Act, the Multiemployer Pension Protection Act, the Pension Protection Act, and/or the Fair Labor Standards Act. Except for the Assumed Liabilities, (i) the transfer of the Acquired Assets to the Purchaser and (ii) the assumption and assignment to the Purchaser of the Assigned Contracts do not and will not subject the Purchaser to any liability whatsoever with respect to the operation of the Sellers' business before the Closing Date or by reason of such transfer under the laws of the United States, any state, territory (including, for the avoidance of doubt, Puerto Rico), or possession thereof, or the District of Columbia, based on, in whole or in part, directly or indirectly,

16

any theory of law or equity including, without limitation, any theory of antitrust or successor or transferee liability. The Purchaser would not have acquired the Acquired Assets but for the foregoing protections against potential claims based upon "successor liability" theories.

HH.      Opportunity to Object. A reasonable opportunity to object or be heard with respect to the Auction, the Sale, the assumption and assignment of the Assigned Contracts specified as of the date hereof to the Purchaser pursuant to the APA, the Cure Costs, the Sale Hearing, and all deadlines related thereto has been afforded to all interested persons and entities.

II.      Good-Faith Purchaser; Arm's-Length Sale. The APA was negotiated, proposed, and entered into by the Sellers and the Purchaser, their management and respective boards of directors or equivalent governing bodies, officers, directors, agents, employees, professionals, and representatives, without collusion, in good faith, and from arm's length bargaining positions. Neither the Sellers nor the Purchaser, nor any affiliates, members, partners, officers, directors, principals, professionals, or shareholders of the Purchaser, nor any other persons have engaged in any conduct that would cause or permit the APA or the Sale to be avoided, or subject to monetary damages or other costs, under section 363(n) of the Bankruptcy Code.

JJ.      The Purchaser is a good-faith purchaser under section 363(m) of the Bankruptcy Code and, as such, is entitled to all of the protections afforded thereby. In particular: (i) the Purchaser recognizes that the Sellers were free to deal with any other party interested in purchasing the Acquired Assets; (ii) neither the Purchaser nor any of its affiliates, members, partners, officers, directors, principals, professionals, or shareholders in any way induced or caused the chapter 11 filings by the Debtors; (iii) neither the Purchaser nor any of its affiliates, members, partners, officers, directors, principals, professionals, or shareholders have violated section 363(n) of the Bankruptcy Code by any action or inaction; (iv) no common identity of directors, officers, or

17

controlling stakeholders exists between any of the Purchaser, its affiliates, members, partners, officers, directors, principals, or shareholders and any of the Sellers; (v) the Purchaser agreed to subject its bid to the competitive bid procedures set forth in the Bidding Procedures Order; (vi) all payments to be made by the Purchaser and other agreements or arrangements entered into by the Purchaser in connection with the Sale have been adequately disclosed; and (vii) neither the Purchaser nor any of its affiliates, members, partners, officers, directors, principals, professionals, or shareholders have acted in a collusive manner with any person.

KK.    Neither the Purchaser nor any affiliates, members, officers, directors, shareholders or any of its or their respective successors or assigns is an "insider" or "affiliate" of any of the Debtors, as those terms are defined in sections 101(31) and 101(2) of the Bankruptcy Code.  The Purchaser's professionals, agents, and other representatives have complied in all respects with the Bidding Procedures Order and all other applicable orders of this Court in negotiating and entering into the APA.  The APA complies with the Bidding Procedures Order and all other applicable orders of this Court.  The Purchaser is therefore entitled to all of the protections afforded under section 363(m) of the Bankruptcy Code.

LL.    <u>Free and Clear Transfer Required by the Purchaser</u>.    The conditions of section 363(f) of the Bankruptcy Code have been satisfied in full and therefore, the Debtors may sell the Acquired Assets, to the extent owned by a Debtor entity, free and clear of any liens, claims, defenses (including rights of setoff and recoupment), and interests, in each case, in, on, or related to the Acquired Assets, including security interests or similar interests of whatever kind or nature, liens as defined in section 101(37) of the Bankruptcy Code, encumbrances, mortgages, deed of trust, conditional sales or other title retention agreements, pledges, deeds of trust, hypothecations, mechanics' and materialman's liens, assignments, preferences, debts, easements, charges, suits,

18

licenses, options, profit sharing interests, rights of recovery, judgments, right of way, encroachment, rights of first offer, rights of first refusal, purchase, or repurchase right or option, orders, and decrees of any court or foreign or domestic governmental entity, taxes (including foreign, state, and local taxes), licenses, covenants, restrictions, indentures, instruments, leases, options, off-sets, causes of action, contract rights, and claims, to the fullest extent of the law, in each case, of any kind or nature in, on, or related to the Acquired Assets (including all "claims" as defined in section 101(5) of the Bankruptcy Code), known or unknown, whether prepetition or postpetition, secured or unsecured, choate or inchoate, filed or unfiled, scheduled or unscheduled, perfected or unperfected, liquidated or unliquidated, noticed or unnoticed, recorded or unrecorded, contingent or non-contingent, material or non-material, statutory or non-statutory, matured or unmatured, legal or equitable, including any and all such liabilities, causes of action, contract rights, and claims arising out of the Debtors' continued operations following the Closing Date (collectively, "Encumbrances"), other than the Assumed Liabilities and Permitted Encumbrances.

MM.   The Purchaser would not have entered into the APA and would not consummate the transactions contemplated thereby if the Sale to the Purchaser and the assumption of any Assumed Liabilities by the Purchaser were not free and clear of all Encumbrances other than the Assumed Liabilities and Permitted Encumbrances.  The Debtors may sell the Acquired Assets, to the extent owned by a Debtor entity, free and clear of any Encumbrances of any kind or nature whatsoever (other than Permitted Encumbrances) because, in each case, one or more of the standards set forth in section 363(f)(1)-(5) of the Bankruptcy Code have been satisfied.  Each entity with an Encumbrance owed by a Debtor entity in the Acquired Assets to be transferred on the Closing Date:  (i) has, subject to the terms and conditions of this Sale Order, consented to the Sale or is deemed to have consented to the Sale; (ii) could be compelled in a legal or equitable

19

proceeding to accept money satisfaction of such Encumbrance; or (iii) otherwise falls within the provisions of section 363(f) of the Bankruptcy Code.  Those holders of such Encumbrances who did not object, or withdrew their objections, to the Motion are deemed, subject to the terms of this Sale Order, to have consented pursuant to section 363(f)(2) of the Bankruptcy Code.  All holders of such Encumbrances (other than the Assumed Liabilities and Permitted Encumbrances) are adequately protected by having their Encumbrances attach to the proceeds received by the Debtors (if any) that are ultimately attributable to the property against or in which such Encumbrances are asserted, subject to the terms of such Encumbrances, with the same validity, force, and effect, and in the same order of priority, that such Encumbrances now have against the Acquired Assets or their proceeds, if any, subject to any rights, claims, and defenses the Debtors or their estates, as applicable, may possess with respect thereto.

NN.    The Assigned Contracts.  The Debtors have demonstrated that (i) it is an exercise of their sound business judgment to assume and assign the Assigned Contracts to the Purchaser in connection with the consummation of the Sale and (ii) the assumption and assignment of the Assigned Contracts to the Purchaser is in the best interests of the Debtors, their estates and creditors, and all other parties in interest.  The Assigned Contracts being assigned by Debtor entities to the Purchaser are an integral part of the Acquired Assets being purchased by the Purchaser and accordingly, such assumption, assignment, and cure of any defaults under the Assigned Contracts are reasonable and enhance the value of the Debtors' estates.  Any Contract Counterparty to an Assigned Contract that has not actually filed with this Court an objection to such assumption and assignment in accordance with the terms of the Bidding Procedures Order (including any objections related to the adequate assurance of future performance and objections based on whether applicable law excuses the counterparty from accepting performance by, or

20

rendering performance to, the Purchaser for purposes of section 365(c)(1) of the Bankruptcy Code) is deemed to have consented to such assumption and assignment; *provided* that Contract Counterparties to Assigned Contracts for which a Supplemental Cure Notice is served shall have 14 days following service of the Supplemental Cure Notice to object to the Supplemental Cure Notice.

OO.    Cure Costs and Adequate Assurance.    The assumption and assignment of the Assigned Contracts pursuant to the terms of this Sale Order is integral to the APA and is in the best interests of the Debtors and their estates, their creditors, and all other parties in interest, is integral to the Sale and the Sale Transactions contemplated pursuant to the APA, and represents a reasonable exercise of sound and prudent business judgment by the Debtors.  Payment of the Cure Costs by the Purchaser shall (i) to the extent necessary, cure or provide adequate assurance of cure, within the meaning of sections 365(b)(1)(A) and 365(f)(2)(A) of the Bankruptcy Code, and (ii) to the extent necessary, provide compensation or adequate assurance of compensation to any party for any actual pecuniary loss to such party resulting from a default prior to the date hereof with respect to the Assigned Contracts, within the meaning of sections 365(b)(1)(B) and 365(f)(2)(A) of the Bankruptcy Code.  The Purchaser's financial wherewithal to consummate the Sale Transactions contemplated by the APA and the evidence to be presented at the Sale Hearing demonstrating the Purchaser's ability to perform the obligations under the Assigned Contracts after the Closing Date shall constitute adequate assurance of future performance within the meaning of sections 365(b)(1)(C), 365(b)(3) (to the extent applicable), and 365(f)(2)(B) of the Bankruptcy Code.

PP.    To the extent any Contract Counterparty fails to timely object to the proposed Cure Costs, such counterparty is deemed to have consented to such Cure Costs and the assumption and

21

assignment of its respective Assigned Contract(s) to the Purchaser in accordance with the APA.

QQ.     Repayment of DIP Obligations.  Pursuant to the DIP Order, the Acquired Assets constitute DIP Collateral and are subject to the DIP Liens (each as defined in the DIP Order). Pursuant to the DIP Loan Documents (as defined in the DIP Order), the Debtors are required to prepay the DIP Obligations with the proceeds from the sale of the Acquired Assets.  The use of the proceeds from the sale of the Acquired Assets to pay to the DIP Lenders (as defined in the DIP Order) an amount up to the Credit Bid Amount complies with the requirements of the DIP Order and the DIP Loan Documents and is supported by good, sufficient, and sound business reasons.

RR.     Compelling Circumstances for Immediate Sale; Waiver of the Stay.  To maximize the value of the Acquired Assets, it is essential that the transactions contemplated by the APA, including, without limitation, the Sale and the assumption and assignment of the Assigned Contracts, occur within the time constraints set forth in the APA.  Time is of the essence in consummating the Sale Transaction contemplated by the APA, including, without limitation, the Sale and the assumption and assignment of the Assigned Contracts.

SS.     The Debtors have demonstrated compelling circumstances and a good, sufficient, and sound business purpose and justification for the approval and consummation of the Sale Transactions contemplated by the APA and this Sale Order, including, without limitation, the Sale and the assumption and assignment of the Assigned Contracts because, among other things, the Debtors' estates will suffer irreparable harm if the APA and Sale is not approved on an expedited basis.  The transactions contemplated by the APA and this Sale Order, including, without limitation, the Sale and the assumption and assignment of the Assigned Contracts, neither impermissibly restructure the rights of the Debtors' creditors nor dictate the terms of a chapter 11

plan for the Debtors, and therefore, does not constitute a *sub rosa* plan. Accordingly, there is cause to waive the stays contemplated by Bankruptcy Rules 6004 and 6006.

**NOW THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:**

**I.      The Sale Is Approved**.

1.      The Sale contemplated by the APA is hereby approved, as set forth herein.

**II.     Objections Overruled**.

2.      All objections to the entry of this Sale Order or to the relief granted herein, whether filed, stated on the record before this Court, or otherwise, which have not been withdrawn, waived, or settled, and all reservations of rights included therein, are denied and overruled on the merits with prejudice. All objections to the entry of this Sale Order or to the relief granted herein that were not timely filed are hereby forever barred.

3.      Notice of the Bidding Procedures, the Auction, the Sale, and the assumption and assignment of the Assigned Contracts specified as of the date hereof to the Purchaser pursuant to the APA, the Cure Costs, the Sale Hearing, and all deadlines related thereto was fair and equitable under the circumstances and complied in all respects with section 102(1) of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, and 6006.

**III.    Approval of the APA**.

4.      The APA, and all other ancillary documents related thereto or contemplated thereby (including, for the avoidance of doubt, the KKR Consent and the ABS Lenders Consent), and all of the terms and conditions thereof, including the Credit Bid pursuant to section 363(k) of the Bankruptcy Code in an amount up to the full amount of the Credit Bid Amount, are hereby approved. Pursuant to sections 105, 363, and 365 of the Bankruptcy Code, the Debtors are authorized and directed to take any and all actions necessary to fulfill the Sellers' obligations under, and comply with the terms of, the APA, the KKR Consent, and the ABS Lenders Consent,

and to consummate the Sale pursuant to and in accordance with the terms and conditions of the APA, the KKR Consent, and this Sale Order, without further leave of this Court. The Debtors are further authorized to pay, without further order of this Court, whether before, at, or after the Closing, any expenses or costs that are required to be paid in order to consummate the transactions contemplated by the APA or perform the Sellers' obligations under the APA.

5. The Sellers and their respective directors, officers, employees, and agents are authorized, in accordance with the APA, to execute and deliver, and empowered to perform under, consummate, and implement, the APA, together with all additional instruments, documents, and other agreements that may be reasonably necessary or desirable to implement the APA, and to take all further actions as may be reasonably requested by the Purchaser for the purpose of assigning, transferring, granting, conveying, and conferring to the Purchaser or reducing to possession the Acquired Assets, or as may be reasonably necessary or appropriate to the performance of the obligations as contemplated by the APA.

**IV.    KKR Consent**.

6. The terms and conditions of the KKR Consent remain in full force and effect, and nothing in the APA or this Sale Order shall impair, derogate, supersede, or otherwise modify any aspect of the KKR Consent. Notwithstanding anything to the contrary in this Sale Order or the APA: (i) all references to "Permitted Encumbrances" contained in this Sale Order shall include all Liens, Claims, and Interests held by the Secured Parties (as defined in the KKR Term Loan Agreement,) in their capacities as such; (ii) all references to "Assumed Liabilities" contained in this Sale Order shall include all Obligations (as defined in the KKR Term Loan Agreement); and (iii) the Purchaser shall not (a) directly acquire any assets of Sunnova Solstice Holdings, LLC, Sunnova Solstice RR Holdco, LLC, or their respective direct or indirect subsidiaries as part of the Sale Transaction or (b) directly acquire any equity interests in direct or indirect subsidiaries of

Sunnova Solstice Holdings, LLC or Sunnova Solstice RR Holdco, LLC as part of the Sale Transaction.

## V.     __Binding Effect of Order__.

7.      This Sale Order and the APA shall be binding upon all creditors of, and equity holders in, the Sellers and any and all other parties in interest, including, without limitation, any and all holders of Liens, Claims, and Interests (including holders of any rights or claims based on any putative successor or transferee liability) of any kind or nature whatsoever, all Contract Counterparties to the Assigned Contracts, the Purchaser and its affiliates, members, or shareholders, all successors and assigns of the Purchaser and its affiliates, members, or shareholders, the Debtors and their affiliates and subsidiaries, and any trustee or successor trustee appointed in the Debtors' chapter 11 cases or upon a conversion to chapter 7 under the Bankruptcy Code.  This Sale Order and the APA shall inure to the benefit of the Debtors, their estates and creditors, the Purchaser, their affiliates, members, partners, officers, directors, principals, and shareholders, and the respective successors and assigns of each of the foregoing.  Nothing contained in this Sale Order shall conflict with or derogate from the provisions of the APA.  To the extent of any such conflict or derogation, the terms of this Sale Order shall govern.

## VI.    __Amendments to the APA__.

8.      The APA and any related agreements, documents, or other instruments may be modified, amended, supplemented, or restated by the parties thereto in a writing signed by such parties and in accordance with the terms thereof, without further order of this Court; *provided* that any such modification, amendment, supplement, or restatement that has a material adverse effect on the Debtors' estates shall require notice to this Court, and such material adverse modifications, amendment, supplement, or restatement shall be subject to a further Court order while these chapter 11 cases remain pending.

## VII.    Transfer of the Acquired Assets Free and Clear.

9.    The Purchaser shall assume and be liable for only those liabilities expressly assumed pursuant to the APA, and, for the avoidance of doubt, shall not include any Excluded Liabilities as defined in the APA.  Except as expressly permitted or otherwise specifically provided for in the APA, the KKR Consent, or this Sale Order, pursuant to sections 105(a), 363(b), 363(f), 365(b), and 365(f) of the Bankruptcy Code, upon the Closing, the Debtors are authorized to transfer all the Debtors' rights, title, and interests in the Acquired Assets to the Purchaser (or its designee) free and clear of any and all Liens, Claims, and Interests of any kind or nature whatsoever with the sole exception of any Permitted Encumbrances and Assumed Liabilities.  For purposes of this Sale Order, "Liens," "Claims," and "Interests" shall mean:

a.    any and all charges, liens (statutory or otherwise), claims, mortgages, leases, subleases, hypothecations, deeds of trust, pledges, security interests, options, rights of use or possession, rights of first offer or first refusal (or any other type of preferential arrangement), rights of consent, rights of setoff, successor liability, easements, servitudes, restrictive covenants, interests or rights under any operating agreement, encroachments, encumbrances, third-party interests, or any other restrictions or limitations of any kind with respect to the Acquired Assets, including all the restrictions or limitations set forth in paragraphs T and LL above (collectively, "Liens");

b.    any and all claims as defined in section 101(5) of the Bankruptcy Code and jurisprudence interpreting the Bankruptcy Code, including, without limitation, (i) any and all claims or causes of action based on or arising under (x) any labor, employment, or pension laws, (y) health or welfare, compensation or other employee plan, agreements, practices, and programs (including any Employee Benefit Plan) of or related to any of the Debtors or any Debtor's affiliates or predecessors or any current or former employees of any of the forgoing, or (z) any workers' compensation, occupational disease, or unemployment or temporary disability related law, (ii) any and all claims or causes of action based upon or relating to any putative successor or transferee liability, and (iii) any and all other claims, causes of action, rights, remedies, obligations, liabilities, counterclaims, cross-claims, third-party claims, demands, restrictions, responsibilities, or contribution, reimbursement, subrogation, or indemnification claims or liabilities based on or relating to any act or omission of any kind or nature whatsoever asserted against any of the Debtors or any of their respective

26

affiliates, subsidiaries, directors, officers, agents, or successors or assigns in connection with or relating to the Debtors, their operations, their business, their liabilities, the Debtors' marketing and bidding process with respect to the Acquired Assets, the Assigned Contracts, or the transactions contemplated by the APA, including all of the claims set forth in paragraphs T and LL above (collectively, "Claims"); and

c.   any and all equity or other interests of any kind or nature whatsoever in or with respect to (i) any of the Debtors or their respective affiliates, subsidiaries, or successors or assigns, (ii) the Acquired Assets, or (iii) the Assigned Contracts, including all the interests set forth in paragraphs T and LL above (collectively, "Interests");

whether in law or in equity, known or unknown, choate or inchoate, filed or unfiled, scheduled or unscheduled, noticed or unnoticed, recorded or unrecorded, perfected or unperfected, allowed or disallowed, contingent or non-contingent, liquidated or unliquidated, matured or unmatured, material or non-material, disputed or undisputed, direct or indirect, and whether arising by agreement, understanding, law, equity or otherwise, and whether occurring or arising before, on, or after the Petition Date, or occurring or arising prior to the Closing. Any and all such Liens, Claims, and Interests shall attach to the portion of the Purchase Price ultimately attributable to the Acquired Assets against or in which they claim an interest, in the order of their priority, with the same validity, force, and effect, if any, that they now have against such Acquired Assets, subject to any claims, defenses and objections, if any, that the Debtors or their estates may possess with respect thereto. On the Closing, the Purchaser shall take title to and possession of the Acquired Assets subject only to any Permitted Encumbrances and Assumed Liabilities.

10.   To the extent provided by section 525 of the Bankruptcy Code, no governmental unit may deny, revoke, suspend, or refuse to renew any permit, license, or similar grant relating to the operation of the Acquired Assets owned by the Debtors sold, transferred, or conveyed to the Purchaser on account of the filing or pendency of these chapter 11 cases or the consummation of the Sale Transaction contemplated by the APA.

11.     For the avoidance of doubt, notwithstanding anything in this Sale Order, the APA, or any other related Sale document, (i) only the Debtors' rights, title, and interests in the Acquired Assets shall be transferred free and clear of all liens, claims, encumbrances, and other interests pursuant to section 363(f) of the Bankruptcy Code, and (ii) subject to the next sentence, the Debtors are authorized to take all actions that they deem necessary or appropriate to cause the non-Debtor Sellers to transfer and assign their rights, title, and interests in the Acquired Assets to the Purchaser (or its designee) in accordance with the APA.  Nothing in this Sale Order, the APA, any other related Sale document, or otherwise shall authorize or otherwise permit the sale, transfer, or assignment of any assets or other interests of or in non-Debtors Sunnova Business Markets Borrower, LLC, Sunnova Business Markets Holdings, LLC, Sunnova Commercial Solar Asset Owner, LLC, or Sunnova COB I, LLC (f/k/a Sunnova Commercial Solar Loan Owner, LLC), in each case, without the prior written consent of Mitsubishi HC Capital America, Inc.

**VIII.   <u>Vesting of Assets in the Purchaser</u>**.

12.     The Sellers' transfer of the Acquired Assets to the Purchaser (or its designee, as applicable) pursuant to the APA shall constitute a legal, valid, and effective transfer of the Acquired Assets on the Closing.  In addition, the transfer of the Debtors' Acquired Assets to the Purchaser (or its designee) pursuant to the APA shall vest the Purchaser (or its designee) with all of the Debtors' rights, title, and interests in the Acquired Assets free and clear of all Liens, Claims, and Interests of any kind or nature whatsoever (with the sole exception of any Permitted Encumbrances and Assumed Liabilities).

13.     To the maximum extent available under applicable law, the Purchaser shall be authorized, as of the Closing, to operate under any license, permit, registration, and governmental authorization or approval of the Sellers with respect to the Acquired Assets and, to the maximum extent available under applicable law and to the extent provided for under the APA and related

documents, all such licenses, permits, registrations, and governmental authorizations and approvals are deemed to have been transferred to the Purchaser as of the Closing. All existing licenses or permits applicable to the business shall remain in place for the Purchaser's benefit until either new licenses and permits are obtained or existing licenses and permits are transferred in accordance with applicable administrative procedures.

**IX.      Assumption and Assignment of Assigned Contracts**.

14.      Pursuant to sections 105(a) and 365 of the Bankruptcy Code, and subject to and conditioned upon the Closing, the Debtors' assumption and assignment to the Purchaser of the Debtors' Assigned Contracts is hereby approved, and effective upon the Closing, and the requirements of section 365(b)(1) of the Bankruptcy Code with respect thereto are hereby deemed satisfied.

15.      The Debtors are hereby authorized, in accordance with the APA, and in accordance with sections 105(a) and 365 of the Bankruptcy Code, to (i) assume and assign to the Purchaser the Assigned Contracts, effective upon and subject to the occurrence of the Closing, free and clear of all Liens, Claims, and Interests of any kind or nature whatsoever (with the sole exception of any Permitted Encumbrances and Assumed Liabilities), which Assigned Contracts, by operation of this Sale Order, shall be deemed assumed and assigned to the Purchaser effective as of the Closing, and (ii) execute and deliver to the Purchaser such documents or other instruments as the Purchaser may deem necessary to assign and transfer the Assigned Contracts to the Purchaser.

16.      Subject to paragraph 17 hereof:

   a.      The Debtors are authorized to and may assume all of the Debtors' Assigned Contracts in accordance with section 365 of the Bankruptcy Code.

   b.      The Debtors are authorized to and may assign, or cause to be assigned, each Assigned Contract to the Purchaser in accordance with sections 363 and 365 of the Bankruptcy Code, and any provisions in any Assigned Contract that prohibit or condition the assignment of such Assigned Contract on the

consent of the counterparty thereto or allow the non-Debtor counterparty to such Assigned Contract to terminate, recapture, impose any penalty, condition, renewal or extension, or modify any term or condition upon the assignment of such Assigned Contract shall constitute unenforceable anti-assignment provisions that are expressly preempted under section 365 of the Bankruptcy Code and is void and of no force and effect.

c.    All applicable requirements and conditions under sections 363 and 365 of the Bankruptcy Code for the assumption and assignment of the Assigned Contracts to the Purchaser have been satisfied.

d.    Upon the Closing, the Assigned Contracts shall be transferred and assigned to, and remain in full force and effect for the benefit of, the Purchaser in accordance with their respective terms, notwithstanding any provision in any such Assigned Contract (including those of the type described in sections 365(b)(2), 365(e)(1), and 365(f) of the Bankruptcy Code) that prohibits, restricts, limits, or conditions such assignment or transfer.

e.    After the Debtors' transfer and assignment of the Assigned Contracts to the Purchaser, in accordance with sections 363 and 365 of the Bankruptcy Code, the Purchaser shall be fully and irrevocably vested in all right, title, and interest of each Assigned Contract.

f.    Any portion of any Assigned Contract of the Debtors that purports to permit a landlord thereunder to cancel the remaining term of such Assigned Contract if the Debtors discontinue their use or operation of the leased premises is void and of no force and effect, and shall not be enforceable against the Purchaser, or its assignees and sublessees; and the landlords under any such Assigned Contract shall not have the right to cancel or otherwise modify the Assigned Contract or increase the rent, assert any claim or impose any penalty by reason of such discontinuation, the Debtors' cessation of operations, the assignment of such Assigned Contract to the Purchaser, or the interruption of business activities at any of the leased premises.

17.    All defaults and other obligations of the Debtors under the Assigned Contracts occurring, arising, or accruing prior to the assignment thereof to the Purchaser at Closing (without giving effect to any acceleration clauses or any default provisions of the kind specified in section 365(b)(2) of the Bankruptcy Code) shall be deemed cured or satisfied by the payment of the proposed amount necessary, if any, to cure all monetary defaults, if any, under each Assigned Contract in the amounts set forth on the schedule of Cure Costs attached to the Cure Notice or any

supplement thereto (or any other cure cost reached by agreement after an objection to the proposed cure cost by a counterparty to an Assigned Contract), which was served in compliance with the Bidding Procedures Order, and as set forth on the schedule of Cure Costs attached to the Cure Notice, and which Cure Costs were satisfied, or shall be satisfied as soon as practicable, by the Debtors or by the Purchaser, as the case may be, as provided in the APA.  For all Assigned Contracts for which a Cure Notice was served, the Debtors and the Purchaser, as applicable, are each authorized and directed to pay their respective portion of all Cure Costs required to be paid by such parties in accordance with the APA upon the later of (a) the Closing and (b) for any Assigned Contracts for which an objection has been filed to the assumption and assignment of such agreement or the Cure Costs relating thereto and such objection remains pending as of the date of this Sale Order, the resolution of such objection by settlement or order of this Court.  For all Assigned Contracts for which a Supplemental Cure Notice is served, the Debtors and the Purchaser, as applicable, are each authorized and directed to pay their respective portion of all Cure Costs required to be paid by such parties in accordance with the APA upon the later of (x) 14 days following service of the Supplemental Cure Notice and (y) if an objection to the Supplemental Cure Notice is timely filed, the resolution of such objection by settlement or order of this Court.

18.     All Contract Counterparties to the Assigned Contracts on any Supplemental Cure Notices shall have until 14 days following service of the Supplemental Cure Notice to object to the Supplemental Cure Notice, and such time period is sufficient to provide an adequate opportunity to object to the assumption and assignment of the Assigned Contracts and the Cure Costs (including objections related to the adequate assurance of future performance and objections based on whether applicable law excuses the Contract Counterparty from accepting performance

by, or rendering performance to, the Purchaser for purposes of section 365(c)(1) of the Bankruptcy Code).

19.     Pursuant to section 365(k) of the Bankruptcy Code, the Debtors and their estates shall be relieved from any liability for any breach of or obligations under any Assigned Contract following the effective date of such assumption and assignment to the Purchaser, subject to the payment of the Cure Costs in accordance with the terms of the APA.

20.     All counterparties to the Assigned Contracts shall cooperate and expeditiously execute and deliver, upon reasonable request of the Purchaser, and shall not charge the Debtors or the Purchaser for any instruments, applications, consents, or other documents that may be required or requested by any public authority or other party or entity to effectuate the applicable transfers in connection with the Sale.

21.     Subject to the terms and conditions of the APA, the Purchaser may add contracts to the schedule of Assigned Contracts attached to the APA at any time, including, for the avoidance of doubt, after the close of the Sale, until this Court enters an order approving a chapter 11 plan of reorganization or liquidation (as the case may be).

**X.      Modification of the Automatic Stay**.

22.     The automatic stay provisions of section 362 of the Bankruptcy Code are modified to the extent necessary to implement the terms and conditions of the APA and the provisions of this Sale Order.

**XI.     Release of Liens by Creditors; Collection of Acquired Assets**.

23.     Except as expressly provided to the contrary in this Sale Order, the APA, or the KKR Consent, the holder of any valid Lien, Claim, or Interest in the Acquired Assets shall, as of the Closing, be deemed to have waived and released such Lien, Claim, or Interest, without regard to whether such holder has executed or filed any applicable release, and such Lien, Claim, or

Interest shall automatically, and with no further action by any party, attach to the portion of the Purchase Price ultimately attributable to the Acquired Assets against or in which they claim an interest, in the order of their priority, with the same validity, force, and effect, if any, that they now have against such Acquired Assets, subject to any claims, defenses, and objections, if any, that the Debtors or their estates may possess with respect thereto.  Notwithstanding the foregoing, any such holder of such a Lien, Claim, or Interest is authorized and directed to execute and deliver any waivers, releases, or other related documentation, as reasonably requested by the Debtors.

24.     Except as contemplated by the KKR Consent, all persons and entities that are in possession of some or all of the Acquired Assets on the Closing Date are directed to surrender possession of such Acquired Assets to the Purchaser in accordance with the APA on the Closing Date or at such time thereafter as the Purchaser may request.  Subject to the KKR Term Loan Documents and the KKR Consent, as of the Closing, the Purchaser and its successors and assigns shall be designated and appointed as the Sellers' true and lawful attorney with full power of substitution in the Sellers' name and stead on behalf of and for the benefit of the Purchaser, and its successors and assigns, for the following sole and limited purposes:  (i) to have the power to demand and receive any and all of the Acquired Assets and to give receipts and releases for and in respect of the Acquired Assets, or any part thereof, and (ii) from time to time to institute and prosecute against third parties for the benefit of the Purchaser, its successors and assigns, proceedings at law, in equity or otherwise, that the Purchaser, and its successors and assigns, may deem proper for the collection or reduction to possession of any of the Acquired Assets.

25.     If any Person that has filed any financing statements, mortgages, mechanic's liens, *lis pendens*, or any other documents or agreements evidencing a Lien on any of the Acquired Assets conveyed pursuant to the APA and this Sale Order shall not have delivered to the Debtors

prior to the Closing, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, or releases of all Liens that the Person has with respect to the Acquired Assets, then (a) the Debtors are hereby authorized, at their expense, to execute and file such statements, instruments, releases, and other documents on behalf of the Person with respect to the Acquired Assets and (b) the Purchaser is hereby authorized to file, register, or otherwise record a certified copy of this Sale Order, which, once filed, registered, or otherwise recorded, shall constitute conclusive evidence of the release of all Liens in the Acquired Assets of any kind or nature whatsoever. Upon releasing of any Liens, the Liens will attach to the proceeds of the Sale in the order and priority that existed prior to such releases.

**XII.    Effect of Recordation of Order**.

26.    This Sale Order: (a) shall be effective as a conclusive determination that, upon the Closing, all Liens, Claims, and Interests of any kind or nature whatsoever (with the sole exception of any Permitted Encumbrances and Assumed Liabilities) existing as to the Acquired Assets owned by the Debtors prior to the Closing have been unconditionally released, discharged, and terminated and that the conveyances described herein have been effected; and (b) shall be binding upon and shall govern the acts of all persons and entities, including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state, local officials, notaries, protonotaries, and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register, or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to the Acquired Assets. Each and every federal, state, local, or foreign government or governmental or regulatory authority, agency, board, bureau, commission, court, department, or other governmental entity is hereby authorized to accept any

and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the APA, and the KKR Consent, including, without limitation, recordation of this Sale Order.

**XIII.   Administrative Priority Status**.

27.   Any amounts that become payable by the Debtors to the Purchaser pursuant to the APA and any related agreements executed in connection therewith shall (a) constitute allowed superpriority administrative expense claims under sections 105(a), 503(b), and 507(a)(2) of the Bankruptcy Code, (b) not be subordinate to any other administrative expense claim against the Debtors other than allowed claims granted pursuant to the DIP Order (including, for the avoidance of doubt, the Carve Out (as defined in the DIP Order)), (c) not be altered, amended, discharged, or affected without the prior written consent of the Purchaser, and (d) be paid by the Debtors in the time and manner provided for in the APA without further order of this Court.

**XIV.   Prohibition of Actions Against the Purchaser**.

28.   Except for any Permitted Encumbrances and Assumed Liabilities or as expressly provided for in the APA or this Sale Order, neither the Purchaser nor any of its affiliates, successors, assigns, members, partners, officers, directors, principals, professionals, or shareholders shall have any liability or responsibility for any liability or other obligation of the Sellers arising under or related to the Acquired Assets or otherwise to the extent related to any pre-Closing period, and upon the consummation of the Closing, all entities or persons are permanently and forever prohibited, barred, estopped, and enjoined from asserting against any of the Purchaser or its affiliates, members, partners, officers, directors, principals, professionals, or shareholders or any of their permitted successors, designees, and assigns, or property, or the Acquired Assets conveyed in accordance with the APA, any Lien, Claim, or Interest of any kind whatsoever arising prior to Closing, including, without limitation, under any theory of successor

35

or transferee liability, *de facto* merger, or continuity liability, whether known or unknown as of the Closing, now existing or hereafter arising, asserted or unasserted, fixed or contingent, or liquidated or unliquidated. Without limiting the generality of the foregoing, and except as otherwise specifically provided herein and in the APA or the KKR Consent, neither the Purchaser nor any of its affiliates, successors, assigns, members, partners, officers, directors, principals, professionals, or shareholders shall be liable for any claims against the Sellers or any of their predecessors or affiliates, and neither the Purchaser nor any of its affiliates, successors, assigns, members, partners, officers, directors, principals, or shareholders shall have any successor or vicarious liabilities of any kind or character to the extent related to any pre-Closing period, including, but not limited to, any liability pertaining to any theory of antitrust, warranty, product liability, environmental, successor or transferee liability, labor law (including, but not limited to, the WARN Act), ERISA, *de facto* merger, mere continuation, substantial continuity, or successor liability, whether known or unknown as of the Closing, now existing or hereafter arising, whether fixed or contingent, or liquidated or unliquidated, with respect to the Sellers or any obligations of the Sellers.

## XV.   **No Interference**.

29.     Following the Closing, no holder of a Lien, Claim, and/or Interest in or against the Sellers or the Acquired Assets (excluding the Assumed Liabilities and Permitted Encumbrances) shall interfere with the Purchaser's title to or use and enjoyment of the Acquired Assets based on or related to such Lien, Claim, and/or Interest or any actions that the Debtors may take in their bankruptcy cases or any successor cases. All persons are hereby enjoined from taking action that would interfere with or adversely affect the ability of the Sellers to transfer the Acquired Assets in accordance with the terms of the APA, the KKR Consent, and this Sale Order.

**XVI.** **Retention of Jurisdiction**.

30.     This Court retains jurisdiction to, among other things, interpret, enforce and implement the terms and provisions of this Sale Order and the APA, all amendments thereto, any waivers and consents thereunder, and each of the agreements executed in connection therewith in all respects, including, but not limited to, retaining jurisdiction to: (a) compel delivery of the Acquired Assets or performance of other obligations owed to the Purchaser; (b) compel delivery of the Purchase Price or performance of other obligations owed to the Sellers; (c) resolve any disputes arising under or related to the APA, except as otherwise provided therein; (d) interpret, implement, and enforce the provisions of this Sale Order; and (e) protect the Purchaser and its affiliates, members, partners, officers, directors, principals, professionals, or shareholders against (i) any Liens, Claims, and Interests in or against the Sellers or the Acquired Assets of any kind or nature whatsoever and (ii) any creditors or other parties in interest regarding the turnover of the Acquired Assets that may be in their possession.

**XVII.** **No Stay of Order**.

31.     Notwithstanding Bankruptcy Rules 6004(h) and 6006(d), this Sale Order shall be effective and enforceable immediately upon entry and its provisions shall be self-executing. Time is of the essence in closing the Sale and the Debtors and the Purchaser intend to close the Sale as soon as practicable. In the absence of any person or entity obtaining a stay pending appeal, the Debtors and the Purchaser are free to close the Sale under the APA pursuant to the terms thereof.

**XVIII.** **Good Faith Purchaser**.

32.     The Sale contemplated by the APA is undertaken by the Purchaser in good faith, as that term is used in section 363(m) of the Bankruptcy Code, and accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Sale shall not affect the validity of the Sale to the Purchaser (including the assumption and assignment by the Debtors

37

of any of the Assigned Contracts), unless such authorization is duly stayed pending such appeal. The Purchaser is a good-faith purchaser of the Acquired Assets, and is entitled to all of the protections afforded by section 363(m) of the Bankruptcy Code.  The Debtors and the Purchaser will be acting in good faith if they proceed to consummate the Sale Transaction at any time after entry of this Sale Order.

**XIX.** **No Avoidance**.

33.     Neither the Sellers nor the Purchaser have engaged in any conduct that would cause or permit the APA, the Transaction Agreements, or the Transactions to be avoided or costs and damages to be imposed under section 363(n) of the Bankruptcy Code.  Accordingly, the APA, the Transaction Agreements, and the Transactions shall not be avoidable under section 363(n) of the Bankruptcy Code, and no party shall be entitled to any damages or other recovery pursuant to section 363(n) of the Bankruptcy Code in respect of the APA or the Sale Transaction.

**XX.** **Inconsistencies with Prior Orders, Pleadings, or Agreements**.

34.     To the extent of any conflict between the APA and this Sale Order, the terms of this Sale Order shall govern.  To the extent this Sale Order is inconsistent or conflicts with any prior order or pleading in these chapter 11 cases, the terms of this Sale Order shall govern and any prior orders shall be deemed amended or otherwise modified to the extent required to permit consummation of the Sale; *provided* that nothing contained in this Sale Order shall impair any releases granted in the DIP Order; *provided*, *further*, that the Debtors, the Purchaser, and the TEP Facility Administrative Agent (as defined below) are not aware of any conflict between this Sale Order and the *Order (I) Authorizing and Approving the Private Sale of the Eligible Systems Assets Free and Clear of Liens, Claims, Encumbrances, and Other Interests, (II) Approving the Assumption and Assignment of Executory Contracts and Unexpired Leases; (III) Approving the ASPA Settlement and (IV) Granting Related Relief* [Docket No. 109] (together with the asset

purchase agreement and the settlement agreement approved thereby, the "Atlas Private Sale Order") and in the event they or TEPH (as defined below) discover a potential conflict between this Sale Order and the Atlas Private Sale Order, such parties and/or TEPH may request a hearing before the Court to resolve such potential conflict absent the parties and TEPH (with the consent of its outside directors) reaching a consensual resolution of such potential conflict, and notwithstanding anything to the contrary herein, nothing in this Sale Order shall affect the terms of the APA or the ASPA Settlement Agreement (each, as defined in the Atlas Private Sale Order); *provided* that to the extent a conflict between (i) paragraphs 4, 6, or 37 of this Sale Order or (ii) paragraphs 17, 18, 19, 20, and 26 of the DIP Order, on one hand, and (ii) the Atlas Private Sale Order, on the other, this Sale Order or the DIP Order, as applicable, shall govern.

## XXI.   Failure to Specify Provisions.

35.    The failure to specifically reference any particular provisions of the APA or other related documents in this Sale Order shall not diminish or impair the effectiveness of such provisions, it being the intent of this Court that the APA and other related documents be authorized and approved.

## XXII.  Publication Notice.

36.    As soon as reasonably practicable following the entry of this Sale Order, the Debtors shall publish the (i) Notice of the Sale on the Debtors' case website (the "Case Website"): https://restructuring.ra.kroll.com/Sunnova; and (ii) Sale and Auction Notice (as modified for publication) once in *The New York Times* (national edition), the *Financial Times* (global edition), the *San Juan Daily Star*, and any such other national publications that the Debtors deem appropriate.  Such notice shall be deemed sufficient and proper notice of the Sale to any interested parties, including those whose identities are unknown to the Debtors.

39

**XXIII.   Expenses**.

37.      As a condition precedent to Closing, the Debtors shall reimburse all reasonable and documented expenses incurred by KKR and the Agent (as defined in the KKR Consent), including, without limitation, reasonable and documented attorneys' fees and expenses, so long as the applicable invoices have been delivered to the Debtors' primary counsel, counsel to any official committee, and the U.S. Trustee's office at least two business days in advance of Closing.  Such invoices may be in summary form, shall not be required to contain time detail, and may be redacted for privilege.  Professionals to KKR and the Agent shall not be required to submit fee applications or comply with the U.S. Trustee guidelines.

38.      The payment of the DIP Lender Professional Fees and Expenses and the professional fees of the DIP Agent (each as defined in the DIP Financing Agreement and DIP Order, respectively), including, without limitation, reasonable and documented attorneys' fees and expenses, shall be a condition precedent to Closing, so long as the applicable invoices have been delivered to the Debtors' primary counsel, counsel to any official committee, and the U.S. Trustee's office at least one business day in advance of Closing.  Such invoices may be in summary form, shall not be required to contain time detail, and may be redacted for privilege. Professionals to the DIP Lenders and the DIP Agent shall not be required to submit fee applications or comply with the U.S. Trustee guidelines.

39.      The payment of all reasonable and documented expenses incurred by Davis Polk & Wardwell LLP as counsel to the ad hoc group of ABS Lenders (the "Ad Hoc Group of ABS Lenders"), including, without limitation, reasonable and documented attorneys' fees and expenses, is a condition precedent to Closing.  Such invoices may be in summary form, shall not be required to contain time detail, and may be redacted for privilege.  Professional advisors to the

Ad Hoc Group of ABS Lenders shall not be required to submit fee applications or comply with the U.S. Trustee guidelines.

**XXIV.**   **Special Provision Regarding the Specified Dealers**.

40.   Nothing in this Sale Order shall (i) impair or affect any legal or equitable rights, claims, or interest a Specified Dealer[5] may hold against the Debtors or any third party other than the Purchaser, if any, or (ii) enjoin any Specified Dealer from asserting, prosecuting, or otherwise pursuing any legal or equitable rights, claims, and interests, any such Specified Dealer may hold against the Debtors or any third party other than the Purchaser, if any; *provided* that, for the avoidance of doubt, nothing in this sentence shall permit any Specified Dealer to assert or enforce any Liens, Interests, or Claims against the Purchaser (or its designee, as applicable) or the Acquired Assets to the extent the Debtors transferred such Acquired Assets free and clear of such Liens, Interests, or Claims pursuant to section 363(f) of the Bankruptcy Code.  For avoidance of doubt and notwithstanding anything to the contrary herein, each Specified Dealer reserves all of its (i) defenses with respect to any cause of action and (ii) rights with respect to direct claims it may hold against the Purchaser (to the extent not sold free and clear of such claim pursuant to section 363(f) of the Bankruptcy Code) and the Debtors, if any.

41.   Notwithstanding anything to the contrary in this Sale Order, the APA, or any other related Sale document, the Purchaser's acquisition of the Accessory Loans shall not impair or affect the rights, remedies, defenses, or recourse of any Specified Dealer against a third-party borrower under any such Accessory Loan.  Nothing in this Sale Order shall affect, and following the Sale the Debtors shall continue to adhere to, the Debtors' obligations under the Puerto Rico

---

[5]   "Specified Dealers" means Lone Star Solar Services, LLC, SunnyMac, LLC, Windmar, P.V. Energy, Inc., Windmar Home Florida, Inc., Power Solar LLC, Integrated Solar Operations LLC, PlugPV LLC, Palmetto Solar LLC, Tomick Electric, LLC, JAJ Roofing d/b/a Citadel Roofing & Solar, and Trinity Solar, LLC.

Energy Resilience Fund and the relief authorized by the Court pursuant to the *Order (I) Authorizing the Debtors to Continue Honoring Certain Obligations Related to the Puerto Rico Energy Resilience Fund and Continue Certain Prepetition Business Practices Related Thereto and (II) Granting Related Relief* [Docket No. 335]. None of the Acquired Assets include any reimbursement payments made to, or any funds or proceeds held by, the Debtors or their Affiliates related to or derived from the Puerto Rico Energy Resilience Fund program, or the rights and claims of any Dealers in, to or under the foregoing.

**XXV.    Special Provisions Regarding the Department of Energy and the United States of America**.

42.    Notwithstanding any provision to the contrary in this Sale Order, the APA, any other determinative Asset Purchase Agreement, or any other related Sale document, nothing herein shall, in each case, subject to applicable non-bankruptcy law:

a.    release, nullify, preclude, or enjoin the enforcement of any police or regulatory power or any liability that any entity would be subject to as the owner, lessor, lessee, or operator of property that such entity owns, operates, or leases after the date of entry of this Sale Order; *provided*, *however*, that the foregoing shall not limit, diminish, or otherwise affect the Debtors', Purchaser's, or any other party's defenses, claims, causes of action, or other rights under applicable non-bankruptcy law with respect to any liability that may exist to a Governmental Unit (as such term is defined in section 101(27) of the Bankruptcy Code) as owner or operator of such property;

b.    be construed to create any substantive right for any Governmental Unit that does not already exist under applicable law;

c.    affect the setoff or recoupment rights of the United States;

d.    confer exclusive jurisdiction to the Bankruptcy Court except to the extent set forth in 28 U.S.C. § 1334 (as limited by any other provisions of the United States Code);

e.    authorize the assumption, assignment, sale or other transfer of any federal (i) grants, (ii) grant funds, (iii) contracts, (iv) agreements, (v) awards, (vi) task orders, (vii) property, (viii) intellectual property, (ix) patents, (x) leases, (xi) certifications, (xii) applications, (xiii) registrations,

(xiv) billing numbers, (xv) national provider identifiers, (xvi) provider transaction access numbers, (xvii) licenses, (xviii) permits, (xix) covenants, (xx) inventory, (xxi) guarantees, (xxii) indemnifications, (xxiii) data, (xxiv) records, or (xxv) any other interests belonging to the United States (collectively, "Federal Interests") without compliance by the Debtors and Purchaser with all terms of the Federal Interests and with all applicable non-bankruptcy law;

f.   be interpreted to set cure amounts or to require the United States to novate, approve, or otherwise consent to the sale, assumption, assignment, or other transfer of any Federal Interests;

g.   waive, alter, or otherwise limit the United States' property rights; or

h.   expand the scope of 11 U.S.C. § 525.

43.   In the event of an inconsistency or conflict between any provision of the APA and any provision of this Sale Order as to the United States, the provisions of this Sale Order and federal law shall govern with respect to such inconsistency or conflict.

44.   For the avoidance of doubt, any right, title, or interest of the Debtors, if any, in the Cooperative Agreement between Sunnova Energy Corporation and the Department of Energy, dated December 21, 2023, as amended, shall be excluded from the Acquired Assets assigned to the Purchaser pursuant to Section 1.5(c)(ii) of the APA.

**XXVI. Special Provision Regarding ISO New England ("ISONE").**

45.   To the extent one or more of the ISONE Contracts (as defined in the ISONE Objection)[6] are assumed and assigned to the Purchaser or any of the Debtor Demand Resources (as defined in the ISONE Objection) are designated as Acquired Assets, the go-forward operation and enforceability of the assignment of the ISONE Contracts, as well as the effectiveness of the assignment of the Debtor Demand Resources, and participation in related programs by the Purchaser shall remain subject to applicable non-bankruptcy law, including the Tariff (as defined

---

[6]   "ISONE Objection" means that certain sale objection filed by ISONE [Docket No. 514].

in the ISONE Objection) in all respects, notwithstanding anything in this Sale Order to the contrary. ISO New England reserves all rights, remedies, and defenses in the event of any failure by the Purchaser to comply with such applicable non-bankruptcy law, including the Tariff. For the avoidance of doubt, (i) to the extent the ISONE Contracts are not assumed and assigned to the Purchaser, the Blackrock Account (as defined in the ISONE Objection) shall not be an Acquired Asset; and (ii) to the extent the ISONE Contracts are assumed and assigned to the Purchaser, ISONE's lien on the Blackrock Account shall be a Permitted Encumbrance, and the Debtors shall use commercially reasonably efforts to execute all instruments necessary to effectuate the assignment of the Blackrock Account to Purchaser; *provided* that to the extent that the Blackrock Account is an Acquired Asset and ISONE's lien therein attaches to the Blackrock Account following the sale, this Sale Order shall be deemed sufficient and conclusive evidence of the priority, perfection, enforceability, and validity of any liens and security interests granted in the Blackrock Account, and of the transfer of the Blackrock Account to the Purchaser (subject to any requirements of Blackrock Account), effective as of the Closing Date, without any further act and without regard to any other federal, state, or local requirements or law requiring notice, filing, registration, recording, or possession of such lien, or other act to validate or perfect such security interest or lien. To the extent (i) the Debtors and the Purchaser determine that the Blackrock Account will be assumed and assigned to the Purchaser in accordance with the terms of this Sale Order and the APA and (ii) such assumption and assignment is legally permitted under applicable bankruptcy and non-bankruptcy law, the Blackrock Account shall be automatically deemed an Acquired Asset under the APA without the need of further order of this Court.

XXVII. **Special Provision Regarding Certain Texas Taxing Authorities**.

46.    Notwithstanding anything to the contrary in this Sale Order or the APA, any valid, perfected, and enforceable statutory liens (the "Tax Liens") securing payment of ad valorem

44

property taxes of the Texas Taxing Authorities[7] owed by the Debtors for the 2024 and prior tax years pertaining to the Acquired Assets (the "Delinquent Taxes") shall attach, upon the applicable Closing, to the net proceeds from the applicable sale of such Acquired Assets in the same order of priority that such liens have on such Acquired Assets, as applicable, prior to the applicable Closing Date, subject to any claims and defenses possessed by the Debtors and their estates with respect thereto; *provided* that the Debtors shall ensure that an amount sufficient to satisfy such Delinquent Taxes is set aside from the sale proceeds prior to making any disbursement of such proceeds to any other person or entity. As set forth in this paragraph, the payment of ad valorem property taxes of the Texas Taxing Authorities owed for 2025 (the "2025 Taxes") shall be governed by and allocated in accordance with the terms and conditions set forth in the APA. For the Pre-Closing Tax Period, the 2025 ad valorem tax liens shall be retained against the sale proceeds to secure payment of the pre-closing taxes and an amount sufficient to satisfy the 2025 Taxes shall be set aside from the sale proceeds prior to making any disbursement of such proceeds to any other person or entity. To the extent that there are 2025 Taxes that are allocable to the Purchasers pursuant to the APA, Purchasers agree that, to the extent so permitted by applicable Law, a Tax Lien may attach with respect to the Acquired Assets giving rise to such Taxes until such Taxes (including any penalties and interest accruing under applicable law with respect to such Taxes but not, for the avoidance of doubt, Taxes, penalties or interest allocable to the Sellers under the APA) are paid in full.

---

[7]   "Texas Taxing Authorities" means all Texas ad valorem taxing entities represented by the firms of Linebarger Goggan Blair & Sampson LLP, Perdue Brandon Fielder Collins & Mott LLP, and McCreary Veselka Bragg & Allen P.C.

**XXVIII. Special Provision Regarding Pulte**.

47.     For the avoidance of doubt, notwithstanding anything to the contrary in the APA or this Sale Order, the following shall constitute Excluded Assets:  (i) any accounts receivable due to any of the Debtors by Pulte Home Company, LLC or any of its affiliates (collectively, "Pulte"); and (ii) any photovoltaic system and/or storage system (a) installed on a home built by Pulte and (b) not designated to be leased (the assets described in the foregoing (i) and (ii), the "Pulte Designated Assets"); *provided*, *however*, that, notwithstanding anything to the contrary in this Sale Order, the APA, or any other related Sale document, the designation of the Pulte Designated Assets as Excluded Assets shall be deemed final as of the Closing Date, and the Debtors, the Purchaser, and all third parties shall be forever barred and estopped from asserting otherwise.  Solely as between themselves, the Purchaser and the Debtors reserve all rights with respect to whether the Pulte Designated Assets qualify as New Home WIP under the APA, and if it is later determined by agreement of the Debtors and the Purchaser (with three business days' prior written notice of such determination provided to the Committee) or by Final Order of the Court that some or all of the Pulte Designated Assets would not have qualified as New Home WIP (or the proceeds from the sale of New Home WIP), then the proceeds of such Pulte Designated Assets received by the Debtors from Pulte (but none of the Pulte Designated Assets themselves, which shall remain Excluded Assets) shall be deemed Acquired Assets under the APA, subject to any equitable downward adjustment of the Purchase Price in accordance Section 1.5 of the APA.  For the further avoidance of doubt, all of Pulte's rights and interests in the Pulte Designated Assets, including without limitation its setoff and recoupment rights, are expressly reserved and preserved.

**XXIX.    Special Provision Regarding TEPH and EZOP**.

48.     Acquired Assets.  Notwithstanding anything to the contrary in this Sale Order, the APA, or any other document, nothing in this Sale Order, the APA, or any other document

governing the Sale shall authorize, permit, or be deemed to require (i) the Purchaser to directly acquire, and the Acquired Assets shall not include (x) any assets, rights, or interests of Sunnova TEP Holdings, LLC ("TEPH") or its direct or indirect subsidiaries, including any rights of TEPH, its direct or indirect subsidiaries, or the TEP Facility Administrative Agent (as defined below) with respect to the ownership of or entitlement to ITCs or the proceeds thereof or (y) any of the Purchased Assets (as defined in the Atlas Private Sale Order), (ii) the Purchaser to directly acquire, and the Acquired Assets shall not include, any equity of, or limited liability company interest, membership, or other interests in, any of the direct or indirect subsidiaries of Sunnova TEP Resources, LLC, Sunnova EZ Own Portfolio, LLC ("EZOP"), TEPH, or any of its subsidiaries, or (iii) the sale, transfer, conveyance, or assignment of any of the foregoing, in each case (with respect to (i), (ii), and (iii)), without the express consent of Atlas Securitized Products Holdings, L.P., in its capacity as administrative agent under the Atlas Credit Agreement (the "TEP Facility Administrative Agent"), Atlas Securitized Products Holdings, L.P., in its capacity as administrative agent under the SLA Facility, and TEPH (with the consent of its outside directors), each in its sole discretion.

49.     Debtors' Authority.  Notwithstanding anything to the contrary in this Sale Order, the APA, or any other document, nothing in this Sale Order, the APA, or any other document governing the Sale shall (i) grant the Debtors authority or constitute a determination that the Debtors have the authority to bind TEPH or any of its subsidiaries, or (ii) override or modify the organizational or governance documents and powers of TEPH or any of its subsidiaries.

50.     Cure Disputes.  The TEP Facility Administrative Agent has filed an informal cure objection with respect to contracts 492-497 and 505 on the Cure Notice.  The parties will use good faith efforts to resolve any disputes with respect to the assumption and assignment of those

47

contracts and such contracts will not be assigned unless agreed to in writing by Atlas and the Purchaser (which agreement may be memorialized in an email) or further order of the Court.

**XXX.**     **Special Provision Regarding Releases**.

51.     Savings Clause.   Notwithstanding anything in the APA or this Sale Order, including, without limitation, (i) any release of claims or causes of action, including, without limitation, Section 6.12 of the APA, (ii) any provisions authorizing or approving the transfer and Sale (as defined in this Sale Order) of the Acquired Assets free and clear of Liens, Claims, and Interests (as defined in this Sale Order), or (iii) any provisions in the APA or this Sale Order imposing any injunction or other limitations or conditions on the right of any party to assert any claims, causes of action, or rights whether or not subject to the foregoing, the APA and this Sale Order shall not release and no such injunction, limitation, or condition shall apply to (collectively, the "Preserved Claims," which for the avoidance of doubt, shall constitute Excluded Assets under the APA) (a) any preference claims, fraudulent conveyance claims, fraudulent transfer claims, voidable transfer claims, and other Avoidance Actions (other than Critical Vendor Avoidance Claims), unlawful dividend or distribution claims, unjust enrichment, or similar or dissimilar claims or causes of action, against any Person, (b) any claims or causes of action against any current or former manager, director, officer, consultant, attorney, Advisor, or controlling person of any Seller or Acquired Entity, (c) all commercial tort claims, breach of duty claims, professional liability claims, breach of contract claims, quasi contract claims, claims for unjust enrichment, quantum meruit, or similar or dissimilar theories of liability, and claims for recharacterization, substantive consolidation, equitable subordination, and other equitable rights or remedies, together with all rights of setoff or recoupment (for the avoidance of doubt, the mutuality of obligations between the holder of such setoff or recoupment rights and any party subject to such rights shall, and shall be deemed to, survive the Sale) and all defenses, damages,

48

penalties, costs, fees, interest, and other relief associated therewith, against any Person (including, but not limited to, any insurance company or surety); *provided* that the Preserved Claims shall not include any Avoidance Actions, claims, causes of action, setoff, recoupment, or other rights, defenses, damages, penalties, costs, fees, interest, or other relief or remedies against (i) the Purchaser, (ii) any Acquired Entity, (iii) any of the Purchaser's current, former, or future Advisors (as defined in the APA), stockholders, members, directors, managers, trustees, principals, parents, Subsidiaries, joint ventures, predecessors, successors, assigns, beneficiaries, heirs, and executors (each of the foregoing, solely in their respective capacities as such), or (iv) any Acquired Entity's post-Closing Advisors, stockholders, members, directors, managers, trustees, principals, parents, Subsidiaries, joint ventures, predecessors, successors, assigns, beneficiaries, heirs, and executors (each of the foregoing, solely in their respective capacities as such and solely with respect to post-Closing transactions, events, actions, and occurrences) (collectively, the "Acquired Entity Related Persons"); *provided*, *further*, that any releases of the Acquired Entities or the Acquired Entity Related Persons pursuant to the APA or this Sale Order shall be deemed to be without prejudice to any rights or claims of the Debtors or their estates under any insurance policies and such releases shall not be deemed to extinguish any underlying claims, causes of action, or rights against the Acquired Entities or the Acquired Entity Related Persons solely to extent that doing so would prejudice any such insurance rights or claims of the Debtors or their estates. For the avoidance of doubt, with respect to Persons identified in clauses (iii) and (iv) immediately above, those Persons only remain subject to Preserved Claims where those Persons were subject to Preserved Claims in a similar capacity in respect of the Debtors or other Persons that are not the Purchaser or an Acquired Entity.  For the avoidance of doubt, nothing in this Sale Order shall limit or impair the releases contained in the KKR Consent or paragraphs 19 and 20 of the DIP Order,

each of which shall continue in full force and effect notwithstanding anything contained in the APA or this Sale Order.

**XXXI.** **Special Provision Regarding the Atlas TEPH Lenders**.

52. <u>Access</u>. As set forth in Section 8 of the ASPA Settlement Agreement (as defined in the Atlas Private Sale Order) and subject to the Purchaser's acquisition of the applicable information pursuant to the APA, the Purchaser shall use commercially reasonable efforts to provide the TEP Facility Administrative Agent, TEPH, and TEPH Sub (as defined in the ASPA Settlement Agreement), and their respective advisors with access to, with any costs to transfer such information and host such information after it is transferred at the TEP Facility Administrative Agent's expense, the Company Parties' systems, books, records, documents, and other data regarding (without limitation or duplication) (a) the Host Customer Solar Assets (as defined in the Warehouse Credit Agreement) relating to the Warehouse Facility and the associated customer information and tax reporting, (b) the Dealers (including outstanding payment obligations due and owing by the Company Parties in connection with Host Customer Solar Assets), and (c) the Purchased Assets (as defined in the Atlas Private Sale Order).]

53. <u>SLA Warehouse COC</u>. Notwithstanding anything to the contrary in this Sale Order or the APA, the Lenders under the SLA Warehouse Credit Agreement have not waived and expressly reserve their rights under the SLA Warehouse Credit Agreement, including, without limitation, their rights to exercise remedies in connection with any event of default under Section 6.1(N) thereof and collect any amounts that are due and owing under the SLA Warehouse Credit Agreement.

54. <u>TEPH CoC</u>. Notwithstanding anything to the contrary in this Sale Order or the APA, the Lenders under the Atlas Credit Agreement have not waived and expressly reserve their rights under the Atlas Credit Agreement, including, without limitation, their rights to exercise

remedies in connection with an event of default under Section 6.1(M) thereof and collect any fees that are due and owing under the Atlas Credit Agreement.

**XXXII.  Special Provision Regarding SPC 20 Greenway, LLC**.

55.      Notwithstanding anything herein to the contrary in this Sale Order, the APA, or any other related Sale document, to the extent not resolved prior to the Sale Hearing, all rights and defenses of the Debtors, the Buyer, and SCP 20 Greenway, LLC, the successor-in-interest to 20 Greenway Plaza LLC  (the "Headquarters Landlord"), with respect to the application of a Transition Services Agreement to the use and occupancy of nonresidential real property leased by Debtor located at 20 East Greenway Plaza, Suite 540, Houston, Texas, are hereby fully reserved and preserved until the parties have negotiated a consensual resolution or is otherwise determined by further order of this Court.  If a consensual resolution is not reached, the Headquarters Landlord shall have no fewer than five (5) days' notice of the proposed form of Transition Services Agreement and an opportunity to object, which shall be prior to any Closing of the Sale Transaction.

**XXXIII. Reservations of Rights**.

56.      Notwithstanding anything to the contrary in this Sale Order or the APA, Great American Insurance Company's ("Great American") rights with respect to any sale of the Debtors' assets are expressly reserved with respect to (i) the replacement of any surety bonds for which Great American is the surety and any Debtor is principal, including those identified in Exhibit A to Great American's Conditional Objection and Reservation of Rights [Docket No. 508], and (ii) the right to seek relief from the automatic stay to issue cancellation notices and take other actions necessary to terminate the bonds following the Closing, which automatic stay shall be deemed lifted ten calendar days after the Closing solely to permit Great American to do so.

57.     John Adams Academies, Inc.'s ("JAA") Cure Objections [Docket Nos. 295, 507] shall be subject to the Dispute Resolution provisions of the Bidding Procedures and may be consensually resolved by JAA, Purchaser, and the Debtors, in consultation with the Committee, without further Court approval at any time prior to the confirmation of a chapter 11 plan in these chapter 11 cases or such later date agreed among such parties; *provided* that, for the avoidance of doubt, in the absence of consensual resolution of such cure objections, the parties may seek for such Cure Objections to be heard by the Court on such date agreed among the parties; *provided*, *further*, that nothing herein or in the APA shall prohibit (a) the Purchaser from electing to exclude any contracts with, or other assets involving, JAA from the Acquired Assets in accordance with the APA or (b) the Debtors from rejecting any such contracts upon such election by Purchaser. For the avoidance of doubt, JAA's objection filed at Docket No. 507 shall be treated as an official Cure Objection pursuant to the Bidding Procedures Order without the need for JAA to file a formal Cure Objection pursuant to the Bidding Procedures Order, and all of JAA's rights with respect to the assumption, the assumption and assignment, or the rejection, as applicable, of (i) that certain Solar Purchase Agreement, dated March 29, 2023, by and among Debtor Sunnova Energy Corporation and JAA and (ii) that certain Loan Agreement, dated March 29, 2023, by and among Sunnova Energy Corporation and JAA are expressly reserved as set forth in the Cure Objection.

**XXXIV. Amendments to Securitization Facilities.**

58.     The Purchasers have required certain amendments to the Sunnova ABS Transaction Documents (as defined in the APA).  Pursuant to a consent solicitation process duly certified by DF King & Co., retained by the Debtors as a Tabulation Agent, the record date for the consent solicitation process was July 18, 2025, and the requisite beneficial holders of each of the Sunnova ABS Transactions duly authorized either Computershare Trust Company (in its own capacity and/or as successor to Wells Fargo Bank, National Association), National Association, or

52

Wilmington Trust, N.A., in any and all of each of their capacities, including as Indenture Trustee, Backup Servicer, Transition Manager, and in any other capacity or role (the "Indenture Trustee Parties"), to enter into those certain amendments to the Sunnova ABS Transaction Documents, as set forth in those certain Consent Solicitation Statements, each dated as of July 9, 2025, as amended, and as certified by D.F. King & Co. on July 18, 2025 (the "Consent Solicitation Statements").

59.     The amendments and assignments as contemplated by each form of Omnibus Amendment and Assignment Agreement and Exhibit A to each form of Omnibus Amendment and Assignment Agreement (including any and all corresponding documents, and taking any and all actions therewith, together, the "Omnibus Amendment and Assignment") distributed by the Debtors pursuant to the Consent Solicitations Statements, dated as of July 9, 2025, as amended, are permitted and authorized by, and not in violation of the terms of each applicable Indenture and the applicable Sunnova ABS Transaction Documents.

60.     Each of the Trustees and the Indenture Trustee Parties are hereby authorized and directed to enter into each Omnibus Amendment and Assignment, and entry into each Omnibus Amendment and Assignment is authorized by and does not violate the terms of the applicable Sunnova ABS Transaction Documents for such Omnibus Amendment and Assignment.  Each of the Indenture Trustees and the Indenture Trustee Parties, and its and their agents, attorneys, successors, and assigns are hereby authorized and directed to take any lawful actions as instructed by, and at the expense, of the Debtors that may be reasonably necessary to enter into each Omnibus Amendment and Assignment.

61.     Each of the Indenture Trustees and the Indenture Trustee Parties shall each have the right to be paid and/or reimbursed its reasonably and properly incurred and documented fees

and expenses pursuant to the terms of the applicable Indentures and/or any other Sunnova ABS Transaction Documents (including, for the avoidance of doubt, legal fees), including any fees and expenses incurred after the date hereof giving effect to this Sale Order, and the Debtors are directed to pay and/or reimburse each of the Indenture Trustees and the Indenture Trustee Parties for its and their reasonable extraordinary fees and expenses and attorneys' fees and expenses incurred in connection with the Consent Solicitation, this Sale Order, and entry into each Omnibus Amendment and Assignment. For the avoidance of doubt, the charging liens of the Indenture Trustees and the Indenture Trustee Parties shall survive.

62.     Each of the Indenture Trustees and the Indenture Trustee Parties, and each of its and their respective current and former officers, directors, managers, equity holders (regardless of whether such interests are held directly or indirectly), predecessors, successors, assigns, principals, members, employees, agents, attorneys, consultants, advisors, representatives, and other professionals shall be exculpated and released from any and all claims, obligations, suits, judgments, damages, rights, causes of action, penalties, and liabilities arising from, in connection with, any action or inaction in furtherance of this Sale Order, including, without limitation, any claims made by any noteholder based upon each Indenture Trustee's (and/or Indenture Trustee Parties') execution of each Omnibus Amendment and Assignment and all corresponding documents, and taking any and all actions therewith.

**XXXV.   Miscellaneous**.

63.      The DIP Agent[8] is authorized under the DIP Loan Documents to follow the directions of the Required Lenders in submitting the Credit Bid Amount and to designate the Purchaser to receive the Acquired Assets and assume the Assumed Liabilities.

64.      The Required Lenders acted validly and reasonably in structuring the WholeCo Stalking Horse Bid and directing the DIP Agent to submit the Credit Bid Amount with respect to the transactions contemplated by the APA and the Sale.

65.      Upon the Closing, the Purchaser, the Debtors, and the DIP Lenders shall effectuate reduction of the aggregate outstanding principal amount of the DIP Obligations by the Credit Bid Amount, and the remaining DIP Obligations following reduction for the Credit Bid Amount shall remain outstanding as claims against the Debtors secured by the Excluded Assets to the extent set forth in the DIP Loan Documents.  For the avoidance of doubt, notwithstanding anything in this Sale Order to the contrary, the Credit Bid Amount does not include any professional fees or expenses of the DIP Lenders or any of the DIP Agent's fees or expenses, and such fees and expenses shall be paid in cash by the Debtors in accordance with the DIP Loan Documents at the Closing.

66.      In connection with the Credit Bid, at the expense of the Debtors, the DIP Agent is hereby authorized and directed to execute such Transaction Agreements and other documents and take all other actions in accordance with, and subject to the terms of (and the protections of the DIP Agent set forth in), the DIP Financing Agreement and the directions of the Required Lenders as may be necessary to facilitate the Credit Bid and the release of their Liens in the

---

[8]    Capitalized terms used in these paragraphs 63-66 but not otherwise defined herein shall have their respective meanings ascribed to such terms in the DIP Order.

Acquired Assets.  The DIP Agent shall not be deemed to (a) have taken title to the Acquired Assets or (b) have assumed any responsibilities with respect to, or liabilities of any kind or nature under, the APA (including with respect to the transactions contemplated thereby) or the Acquired Assets.

67.     Any party that accepts payments from the Debtors pursuant to this Sale Order shall be deemed to have voluntarily submitted themselves to the jurisdiction of this Court on account of accepting payment pursuant to an order of this Court.

68.     Notwithstanding anything in the APA, including, without limitation, Section 6.2(c) of the APA, or this Sale Order, from the date of the APA until the later of (x) the date that is five (5) years from the Closing or (y) the date of a final, unappealable order closing each of these chapter 11 cases (or each of any successor chapter 7 cases) (the "Applicable Time"), Purchaser will provide Sellers, and Sellers' respective estates, successors and assignees, as applicable, and any representative of any of the foregoing Persons, including any trustee or estate representative appointed in these chapter 11 cases (or any successor chapter 7 cases), and each of their respective Advisors (collectively, the "Access Parties") with:  (i) reasonable access during normal business hours, and upon reasonable advance notice, to the books and records, including work papers, schedules, memoranda, and other Documents (for the purpose of examining and copying) relating to the Acquired Assets, the Acquired Entities, the Excluded Assets, the Assumed Liabilities or the Excluded Liabilities with respect to periods or occurrences prior to the Closing Date (collectively, the "Books and Records Access"); *provided* that the Purchaser and the Access Parties shall each bear its own costs with respect to the procurement and access of the Books and Records Access; and (ii) reasonable access, during normal business hours, and upon reasonable advance notice, to employees, officers, Advisors, accountants, offices and properties of Purchaser and the Acquired Entities (each, an "Applicable Employee"), and any of their respective

56

successors and assigns (including for the purpose of better understanding the books and records) (collectively, the "Employee Access"); *provided* that the Purchaser and the Access Parties shall each bear its own costs associated with the Employee Access.  Unless otherwise consented to in writing by Sellers (or Sellers' respective estates, successors and assignees, as applicable), Purchaser and the Acquired Entities, and their respective successors and assigns, will not, during such period, destroy, alter or otherwise dispose of any of such books and records without first offering to surrender to Sellers (or Sellers' respective estates, successors and assignees, as applicable), at such party's own expense, such books and records or any portion thereof that such Persons may intend to destroy, alter or dispose of.  During the Applicable Time, to the extent reasonably requested by the Access Parties, Purchaser and the Acquired Entities, and their respective successors and assigns, will, and will cause their Applicable Employees to, provide the Access Parties with reasonable assistance, support and cooperation with Sellers' wind-down and related activities (*e.g.*, helping to locate documents or information related to preparation of Tax Returns, reconciliation of claims in these chapter 11 cases and other Liabilities, and processing of insurance/benefit claims) (collectively, "Employee Cooperation") during normal business hours and upon reasonable prior notice; *provided* that the Purchaser and the Access Parties shall each bear its own costs associated such assistance.  Notwithstanding anything to the contrary, nothing in the APA or in this Sale Order shall impair the control of the representatives of the Debtors' estates of all privileges and related protections applicable to, or arising in connection with, any of the Acquired Assets or otherwise, including, without limitation, the attorney-client privilege, attorney work product doctrine, and other privileges and doctrines.  Notwithstanding the foregoing, if (x) the Purchaser determines in good faith and in its reasonable discretion that any request for Employee Access or Employee Cooperation would impose a material burden upon the Purchaser

(such determination, a "Purchaser Determination"), (y) the Purchaser provides written notice to the Access Parties of such Purchaser Determination, and (z) notwithstanding such Purchaser Determination, the Access Parties confirm to the Purchaser that they elect to move forward with such request, then the Access Parties shall pay fifty percent (50%) of the reasonable and documented Applicable Employee salary or wages (prorated for the time actually spent by such Applicable Employee providing such Employee Access or Employee Cooperation) incurred by the Purchaser associated with providing such Employee Access or Employee Cooperation, subject to any additional terms to which the parties may agree with respect to any request for Employee Access or Employee Cooperation, including, without limitation, regarding the timing and frequency of the Purchaser's invoicing of such costs to the Access Parties; *provided* that the Access Parties may seek relief from this Court with respect to any Purchaser Determination that the Access Parties dispute.

69.     Notwithstanding anything in the APA or this Sale Order, the condition precedent to the obligations of Purchasers to consummate the Closing set forth in Section 7.2(e) of the APA shall be deemed satisfied or waived in its entirety by entry of this Sale Order.

70.     Nothing in this Sale Order or the APA releases, discharges, or otherwise relieves the Purchaser of any liabilities to the extent prohibited by section 363(o) of the Bankruptcy Code.

71.     The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Sale Order in accordance with the Motion.

59

72.     This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Sale Order.

Houston, Texas

Signed: July 31, 2025

_____
Alfredo R Pérez
United States Bankruptcy Judge