# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| SUNNOVA ENERGY INTERNATIONAL INC., *et al.*,[1] | Case No. 25-90160 (ARP) |
| Debtors. | (Jointly Administered) |

## DEBTORS' EMERGENCY MOTION FOR ENTRY OF AN ORDER (I) APPROVING GLOBAL RESOLUTION AND SETTLEMENT OF CERTAIN DISPUTES BETWEEN THE DEBTORS, PULTE PURCHASING CORPORATION AND PULTE HOME COMPANY, LLC PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 9019 AND (II) GRANTING RELATED RELIEF

> **Emergency relief has been requested. Relief is requested not later than 10:30 a.m. (prevailing Central Time) on August 19, 2025.**
>
> **If you object to the relief requested or you believe that emergency consideration is not warranted, you must appear at the hearing if one is set, or file a written response prior to the date that relief is requested in the preceding paragraph. Otherwise, the Court may treat the pleading as unopposed and grant the relief requested.**
>
> **A hearing will be conducted on this matter on August 19, 2025, at 10:30 a.m. (prevailing Central Time) in Courtroom 400, 4th floor, 515 Rusk Street, Houston, Texas 77002. Participation at the hearing will only be permitted by an audio and video connection.**
>
> **Audio communication will be by use of the Court's dial-in facility. You may access the facility at (832) 917-1510. Once connected, you will be asked to enter the conference room number. Judge Pérez's conference room number is 282694. Video communication will be by use of the GoToMeeting platform. Connect via the free GoToMeeting application or click the link on Judge Pérez's homepage. The meeting code is "judgeperez." Click the settings icon in the upper right corner and enter your name under the personal information setting.**
>
> **Hearing appearances must be made electronically in advance of both electronic and in-person hearings. To make your appearance, click the "Electronic Appearance" link on Judge Pérez's homepage. Select the case name, complete the required fields, and click "Submit" to complete your appearance.**

---

[1] A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://restructuring.ra.kroll.com/Sunnova. The location of Debtor Sunnova Energy International Inc.'s corporate headquarters and the Debtors' service address in these chapter 11 cases is 20 East Greenway Plaza, Suite 540, Houston, Texas 77046. "Sunnova" or the "Company" means, collectively, Sunnova Energy International Inc. and its Debtor and non-Debtor subsidiaries and affiliates.

IM-#10804169

The above-captioned debtors and debtors in possession (collectively, the "Debtors") state the following in support of this motion:

**Preliminary Statement**

1. Pulte Home Company, LLC is a homebuilder with significant operations in California. The Debtor Sunnova Energy Corporation ("SEC") and Pulte Purchasing Corporation and Pulte Home Company, LLC (collectively, "Pulte") (SEC together with Pulte, the "Parties") are parties to an agreement pursuant to which SEC provided photovoltaic systems to Pulte on new home builds. The Parties dispute the amounts owed to SEC (and related setoff amounts alleged by Pulte) as a result of systems that were installed on homes and sold to third-party homebuyers. The Parties also disagree over breach of contract claims on a prepetition sale agreement. Finally, there are additional systems that are installed or will be installed on Pulte-built homes and for which ownership is disputed.

2. The Parties have agreed to resolve all disputes between them through a settlement that provides Pulte shall pay SEC the total sum of $6,423,728.00, *less* the $598,684.00 paid by Pulte and received by SEC on or around July 30, 2025, and less any further amounts paid by Pulte and received by SEC for additional Systems (as defined below) on homes that close after the Petition Date. In addition, the Settlement (as defined below) effectuates mutual releases between the Parties, avoiding the costs, risks, and delays associated with protracted litigation. Consequently, and for the reasons set forth in detail below, the Debtors believe, in their business judgment, that the settlement is in the best interests of the estates and request that it be approved.

**Relief Requested**

3. By this Motion, the Debtors seek entry of an order (the "Order") substantially in the form attached hereto: (i) approving the proposed settlement set forth in the settlement agreement attached to the proposed Order as **Exhibit A** (the "Settlement Agreement" and the

settlement documented therein, the "Settlement"), between the Debtors and Pulte; and (ii) granting related relief.

## Jurisdiction and Venue

4. The United States Bankruptcy Court for the Southern District of Texas (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and the *Order of Reference to Bankruptcy Judges* from the United States District Court for the Southern District of Texas, entered May 24, 2012.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  The Debtors confirm their consent to the Court's entry of a final order in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

5. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

6. The statutory bases for the relief requested herein are sections 105(a), 363, and 365 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), rules 2002, 4001, 6004, 6006, and 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and rules 4002-1(e) and 9013-1(i) of the Bankruptcy Local Rules for the Southern District of Texas (the "Bankruptcy Local Rules").

## Background

7. Pulte and SEC are parties to a National Master Supply Work Agreement (the "NMSA"), pursuant to which SEC provided, installed, activated, and warranted photovoltaic systems and/or energy storage systems designated to be purchased rather than leased ("Systems") for certain homes that Pulte has built or is building in California.

8. SEC asserts that Pulte owes it not less than $3,727,292.00 on account of Products, Work and Materials (as those terms are defined in the NMSA) for Systems installed on homes that

3

were sold and closed to third-party homebuyers prior to the Petition Date (the "Prepetition AR") and not less than $4,604,483 on account of Products, Work and Materials (as those terms are defined in the NMSA) for Systems installed on homes that were sold and closed to third-party homebuyers, or are anticipated to be sold and closed to third-party homebuyers, after the Petition Date (the "Postpetition AR" and, together with the Prepetition AR, the "Total AR").

9. Pulte disputes the amount of the Total AR.

10. Pulte Home Company, LLC and SEC are parties to that certain PV Systems Purchase Agreement dated April 14, 2025 (the "WIP Purchase Agreement") and a dispute exists between the Parties regarding the rights, obligations, and performance of the Parties under the WIP Purchase Agreement.

11. Pulte asserts that SEC owes it not less than $3,176,273 on account of administrative fees due under the NMSA, breaches of the NMSA, breaches of the WIP Purchase Agreement and other agreements, and other amounts as to which Pulte claims a right to setoff under the NMSA (the "Setoff Claim"). SEC disputes the amount of the Setoff Claim.

12. Additionally, certain Systems have been installed on homes that have not yet been sold and closed to third-party homebuyers. The Parties dispute whether SEC retains title to those Systems, or if title passed to Pulte upon installation, leaving SEC with a right to payment that matures only upon closing with a third-party homebuyer. The Parties have agreed to accelerate payment and moot all title issues for all Systems. Thus, the Settlement allows SEC to immediately monetize Systems for which it would otherwise receive payment in the ordinary course of business over many months.

IM-#10804169

13. Due to the expense and difficulty in litigating the merits of each Party's claims and defenses, the Parties have decided to resolve these disputes amicably, without further litigation and without admission by either Party.

### **The Settlement**

14. By the Settlement, the Parties have reached a global resolution of all disputes relating to each Party's claims. In relevant part, the key terms of the Settlement are as follows:[2]

- **Payment:** Pulte will pay SEC $6,423,728.00, *less* the $598,684.00 paid by Pulte and received by SEC on or around July 30, 2025, and less any further amounts paid by Pulte and received by SEC for additional Systems on homes that close after the Petition Date (the "Settlement Payment").

- **Transfer:** Upon receipt of the Settlement Payment, the Debtors acknowledge that they have no legal or equitable interests in the Systems, including but not limited to those listed in Schedule A to the Settlement Agreement.

- **Acknowledgement:** Pulte acknowledges that the Debtors make no representations or warranties, terms, conditions, understandings or collateral agreements of any nature or kind, express or implied, by statute or otherwise, concerning the Systems or the condition, description, quality, usefulness, quantity or any other thing affecting or relating to the Systems, including without limitation any implied warranty of merchantability or fitness for a particular purpose, which warranties are also hereby expressly disclaimed. Pulte further acknowledges and agrees that the Debtors shall not be liable under the Settlement Agreement for any lost profits or indirect, consequential or special damages under any circumstances.

- **Mutual Release:** The Debtors and Pulte shall grant each other mutual releases of claims and causes of action, which releases shall become effective upon the Settlement Effective Date (as defined in the Settlement Agreement).

15. Approval of the Settlement will benefit the Debtors' estates by resolving disputes with Pulte, which holds significant sums due to the Debtors and claims setoff rights against those funds. Absent approval of the Settlement, the parties will be forced to commence litigation relating

---

[2] The summary of Settlement terms in this Motion is not intended to be comprehensive, and is qualified in its entirety by reference to the Settlement Agreement.

IM-#10804169

to the Pulte claims, as well as turnover of estate assets, which the Debtors anticipate will ultimately result in a loss of value to their estates.

### Basis for Relief

I. **Entry Into and Performance Under the Settlement Agreement Is a Sound Exercise of the Debtors' Business Judgment.**

16. The Court should approve the Debtors' entry into and performance under the Settlement Agreement as a sound exercise of the Debtors' business judgment under sections 105(a) and 363(b) of the Bankruptcy Code and Bankruptcy Rule 9019. Section 363(b)(1) of the Bankruptcy Code authorizes a debtor in possession to "use, sell, or lease, other than in the ordinary course of business, property of the estate," after notice and a hearing. 11 U.S.C. § 363. Under section 363(b), courts within the Fifth Circuit require only that a debtor "show that a sound business purpose justifies such actions." *See, e.g.*, *ASARCO, Inc. v. Elliott Mgmt. (In re ASARCO, L.L.C.)*, 650 F.3d 593, 601 (5th Cir. 2011) ("'[F]or the debtor-in-possession or trustee to satisfy its fiduciary duty to the debtor, creditors, and equity holders, there must be some articulated business justification for using, selling, or leasing the property outside the ordinary course of business.'") (quoting *In re Cont'l Air Lines, Inc.*, 780 F.2d 1223, 1226 (5th Cir. 1986)).

17. In addition, the Court may exercise its equitable powers under section 105(a) of the Bankruptcy Code to grant the relief requested herein. Under section 105(a) of the Bankruptcy Code, a court "may issue any order, process, or judgment that is necessary or appropriate to carryout the provisions of this title." 11 U.S.C. § 105(a).

18. In the Debtors' business judgment, the Settlement is a value maximizing outcome for their estates. The Settlement reduces the estates' potential liabilities with respect to Pulte, creates certainty in the Debtors' efforts to monetize their remaining assets, enhances near-term liquidity, and enables the Debtors to avoid potential costly and value destructive litigation.

IM-#10804169

Accordingly, entry into and performance under the Settlement Agreement satisfies the standard set forth in section 363(b) of the Bankruptcy Code and should be approved.

## II.     The Settlement Agreement Satisfies the Standards of Bankruptcy Rule 9019

19.     Bankruptcy courts may approve a settlement in accordance with Bankruptcy Rule 9019, which provides that "[o]n motion by the [debtor] and after notice and a hearing, the court may approve a compromise or settlement." Fed. R. Bankr. P. 9019. "Compromises are a normal part of the process of reorganization," *Protective Comm. for Indep. S'holders of TMT Trailer Ferry Inc., v. Anderson*, 390 U.S. 414, 424 (1968) (internal quotations omitted), and are "'desirable and wise methods of bringing to a close proceedings otherwise lengthy, complicated and costly.'" *In re ASARCO LLC*, No. 05-21207, 2009 WL 8176641, at *9 (Bankr. S.D. Tex. June 5, 2009) (quoting *Rivercity v. Herpel (In re Jackson Brewing Co.)*, 624 F.2d 599, 602 (5th Cir. 1980)).

20.     In determining whether to approve a settlement, the Fifth Circuit directs bankruptcy courts to apply a three-factor test with a focus on comparing "the terms of the compromise with the likely rewards of litigation." *In re Age Refining, Inc.*, 801 F.3d 530, 540 (5th Cir. 2015) (citing *Rivercity v. Herpel (In re Jackson Brewing Co.)*, 624 F.2d 599, 607 (5th Cir. 1980)). A bankruptcy court should evaluate: (a) the probability of success in the litigation, with due consideration for the uncertainty in fact and law; (b) the complexity and likely duration of the litigation and any attendant expense, inconvenience, and delay; and (c) all other factors bearing on the wisdom of the compromise. *See In re Age Refining*, 801 F.3d at 540 (citing *Jackson Brewing Co.*, 624 F.2d at 602); *see also In re Cajun Elec. Power Coop., Inc.*, 119 F.3d 349, 356 (5th Cir. 1997) (citing same); *In re Superior Offshore Int'l, Inc.*, 2009 WL 1507135, at *2 (S.D. Tex. May 28, 2009). Furthermore, the Fifth Circuit has specified two of the "other" factors that bear on the wisdom of the compromise including (a) "the best interest of creditors, with proper deference to their reasonable views"; and (b) "the extent to which the settlement is truly the product of arms-length

bargaining, and not of fraud or collusion." *In re Age Refining*, 801 F.3d at 540 (quoting *In re Cajun Elec. Power Coop.*, 119 F.3d at 356).

21. "In evaluating a Rule 9019 settlement, a bankruptcy court need not conduct a minitrial to determine the probable outcome of any claims waived in the settlement." *In re Age Refining*, 801 F.3d at 541 (internal quotations omitted). Rather, "[t]he judge need only apprise himself of the relevant facts and law so that he can make an informed and intelligent decision." *In re Cajun Elec. Power Coop.*, 119 F.3d at 356; *see also TMT Trailer Ferry*, 390 U.S. at 425 (noting that a court should "compare the terms of the compromise with the likely rewards of litigation"). The court must canvas the issues and determine only whether the settlement "falls below the lowest point in the range of reasonableness." *In re W.T. Grant Co.*, 699 F.2d 599, 608 (2d Cir. 1983).

### 1. Probability of Success in Litigation is Uncertain in Fact and Law

22. *First,* the probability of success in any litigation between the Parties is unknown given the various disputes over both factual and legal issues between the Debtors and Pulte. Litigation, by its nature, leads to an inherently uncertain outcome. The Settlement Agreement reaches a negotiated resolution of all of these disputes, thus avoiding the cost and time of litigation as well as any potential exposure from an adverse ruling, all of which inure to the benefit of the estates.

### 2. Complexity and Likely Duration of the Litigation and Any Attendant Expense, Inconvenience and Delay Would be High

23. *Second,* the Debtors and their limited management team would need to spend significant time and expend valuable estate resources to litigate the issues between the Parties. This Settlement resolves disputes relating to Pulte's claims arising from the NMSA as well as Pulte's claims under an April 2025 prepetition sale agreement, for which Pulte alleges the right to setoff against funds it holds for SEC under the NMSA. Resolving these disputes would necessarily

involve drawn out litigation and detailed discovery related to hundreds of home closings and inventory lists, which would take several months and involve depositions and trial testimony, all of which would reduce distributions available for creditors and delay the conclusion of these chapter 11 cases. Accordingly, the Debtors submit that the resolution embodied in the Settlement Agreement weighs in favor of compromise under the circumstances of these chapter 11 cases.

### 3. All of the Other Relevant Factors Support Approval of the Settlement Agreement

24. *Finally,* all of the other relevant factors support approval of the Settlement, including that the Settlement is in the best interest of creditors and was negotiated in good faith and at arm's length. The Settlement allows the Debtors to avoid costly and time-consuming litigation by resolving a large, allegedly secured (by setoff rights) claim asserted against the estates and immediately monetize Systems for which SEC would otherwise receive payment over a period of many months, thus clearing the path for the effectuation of a Plan and ultimate conclusion of these chapter 11 cases. The Settlement terms were negotiated by and between sophisticated parties, at arm's length, and are not the product of fraud or collusion. Accordingly, this factor supports approval of the Settlement.

25. For the foregoing reasons, the Debtors submit that the resolution embodied in the Settlement Agreement is beneficial to the estates, falls above the lowest point in the range of reasonableness, and should be approved.

### Request for Bankruptcy Rule 6004 Waivers

26. The Debtors request a waiver of any applicable notice requirements under Bankruptcy Rule 6004(a) and any stay of the order granting the relief requested herein pursuant to Bankruptcy Rule 6004(h). As explained above, the relief requested herein is necessary to avoid immediate and irreparable harm in the form of litigation relating to the Pulte claims, which would

be to the detriment of the Debtors and their estates.  Accordingly, ample cause exists to justify the waiver of the notice requirements under Bankruptcy Rule 6004(a) and the 14-day stay imposed by Bankruptcy Rule 6004(h), to the extent such notice requirements and such stay apply.

## Reservation of Rights

27. Nothing contained herein or any action taken pursuant to the relief requested is intended to be or shall be construed as, other than as explicitly stated in the Settlement Agreement, (a) an admission as to the validity of any claim against the Debtors; (b) a waiver of the Debtors' or any party in interest's rights to dispute the amount of, basis for, or validity of any claim or interest under applicable law or non-bankruptcy law; (c) a promise or requirement to pay any claim; (d) a waiver of the Debtors' or any other party in interest's rights under the Bankruptcy Code or any other applicable law; (e) a request for or granting of approval for assumption of any agreement, contract, program, policy, or lease under section 365 of the Bankruptcy Code; or (f) an admission as to the validity, priority, enforceability, or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estates.  Likewise, if the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended to be and should not be construed as an admission to the validity of any claim or a waiver of the Debtors' or any party in interest's rights to subsequently dispute such claim.

## Emergency Relief

28. The Debtors request emergency consideration of this Motion.  Pulte desires to clarify title to the Systems as quickly as possible.  Likewise, the Debtors desire the turnover of their accounts receivable as well as the acceleration of payment on remaining Systems as soon as

IM-#10804169

possible. Given that Pulte is the only possible buyer of the Systems that are installed on Pulte owned and/or built homes,[3] the Parties see no reason to delay the settlement of their disputes.

## Notice

29. The Debtors will provide notice of this Motion to the following parties or their respective counsel: (a) the Office of the United States Trustee for the Southern District of Texas; (b) the holders of the thirty largest unsecured claims against the Debtors (on a consolidated basis); (c) Paul, Weiss, Rifkind, Wharton & Garrison LLP, counsel to the Ad Hoc Group of Certain Noteholders; (d) Norton Rose Fulbright US LLP, counsel to GoodFinch Management, LLC; (e) White & Case LLP, counsel to Atlas, as SLA Lender and TEPH Lender; (f) Milbank LLP, counsel to the KKR Term Loan Lenders; (g) Davis Polk & Wardwell LLP, counsel to the Ad Hoc Group of ABS Lenders; (h) Schulte Roth & Zabel LLP, counsel to the Special Committee of the Board of Directors of Sunnova TEP Holdings, LLC, and co-counsel to Sunnova TEP Holdings, LLC and its subsidiaries; (i) the United States Attorney's Office for the Southern District of Texas; (j) the Internal Revenue Service; (k) the United States Securities and Exchange Commission; (l) the state attorneys general for states in which the Debtors conduct business; and (m) any party that has requested notice pursuant to Bankruptcy Rule 2002. In light of the nature of the relief requested, no other or further notice need be given.

[*Rest of Page Intentionally Left Blank*]

---

[3] Pulte disputes that the Debtors hold title to the Systems and reserves all rights.

WHEREFORE, the Debtors respectfully request entry of an order, substantially in the same form submitted herewith, granting the relief requested herein and such other relief as the Court deems appropriate under the circumstances.

Houston, Texas
August 8, 2025

/s/ Jason G. Cohen
**BRACEWELL LLP**
Jason G. Cohen (TX Bar No. 24050435)
Jonathan L. Lozano (TX Bar No. 24121570)
711 Louisiana Street, Suite 2300
Houston, Texas 77002
Telephone:    (713) 223-2300
Facsimile:     (800) 404-3970
Email:           jason.cohen@bracewell.com
                    jonathan.lozano@bracewell.com

*Co-Counsel to the Debtors*
*and Debtors in Possession*

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Anup Sathy, P.C. (admitted *pro hac vice*)
333 West Wolf Point Plaza
Chicago, Illinois 60654
Telephone:    (312) 862-2000
Facsimile:     (312) 862-2200
Email:           anup.sathy@kirkland.com

-and-

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Brian Schartz, P.C. (TX Bar No. 24099361)
Ciara Foster (admitted *pro hac vice*)
Margaret Reiney (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
Telephone:    (212) 446-4800
Facsimile:     (212) 446-4900
Email:           brian.schartz@kirkland.com
                    ciara.foster@kirkland.com
                    margaret.reiney@kirkland.com

*Co-Counsel to the Debtors*
*and Debtors in Possession*

IM-#10804169

**Certificate of Accuracy**

I certify that the foregoing statements are true and accurate to the best of my knowledge. This statement is being made pursuant to Bankruptcy Local Rule 9013-1(i).

*/s/ Jason G. Cohen*
Jason G. Cohen

**Certificate of Service**

I certify that on August 8, 2025, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

*/s/ Jason G. Cohen*
Jason G. Cohen

IM-#10804169