IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| In re: ) | Chapter 11 |
| ) | |
| SUNNOVA ENERGY INTERNATIONAL ) | Case No. 25-90160 (ARP) |
| Inc., et al., ) | |
| ) | (Jointly Administered) |
| Debtors. ) | |
| ) | |

**EMERGENCY MOTION
TO RECONSIDER AND, ALTERNATIVELY, FOR RELIEF FROM
<u>ORDER AUTHORIZING SALE OF ASSETS</u>
[Relates to ECF No. 599]**

**Emergency relief has been requested. Relief is requested not later than 5 p.m. on August 19, 2025.**

**If you object to the relief requested or you believe that emergency consideration is not warranted, you must appear at the hearing if one is set, or file a written response prior to the date that relief is requested in the preceding paragraph. Otherwise, the Court may treat the pleading as unopposed and grant the relief requested.**

Enterprise Bank & Trust ("Enterprise"), a creditor in the above-captioned bankruptcy cases, respectfully moves this Court to reconsider, or grant Enterprise relief from, its *Order (I) Authorizing the Sale of Certain of the Debtors' Assets to the Stalking Horse Bidder Free and Clear of All Liens, Claims, Encumbrances, and Interest, (II) Authorizing the Debtors to Perform their Obligations under the Asset Purchase Agreement, (III) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, and (IV) Granting Related Relief* (the "Sale Approval Order") [ECF No. 599] that the Court entered on or about July 31, 2025. In support of this Motion, Enterprise respectfully states as follows:

34795297

## I.   INTRODUCTION

1. Enterprise seeks reconsideration of the Court's entry of the Sale Approval Order or relief from the Sale Approval Order because the Debtors failed to disclose to creditors and the Court the structure and ramifications of the sale transaction. In particular, the Debtors failed to disclose that the sale transaction calls for the sale of assets owned by non-debtors and will result in recapture of tax credits to the material detriment of Enterprise and others who purchased tax credits for projects owned by the Debtors and their affiliates. Enterprise and other creditors were left largely in the dark regarding the details of the sale transaction and serious questions remain whether the proposed sale is truly in the best interest of the Debtors' estates.

2. This Motion is brought pursuant to Bankruptcy Rules 9023 (which incorporates Federal Rule of Civil Procedure 59) and 9024 (which incorporates Federal Rule of Civil Procedure 60). These rules permit the Court to alter, amend, or otherwise grant relief from a bankruptcy court order.

## II.   BACKGROUND

**A. The sale of Debtors' and non-debtors' property.**

3. On June 1, 2025, Debtor Sunnova TEP Developer, LLC ("Sunnova TEP") filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") and, on June 8, 2025, Debtors Sunnova Energy Corporation ("SEC"), Sunnova Energy International Inc. ("SEI"), and Sunnova Intermediate Holdings, LLC ("SIH") each filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. Sunnova TEP, SEC, SIH and SEI are collectively referred to herein as the "Debtors." None of the Debtors' numerous other subsidiaries and affiliates are Debtors in these jointly administered proceedings.

4. On June 12, 2025, the Debtors filed their *Emergency Motion for Entry of an Order (I) Approving the Bidding Procedures, (ii) Scheduling Certain Dates with Respect*

2

*Thereto, (III) Approving the Form and Manner of Notice Thereof, (IV) Approving the Wholeco Stalking Horse Agreement and Expense Reimbursement, (V) Establishing Notice and Procedures for the Assumption and Assignment of Executory Contracts and Unexpired Leases, (VI) Authorizing the Assumption and Assignment of Assumed Executory Contracts and Unexpired Leases, (VII) Authorizing the Sale of Assets, and (VIII) Granting related Relief* (the "Sale Motion") [ECF No. 113].

5. Enterprise learned only after the entry of the Sale Approval Order that the Sale Motion lacks critical details rendering it materially incomplete and, with the benefit of subsequent information, misleading. In Paragraph 14 of the Sale Motion, Debtors misleadingly state that the "Stalking Horse Bidder proposes to acquire substantially all of the **Debtors'** assets …." and do not mention non-debtor affiliates. The remainder of the Sale Motion vaguely describes a complex sale transaction (the "Sale Transaction") involving a sale by the "Sellers" of the "Acquired Assets." Paragraph 15 of the Sale Motion defines "Sellers" as "[t]he Persons set forth on Annex I of the . . . Stalking Horse Agreement." However, the Debtors did not attach Annex I to either the Stalking Horse Agreement or the Sale Motion. *See* ECF No. 113. The Debtors further failed to describe in the Sale Motion the potential ramifications of the Sale Transaction on third-parties (like Enterprise) that have purchased tax credits from the Debtors or their affiliates.

6. On June 20, 2025, the Debtors filed a *Notice of Filing of Wholeco Stalking Horse Agreement and Proposed Sale Order* [ECF No. 238] (the "APA"). As with the Sale Motion, the APA does not include Annex I and, thus, fails to identify the Sellers that are parties to the APA.

7. On July 31, 2025, the Court held a hearing to consider approval of the Sale Motion and later the same day entered the Sale Approval Order, approving a sale of assets

3

(described in the APA as the "Acquired Assets") owned by the Debtors and, as Enterprise later learned, numerous undisclosed non-debtor parties to an ad hoc group of their secured lenders (collectively, the "Purchasers").

8. The Sale Approval Order provides the Purchasers with the benefits and protections of 11 U.S.C. § 363(m), which is available only to purchasers of a debtor's assets, even though the Purchasers in this case are acquiring assets from non-debtors.

9. To date, the Debtors have failed to publicly disclose Annex I to the APA. As a result it is impossible for parties-in-interest to know what assets have been sold and by what parties, some of which are non-debtors and not subject to the benefits and protections of Bankruptcy Code Section 363.

**B. Debtors' generation and sale of tax credits to Enterprise.**

10. Prior to the Petition Date, in the normal course of its business, Sunnova TEP placed in service certain residential solar photovoltaic projects located in the United States and its territories (collectively, the "Projects"). *See* ECF No. 17 (First Day Declaration). The Projects are eligible for federal income tax credits under Section 48 of the Internal Revenue Code of 1986, as amended (the "Tax Code") in the taxable year or years that such Projects are placed in service (the "Tax Credits"). The Tax Credits are computed as an applicable percentage of the eligible basis of each Project at the time such Project is placed in service. Sunnova TEP or its affiliates may either (a) use the tax credits themselves, or (b) pursuant to Section 6418 of the Tax Code, sell the Tax Credits to unrelated third parties who use the tax Credits in connection with their own tax liabilities. Upon recapture, Enterprise is exposed to liability for extra tax.

11. On September 30, 2024, Enterprise purchased some of Sunnova TEP's tax credits pursuant to a Tax Credit Purchase Agreement dated the same date between Sunnova TEP and Enterprise (the "Tax Credit Purchase Agreement"). Enterprise purchased $6,071,032 of Sunnova

TEP's Tax Credits for the taxable year 2023 and $26,366,459 of Sunnova TEP's Tax Credits for the taxable year 2024 (collectively, the "Purchased Tax Credits"). Enterprise claimed the Purchased Tax Credits on its federal income tax returns for its taxable years ended 2023 and 2024.

12. Pursuant to Section 50 of the Tax Code, and related Treasury Regulations, the Tax Credits are subject to recapture during a 5-year recapture period, beginning in the year the Projects are placed in service, to the extent that one or more Projects is disposed of, or otherwise ceases to be investment credit property. Each of the Projects related to the Purchased Tax Credits is owned by a non-debtor affiliate of the Debtors. The recapture amount is 100% in the year of placement in service and declines by 20% per year through year 5. Under applicable law, a renewable energy project is "disposed of" by a sale of the project by the owner during the recapture period.

13. To protect Enterprise from losses associated with a Tax Credit recapture, TEP agreed in the Tax Credit Purchase Agreement to indemnify Enterprise for any losses it sustained as a result of a recapture or disallowance of the Purchased Tax Credits (the "Sunnova TEP Indemnity Obligations"). Contemporaneously, SEC executed a Guaranty (the "Guaranty") whereby SEC guaranteed the Sunnova TEP Indemnity Obligations.

14. Enterprise filed Proofs of Claim in this Bankruptcy to preserve its claims against Debtors in the event of recapture. *See* Proofs of Claim Nos. 888 & 984.

**C. Debtors' failure to disclose details of the Sale Transaction.**

15. The Debtors failed to inform Enterprise or its advisors of the pertinent details of the Sale Transaction, including the identity of the Sellers or whether the Sale Transaction included Projects that would cause a recapture of the Purchased Tax Credits. As a result,

Enterprise was unaware that the Sale Transaction would trigger a recapture liability to Enterprise.

16. Enterprise first learned of the identity of the Sellers on July 31, 2025, seven (7) days *after* the final day to file an objection to the Sale Motion and *after* the hearing on the Sale Motion had concluded. Moreover, even at that late date, the Debtors still did not identify the Projects that would be included in the Sale Transaction. In fact, the Debtors first definitively advised Enterprise that the Sale Transaction would (a) include a sale of the Projects owned by non-debtor affiliates, and (b) likely result in a recapture of the Purchased Tax Credits on Monday, August 11, 2025. Indeed, prior to August 11, 2025, the Debtors led Enterprise to believe that the Sale Transaction would *NOT* involve the sale of any of the Projects and would *NOT* result in a recapture of the Purchased Tax Credits.

17. Further, the Sale Motion did not describe Sunnova TEP's and SEC's obligations for recaptured Tax Credits, thus depriving the Court of information it needed to fully and fairly assess whether the Sale Transaction was in the best interests of the Debtors' estates.

18. Because of the Debtors' inadequate disclosure, their total lack of transparency, and even their assurances to Enterprise that the Sale Transaction would not trigger a recapture of the Purchased Tax Credits, Enterprise did not object to the Sale Motion.

**D. Ambiguities in the APA regarding the Purchasers' assumption of liabilities relating to tax recapture.**

19. Now Enterprise is aware that the Sale Transaction will likely result in a recapture of the Purchased Tax Credits, however it still has unanswered questions about the Sale Transaction. For instance, Sections 1.3(c) and 1.4(m) of the APA, read together, appear to obligate the Purchasers to assume all liabilities for taxes relating to a recapture of the Purchased Tax Credits.

20. Under Section 1.3(c) of the APA, Purchasers agree to assume "all Liabilities for Taxes with respect to the Acquired Assets for any taxable period (or portion thereof) beginning after the Closing Date." For federal income tax purposes, a tax liability arises only upon an assessment by the Internal Revenue Service. "An assessment is a recording of the amount a taxpayer owes the government, and serves as the official record of the liability." *See Hibbs v. Winn*, 542 U.S. 88 (2004) ("the assessment is the official recording of liability that triggers levy and collection efforts."); *Cohen v. Gross*, 316 F.2d 521 (3d Cir. 1963) ("assessment is a prescribed procedure for officially recording the fact and the amount of a taxpayer's administratively determined tax liability, with consequences somewhat similar to the reduction of a claim to judgment.")

21. Section 1.4(m) of the APA excludes "all Liabilities of the Sellers or any of their Subsidiaries incurred in connection with or arising out of the sale of ITCs [defined as investment tax credits] to any third party, including any indemnification obligations arising with respect to such sales, including as a result of the recapture of any such ITCs, in each case, ***other than Liabilities arising as a result of an action taken by or, to the extent reasonably expected to result in recapture of any ITCs***, an inaction of Purchasers or the Acquired Entities after the Closing[.]" (emphasis added). Consequently, the assessment triggering Enterprises' tax liability arises only after the closing date of the Sale Transaction.

22. Taken together, Sections 1.3(c) and 1.4(m) say that the Purchasers assume Liabilities for Taxes with respect to any tax liability arising after the Closing Date. Since the assessment of Taxes incurred by the tax recapture will arise after the Closing Date, such liabilities are "Assumed Liabilities" and the Purchasers are obligated to reimburse Enterprise for the extra tax it must pay as a result of the recapture. Moreover, under Section 1.4(m) of the APA,

7

Purchasers did *not* exclude any Liability that arises as a result of an action taken or is reasonably expected to result in recapture of any investment tax credits. The exclusion is clearly marked by commas as an independent, self-executing exclusion. The sale of the specified assets is an action that will likely result in recapture and, therefore, is a Liability of Purchaser under the APA.

23. If the Purchasers are, indeed, assuming the Sellers' liabilities as a result of a recapture of the Purchased Tax Credits, Enterprise requests that the Sale Approval Order be amended to clarify the Purchasers' indemnification obligations. Without such clarification, it is unclear who will have recapture indemnification liability to Enterprise (and others who also purchased investment tax credits from the Debtors).

**E. Impact of a recapture of tax credits on the Debtors' Estates.**

24. Unless the Purchasers assume the Sellers' liabilities as a result of a recapture of the Purchased Tax Credits, Enterprise will have claims against Sunnova TEP and SEC, each in the amount of approximately $25 million. *See* Proofs of Claim Nos. 888 & 984.

25. Upon information and belief, the Debtors have sold a substantial amount of investment tax credits to other parties that may also be adversely affected by the Sale Transaction and that may also have claims against the Debtors as a result of tax credit recapture.

26. The Debtors' lack of transparency extends beyond their failure to timely identify the "Sellers" or the assets to be sold. Because Sunnova TEC and SEC are jointly severally liable for tax recapture damages suffered by Enterprise and other similarly situated tax credit purchasers, the Court could not assess the magnitude of additional claims against the estates caused by the Sale Transaction. Because the Debtors neither disclosed nor analyzed these additional claims, it is unclear whether the Sale Transaction is in the best interests of the estates and their creditors.

## III. RELIEF REQUESTED

27. Cause exists under Bankruptcy Rule 9023 (incorporating Federal Rule of Civil Procedure 59) for the Court to reconsider its entry of the Sale Approval Order on the grounds that: (a) the Debtors failed to provide creditors and parties-in-interest, including Enterprise, with a clear, complete and accurate description of the sale structure and its impact on parties-in-interest; (b) the Sale Approval Order purports to provide the Purchasers with the protections provided only to purchasers of assets from *debtors* under Bankruptcy Code Section 363 even though the Purchasers are acquiring assets from both Debtors and *non-debtors*; (c) the APA and the Sale Approval Order contain ambiguities with respect the Purchasers' assumption of liabilities relating to the recapture of investment tax credits; and (d) doubt exists whether the Sale Transaction is in the best interest of the Debtors' estates given the uncertainties regarding the effect of the Sale Transaction on the recapture of investment tax credits sold by the Debtors and their affiliates.

28. Likewise, cause exists for the Court to afford Enterprise relief from the Sale Approval Order under Bankruptcy Rule 9024 and Federal Rule of Civil Procedure 60 on the grounds that: (a) Enterprise has been unfairly surprised by the structure of, and impact on Enterprise and other parties-in-interest, of the Sale Transaction; and (b) Enterprise was not afforded a meaningful opportunity to object to and clarify the structure of and impact on Enterprise and other parties-in-interest.

29. Enterprise requests the Court reconsider and vacate the Sale Approval Order and require the Debtors to clarify and notify parties-in-interest of the impact of the Sale Transaction on investment tax credits sold by the Debtors, to clarify whether the Purchasers are assuming the liability resulting from a recapture of investment tax credits, and for the Court to consider

whether, in light of the impact of a recapture of investment tax credits on the estate, the Sale Transaction is still in the best interest of the estates.

### IV.  ARGUMENT AND AUTHORITY

A.  **Reconsideration of the Sale Approval Order is warranted.**

    i.  **Legal Standards Applicable to Motions under Rule 9023**

30.  Federal Rule of Bankruptcy Procedure 9023 makes Federal Rule of Civil Procedure 59 applicable to bankruptcy cases. FED. R. BANKR. P. 9023. A motion under Rule 59(e)/Rule 9023 "is not controlled by the same exacting substantive requirements[]" as motions under Rule 60(b)/Rule 9024. *See In re Berg*, 383 B.R. 631, 639 (Bankr. W.D. Tex. 2008) (citing *Smith v. Morris & Manning,* 657 F.Supp. 180, 181 (S.D. N.Y. 1987)). "Rule 59(e) motions provide relief for the movant on grounds at least as broad as Rule 60 motions." *In re Berg*, 383 B.R. at 639 (citing *Lavespere v. Niagara Machine & Tool Works, Inc.,* 910 F.2d 167). "Rule 59(e), therefore, provides district courts with the power to consider equitable factors and provide relief for 'any ... reason justifying relief from the operation of the judgment.'" *In re Berg*, 383 B.R. at 639 (citing FED. R. CIV. P. 60(b)(6); *Liljeberg v. Health Services Acquisition Corp.,* 486 U.S. 847, 863–64 (1988)).

31.  Rule 59(e) allows "a party to correct manifest errors of law or fact or to present newly discovered evidence." *In re Berg*, 383 B.R. at 639 (citing *Templet v. HydroChem Inc.,* 367 F.3d 473, 479 (5th Cir. 2004)).

    ii.  **Debtors' failure to provide a clear, accurate, and complete description of the Sale Transaction's structure and impact on parties-in-interest justifies reconsideration of the Sale Approval Order.**

32.  In the APA and Sale Motion, the Debtors failed to provide creditors, including Enterprise, with a clear, accurate, and complete description of the sale structure and an

explanation of the impact on creditors, such as Enterprise, that purchased tax credits from the Debtors or their non-debtor affiliates.

33. Enterprise first learned on August 11, 2025, more than 10 days after the Sale Approval Order was entered, that the Sale Transaction would (a) include a sale of the Projects owned by non-debtor affiliates, and (b) likely result in a recapture of the Purchased Tax Credits. This recent disclosure of the impact of Sale Transaction constitutes new evidence justifying reconsideration of the Sale Approval Order.

34. Specifically, the Court should reconsider whether the Sale Transaction is still in the best interests of the Debtors' Estates based on the new information Debtors provided on August 11, 2025. It is now clear, and was not clear at the time the Sale Approval Order was entered, that the Sale Transaction will result in Enterprise's $25 million claims against two of the Debtors, and likely other high-dollar claims from other parties-in-interest who purchased tax credits from the Debtors. This significant impact on the Debtors' estates, which was not previously disclosed, justifies the Court's reconsideration of whether the Sale Transaction is still in the best interests of the estate.

      **iii. The Sale Approval Order's improper protections for purchasers of non-debtor assets under Section 363 justifies reconsideration.**

35. The protections of Bankruptcy Code Section 363(m) apply only to purchasers of a debtor's property. *See In re Centennial Beverage Group, LLC*, No. 12-37901-BJH-11, 2013 WL 769688, at *2 (Bankr. N.D. Tex. Jan. 18, 2013).

36. On its face, the Sale Approval Order is improper because it affords the Purchasers the protections of Section 363(m) by authorizing the APA which includes assets owned by non-debtor affiliates.

37. This protection for the Purchasers under the Sale Approval Order is a manifest error of law justifying the Court's reconsideration of the Sale Approval Order.

### iv. The APA's ambiguities regarding the Purchasers' liabilities for tax recapture justifies reconsideration of the Sale Approval Order.

38. The APA does not provide Enterprise, or other creditors, with necessary certainty about which party will remain liable for Debtors' indemnity obligations related to their pre-petition sale of investment tax credits. The APA appears to shift Debtors' indemnity obligations for recapture of investment tax credits to Purchasers, but the Sale Approval Order does not state that.

39. Without clarification, Enterprise is unable to determine whether the Sale Transaction will result in Enterprise having liquidated $25 million claims against the two of the Debtors, or whether Enterprise can look to Purchasers to satisfy its tax recapture damages triggered by the Sale Transaction.

40. If Debtors' indemnity and guaranty obligations remain with the Debtors, there is a question as to whether the Sale Transaction is in the best interests of the Debtors' estates, thereby warranting the Court's reconsideration of the Sale Approval Order.

**B. Enterprise should be afforded relief from the Sale Approval Order.**

### i. Legal Standards Applicable to Motions under Rule 9024

41. Federal Rule of Bankruptcy Procedure 9024 makes Federal Rule of Civil Procedure 60 applicable to bankruptcy cases. FED. R. BANKR. P. 9024. Rule 60(b) provides that a "court may relieve a party … from a final … order … for the following reasons: ... (1) mistake, inadvertence, surprise, or excusable neglect; [or] ... (6) any other reason that justifies relief." FED. R. CIV. P. 60(b).

42. "[M]istake or surprise [Under Rule 60(b)(1)] may be found in circumstance where there is some reason for confusion or misunderstanding by the parties." *In re Walker*, 332 B.R. 820, 829 (Bankr. D. Nev. 2005) (citing MOORE'S FED. PRAC. 3d ¶ 60.41[1][a] (2005)).

43. Rule 60(b)(6), in particular, is a general catch-all phrase and is reserved for "extraordinary circumstances." *Buck v. Davis*, 580 U.S. 100, 123 (2017) (citation omitted); *Diaz v. Stephens*, 731 F.3d 370, 374 (5th Cir. 2013) (same). Rule 60(b)(6) has been referred to as "a grand reservoir of equitable power to do justice in a particular case." *In re Strudel Holdings LLC*, 656 B.R. 404, 409 (Bankr. S.D. Tex. 2024) (quoting *Yesh Music v. Lakewood Church*, 727 F.3d 356, 363 (5th Cir. 2013)). "The United States Supreme Court has held that 'it provides courts with authority 'adequate to enable them to vacate judgments whenever such action is appropriate to accomplish justice,' ... while also cautioning that it should only be applied in 'extraordinary circumstances' ...." *In re Strudel Holdings LLC*, 656 B.R. at 409 (quoting *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 864 (1988)).

    **ii. Enterprise has been unfairly surprised under Rule 60(b)(1).**

44. Bankruptcy Rule 2002(a)(2) requires at least 21 days' notice of a proposed sale of estate property outside the ordinary course of business. Local Rule 2002-1 of the Southern District of Texas mandates that notice under Rule 2002(a)(2) must be given by the proponent of the sale, and must comply with the Court's procedures.

45. As discussed above, the Debtors failed to provide creditors, including Enterprise, with a clear and complete description of the sale structure and an explanation of the impact on creditors, such as Enterprise, that purchased tax credits from the Debtors or their non-debtor affiliates until August 11, 2025, more than 10 days after the Sale Approval Order was entered.

46. That day, Enterprise first learned that the Sale Transaction would (a) include a sale of the Projects owned by non-debtor affiliates, and (b) likely result in a recapture of the

Purchased Tax Credits. Had Enterprise been made aware of these components of the Sale Transaction earlier, Enterprise could have timely objected to the Sale Motion and protected its rights.

47. This confusion and misunderstanding regarding the Sale Transaction's impact on Projects owned by non-debtor affiliates and the ensuing recapture of investment tax credits, caused by Debtors' failure to comply with Rule 2002(a)(2) and Local Rule 2002-1, constitutes unfair surprise to Enterprise and similarly situated parties justifying relief from the Sale Approval Order under Federal Rule of Civil Procedure 60(b)(1).

### iii. The circumstances surrounding the Sale Approval Order justify relief for Enterprise.

48. The structure of the Sale Transaction includes the sale of Projects owned by non-debtor affiliates, which triggers recapture of the Purchased Credits. Further, such recapture will result in claims against two of the Debtors by Enterprise of more than $25 million each. Enterprise did not learn this fact until after the Court approved the Sale Transaction. There are likely other creditors who will hold indemnity and guaranty claims in large dollar amounts that arise from the Sale Transaction, and may still be unaware of the impact of the Sale Transaction because the information is not publicly available to parties-in-interest.

49. Had Enterprise known that the Sale Transaction would trigger recapture of the Purchased Tax Credits and result in its indemnity and guaranty claims against the estates when the Sale Transaction was originally proposed in the Sale Motion, Enterprise, and likely other creditors, would have come forward to raise their concerns with the Court by objecting to the Sale Motion. Such objections would have called into question whether the Sale Transaction was in the best interests of the estates given that it will generate high-dollar indemnity and guaranty claims against the estates.

50. Because the full impact and the recapture of the Purchase Tax Credits, and tax credits held by other creditors has now come to light, the Court should reach into its "grand reservoir of equitable power" to grant Enterprise, and other creditors, relief from the Sale Approval Order under Rule 60(b)(6). Specifically, the Court should vacate the Sale Approval Order and reconsider whether the Sale Transaction is still in the best interests of the estates.

## V. PRAYER

WHEREFORE, for the reasons set forth above, Enterprise requests the Court to reconsider and vacate the Sale Approval Order and to require the Debtors to clarify and notify parties-in-interest of the impact of the Sale Transaction on investment tax credits sold by the Debtors, to clarify whether the Purchasers are assuming the liability resulting from a recapture of investment tax credits, and for the Court to consider whether, in light of the impact of a recapture of investment tax credits on the estates, the Sale Transaction is still in the best interest of the estates.

Respectfully submitted this 14th day of August, 2025.

                           **THOMPSON COBURN LLP**

By: */s/ Katharine Battaia Clark*
     Katharine Battaia Clark, TX Bar No. 991313
     Thompson Coburn LLP
     2100 Ross Avenue, Ste. 3200
     Dallas, TX  75201
     Phone:  972-629-7100
     Facsimile: 972-629-7171
     kclark@thompsoncoburn.com

     and

     Mark V. Bossi, MO Bar #37008
     (Pro Hac Vice pending)
     Thompson Coburn LLP
     One US Bank Plaza
     St. Louis, MO 63101
     Phone:  314-552-6015
     Facsimile: 314-552-7000
     mbossi@thompsoncoburn.com

     **COUNSEL FOR**
     **ENTERPRISE BANK & TRUST**

## CERTIFICATE OF SERVICE

    I hereby certify that a true and correct copy of the above and foregoing instrument has been served electronically via the Court's ECF noticing system on those parties who receive notice from that system on this 14th day of August, 2025.

                                    */s/ Katharine Battaia Clark*
                                    Katharine Battaia Clark