**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| SUNNOVA ENERGY INTERNATIONAL INC., *et al.*,[1] | ) ) | Case No. 25-90160 (ARP) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**JOINT CHAPTER 11 PLAN OF SUNNOVA ENERGY INTERNATIONAL INC**
**AND ITS DEBTOR AFFILIATES PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY**
**CODE**

**BRACEWELL LLP**
Jason G. Cohen (TX Bar No. 24050435)
Jonathan L. Lozano (TX Bar No. 24121570)
711 Louisiana Street, Suite 2300
Houston, Texas 77002
Telephone:     (713) 223-2300
Facsimile:     (800) 404-3970
Email:     jason.cohen@bracewell.com
     jonathan.lozano@bracewell.com

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Anup Sathy, P.C. (admitted *pro hac vice*)
333 West Wolf Point Plaza
Chicago, Illinois 60654
Telephone:     (312) 862-2000
Facsimile:     (312) 862-2200
Email:     anup.sathy@kirkland.com

- and -

Brian Schartz, P.C. (TX Bar No. 24099361)
Ciara Foster (admitted *pro hac vice*)
Margaret Reiney (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
Telephone:     (212) 446-4800
Facsimile:     (212) 446-4900
Email:     brian.schartz@kirkland.com
     ciara.foster@kirkland.com
     margaret.reiney@kirkland.com

*Co-Counsel to the Debtors and Debtors in Possession*

*Co-Counsel to the Debtors and Debtors in Possession*

Dated:  August 14, 2025

---

[1]     A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/Sunnova.  The location of Debtor Sunnova Energy International Inc.'s corporate headquarters and the Debtors' service address in these chapter 11 cases is 20 East Greenway Plaza, Suite 540, Houston, Texas 77046.

# TABLE OF CONTENTS

ARTICLE I. DEFINED TERMS, RULES OF INTERPRETATION, COMPUTATION OF
TIME, AND GOVERNING LAW ...........................................................................................1

    A.      Defined Terms ............................................................................................1
    B.      Rules of Interpretation ............................................................................14
    C.      Computation of Time ..............................................................................14
    D.      Governing Law .......................................................................................15
    E.      Reference to Monetary Figures................................................................15
    F.      No Substantive Consolidation .................................................................15

ARTICLE II. ADMINISTRATIVE CLAIMS AND PRIORITY TAX CLAIMS ....................15

    A.      General Administrative Claims................................................................15
    B.      DIP Claims ..............................................................................................16
    C.      Professional Fee Claims..........................................................................16
    D.      Priority Tax Claims.................................................................................17

ARTICLE III. CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS ...................17

    A.      Classification of Claims and Interests......................................................17
    B.      Treatment of Claims and Interests ..........................................................18
    C.      Special Provision Governing Unimpaired Claims....................................21
    D.      Confirmation Pursuant to Sections 1129(a)(10) and 1129(b) of the Bankruptcy
              Code .......................................................................................................21
    E.      Subordinated Claims................................................................................21
    F.      Reservation of Rights..............................................................................21
    G.      Elimination of Vacant Classes; Presumed Acceptance by Non-Voting Classes .............21
    H.      Intercompany Interests.............................................................................22
    I.      Controversy Concerning Impairment .......................................................22

ARTICLE IV. MEANS FOR IMPLEMENTATION OF THE PLAN........................................22

    A.      Settlement of Claims and Interests ..........................................................22
    B.      New Home WIP Sale ..............................................................................22
    C.      Wind Down .............................................................................................22

ARTICLE V. TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES.............26

    A.      Assumption and Rejection of Executory Contracts and Unexpired Leases .....................26
    B.      Claims Based on Rejection of Executory Contracts or Unexpired Leases.................27
    C.      Cure of Defaults for Assumed Executory Contracts and Unexpired Leases ....................27
    D.      Preexisting Obligations to the Debtors Under Executory Contracts and Unexpired
              Leases.....................................................................................................28
    E.      Insurance Policies....................................................................................28
    F.      Modifications, Amendments, Supplements, Restatements, or Other Agreements ...........29
    G.      Reservation of Rights..............................................................................29
    H.      Nonoccurrence of Effective Date.............................................................29

ARTICLE VI. PROVISIONS GOVERNING DISTRIBUTIONS ............................................29

    A.      Timing and Calculation of Amounts to Be Distributed ...................................29
    B.      Delivery of Distributions and Undeliverable or Unclaimed Distributions ...................30

C.     Compliance with Tax Requirements................................................................30
D.     Allocations.........................................................................................................31
E.     No Postpetition or Default Interest on Claims.................................................31
F.     Setoffs and Recoupment ..................................................................................31
G.     No Double Payment of Claims .........................................................................31
H.     Claims Paid or Payable by Third Parties .........................................................31

**ARTICLE VII. PROCEDURES FOR RESOLVING CONTINGENT, UNLIQUIDATED AND DISPUTED CLAIMS** ................................................................................................................32

A.     Allowance of Claims.........................................................................................32
B.     Claims Administration Responsibilities ...........................................................32
C.     Estimation of Claims.........................................................................................33
D.     Adjustment to Claims or Interests Without Objection......................................33
E.     Time to File Objections to Claims ....................................................................33
F.     Disallowance of Claims or Interests .................................................................33
G.     Amendments to Proofs of Claims or Interests ..................................................33
H.     No Distributions Pending Allowance ...............................................................33
I.     Distributions After Allowance ..........................................................................34

**ARTICLE VIII. SETTLEMENT, RELEASE, INJUNCTION, AND RELATED PROVISIONS** ............34

A.     **Release of Liens**...............................................................................................34
B.     **Releases by the Debtors** ..................................................................................34
C.     **Releases by the Releasing Parties** ..................................................................35
D.     **Exculpation** ....................................................................................................36
E.     **Injunction** ......................................................................................................36
F.     Protections Against Discriminatory Treatment ................................................37
G.     Document Retention .........................................................................................37
H.     Reimbursement or Contribution .......................................................................37
I.     Term of Injunctions or Stays.............................................................................37
J.     Good Faith Solicitation .....................................................................................38

**ARTICLE IX. CONDITIONS PRECEDENT TO CONFIRMATION AND CONSUMMATION OF THE PLAN** ................................................................................................................................38

A.     Conditions Precedent to the Effective Date .....................................................38
B.     Waiver of Conditions........................................................................................38
C.     Substantial Consummation ...............................................................................38
D.     Effect of Failure of Conditions .........................................................................38

**ARTICLE X. CREDITOR TRUST** ................................................................................................39

A.     Creation and Governance of Creditor Trust.....................................................39
B.     Purpose of Creditor Trust.................................................................................39
C.     Creditor Trust Agreement and Funding of Creditor Trust................................40
D.     Creditor Trust Professionals; Creditor Trust Fees and Expenses ....................40
E.     GUC Reconciliation Process.............................................................................40
F.     Wind Down .......................................................................................................41
G.     Creditor Trust Beneficial Interests....................................................................41
H.     Cooperation of the Debtors................................................................................41
I.     Tax Treatment of the Creditor Trust .................................................................42
J.     Fiduciary Duties.................................................................................................42

K.      Withholding ........................................................................................43
L.      Dissolution of Creditor Trust ............................................................43
M.    Transferred Privileges .......................................................................44

ARTICLE XI. MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN ...................44

A.      Modification and Amendments...........................................................44
B.      Effect of Confirmation on Modifications ..........................................44
C.      Revocation or Withdrawal of Plan.....................................................44

ARTICLE XII. RETENTION OF JURISDICTION.................................................................45

ARTICLE XIII. MISCELLANEOUS PROVISIONS ................................................................47

A.      Immediate Binding Effect..................................................................47
B.      Additional Documents .......................................................................47
C.      Payment of Unsecured Notes Trustee Fees .......................................47
D.      Payment of Statutory Fees.................................................................47
E.      Reservation of Rights.........................................................................47
F.      Successors and Assigns......................................................................47
G.      Notices ...............................................................................................48
H.      Entire Agreement...............................................................................49
I.       Exhibits .............................................................................................49
J.       Non-Severability of Plan Provisions..................................................49
K.      Closing of Chapter 11 Cases .............................................................49
L.      Conflicts ............................................................................................50
M.    SEC Carve Out..................................................................................50

## INTRODUCTION

Sunnova Energy International Inc. and the other above-captioned debtors and debtors in possession (each, a "<u>Debtor</u>" and collectively, the "<u>Debtors</u>") propose this Plan for the resolution of the outstanding claims against, and equity interests in, the Debtors. The Chapter 11 Cases have been consolidated for procedural purposes only and are being jointly administered pursuant to an order of the Bankruptcy Court. This Plan constitutes a separate chapter 11 plan for each Debtor and, unless otherwise set forth herein, the classifications and treatment of Claims and Interests apply to each individual Debtor.

Holders of Claims against and Interests in the Debtors should refer to the Disclosure Statement for a discussion of the Debtors' history, businesses, assets, results of operations, and historical financial information, projections, and future operations, as well as a summary and description of this Plan and certain related matters. Each Debtor is a proponent of the Plan contained herein within the meaning of section 1129 of the Bankruptcy Code.

### ARTICLE I.
### DEFINED TERMS, RULES OF INTERPRETATION,
### COMPUTATION OF TIME, AND GOVERNING LAW

*A.    Defined Terms*

As used in this Plan, capitalized terms have the meanings given to them below.

1.    "***2026 Convertible Notes***" means the 0.25% convertible notes due 2026 issued by SEI pursuant to the 2026 Convertible Notes Indenture.

2.    "***2026 Convertible Notes Indenture***" means that certain indenture, dated as of May 20, 2021, between Sunnova Energy International Inc., a Delaware corporation, as issuer, and Wilmington Trust, as trustee.

3.    "***2026 Convertible Notes Trustee***" means Wilmington Trust, in its capacity as the trustee under the 2026 Convertible Notes Indenture.

4.    "***2026 Convertible Noteholders***" means the holders of the 2026 Convertible Notes.

5.    "***2026 Senior Notes***" means the 5.875% senior notes due 2026 issued by Sunnova pursuant to the 2026 Senior Notes Indenture.

6.    "***2026 Senior Notes Indenture***" means that certain indenture, dated as of August 17, 2021, between Sunnova Energy Corporation, a Delaware corporation, as issuer, and Wilmington Trust, as trustee.

7.    "***2026 Senior Notes Trustee***" means Wilmington Trust, in its capacity as the trustee under the 2026 Senior Notes Indenture.

8.    "***2026 Senior Noteholders***" means the holders of the 2026 Senior Notes.

9.    "***2028 Convertible Notes***" means the 2.625% convertible notes due 2028 issued by SEI pursuant to the 2028% Convertible Notes Indenture.

10.    "***2028 Convertible Notes Indenture***" means that certain indenture, dated as of August 19, 2022, between Sunnova Energy International Inc., a Delaware corporation, as issuer, and Wilmington Trust, as trustee.

11.    "***2028 Convertible Notes Trustee***" means Wilmington Trust, in its capacity as the trustee under the 2028 Convertible Notes Indenture.

12.    "***2028 Convertible Noteholders***" means the holders of the 2028 Convertible Notes.

13.    "***2028 Senior Notes Trustee***" means Wilmington Trust, in its capacity as the trustee under the 2028 Senior Notes Indenture.

14.    "***2028 Senior Notes***" means the 11.750% senior notes due 2028 issued by Sunnova pursuant to the 2028 Senior Notes Indenture.

15.    "***2028 Senior Notes Indenture***" means that certain indenture, dated as of September 26, 2023, between Sunnova Energy Corporation, a Delaware corporation, as issuer, and Wilmington Trust, National Association, as trustee.

16.    "***2028 Senior Noteholders***" means the holders of the 2028 Senior Notes.

17.    "***Abandoned Property***" has the meaning set forth in Article V.A.

18.    "***Administrative Claim***" means a Claim against a Debtor arising on or after the Petition Date and before the Effective Date for the costs and expenses of administration of the Chapter 11 Cases under sections 503(b), 507(a)(2), 507(b), or 1114(e)(2) of the Bankruptcy Code, including:  (a) the actual and necessary costs and expenses of preserving the Estates and operating the businesses of the Debtors incurred on or after the Petition Date and through the Effective Date; (b) Allowed Professional Fee Claims in the Chapter 11 Cases; and (c) all fees and charges assessed against the Estates pursuant to section 1930 of chapter 123 of title 28 of the United States Code.  Notwithstanding anything in this Plan to the contrary, no Dealer shall be entitled to an Administrative Claim on account of work performed or amounts incurred after the Petition Date unless such Dealer obtained the express consent of the CRO, in writing, in accordance with the *Order (I) Authorizing and Approving the Private Sale of the Eligible Systems Assets Free and Clear of Liens, Encumbrances, and Other Interests, (II) Approving the Assumption and Assignment of Executory Contracts and Unexpired Leases, (III) Approving the ASPA Settlement and (IV) Granting Related Relief* [Docket No. 109].

19.    "***Administrative Claims Bar Date***" means thirty days after the Effective Date, except as specifically set forth in the Plan or a Final Order.

20.    "***Administrative Claims Objection Bar Date***" means the deadline for Filing objections to requests for payment of Administrative Claims (other than requests for payment of Professional Fee Claims and fees and charges assessed against the Estates pursuant to section 1930 of chapter 123 of title 28 of the United States Code), which shall be the later of (a) sixty days after the Effective Date and (b) sixty days after the Filing of the applicable request for payment of the Administrative Claims; *provided* that the Administrative Claims Objection Bar Date may be extended by the Bankruptcy Court after notice and a hearing.

21.    "***Administrative / Priority Claims***" means, collectively, all Allowed Administrative Claims (other than Professional Fee Claims), Allowed Priority Claims, and Allowed Other Secured Claims to the extent any such Claims are not Assumed Liabilities under the applicable Sale Transaction Documents.

22.     "*Administrative / Priority Claims Reserve*" means a segregated account established by the Debtors in accordance with Article IV.B.

23.     "*Administrative / Priority Claims Reserve Amount*" means the amount of Cash necessary to satisfy all Administrative / Priority Claims, which aggregate amount shall be funded into the Administrative / Priority Claims Reserve.

24.     "*Affiliate*" has the meaning set forth in section 101(2) of the Bankruptcy Code.  With respect to any Entity that is not a Debtor, the term "Affiliate" shall apply to such Entity as if the Entity were a Debtor.

25.     "*Allowed*" means, with respect to any Claim against or Interest in a Debtor, except as otherwise provided herein:  (a) a Claim that is evidenced by a Proof of Claim timely Filed by the Claims Bar Date or a request for payment of an Administrative Claim timely Filed by the Administrative Claims Bar Date (or for which Claim a Proof of Claim or request for payment of Administrative Claim is not or shall not be required to be Filed under the Plan, the Bankruptcy Code, or pursuant to a Final Order); (b) a Claim or Interest that is listed in the Schedules as not contingent, not unliquidated, and not disputed, and for which no contrary or superseding Proof of Claim, as applicable, has been timely Filed; (c) a Claim or Interest allowed pursuant to the Plan or a Final Order; or (d) solely with respect to General Unsecured Claims, after the Effective Date, has been allowed by written agreement of the Creditor Trustee; *provided* that with respect to a Claim described in clause (a) or (b) above, such Claim or Interest shall be considered Allowed only if and to the extent that, with respect to such Claim or Interest, no objection to the allowance thereof is interposed within the applicable period of time fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, or such an objection is so interposed and the Claim or Interest has been allowed by a Final Order.  Except as otherwise specified in the Plan or any Final Order, and except as provided in sections 506(b) or 511 of the Bankruptcy Code, an Allowed Claim shall not, for purposes of computing Plan Distributions, include interest on such Claim from and after the Petition Date. Notwithstanding anything to the contrary herein, no Claim of any Entity from which property is recoverable under sections 542, 543, 550, or 553 of the Bankruptcy Code or that is a transferee of a transfer avoidable under sections 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code shall be deemed Allowed unless and until such Entity or transferee has paid the amount, or turned over any such property, for which such Entity or transferee is liable under sections 522(i), 542, 543, 550, or 553 of the Bankruptcy Code, following an objection to a Claim filed on such grounds.  For the avoidance of doubt, except as otherwise provided in the Bar Date Order, a Proof of Claim Filed after the Claims Bar Date, or a request for payment of an Administrative Claim Filed after the Administrative Claims Bar Date, shall not be Allowed for any purposes whatsoever absent entry of a Final Order allowing such late Filed Claim. "Allow," "Allowing," and "Allowance" shall have correlative meanings.

26.     "*Assumed Executory Contracts and Unexpired Leases Schedule*" means the schedule of Executory Contracts and Unexpired Leases to be assumed by the Debtors pursuant to the Plan, if any, which shall be included in the Plan Supplement.

27.     "*Assumed Insurance Policies*" means all Insurance Policies that are not listed on the Rejected Executory Contracts and Unexpired Leases Schedule and that are not transferred to the Purchaser pursuant to a Sale Transaction that is consummated before the Effective Date.

28.     "*Assumed Liabilities*" means, in any Sale Transaction, the liabilities assumed by the Purchaser in the Sale Transaction pursuant to the terms of the applicable Sale Transaction Documents.

29.     "*Atlas Sale Motion*" means the *Debtors' Emergency Motion for Entry of an Order (I) Authorizing and Approving the Private Sale of the Eligible Systems Assets Free and Clear of Liens, Claims,*

*Encumbrances and other Interests, (II) Approving the Assumption and Assignment of Executory Contracts and Unexpired Leases, (III) Approving the ASPA Settlement and (IV) Granting Related Relief* [Docket No. 24].

30.    "**Atlas Sale Order**" means the *Order (I) Authorizing And Approving The Private Sale Of The Eligible Systems Assets Free And Clear Of Liens, Claims, Encumbrances, And Other Interests, (II) Approving The Assumption And Assignment Of Executory Contracts And Unexpired Leases; (III) Approving The ASPA Settlement And (IV) Granting Related Relief* [Docket No. 109].

31.    "**Atlas Sale Transaction**" means that sale transaction approved by the Atlas Sale Order.

32.    "**Atlas Sale Transaction Documents**" means all motions, filings, documents, agreements, and related documents pursuant to which the Debtors have effectuated the Atlas Sale Transaction.

33.    "**Avoidance Actions**" mean any and all actual or potential Claims and Causes of Action to avoid a transfer of property or an obligation incurred by the Debtors arising under the Bankruptcy Code, including sections 502, 510, 542, 544, 545, 547, 548, 549, 550, 551, 552, and 553 of the Bankruptcy Code or under similar or related state or federal statutes and common law.

34.    "**Bankruptcy Code**" means title 11 of the United States Code, 11 U.S.C. §§ 100–1532, as now in effect or hereafter amended, and the rules and regulations promulgated thereunder, as now in effect or hereafter amended, and the rules and regulations promulgated thereunder.

35.    "**Bankruptcy Court**" means the United States Bankruptcy Court for the Southern District of Texas having jurisdiction over the Chapter 11 Cases and, to the extent of the withdrawal of reference under section 157 of the Judicial Code, the United States District Court for the Southern District of Texas.

36.    "**Bankruptcy Rules**" means the Federal Rules of Bankruptcy Procedure, promulgated under section 2075 of the Judicial Code and the general, local, and chambers rules of the Bankruptcy Court.

37.    "**Bar Date Order**" means the *Order (I) Establishing Deadlines for the Filing of Proofs of Claim, (II) Approving the Form and Manner of Notice Thereof, (III) Approving the Form and Manner for Filing Proofs of Claim, and (IV) Granting Related Relief* [Docket No. 436].

38.    "**Bidding Procedures**" means the procedures governing the sale and marketing process for the Sale Transactions as approved pursuant to the Bidding Procedures Order.

39.    "**Bidding Procedures Motion**" means the *Debtors' <u>Emergency</u> Motion for Entry of an Order (I) Approving the Bidding Procedures, (II) Scheduling Certain Dates with Respect Thereto, (III) Approving the Form and Manner of Notice Thereof, (IV) Approving the WholeCo Stalking Horse Agreement and Expense Reimbursement, (V) Establishing Notice and Procedures for the Assumption and Assignment of Executory Contracts and Unexpired Leases, (VI) Authorizing the Assumption and Assignment of Assumed Executory Contracts and Unexpired Leases, (VII) Authorizing the Sale of Assets, and (VIII) Granting Related Relief* [Docket No. 113].

40.    "**Bidding Procedures Order**" means the *Order (I) Approving the Bidding Procedures, (II) Scheduling Certain Dates with Respect Thereto, (III) Approving the Form and Manner of Notice Thereof, (IV) Approving the WholeCo Stalking Horse Agreement and Expense Reimbursement, (V) Establishing Notice and Procedures for the Assumption and Assignment of Executory Contracts and Unexpired Leases, (VI) Authorizing the Assumption and Assignment of Assumed Executory Contracts and Unexpired Leases,*

*(VII) Authorizing the Sale of Assets, and (VIII) Granting Related Relief* [Docket No. 419], as may be modified, amended, or supplemented.

41.     "***Business Day***" means any day, other than a Saturday, Sunday, or "legal holiday" (as defined in Bankruptcy Rule 9006(a)(6)), or other calendar day on which banking institutions in the State of New York are closed for business as a result of a federal, state, or local holiday.

42.     "***Cash***" means cash and cash equivalents, including bank deposits, checks, and other similar items in legal tender of the United States of America.

43.     "***Cause of Action***" or "***Causes of Action***" means action, Claim, cross-claim, third-party claim, cause of action, controversy, dispute, demand, right, lien, indemnity, contribution, guaranty, suit, obligation, liability, loss, debt, fee or expense, damage, interest, judgment, cost, account, defense, remedy, offset, power, privilege, proceeding, license, and franchise of any kind or character whatsoever, known or unknown, foreseen or unforeseen, existing or hereafter arising, contingent or non-contingent, liquidated or unliquidated, secured or unsecured, assertable, directly or derivatively, matured or unmatured, suspected or unsuspected, disputed or undisputed, whether arising before, on, or after the Petition Date, in contract or in tort, in law or in equity, or pursuant to any other theory of law or otherwise.  Causes of Action also include: (a) any rights of setoff, counterclaim, or recoupment and any claims under contracts or for breaches of duties imposed by law or in equity; (b) the right to object to or otherwise contest Claims or Interests and any Claim Objections; (c) claims pursuant to section 362 or chapter 5 of the Bankruptcy Code; (d) any claims or defenses, including fraud, mistake, duress, and usury, and any other defenses set forth in section 558 of the Bankruptcy Code; and (e) any Claims under any state law or foreign law, including, without limitation, any fraudulent transfer or similar claims.

44.     "***Chapter 11 Cases***" means (a) when used with reference to a particular Debtor, the case pending for that Debtor under chapter 11 of the Bankruptcy Code and (b) when used with reference to all Debtors, the procedurally consolidated chapter 11 cases pending for the Debtors in the Bankruptcy Court.

45.     "***Claim***" means any claim, as such term is defined in section 101(5) of the Bankruptcy Code, against a Debtor or a Debtor's Estate.

46.     *"Claim Objection"* means an objection to the Allowance of a Claim as set forth in section 502 of the Bankruptcy Code, Bankruptcy Rule 3007, and/or any order of the Bankruptcy Court regarding omnibus claim objections.

47.     "***Claims and Noticing Agent***" means Kroll Restructuring Administration, LLC in its capacity as claims and noticing agent for the Debtors and any successor.

48.     "***Claims Bar Date***" means, collectively, the date established by the Bankruptcy Court in the Bar Date Order by which Proofs of Claim must be Filed with respect to such Claims, other than Administrative Claims, Claims held by Governmental Units, or other Claims for which the Bar Date Order excludes the Holders of such Claims from the requirement of Filing Proofs of Claim.

49.     "***Claims Register***" means the official register of Claims and Interests maintained by the Claims and Noticing Agent.

50.     "***Class***" means a class of Claims or Interests as set forth in <u>Article III</u> of the Plan in accordance with section 1122(a) of the Bankruptcy Code.

51.     "**Committee**" means the statutory committee of unsecured creditors of the Debtors, appointed in the Chapter 11 Cases pursuant to section 1102 of the Bankruptcy Code by the U.S. Trustee on June 18, 2025, as set forth in the *Notice of Appointment of Committee of Unsecured Creditors* [Docket No. 226].

52.     "**Confirmation**" means the Bankruptcy Court's entry of the Confirmation Order on the docket of the Chapter 11 Cases.

53.     "**Confirmation Date**" means the date upon which the Bankruptcy Court enters the Confirmation Order on the docket of the Chapter 11 Cases.

54.     "**Confirmation Hearing**" means the hearing held by the Bankruptcy Court to consider Confirmation of the Plan, pursuant to Bankruptcy Rule 3020(b)(2) and sections 1128 and 1129 of the Bankruptcy Code.

55.     "**Confirmation Order**" means the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

56.     "**Consummation**" means the occurrence of the Effective Date as to the applicable Debtor.

57.     "**Convertible Notes**" means, collectively, the 2026 Convertible Notes and the 2028 Convertible Notes.

58.     "**Convertible Notes Claim**" means any Claim arising under, related to, or in connection with the Convertible Notes.

59.     "**Convertible Notes Trustees**" means, collectively, the 2026 Convertible Notes Trustee and the 2028 Convertible Notes Trustee.

60.     "**Creditor Trust**" means the liquidating trust established on the Effective Date for the benefit of the Creditor Trust Beneficiaries in accordance with the Plan and the Creditor Trust Agreement.

61.     "**Creditor Trustee**" means the trustee for the Creditor Trust to be selected by the Debtors, in consultation with the Committee, which Person (and any successor Creditor Trustee) shall be a "United States person" within the meaning of Section 7701(a)(30) of the Tax Code.

62.     "**Creditor Trust Agreement**" means the creditor trust agreement substantially in the form to be included in the Plan Supplement.

63.     ["**Creditor Trust Assets**" means, collectively, (a) all remaining property of the Estates after payment of all Administrative / Priority Claims, Professional Fee Claims, accrued and unpaid Unsecured Notes Trustee Fees, and any Quarterly Fees; (b) all Estate Causes of Action; and (c) all unsold New Home WIP and any identifiable proceeds of New Home WIP as of the Effective Date; *provided* that the Creditor Trust Assets shall not include any KKR Released Claim, the Administrative / Priority Claims Reserve, the Professional Fee Escrow Account, or any other escrow or reserve established for purposes of paying any Administrative / Priority Claim, Professional Fee Claim, Unsecured Notes Trustee Fee, or Quarterly Fee;.][2]

---

[2]     [**NTD**:  Subject to ongoing review and discussion.]

64.    "***Creditor Trust Beneficial Interests***" means the applicable interests in the Creditor Trust held by the Creditor Trust Beneficiaries with respect to their applicable beneficial interests in the Creditor Trust Assets.

65.    "***Creditor Trust Beneficiaries***" means the Holders of Creditor Trust Beneficial Interests.

66.    "***Creditor Trust Fees and Expenses***" means expenses (including, but not limited to, any taxes imposed on or payable by the Creditor Trust or in respect of the Creditor Trust Assets and professional fees) incurred by the Creditor Trust and any additional amount determined to be necessary or appropriate by the Creditor Trustee to adequately reserve for the operating expenses of the Creditor Trust that shall be paid out of the Creditor Trust Assets; *provided* that, there shall be no other funding for the Creditor Trust from the Debtors or any other party other than the Creditor Trust Assets.

67.    "***Creditor Trust Materials***" means all records, documents, or work product (including all electronic records, documents, or work product) related to the Creditor Trust Assets.

68.    "***Creditor Trust Net Assets***" means the Creditor Trust Assets less the Creditor Trust Fees and Expenses.

69.    "***Cure Claim***" means a Claim (unless waived or modified by the applicable counterparty) based upon the Debtors' defaults on an Executory Contract or Unexpired Lease at the time such Executory Contract or Unexpired Lease is assumed by the Debtors pursuant to section 365 of the Bankruptcy Code, other than with respect to a default that is not required to be cured under section 365(b)(2) of the Bankruptcy Code.

70.    "***Cure Notice***" means the *Notice of Assumption of Certain Executory Contracts and/or Unexpired Leases*, which the Debtors Filed and caused to be served in accordance with the Bidding Procedures Order upon counterparties to such Executory Contracts or Unexpired Leases, and which included:   (a) procedures for objecting to the proposed assumption or assumption and assignment of Executory Contracts and Unexpired Leases; (b) Cure Claims to be paid in connection therewith; and (c) procedures for resolution by the Bankruptcy Court of any related disputes.

71.    "***Cure Notice Objection Date***" means the objection deadline set forth in the Cure Notice and approved pursuant to the Bidding Procedures Order.

72.    "***D&O Liability Insurance Policies***" means all insurance policies (including any "tail policy") issued or providing coverage at any time to any of the Debtors, their current or former Affiliates or any of their respective predecessors for current or former directors' (including outside directors'), officers', managers', and/or employees' liability and all agreements, documents, or instruments relating thereto.

73.    "***Dealer***" means a third-party dealer and/or installer that, as of the Petition Date, was party to a channel partner agreement, or similar agreement, with Sunnova.

74.    "***Definitive Document***" means (a) the Confirmation Order; (b) the Sale Transaction Documents; and (c) all material pleadings filed by the Debtors in connection with the Chapter 11 Cases (or related orders), including the First Day Pleadings and all orders sought pursuant thereto; *provided*, *however*, that monthly or quarterly operating reports, retention applications, fee applications, fee statements, and any declarations in support thereof or related thereto shall not constitute material pleadings; and (d) any and all other deeds, agreements, filings, notifications, pleadings, orders, certificates, letters, instruments or other

documents reasonably necessary or desirable to consummate and document the transactions contemplated by the Plan (including any exhibits, amendments, modifications, or supplements from time to time).

75. "*Derivative Litigation*" means the actions captioned *Trindade v. Sunnova Energy Int'l Inc. et al.*, Case No. 24-00569 (S.D. Tex.) and *In re Sunnova Energy Int'l Inc. Derivative Litig.*, Case No. 24-02294 (S.D. Tex.).

76. "*DIP Agent*" means Alter Domus (US) LLC, as the administrative agent and collateral agent under the DIP Credit Agreement, its successors, assigns, or any replacement agent appointed pursuant to the terms of the DIP Credit Agreement.

77. "*DIP Claims*" means any Claim held by the DIP Lenders or the DIP Agent arising under or relating to the DIP Credit Agreement or the DIP Orders on account of funding the DIP Facility, including any and all fees, interests paid in kind, and accrued but unpaid interest and fees arising under the DIP Facility, the DIP Credit Agreement, or the other DIP Facility Documents.

78. "*DIP Credit Agreement*" means that certain senior secured superpriority debtor-in-possession loan and security agreement, dated as of June 13, 2025, by and among the Debtors, the DIP Agent, and the lenders party thereto, setting forth the terms and conditions of a $90 million debtor-in-possession financing facility.

79. "*DIP Documents*" means the DIP Credit Agreement and any other documentation necessary to effectuate the incurrence of the DIP Facility, including, but not limited to, any notes, certificates, agreements, security agreements, documents, or instruments (including any amendments, restatements, supplements, or modifications of any of the foregoing).

80. "*DIP Facility*" means the senior secured superpriority new money term loan credit facility entered into on the terms and conditions set forth in the DIP Documents.

81. "*DIP Lenders*" means the lenders under the DIP Credit Agreement.

82. "*DIP Orders*" means, collectively, the Interim DIP Order and the Final DIP Order.

83. "*Disclosure Statement*" means the *Disclosure Statement for the Joint Chapter 11 Plan of Sunnova Energy International Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code*, including all exhibits and schedules thereto and references therein that relate to the Plan, that is prepared and distributed in accordance with the Bankruptcy Code, the Bankruptcy Rules, and any other applicable law and approved by the Bankruptcy Court pursuant to the Disclosure Statement Order.

84. "*Disclosure Statement Order*" means the Final Order (and all exhibits and schedules thereto), entered by the Bankruptcy Court approving the Disclosure Statement.

85. "*Disputed*" means, with respect to any Claim or Interest, any Claim or Interest (or any portion thereof): (a) that is not Allowed; (b) that is not disallowed by the Plan, the Bankruptcy Code, or a Final Order, as applicable; and (c) with respect to which a party in interest has Filed a Proof of Claim or Proof of Interest or otherwise made a written request to a Debtor for payment.

86. "*Distribution Record Date*" means the record date for purposes of determining which Holders of Allowed Claims or Allowed Interests are eligible to receive Plan Distributions, which date shall be the Effective Date, or such other date as is designated in a Final Order of the Bankruptcy Court.

87.  "***Effective Date***" means, as to the applicable Debtor, the date that is the first Business Day after the Confirmation Date on which (a) the conditions to the occurrence of the Effective Date have been satisfied or waived pursuant to Article IX.A and Article IX.B of the Plan and (b) no stay of the Confirmation Order is in effect.  Any action to be taken on the Effective Date may be taken on or as soon as reasonably practicable thereafter.

88.  "***Entity***" has the meaning set forth in section 101(15) of the Bankruptcy Code.

89.  "***Estate***" means, as to each Debtor, the estate created on the Petition Date for the Debtor in its Chapter 11 Case pursuant to section 541 of the Bankruptcy Code and all property (as defined in section 541 of the Bankruptcy Code) acquired by the Debtors after the Petition Date through the Effective Date.

90.  "***Estate Causes of Action***" means all of each Estate's right, title, and interest in and to any Causes of Action, including, but not limited to, any (a) Preserved Claim, (b) Excluded Asset that is a Claim or Cause of Action, and (c) Avoidance Action; *provided* that the Estate Causes of Action shall not include any Released Claim or KKR Released Claim and no Released Claim or KKR Released Claim shall be transferred or contributed to the Creditor Trust.

91.  "***Excluded Assets***" has the meaning ascribed to it in the Sale Order.

92.  "***Excluded Parties***" means, collectively, (a) any person or entity that is or may be liable to any of the Debtors (or any successor thereto) in respect of any Retained Causes of Action; and (b) any Holder of Interests in Sunnova (solely in its capacity as such) that is not a Releasing Party.

93.  "***Exculpated Claim***" has the meaning set forth in Article VIII.E.

94.  "***Exculpated Parties***" means, collectively, (a) each of the Debtors; (b) the Committee and each of its respective members; and (c) each of their respective current and former directors, managers, officers, attorneys, financial advisors, consultants, or other professionals or advisors that served in such capacity between the Petition Date and Effective Date.

95.  "***Executory Contract***" means a contract to which one or more of the Debtors is a party and that is subject to assumption or rejection under sections 365 or 1123 of the Bankruptcy Code.

96.  "***Federal Judgment Rate***" means the federal judgment interest rate in effect as of the Petition Date calculated as set forth in section 1961 of the Judicial Code.

97.  "***File***" or "***Filed***" or "***Filing***" means file, filed, or filing with the Bankruptcy Court in the Chapter 11 Cases, or, with respect to the filing of a Proof of Claim, the Claims and Noticing Agent.

98.  "***Final DIP Order***" means the *Final Order (I) Authorizing the Debtors to Obtain Postpetition Financing, (II) Granting Liens and Providing Superpriority Administrative Expense Claims, (III) Modifying the Automatic Stay, and (IV) Granting Related Relief* [Docket No. 414].

99.  "***Final Order***" means, as applicable, an order or judgment of the Bankruptcy Court or other court of competent jurisdiction with respect to the relevant subject matter, which has not been reversed, stayed, modified, or amended, and as to which the time to appeal, petition for certiorari, or move for reargument, reconsideration, or rehearing has expired and no appeal, petition for certiorari, or motion for reargument, reconsideration, or rehearing has been timely taken or Filed, or as to which any appeal, petition for certiorari, or motion for reargument, reconsideration, or rehearing that has been taken or any petition for certiorari that has been or may be Filed has been resolved by the highest court to which the order or

judgment could be appealed or from which certiorari could be sought or the new trial, reargument or rehearing shall have been denied, resulted in no modification of such order or has otherwise been dismissed with prejudice.

100.    "*First Day Pleadings*" means the first day pleadings that the Debtors Filed with the Bankruptcy Court upon the commencement of the Chapter 11 Cases.

101.    "*General Unsecured Claim*" means any Claim that is:  (a) neither Secured nor entitled to priority under the Bankruptcy Code or an order of the Bankruptcy Court and (b) not an Administrative Claim, a Priority Tax Claim, a Professional Fee Claim, an Other Priority Claim, an Other Secured Claim, a DIP Claim, a Senior Notes Claim, a Convertible Notes Claim, an Intercompany Claim, or a Section 510(b) Claim.

102.    "*Governing Body*" means, in each case in its capacity as such, the board of directors, board of managers, manager, general partner, investment committee, special committee, or such similar governing body of any of the Debtors.

103.    "*Governmental Bar Date*" means the date by which Proofs of Claim must be Filed with respect to such Claims held by Governmental Units pursuant to the Bar Date Order.

104.    "*Governmental Unit*" has the meaning set forth in section 101(27) of the Bankruptcy Code.

105.    "*GUC Reconciliation Process*" means the reconciliation process for General Unsecured Claims conducted by the Creditor Trustee.

106.    "*Holder*" means an Entity holding a Claim against or an Interest in any Debtor.

107.    "*Impaired*" means, with respect to a Class of Claims or Interests, a Class of Claims or Interests that is impaired within the meaning of section 1124 of the Bankruptcy Code.

108.    "*Indentures*" means, collectively, the 2026 Convertible Notes Indenture, the 2028 Convertible Notes Indenture, the 2026 Senior Notes Indenture, and the 2028 Senior Notes Indenture.

109.    "*Independent Investigation*" means the investigation undertaken by the Special Committee, as more fully described in the Disclosure Statement.

110.    "*Insider*" shall have the meaning set forth in section 101(31) of the Bankruptcy Code.

111.    "*Insurance Policies*" means all insurance policies issued or providing coverage at any time to any of the Debtors or any of their predecessors and all agreements, documents, or instruments relating thereto, including, without limitation, the D&O Liability Insurance Policies.

112.    "*Insurer*" means any insurance company or third-party administrator that issued or entered into an Insurance Policy and any respective predecessors and/or affiliates thereof.

113.    "*Intercompany Claim*" means any Claim held by a Debtor or an Affiliate of a Debtor against any Debtor arising before the Petition Date other than any such Claim held by TEP Holdings or any subsidiary of TEP Holdings against a Debtor.

114.    "*Intercompany Interest*" means an Interest in a Debtor held by a Debtor or an Affiliate of a Debtor.

115. "***Interest***" means any equity security in a Debtor as defined in section 101(16) of the Bankruptcy Code, including all issued, unissued, authorized, or outstanding shares of capital stock, profit interest, unit, or share of any Debtor and any other rights, options, warrants, stock appreciation rights, phantom stock rights, restricted stock units, redemption rights, repurchase rights, convertible, exercisable, or exchangeable securities, or other agreements, arrangements, or commitments of any character relating to, or whose value is related to, any such interest or other ownership interest in any Debtor whether or not arising under or in connection with any employment agreement and whether or not certificated, transferable, preferred, common, voting, or denominated "stock" or a similar security, including any Claims against any Debtor subject to subordination pursuant to section 510(b) of the Bankruptcy Code arising from or related to any of the foregoing.

116. "***Interim Compensation Order***" means the *Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses for Professionals* [Docket No. 526].

117. "***Interim DIP Order***" means the *Order (I) Authorizing the Debtors, for the Interim Period, to (A) Obtain Postpetition Financing, (II) Granting Liens and Providing Superpriority Administrative Expense Claims, (III) Modifying the Automatic Stay, and (IV) Granting Related Relief* [Docket No. 165]

118. "***IRS***" means the United States Internal Revenue Service.

119. "***Judicial Code***" means title 28 of the United States Code, 28 U.S.C. §§ 1–4001 and the rules and regulations promulgated thereunder.

120. "***KKR Consent***" means the Amended and Restated KKR Consent Agreement, dated July 16, 2025, by and among KKR, the DIP Lenders, certain of the Debtors, and certain non-Debtor subsidiaries.

121. "***KKR Released Claims***" means all Causes of Action are released pursuant to paragraph 19 or 20 of the Final DIP Order.

122. "***Lien***" means a lien as defined in section 101(37) of the Bankruptcy Code.

123. "***New Home WIP***" has the meaning ascribed to it in the Sale Transaction Documents.

124. "***New Home WIP Sale***" has the meaning set forth in <u>Article IV.B</u> of this Plan.

125. "***Other Priority Claim***" means any Claim, to the extent such Claim has not already been paid during the Chapter 11 Cases, other than an Administrative Claim or a Priority Tax Claim, entitled to priority in right of payment under section 507(a) of the Bankruptcy Code; *provided* that any Other Priority Claim that is an Assumed Liability under a Purchase Agreement shall not (a) be satisfied from the Administrative / Priority Claims Reserve, (b) be an obligation of the Debtors, and/or (c) constitute an Other Priority Claim pursuant to this Plan.

126. "***Other Secured Claim***" means any Secured Claim, other than a DIP Claim; *provided* that any Other Secured Claim that is an Assumed Liability under a Purchase Agreement shall not (x) be satisfied from the Administrative / Priority Claims Reserve, (y) be an obligation of the Debtors, and/or (z) constitute an Other Secured Claim pursuant to this Plan.

127. "***Person***" means a person as such term as defined in section 101(41) of the Bankruptcy Code.

128.    "*Petition Date*" means, with regard to TEP Developer, June 1, 2025, and, with regard to SEI, Sunnova, and SIH, June 8, 2025, in each case, the date on which each respective Debtor commenced the Chapter 11 Cases.

129.    "*Plan*" means this *Joint Chapter 11 Plan of Sunnova Energy International Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code*, as may be altered, amended, modified, or supplemented from time to time.

130.    "*Plan Distribution*" means a payment or distribution to Holders of Allowed Claims in accordance with the Plan.

131.    "*Plan Supplement*" means the compilation of documents and forms of documents, agreements, schedules, and exhibits to the Plan (as may be altered, amended, modified, or supplemented from time to time in accordance with the terms hereof and in accordance with the Bankruptcy Code and Bankruptcy Rules) to be Filed at least seven (7) days prior to the deadline to the Voting Deadline, to the extent available, and any remaining documents to be Filed prior to the Effective Date, including the following to the extent applicable:  (a) Rejected Executory Contracts and Unexpired Leases Schedule; (b) Assumed Executory Contracts and Unexpired Leases Schedule; (c) Schedule of Retained Causes of Action; (d) the Creditor Trust Agreement; (e) the Wind-Down Transactions Memorandum; and (f) additional documents Filed with the Bankruptcy Court prior to the Effective Date as amendments to the Plan Supplement.

132.    "*Prepetition Loan Documents*" means the Indentures, and, in each case, all other agreements, documents, and instruments executed or delivered in connection therewith or related thereto, including any guaranty agreements, pledge and collateral agreements, intercreditor agreements, and other security agreements.

133.    "*Preserved Claims*" has the meaning ascribed to it in the Sale Order.

134.    "*Priority Claims*" means, collectively, Priority Tax Claims and Other Priority Claims.

135.    "*Priority Tax Claim*" means any Claim of a Governmental Unit of the kind specified in section 507(a)(8) of the Bankruptcy Code; *provided* that any Priority Tax Claim that is an Assumed Liability under a Purchase Agreement shall not (i) be satisfied from the Administrative / Priority Claims Reserve, (ii) be an obligation of the Debtors, and/or (iii) constitute a Priority Tax Claim pursuant to this Plan.

136.    "*Pro Rata*" means the proportion that an Allowed Claim or an Allowed Interest in a particular Class bears to the aggregate amount of Allowed Claims or Allowed Interests in that Class, unless otherwise indicated.

137.    "*Professional*" means an Entity: (a) retained pursuant to a Bankruptcy Court order in accordance with sections 327 or 1103 of the Bankruptcy Code and to be compensated for services rendered and expenses incurred pursuant to sections 327, 328, 329, 330, 331, and 363 of the Bankruptcy Code or (b) awarded compensation and reimbursement by the Bankruptcy Court pursuant to section 503(b)(4) of the Bankruptcy Code.

138.    "*Professional Fee Claim*" means a Claim by a Professional seeking an award by the Bankruptcy Court of compensation for services rendered or reimbursement of expenses incurred through and including the Confirmation Date under sections 330, 331, 503(b)(2), 503(b)(3), 503(b)(4), or 503(b)(5) of the Bankruptcy Code.

139.     "***Professional Fee Escrow Account***" means an interest-bearing account funded by the Debtors at a third-party bank with Cash on the Effective Date in an amount equal to the Professional Fee Escrow Amount.

140.     "***Professional Fee Escrow Amount***" means the aggregate amount of Professional Fee Claims and other unpaid fees and expenses that the Professionals estimate they have incurred or will incur in rendering services to the Debtors as set forth in Article II.C.3 of the Plan.

141.     "***Proof of Claim***" means a written proof of Claim Filed against any of the Debtors in the Chapter 11 Cases by the Claims Bar Date, the Administrative Claims Objection Bar Date, or the Governmental Bar Date, as applicable.

142.     "***Purchase Agreement***" means one or more agreements entered into by some or all of the Debtors, on the one hand, and one or more parties, on the other hand, in connection with the Sale Transactions, together with all exhibits, amendments, appendices, supplements, documents, and agreements ancillary thereto.

143.     "***Purchaser***" means the purchaser(s) under the Purchase Agreement(s).

144.     "***Quarterly Fees***" means any and all fees due and payable pursuant to section 1930 of title 28 of the U.S. Code, together with the statutory rate of interest set forth in section 3717 of title 31 of the U.S. Code to the extent applicable.

145.     "***Reinstate***," "***Reinstated***," or "***Reinstatement***" means with respect to Claims and Interests, that the Claim or Interest shall be rendered unimpaired in accordance with section 1124 of the Bankruptcy Code.

146.     "***Rejected Executory Contracts and Unexpired Leases Schedule***" means the schedule of Executory Contracts and Unexpired Leases to be rejected by the Debtors pursuant to the Plan, which schedule shall be included in the Plan Supplement.

147.     "***Related Party***" means, each of, and in each case in its capacity as such, current directors (including outside directors), managers, officers, investment committee members, special committee members, equity holders (regardless of whether such interests are held directly or indirectly), affiliated investment funds or investment vehicles, managed accounts or funds, predecessors, participants, successors, assigns, subsidiaries, affiliates, partners, limited partners, general partners, principals, members, management companies, fund advisors or managers, employees, agents, trustees, advisory board members, and Professionals.  For the avoidance of doubt, the members of each Governing Body as of the Petition Date and the Debtors' officers as of the Petition Date are Related Parties of the Debtors.

148.     "***Released Claim***" has the meaning set forth in <u>Article VIII.E</u>**.**

149.     "***Released Parties***" means, each of, and in each case in its capacity as such: (a) the Debtors; (b) the Creditor Trustee; (c) the DIP Agent; (d) the DIP Lenders; (e) the Unsecured Notes Trustees; (f) the Unsecured Noteholders; (g) the Releasing Parties; (h) the Committee and each of its members (in their capacity as members of the Committee); (i) each current and former Affiliate of each Entity in clause (a) through the following clause (j); (j) each Related Party of each Entity in clause (a) through this clause (j); *provided* that in each case an Entity shall not be a Released Party if it: (x) elects to opt out of the release contained in the Plan or (y) timely objects to the releases contained in Article VIII.C of the Plan, either through (i) formal objection Filed on the docket of the Chapter 11 Cases or (ii) informal objection provided

13

to the Debtors in writing, including by electronic mail, and such objection is not withdrawn on the docket of the Chapter 11 Cases or in writing, including via electronic mail, as applicable, before Confirmation.

150.    "*Releasing Parties*" means, each of, and in each case in its capacity as such:  (a) the Debtors; (b) the Creditor Trustee; (c) the DIP Agent; (d) the DIP Lenders; (e) the Unsecured Notes Trustees; (f) the Unsecured Noteholders; (g) all Holders of Claims who vote to accept the Plan or are deemed to accept the Plan who do not affirmatively opt out of the releases provided by the Plan by checking the box on the applicable Notice of Non-Voting Status indicating that they do not grant the releases provided in the Plan; (h) all Holders of Claims who vote to reject the Plan or are deemed to reject the Plan and do not affirmatively opt out of the releases provided by the Plan by checking the box on the applicable ballot or Notice of Non-Voting Status indicating that they opt not to grant the releases provided by the Plan; (i) the Committee and its members (in their capacity as members of the Committee); (j) each current and former Affiliate of each Entity in clause (a) through the following clause (k) for which such Entity is legally entitled to bind such Affiliate to the releases contained in the Plan under applicable non bankruptcy law; and (k) each Related Party of each Entity in clause (a) through this clause (k) for which such Affiliate or Entity is legally entitled to bind such Related Party to the releases contained in the Plan under applicable non bankruptcy law; *provided* that no Affiliate or Related Party of a Releasing Party shall be a Releasing Party if such Affiliate or Related Party affirmatively opts out of the releases provided by the Plan by checking the box on the applicable ballot indicating that it opts not to grant such releases.

151.    "*Retained Causes of Action*" means any Cause of Action listed on the Schedule of Retained Causes of Action.  For the avoidance of doubt, no Released Claim or KKR Released Claim shall be a Retained Cause of Action.

152.    "*Sale Order*" means the order, or orders, entered by the Bankruptcy Court approving the Sale Transaction(s).

153.    "*Sale Transaction*" means the sale transaction, or sale transactions, of all or some of the Debtors' assets to the Purchaser, as approved by the Sale Order.

154.    "*Sale Transaction Documents*" means all motions, filings, documents, agreements, and related documents pursuant to which the Debtors have effectuated or will effectuate the Sale Transaction, including, without limitation, the Sale Order, the Bidding Procedures, the Bidding Procedures Motion, and the Bidding Procedures Order.

155.    "*Schedule of Retained Causes of Action*" means the schedule of certain Causes of Action of the Debtors (to be included in the Plan Supplement), in form and substance reasonable acceptable to the Committee and the Debtors, that, following the completion of the Independent Investigation, the Special Committee determines, in its sole discretion, should not be released, waived, or transferred pursuant to the Plan; *provided* that the Schedule of Retained Causes of Action shall include the Claims and Causes of Action asserted in the Derivative Litigation, except to the extent any such Claim or Cause of Action is a Released Claim or is asserted against a Released Party.

156.    "*Schedules*" means, collectively, the schedules of assets and liabilities, schedules of Executory Contracts and Unexpired Leases and statements of financial affairs Filed by the Debtors pursuant to section 521 of the Bankruptcy Code, the official bankruptcy forms, and the Bankruptcy Rules.

157.    "*Section 510(b) Claim*" means any Claim subject to subordination under section 510(b) of the Bankruptcy Code; *provided* that a Section 510(b) Claim shall not include any Claim subject to subordination under section 510(b) of the Bankruptcy Code arising from or related to an Interest.

158.   "*Secured*" means when referring to a Claim: (a) secured by a Lien on collateral in which the applicable Estate has an interest, which Lien is valid, perfected, and enforceable pursuant to applicable law or by reason of a Bankruptcy Court order, or that is subject to setoff pursuant to section 553 of the Bankruptcy Code, to the extent of the value of the creditor's interest in such Debtor's interest in such collateral or to the extent of the amount subject to setoff, as applicable, as determined pursuant to section 506(a) of the Bankruptcy Code or (b) otherwise Allowed pursuant to the Plan as a Secured Claim.

159.   "*Securities Act*" means the Securities Act of 1933, 15 U.S.C. §§ 77a-77aa and the rules and regulations promulgated thereunder.

160.   "*Security*" means a security as defined in section 2(a)(1) of the Securities Act.

161.   "*SEI*" means Sunnova Energy International Inc.

162.   "*SEI Interests*" means all Interests in SEI, including all common stock issued by SEI, which common stock trades on the New York Stock Exchange under the ticker symbol "NOVA," and any other interests (including any common units), options, warrants, preferred securities, or Claims linked to the equity or profit of the Debtors or their Affiliates, other than any such Interests or Claims held by a Debtor or an Affiliate of a Debtor.

163.   "*Senior Notes*" means, collectively, the 2026 Senior Notes and the 2028 Senior Notes.

164.   "*Senior Notes Claim*" means any Claim arising under, related to, or in connection with the Senior Notes.

165.   "*Special Committee*" means the special committee of the board of directors of SEI.

166.   "*Sunnova*" means Sunnova Energy Corporation.

167.   "*TEP Holdings*" means Sunnova TEP Holdings, LLC.

168.   "*Tax Code*" means the United States Internal Revenue Code of 1986, as amended.

169.   "*Third-Party Release*" means the release given by the Releasing Parties to the Released Parties as set forth in Article VIII.C of the Plan.

170.   "*Transferred Privileges*" means privileges (if any) transferred to the Creditor Trust under the Creditor Trust Agreement.

171.   "*Treasury Regulations*" means the regulations promulgated under the Tax Code by the United States Department of the Treasury.

172.   "*U.S. Trustee*" means the Office of the United States Trustee for the Southern District of Texas.

173.   "*Unclaimed Distribution*" means any Plan Distribution on account of an Allowed Claim to a Holder that has not: (a) accepted a particular Plan Distribution or, in the case of Plan Distributions made by check, negotiated such check within ninety calendar days of receipt; (b) given notice to the Creditor Trustee, as applicable, of an intent to accept a particular Plan Distribution within ninety calendar days of receipt; (c) responded to the Creditor Trustee's requests for information necessary to facilitate a particular

Plan Distribution prior to the deadline included in such request for information; or (d) taken any other action necessary to facilitate such Plan Distribution.

174.    "*Unexpired Lease*" means a lease to which one or more of the Debtors is a party that is subject to assumption or rejection under section 365 or section 1123 of the Bankruptcy Code.

175.    "*Unimpaired*" means, with respect to a Class of Claims or Interests, a Class of Claims or Interests that is unimpaired within the meaning of section 1124 of the Bankruptcy Code.

176.    "*Unsecured Notes*" means, collectively, the Senior Notes and the Convertible Notes.

177.    "*Unsecured Notes Claims*" means, collectively, the Convertible Notes Claims and the Senior Notes Claims.

178.    "*Unsecured Notes Trustee Fees*" means the compensation, fees, expenses, disbursements, and indemnity claims of the applicable Unsecured Notes Trustee required to be paid under the applicable Indentures and the documents related thereto, in each case including any fees, expenses, and disbursements of attorneys, advisors, or agents retained or utilized by such indenture trustee, whether prior to or after the Petition Date and whether prior to or after the Effective Date.

179.    "*Unsecured Notes Trustees*" means, collectively, the 2026 Convertible Notes Trustee, the 2028 Convertible Notes Trustee, the 2026 Senior Notes Trustee, and the 2028 Senior Notes Trustee.

180.    "*Unsecured Noteholders*" means, collectively, the 2026 Convertible Noteholders, the 2028 Convertible Noteholders, the 2026 Senior Noteholders, and the 2028 Senior Noteholders.

181.    "*Voting Deadline*" means 4:00 p.m. (prevailing Central Time) on October 1, 2025.

182.    "*Wind Down*" means the wind-down, dissolution, and liquidation of the Debtors' Estates after the Effective Date.

*B.    Rules of Interpretation*

For purposes of this Plan:  (1) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neutral gender shall include the masculine, feminine, and the neutral gender; (2) unless otherwise specified, any reference herein to a contract, lease, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document shall be substantially in that form or substantially on those terms and conditions; (3) unless otherwise specified, any reference herein to an existing document, schedule, or exhibit, whether or not Filed, having been Filed, or to be Filed shall mean that document, schedule, or exhibit, as it may thereafter be amended, restated, amended and restated, supplemented, or otherwise modified in accordance with the Plan or Confirmation Order, as applicable; (4) any reference to an Entity as a Holder of a Claim or Interest includes that Entity's successors and assigns; (5) unless otherwise specified, all references herein to "Articles" are references to Articles hereof or hereto; (6) unless otherwise specified, all references herein to exhibits are references to exhibits in the Plan Supplement; (7) unless otherwise specified, the words "herein," "hereof," and "hereto" refer to the Plan in its entirety rather than to a particular portion of the Plan; (8) subject to the provisions of any contract, certificate of incorporation, bylaw, instrument, release, or other agreement or document entered into in connection with the Plan, the rights and obligations arising pursuant to the Plan shall be governed by, and construed and enforced in accordance with, applicable federal law, including the Bankruptcy Code and the Bankruptcy Rules, or, if no rule of law or procedure is supplied

by federal law (including the Bankruptcy Code and the Bankruptcy Rules) or otherwise specifically stated, the laws of the State of Texas, without giving effect to the principles of conflict of laws; (9) captions and headings to Articles are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan; (10) the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; (11) all references to docket numbers of documents Filed in the Chapter 11 Cases are references to the docket numbers under the Bankruptcy Court's CM/ECF system; (12) all references to statutes, regulations, orders, rules of courts, and the like shall mean as amended from time to time, and as applicable to the Chapter 11 Cases, unless otherwise stated; (13) any effectuating provisions may be interpreted by the Debtors in such a manner that is consistent with the overall purpose and intent of the Plan all without further notice to or action, order, or approval of the Bankruptcy Court or any other Entity, and such interpretation shall be conclusive; (14) any references herein to the Effective Date shall mean the Effective Date or as soon as reasonably practicable thereafter; (15) the words "include" and "including," and variations thereof, shall not be deemed to be terms of limitation, and shall be deemed to be followed by the words "without limitation"; (16) all references herein to consent, acceptance, or approval shall be deemed to include the requirement that such consent, acceptance, or approval be evidenced by a writing, which may be conveyed by counsel for the respective parties that have such consent, acceptance, or approval rights, including by electronic mail; and (17) any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be.

C.      *Computation of Time*

Unless otherwise specifically stated herein, the provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed herein.  If the date on which a transaction may occur pursuant to the Plan shall occur on a day that is not a Business Day, then such transaction shall instead occur on the next succeeding Business Day.  Any action to be taken on the Effective Date may be taken on or as soon as reasonably practicable after the Effective Date.

D.      *Governing Law*

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically stated, the laws of the State of New York, without giving effect to the principles of conflict of laws (other than section 5-1401 and section 5-1402 of the New York General Obligations Law), shall govern the rights, obligations, construction, and implementation of the Plan; any agreements, documents, instruments, or contracts executed or entered into in connection with the Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreement shall control); and corporate governance matters; provided that corporate governance matters relating to the Debtors not incorporated in New York shall be governed by the laws of the state of incorporation or formation of the relevant Debtor.

E.      *Reference to Monetary Figures*

All references in the Plan to monetary figures shall refer to currency of the United States of America, unless otherwise expressly provided herein.

F.      *No Substantive Consolidation*

Although for purposes of administrative convenience and efficiency the Plan has been Filed as a joint plan for each of the Debtors and presents together Classes of Claims against, and Interests in, the Debtors, the Plan does not provide for the substantive consolidation of any of the Debtors.

**ARTICLE II.**
**ADMINISTRATIVE CLAIMS AND PRIORITY TAX CLAIMS**

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims, Professional Fee Claims, Priority Tax Claims, and DIP Claims have not been classified and, thus, are excluded from the Classes of Claims and Interests set forth in Article III.

A.      *General Administrative Claims*

Unless otherwise agreed to by the Holder of an Allowed Administrative Claim and the Debtors to the extent an Allowed Administrative Claim has not already been paid in full or otherwise satisfied during the Chapter 11 Cases, each Holder of an Allowed Administrative Claim (other than Holders of Professional Fee Claims and Claims for fees and expenses pursuant to section 1930 of chapter 123 of title 28 of the United States Code) will receive in full and final satisfaction of its Allowed Administrative Claim in an amount of Cash equal to the amount of the unpaid portion of such Allowed Administrative Claim in accordance with the following:  (1) if such Administrative Claim is Allowed on or prior to the Effective Date, on the Effective Date (or, if not then due, when such Allowed Administrative Claim is due or as soon as reasonably practicable thereafter); (2) if such Administrative Claim is not Allowed as of the Effective Date, no later than thirty days after the date on which an order Allowing such Administrative Claim becomes a Final Order, or as soon as reasonably practicable thereafter; (3) if such Allowed Administrative Claim is based on liabilities incurred by the Debtors in the ordinary course of their business after the Petition Date, in accordance with the terms and conditions of the particular transaction or course of business giving rise to such Allowed Administrative Claim, without any further action by the Holder of such Allowed Administrative Claim; (4) at such time and upon such terms as may be agreed upon by the Holder of such Allowed Administrative Claim and the Debtors; or (5) at such time and upon such terms as set forth in a Final Order of the Bankruptcy Court; *provided* that any Allowed Administrative Claim (other than a Professional Fee Claim) that is not an Assumed Liability under any Purchase Agreement shall instead be satisfied solely from the Administrative / Priority Claims Reserve.

Except with respect to Administrative Claims that are Professional Fee Claims, DIP Claims, or subject to section 503(b)(1)(D) of the Bankruptcy Code, and unless previously Filed, requests for payment of Administrative Claims must be Filed and served on the Debtors no later than the Administrative Claims Bar Date pursuant to the procedures specified in the Confirmation Order and the notice of entry of the Confirmation Order.  Objections to such requests must be Filed and served on the Debtors and the requesting party by the Administrative Claims Objection Bar Date.  After notice and a hearing in accordance with the procedures established by the Bankruptcy Code, the Bankruptcy Rules, and prior Bankruptcy Court orders, the Allowed amounts, if any, of Administrative Claims shall be determined by, and satisfied in accordance with an order that becomes a Final Order of, the Bankruptcy Court.

Holders of Administrative Claims that are required to File and serve a request for payment of such Administrative Claims that do not File and serve such a request by the Administrative Claims Bar Date shall be forever barred, estopped, and enjoined from asserting such Administrative Claims against the Debtors or their property, and such Administrative Claims shall be deemed released and extinguished as of the Effective Date without the need for any objection from the Debtors or any notice to or action, order, or approval of the Bankruptcy Court.  Notwithstanding the foregoing, no request for payment of an Administrative Claim need be Filed with the Bankruptcy Court with respect to an Administrative Claim previously Allowed.

B.      *DIP Claims*

Pursuant to the Sale Order, DIP Claims were assumed or paid in full, in cash, by the Purchaser in full and final satisfaction, compromise, settlement, release, and discharge of, and in exchange for, each DIP Claim as of consummation of the Sale Transaction, and the Debtors have no further obligation to the DIP Lenders or any other party with respect to the DIP Claims, except to the extent otherwise set forth herein. Pursuant to the Sale Order, all Liens and security interests granted to secure the DIP Claims were terminated and of no further force and effect without any further notice to or action, order, or approval of the Bankruptcy Court.  For the avoidance of doubt, and notwithstanding anything to the contrary herein, any requests for payment or reimbursement of expenses issued by a professional pursuant to the Final DIP Order are not required to be Filed or served, and shall not be subject to review, other than as contemplated by the Final DIP Order.

C.      *Professional Fee Claims*

1.      Final Fee Applications and Payment of Professional Fee Claims

All final requests for payment of Professional Fee Claims for services rendered and reimbursement of expenses incurred prior to the Effective Date must be Filed no later than forty-five (45) days after the Effective Date.  The Bankruptcy Court shall determine the Allowed amounts of such Professional Fee Claims after notice and a hearing in accordance with the procedures established by the Bankruptcy Code, Bankruptcy Rules, and prior Bankruptcy Court orders.  The Debtors shall pay the amount of the Allowed Professional Fee Claims owing to the Professionals in Cash to such Professionals, including from funds held in the Professional Fee Escrow Account, when such Professional Fee Claims are Allowed by entry of an order of the Bankruptcy Court.

2.      Professional Fee Escrow Account

As soon as is reasonably practicable after the Confirmation Date and no later than the Effective Date, the Debtors shall establish (if not previously established) and fund the Professional Fee Escrow Account with Cash equal to the Professional Fee Escrow Amount.  The Professional Fee Escrow Account shall be maintained in trust solely for the Professionals and for no other Entities until all Professional Fee Claims Allowed by the Bankruptcy Court have been indefeasibly paid in full to the Professionals pursuant to one or more Final Orders of the Bankruptcy Court.  No Liens, Claims, or Interests shall encumber the Professional Fee Escrow Account or Cash held in the Professional Fee Escrow Account in any way.  Funds held in the Professional Fee Escrow Account shall not be considered property of the Estates of the Debtors.

The amount of Allowed Professional Fee Claims owing to the Professionals shall be paid in Cash to each such Professional by the Debtors from the funds held in the Professional Fee Escrow Account as soon as reasonably practicable after such Professional Fee Claims are Allowed by an order of the Bankruptcy Court; *provided* that the Debtors' obligations to pay Allowed Professional Fee Claims shall not be limited nor be deemed limited to funds held in the Professional Fee Escrow Account.  When all Professional Fee Claims Allowed by the Bankruptcy Court have been irrevocably paid in full to the Professionals pursuant to one or more Final Orders of the Bankruptcy Court, any remaining funds held in the Professional Fee Escrow Account shall promptly be paid to the Creditor Trust without any further notice to or action, order, or approval of the Bankruptcy Court, which amounts shall be Creditor Trust Assets and promptly distributed in accordance with the Plan.

3.   Professional Fee Escrow Amount

The Professionals shall provide a reasonable and good-faith estimate of their unpaid Professional Fee Claims and other unpaid fees and expenses incurred in rendering services to the Debtors before and as of the Effective Date projected to be outstanding as of the Effective Date, and shall deliver such estimate to the Debtors no later than five days before the anticipated Effective Date; *provided* that such estimate shall not be considered or deemed an admission or limitation with respect to the amount of the fees and expenses that are the subject of any Professional's final request for payment of Professional Fee Claims and such Professionals are not bound to any extent by the estimates.  If a Professional does not provide a timely estimate, the Debtors may estimate the unpaid and unbilled fees and expenses of such Professional. The total aggregate amount so estimated as of the Effective Date shall be utilized by the Debtors to determine the amount to be funded to the Professional Fee Escrow Account.

4.   Post-Effective Date Fees and Expenses

Except as otherwise specifically provided in the Plan, from and after the Effective Date, the Creditor Trust shall, in the ordinary course of business and without any further notice to or action, order, or approval of the Bankruptcy Court, pay in Cash the reasonable and documented legal, professional, or other fees and expenses related to implementation of the Plan and Consummation incurred by the Creditor Trust or, solely as it pertains to the final fee applications, the Committee.  The Creditor Trust shall pay, within ten Business Days after submission of a detailed invoice to the Creditor Trust such reasonable claims for compensation or reimbursement of expenses incurred by the Professionals of the Creditor Trust.  If the Creditor Trust disputes the reasonableness of any such invoice, the Creditor Trust or the affected Professional may submit such dispute to the Bankruptcy Court for a determination of the reasonableness of any such invoice, and the disputed portion of such invoice shall not be paid until the dispute is resolved. Upon the Confirmation Date, any requirement that Professionals comply with sections 327 through 331 and 1103 of the Bankruptcy Code or the Interim Compensation Order in seeking retention or compensation for services rendered after such date shall terminate, and the Creditor Trust may employ and pay any Professional in the ordinary course of business without any further notice to or action, order, or approval of the Bankruptcy Court.

D.   *Priority Tax Claims*

Except to the extent that a Holder of an Allowed Priority Tax Claim agrees to a less favorable treatment, in full and final satisfaction, settlement, and release of, and in exchange for, each Allowed Priority Tax Claim, each Holder of such Allowed Priority Tax Claim shall be treated in accordance with the terms set forth in section 1129(a)(9)(C) of the Bankruptcy Code; *provided* that any Allowed Priority Tax Claim that is not an Assumed Liability under any Purchase Agreement shall instead be satisfied solely from the Administrative / Priority Claims Reserve.

## ARTICLE III.
## CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

A.   *Classification of Claims and Interests*

Except for the Claims addressed in Article II hereof, all Claims and Interests are classified in the Classes set forth in this Article III for all purposes, including voting, Confirmation, and Plan Distributions and in accordance with sections 1122 and 1123(a)(1) of the Bankruptcy Code.  A Claim or an Interest is classified in a particular Class only to the extent that such Claim or Interest qualifies within the description of that Class and is classified in other Classes to the extent that any portion of such Claim or Interest qualifies within the description of such other Classes.  A Claim or an Interest also is classified in a particular

Class for the purpose of receiving Plan Distributions only to the extent that such Claim or Interest is an Allowed Claim or Allowed Interest in that Class and has not been paid, released, or otherwise satisfied prior to the Effective Date.

The classification of Claims and Interests against each Debtor pursuant to the Plan is as set forth below.  The Plan shall apply as a separate Plan for each of the Debtors, and the classification of Claims and Interests set forth herein shall apply separately to each of the Debtors.  All of the potential Classes for the Debtors are set forth herein.

| Class | Claim/Interest | Status | Voting Rights |
|-------|---------------|--------|---------------|
| 1 | Other Secured Claims | Unimpaired | Not Entitled to Vote (Presumed to Accept |
| 2 | Other Priority Claims | Unimpaired | Not Entitled to Vote (Presumed to Accept) |
| 3 | Senior Notes Claims | Impaired | Entitled to Vote |
| 4 | General Unsecured Claims | Impaired | Entitled to Vote |
| 5 | Convertible Notes Claims | Impaired | Entitled to Vote |
| 6 | Intercompany Claims | Unimpaired / Impaired | Not Entitled to Vote (Presumed to Accept or Deemed to Reject) |
| 7 | Intercompany Interests | Unimpaired / Impaired | Not Entitled to Vote (Presumed to Accept or Deemed to Reject) |
| 8 | SEI Interests | Impaired | Not Entitled to Vote (Deemed to Reject) |
| 9 | Section 510(b) Claims | Impaired | Not Entitled to Vote (Deemed to Reject) |

*B.*     *Treatment of Claims and Interests*

Subject to Article VI hereof, each Holder of an Allowed Claim or Allowed Interest, as applicable, shall receive under the Plan the treatment described below in exchange for such Holder's Allowed Claim or Allowed Interest, except to the extent different treatment is agreed to by the Holder of such Allowed Claim or Allowed Interest, as applicable, and (1) on or before the Effective Date, the Committee and the Debtors or (2) after the Effective Date, the Creditor Trustee.  Unless otherwise indicated, the Holder of an Allowed Claim or Allowed Interest, as applicable, shall receive such treatment on the later of the Effective Date and the date such Holder's Claim or Interest becomes an Allowed Claim or Allowed Interest or as soon as reasonably practicable thereafter.

1.     Class 1 – Other Secured Claims

(a)     *Classification*:  Class 1 consists of all Other Secured Claims.

(b)     *Treatment*:  Except to the extent that a Holder of an Allowed Other Secured Claim agrees to less favorable treatment, in exchange for such Allowed Other Secured Claim, on or as soon as reasonably practicable after the Effective Date, each Holder of an Allowed Other Secured Claim shall receive, at the option of the Debtors (i) payment in full in Cash of such Holder's Allowed Other Secured Claim; or (ii) such other treatment rendering such Holder's Allowed Other Secured Claim Unimpaired.

(c)     *Voting*:  Class 1 is Unimpaired under the Plan.  Holders of Other Secured Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f)

of the Bankruptcy Code.  Therefore, such Holders are not entitled to vote to accept or reject the Plan.

2.    <u>Class 2 – Other Priority Claims</u>

    (a)    *Classification*:  Class 2 consists of all Other Priority Claims.

    (b)    *Treatment*:  Except to the extent that a Holder of an Allowed Other Priority Claim agrees to less favorable treatment, in exchange for such Allowed Other Priority Claim, on or as soon as reasonably practicable after the later to occur of (i) the Effective Date and (ii) the date such Claim becomes Allowed (or as otherwise set forth in the Plan), each Holder of an Allowed Other Priority Claim will either be satisfied in full, in Cash, or otherwise receive treatment consistent with the provisions of section 1129(a)(9) of the Bankruptcy Code.

    (c)    *Voting*:  Class 2 is Unimpaired under the Plan.  Holders of Other Priority Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, such Holders are not entitled to vote to accept or reject the Plan.

3.    <u>Class 3 – Senior Notes Claims</u>

    (a)    *Classification*:  Class 3 consists of all Senior Notes Claims.

    (b)    *Treatment*:  On the Effective Date, each Holder of a Senior Notes Claim shall receive, in full and final satisfaction of such Allowed Senior Notes Claims, unless otherwise agreed to by such Holder, its Pro Rata share of the Creditor Trust Beneficial Interests, entitling each respective Holder of an Allowed Senior Notes Claim to its Pro Rata share of the Creditor Trust Net Assets, to be distributed to holders of Creditor Trust Beneficial Interests.

    (c)    *Voting*:  Class 3 is Impaired under the Plan.  Holders of Senior Notes Claims are entitled to vote to accept or reject the Plan.

4.    <u>Class 4 – General Unsecured Claims</u>

    (a)    *Classification:*  Class 4 consists of all General Unsecured Claims.

    (b)    *Treatment*:  On the Effective Date, each Holder of an Allowed General Unsecured Claim shall receive, in full and final satisfaction of such Allowed General Unsecured Claim, unless otherwise agreed to by such Holder, its Pro Rata share of the Creditor Trust Beneficial Interests, entitling each respective Holder of an Allowed General Unsecured Claim to its Pro Rata share of the Creditor Trust Net Assets, to be distributed to holders of Creditor Trust Beneficial Interests.

    (c)    *Voting:*  Class 4 is Impaired under the Plan.  Holders of General Unsecured Claims are entitled to vote to accept or reject the Plan.

5. <u>Class 5 – Convertible Notes Claims</u>

    (a)    *Classification:* Class 5 consists of all Convertible Notes Claims.

    (b)    *Treatment*: On the Effective Date, each Holder of an Allowed Convertible Notes Claim shall receive, in full and final satisfaction of such Allowed Convertible Notes Claim, unless otherwise agreed to by such Holder, its Pro Rata share of the Creditor Trust Beneficial Interests, entitling each respective Holder of an Allowed Convertible Notes Claim to its Pro Rata share of the Creditor Trust Net Assets, to be distributed to holders of Creditor Trust Beneficial Interests.

    (c)    *Voting:* Class 5 is Impaired under the Plan. Holders of Convertible Notes Claims are entitled to vote to accept or reject the Plan.

6. <u>Class 6 – Intercompany Claims</u>

    (a)    *Classification*: Class 6 consists of all Intercompany Claims.

    (b)    *Treatment*: On the Effective Date, Allowed Intercompany Claims, to the extent not assumed pursuant to the terms of the Sale Order, shall, at the election of the applicable Debtor, be (a) Reinstated, (b) converted to equity, (c) otherwise set off, settled, distributed, contributed, cancelled, or released, or (d) otherwise addressed at the option of the Debtors without any distribution, in each case in accordance with the Wind-Down Transactions Memorandum.

    (c)    *Voting*: Holders of Intercompany Claims are either Unimpaired, and such Holders of Intercompany Claims are conclusively presumed to have accepted the Plan under section 1126(f) of the Bankruptcy Code, or Impaired, and such Holders of Intercompany Claims are deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code. Holders of Intercompany Claims are not entitled to vote to accept or reject the Plan.

7. <u>Class 7 – Intercompany Interests</u>

    (a)    *Classification:* Class 7 consists of all Intercompany Interests.

    (b)    *Treatment*: On the Effective Date, Allowed Intercompany Interests shall, at the election of the applicable Debtor, be (a) Reinstated, (b) set off, settled, addressed, distributed, contributed, merged, cancelled, or released, or (c) otherwise addressed at the option of the Debtors, without any distribution, in each case in accordance with the Wind-Down Transactions Memorandum.

    (c)    *Voting*: Holders of Intercompany Interests are either Unimpaired, and such Holders of Intercompany Claims are conclusively presumed to have accepted the Plan under section 1126(f) of the Bankruptcy Code, or Impaired, and such Holders of Intercompany Interests are deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code. Holders of Intercompany Interests are not entitled to vote to accept or reject the Plan.

8. <u>Class 8 – SEI Interests</u>

    (a)    *Classification:* Class 8 consists of all SEI Interests.

    (b)    *Treatment*: On the Effective Date, SEI Interests shall be cancelled, released, and extinguished as of the Effective Date, and will be of no further force or effect, and Holders of SEI Interests will not receive any distribution on account of such Interests.

    (c)    *Voting:* Class 8 is Impaired under the Plan. Holders of SEI Interests are conclusively deemed to have rejected the Plan under section 1126(g) of the Bankruptcy Code. Therefore, such Holders are not entitled to vote to accept or reject the Plan.

9. <u>Class 9 – Section 510(b) Claims</u>

    (a)    *Classification:* Class 9 consists of all Section 510(b) Claims.

    (b)    *Treatment*: On the Effective Date, Allowed Section 510(b) Claims, if any, shall be cancelled, released, and extinguished as of the Effective Date, and will be of no further force or effect, and Holders of Allowed Section 510(b) Claims will not receive any distribution on account of such Allowed Section 510(b) Claims. The Debtors are not aware of any valid Section 510(b) Claims and believe that no such Section 510(b) Claims exist.

    (c)    *Voting:* Class 9 is Impaired under the Plan. Holders, if any, of Section 510(b) Claims are conclusively deemed to have rejected the Plan under section 1126(g) of the Bankruptcy Code. Therefore, such Holders, if any, are not entitled to vote to accept or reject the Plan.

C. *Special Provision Governing Unimpaired Claims*

Except as otherwise provided in the Plan, nothing under the Plan shall affect the Debtors' rights in respect of any Claims that are Unimpaired, including all rights in respect of legal and equitable defenses to or setoffs or recoupments against any such Claims that are Unimpaired. Unless otherwise Allowed, Claims that are Unimpaired shall remain Disputed Claims under the Plan.

D. *Confirmation Pursuant to Sections 1129(a)(10) and 1129(b) of the Bankruptcy Code*

Section 1129(a)(10) of the Bankruptcy Code shall be satisfied for purposes of Confirmation by acceptance of the Plan by one or more of the Classes entitled to vote pursuant to <u>Article III.B</u> herein. The Debtors shall seek Confirmation of the Plan pursuant to section 1129(b) of the Bankruptcy Code with respect to any rejecting Class of Claims or Interests. The Debtors reserve the right to modify the Plan in accordance with <u>Article XI</u> herein to the extent, if any, that Confirmation pursuant to section 1129(b) of the Bankruptcy Code requires modification, including by modifying the treatment applicable to a Class of Claims or Interests to render such Class of Claims or Interests Unimpaired to the extent permitted by the Bankruptcy Code and the Bankruptcy Rules.

E.      *Subordinated Claims*

Except as expressly provided herein, the allowance, classification, and treatment of all Allowed Claims and Allowed Interests and the respective distributions and treatments under the Plan take into account and conform to the relative priority and rights of the Claims and Interests in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, section 510(b) of the Bankruptcy Code, or otherwise. Pursuant to section 510 of the Bankruptcy Code, the Debtors reserve the right to reclassify any Allowed Claim or Interest in accordance with any contractual, legal, or equitable subordination relating thereto.

F.      *Reservation of Rights*

Notwithstanding anything herein or any other documents, nothing in the Plan, including Article VIII, the Plan Supplement, Confirmation Order, or any other document shall affect, alter or modify any settlement, settlement agreement or any other agreement or document among TEP Holdings, any subsidiary of TEP Holdings, and/or any Dealer, or any rights, obligations or claims thereunder, including, without limitation, any turnover or subrogation rights, claims or obligations.

G.      *Elimination of Vacant Classes; Presumed Acceptance by Non-Voting Classes*

Any Class of Claims or Interests that does not have a Holder of an Allowed Claim or Allowed Interest or a Claim or Interest temporarily Allowed by the Bankruptcy Court in an amount greater than zero as of the date of the Confirmation Hearing shall be considered vacant and deemed eliminated from the Plan for purposes of voting to accept or reject the Plan and for purposes of determining acceptance or rejection of the Plan by such Class pursuant to section 1129(a)(8) of the Bankruptcy Code.

If a Class contains Claims or Interests eligible to vote and no Holders of Claims or Interests eligible to vote in such Class vote to accept or reject the Plan, the Debtors shall request that the Bankruptcy Court deem the Plan accepted by the Holders of such Claims or Interests in such Class.

H.      *Intercompany Interests*

To the extent Reinstated under the Plan, distributions on account of Intercompany Interests are not being received by Holders of such Intercompany Interests on account of their Intercompany Interests but for the purposes of administrative convenience.

I.      *Controversy Concerning Impairment*

If a controversy arises as to whether any Claims or Interests, or any Class of Claims or Interests, are Impaired, the Bankruptcy Court shall, after notice and a hearing, determine such controversy on or before the Confirmation Date.

**ARTICLE IV.**
**MEANS FOR IMPLEMENTATION OF THE PLAN**

A.      *Settlement of Claims and Interests*

The Plan incorporates certain settlements of issues among the Debtors and various parties in interest pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019. As among the settlement parties, the applicable provisions of the Plan shall constitute a good-faith compromise and settlement of all Claims, Interests, Causes of Action, and controversies released, settled, compromised, or otherwise

resolved among such parties pursuant to the Plan. Subject to <u>Article VI</u> hereof, all Plan Distributions made to Holders of Allowed Claims that are settlement parties are intended to be and shall be final.

B.    *New Home WIP Sale*

The Debtors shall use commercially reasonable efforts to sell any New Home WIP prior to the occurrence of the Effective Date (such sale, the "<u>New Home WIP Sale</u>").  The terms of and documentation providing for the New Home WIP Sale shall be in form and substance reasonably acceptable to the Committee.  For the avoidance of doubt, nothing herein shall authorize the sale of any asset or property that constitutes Purchased Assets, including, without limitation, any Host Customer Solar Assets (each as defined in the Atlas Sale Motion).

To the extent that any New Home WIP remains unsold on the Effective Date, any and all New Home WIP shall be deemed a Creditor Trust Asset and the Debtors shall transfer such New Home WIP to the Creditor Trust on or as soon as reasonably practicable after the Effective Date.  The Creditor Trustee shall have the authority to sell, liquidate, and monetize the New Home WIP, and any proceeds thereof shall be applied ***first*** to any remaining unpaid Administrative / Priority Claim or Professional Fee Claim as of the date that the Creditor Trust receives such proceeds, if any, and ***second*** as distributions to the holders of Creditor Trust Beneficial Interests in accordance with the Plan and the Creditor Trust Agreement.

C.    *Wind Down*

On the Effective Date, or as soon as reasonably practicable thereafter, the Creditor Trustee, on behalf of the Debtors, shall enter into any transaction and shall take any actions as may be necessary or appropriate to effectuate the Wind Down (including the steps set forth in the Wind-Down Transactions Memorandum), including, as applicable and without limitation: (a) the execution and delivery of any appropriate agreements or other documents of merger, consolidation, restructuring, conversion, disposition, transfer, dissolution, or liquidation containing terms that are consistent with the terms of the Plan, and that satisfy the requirements of applicable law and any other terms to which the applicable Entities may agree; (b) the execution and delivery of appropriate instruments of transfer, assignment, assumption, or delegation of any asset, property, right, liability, debt, or obligation on terms consistent with the terms of the Plan and having other terms for which the applicable parties agree; (c) the filing of appropriate certificates or articles of incorporation, reincorporation, merger, consolidation, conversion, or dissolution pursuant to applicable state law; (d) such other actions and transactions that are required to effectuate the Wind Down, including the winding down and dissolution of any remaining direct or indirect subsidiaries of the Debtors; (e) all transactions necessary to provide for the purchase of some or all of the assets of, or Interests in, any of the Debtors which purchase may be structured as a taxable transaction for United States federal income tax purposes; and (f) all other actions that the applicable Entities determine to be necessary or appropriate, including making filings or recordings that may be required by applicable law.  The Confirmation Order shall, and shall be deemed to, pursuant to sections 363 and 1123 of the Bankruptcy Code, authorize, among other things, all actions as may be necessary or appropriate to effect any transaction described in, contemplated by, or necessary to effectuate the Plan.

1.    <u>Sources of Consideration for Plan Distributions</u>

On or after the Effective Date, the Creditor Trust, as applicable, shall make Plan Distributions on account of Allowed Claims in accordance with <u>Article III.B</u> herein using the Creditor Trust Net Assets.

The Confirmation Order shall and shall be deemed to, pursuant to both section 1123 and section 363 of the Bankruptcy Code, authorize, among other things, all actions as may be necessary or appropriate

to effectuate any transaction described in, approved by, contemplated by, or necessary to effectuate the Plan.

The Confirmation Order shall authorize the Debtors and the Creditor Trust, as applicable, to undertake the Restructuring Transactions contemplated by the Definitive Documents, including pursuant to sections 363, 365, 1123(a)(5)(B), and 1123(a)(5)(D) of the Bankruptcy Code.

2.   Administrative / Priority Claims Reserve

On or before the Effective Date, the Debtors shall establish the Administrative / Priority Claims Reserve by depositing Cash in the amount of the Administrative / Priority Claims Reserve Amount into the Administrative / Priority Claims Reserve (and the Creditor Trust shall deposit Cash into the Administrative / Priority Claims Reserve if the Administrative / Priority Claims Reserve Amount increases at any time). The Administrative / Priority Claims Reserve Amount shall be used to pay Holders of all Administrative / Priority Claims in full; *provided, however*, for the avoidance of doubt, that any such Administrative / Priority Claims that are Assumed Liabilities shall be satisfied under the Purchase Agreement(s) and shall not be satisfied from the Administrative / Priority Claims Reserve.  If all or any portion of any such Administrative / Priority Claim shall become a Claim that is not Allowed, then the amount on deposit in the Administrative / Priority Claims Reserve attributable to such surplus or such disallowed Claim, including the interest that has accrued on said amount while on deposit in the Administrative / Priority Claims Reserve, shall remain in the Administrative / Priority Claims Reserve to the extent that the Debtors determine necessary to ensure that the Cash remaining in the Administrative / Priority Claims Reserve is sufficient to ensure that all Administrative / Priority Claims (that are not Assumed Liabilities) will be paid in accordance with the Plan without any further action or order of the Bankruptcy Court.  Any amounts remaining in the Administrative / Priority Claims Reserve after payment of all Allowed Priority Claims, Allowed Administrative Claims, Allowed Priority Tax Claims, or Allowed Other Secured Claims (or any amount in excess of that reasonably needed to be reserved for any Disputed Claims) shall promptly be transferred to the Creditor Trust for distribution in accordance with this Plan without further action or order of the Bankruptcy Court.

3.   Vesting of Assets

On the Effective Date, the Debtors' assets shall vest in the Debtors for the sole purpose of transferring the Creditor Trust Assets to the Creditor Trust, with no objective to continue or engage in the conduct of a trade or business.  The Creditor Trust will, in an expeditious but orderly manner, liquidate and convert to Cash the Creditor Trust Assets, make timely Plan Distributions in accordance with this Plan and the Confirmation Order, and not unduly prolong its duration.  Such assets shall be held free and clear of all Liens, Claims, and interests of Holders of Claims and Interests, except as otherwise provided in the Plan. The Debtors and the Creditor Trust shall be deemed to be fully bound by the terms of the Plan, the Confirmation Order, and the Creditor Trust Agreement.

4.   Statutory Committee and Cessation of Fee and Expense Payment

On the Effective Date, any statutory committee appointed in the Chapter 11 Cases shall dissolve and members thereof shall be released and discharged from all rights and duties from or related to the Chapter 11 Cases, except in connection with applications for compensation and objections thereto.  The Debtors shall no longer be responsible for paying any fees or expenses incurred by any statutory committee after the Effective Date, except in connection with any fees or expenses for services rendered prior to the Effective Date that are Allowed by the Bankruptcy Court.

5.   Cancellation of Securities and Agreements

Except for the purpose of enabling Holders of Allowed Claims to receive a Plan Distribution as provided herein and except as otherwise set forth in this Plan, the Plan Supplement, or the Confirmation Order, on the Effective Date:  (1) the obligations of the Debtors under the Prepetition Loan Documents and any other certificate, Security, share, note, bond, indenture (including any guarantee under such indenture), purchase right, option, warrant, collateral agreement, subordination agreement, intercreditor agreement or other instrument or document directly or indirectly evidencing, creating or relating to any indebtedness or obligation of or ownership interest in the Debtors giving rise to any Claim or Interest (except such certificates, notes, or other instruments or documents evidencing indebtedness or obligation of or ownership interest in the Debtors that are Reinstated pursuant to the Plan) shall be cancelled solely as to the Debtors and their affiliates, and the Debtors shall not have any continuing obligations thereunder; and (2) the obligations of the Debtors and their affiliates pursuant, relating, or pertaining to any agreements, indentures, certificates of designation, bylaws, or certificate or articles of incorporation or similar documents governing the shares, certificates, notes, bonds (but not including any surety bonds issued on behalf of any of the Debtors), indentures, purchase rights, options, warrants, collateral agreement, subordination agreement, intercreditor agreement or other instruments or documents evidencing or creating any indebtedness or obligation of or ownership interest in the Debtors (except such agreements, certificates, notes, or other instruments evidencing indebtedness or obligation of or ownership interest in the Debtors that are specifically Reinstated pursuant to the Plan) shall be released and cancelled.   Notwithstanding the foregoing, no executory contract or unexpired lease that (i) has been, or will be, assumed pursuant to section 365 of the Bankruptcy Code or (ii) relating to a Claim that was paid in full prior to the Effective Date, shall be terminated or cancelled on the Effective Date.

Upon the final distribution in accordance with Article VI hereof, or notice from the Debtors or the Creditor Trustee, as applicable, that there will be no distribution on account of Unsecured Notes Claims, (a) the Unsecured Notes shall thereafter be deemed null, void, and worthless, and (b) at the request of the applicable Unsecured Notes Trustees, DTC shall take down the relevant position relating to the Unsecured Notes without any requirement of indemnification or security on the part of the Debtors, the Unsecured Notes Trustees, or any other Entity.  If the record holder of any SEI Interests, Unsecured Notes Claims, or other Debtors' Securities is DTC or its nominee or another securities depository or custodian thereof, and such underlying securities are represented by a global security held by or on behalf of DTC or such other securities depository or custodian, then each Holder of such SEI Interests, Unsecured Notes Claims, or other Debtors' Securities shall be deemed to have surrendered such Holder's Securities underlying such Unsecured Notes Claims or such Holder's SEI Interests or other Debtors' securities upon surrender of such global security by DTC or such other securities depository or custodian thereof.

6.   Corporate Action

Upon the Effective Date, all actions contemplated under the Plan, regardless of whether taken before, on, or after the Effective Date, shall be deemed authorized and approved in all respects, including: (1) selection of the Creditor Trustee; (2) implementation of the Wind Down (including the steps set forth in the Wind-Down Transactions Memorandum); (3) consummation of the Sale Transaction under the Sale Transaction Documents; (4) funding of all applicable escrows and accounts, including the Administrative / Priority Claims Reserve and the Professional Fee Escrow Account; and (5) all other actions contemplated under the Plan (whether to occur before, on, or after the Effective Date).  All matters provided for in the Plan or deemed necessary or desirable by the Debtors before, on, or after the Effective Date involving the corporate structure of the Debtors, and any corporate action required by the Debtors in connection with the Plan or corporate structure of the Debtors shall be deemed to have occurred and shall be in effect on the Effective Date, without any requirement of further action by the security holders, directors, managers, or officers of the Debtors.  On or before the Effective Date, the appropriate officers of the Debtors, and after

the Effective Date, the Creditor Trust, as applicable, shall be authorized to issue, execute, and deliver the agreements and documents, securities, and instruments contemplated under the Plan (or necessary or desirable to effect the transactions contemplated under the Plan) in the name of and on behalf of the Debtors. The authorizations and approvals contemplated by this Article IV.C.6 shall be effective notwithstanding any requirements under non-bankruptcy law.

7.  Effectuating Documents; Further Transactions

After the Effective Date, the Creditor Trust may issue, execute, deliver, file, or record such contracts, Securities, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of the Plan and the Confirmation Order, without the need for any approvals, authorization, or consents except for those expressly required pursuant to the Plan or the Confirmation Order.

8.  Section 1146 Exemption

To the fullest extent permitted by section 1146(a) of the Bankruptcy Code, any transfers (whether from a Debtor or to any other Person or from the Debtors to the Creditor Trust or any other Person) of property under the Plan or pursuant to: (1) the issuance, distribution, transfer, or exchange of any debt, equity security, property, or other interest in the Debtors; (2) the Wind Down; (3) the Sale Transaction; (4) the creation, modification, consolidation, termination, refinancing, and/or recording of any mortgage, deed of trust, or other security interest, or the securing of additional indebtedness by such or other means; (5) the making, assignment, or recording of any lease or sublease; or (6) the making, delivery, or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including any deeds, bills of sale, assignments, or other instrument of transfer executed in connection with any transaction arising out of, contemplated by, or in any way related to the Plan, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, real estate or bulk transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, regulatory filing or recording fee, or other similar tax or governmental assessment, and upon entry of the Confirmation Order, the appropriate state or local governmental officials or agents shall forego the collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax, recordation fee, or governmental assessment. All filing or recording officers (or any other Person with authority over any of the foregoing), wherever located and by whomever appointed, shall comply with the requirements of section 1146(a) of the Bankruptcy Code, shall forego the collection of any such tax or governmental assessment, and shall accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

9.  D&O Liability Insurance Policies; Other Insurance Matters

Notwithstanding anything to the contrary herein, on the Effective Date, all D&O Liability Insurance Policies shall be assumed by the Debtors, unaltered and in their entireties, pursuant to sections 105 and 365 of the Bankruptcy Code, and nothing shall alter, modify, amend, expand or otherwise affect any coverage for defense and indemnity under any applicable D&O Liability Insurance Policies available to any individuals and/or entities under such D&O Liability Insurance Policies in accordance with and subject in all respects to the terms and conditions of such D&O Liability Insurance Policies, which terms and conditions shall not be altered. For clarity, any coverage for defense and indemnity under the D&O Liability Insurance Policies shall remain available to all individuals within the definition of "Insured" in the D&O Liability Insurance Policies in accordance with and subject to the terms and conditions thereof.

Nothing in the Plan or the Confirmation Order shall (a) constitute a finding or stipulation that any proceeds of any of the D&O Liability Insurance Policies are property of the Estates; (b) modify or supersede any provision (including, but not limited to, any priority of payments provision) of any of the D&O Liability Insurance Policies; or (c) otherwise preclude any individual or entity entitled to coverage under any applicable D&O Liability Insurance Policies from seeking and obtaining coverage under such applicable D&O Liability Insurance Policies in accordance with and subject in all respects to the terms and conditions of such applicable D&O Liability Insurance Policies.

Without limiting the foregoing and notwithstanding anything in this Plan to the contrary, neither the automatic stay of section 362(a) of the Bankruptcy Code nor the injunction set forth in <u>Article VIII.E</u> of the Plan or the Confirmation Order shall prevent or impair the ability of an individual within the definition of "Insured" in any of the D&O Liability Insurance Policies from seeking coverage or reimbursement under any D&O Liability Insurance Policies. Upon the Effective Date of the Plan, the automatic stay of section 362(a) of the Bankruptcy Code and the injunction set forth in <u>Article VIII.E</u> of this Plan, if and to the extent applicable, shall be deemed lifted without further order of the Bankruptcy Court solely to allow each such "Insured" to make a claim under any applicable D&O Liability Insurance Policies and to allow any applicable Insurers to administer, handle, defend, settle, and/or pay any claims and/or defense costs covered by the D&O Liability Insurance Policies, in each case in accordance with and subject to the terms and conditions of the applicable D&O Liability Insurance Policies.

All rights and obligations of the Debtors and their Estates pursuant to any Assumed Insurance Policies under which any Debtor and/or its Estate is or may be a beneficiary shall vest, unaltered and in their entireties, with the Debtors for the benefit of all of the beneficiaries of such Assumed Insurance Policies.

10.   <u>Preservation of Causes of Action</u>

In accordance with section 1123(b) of the Bankruptcy Code, but subject to <u>Article VIII</u> hereof, all Causes of Action that a Debtor or an Estate may hold against any Person or Entity, whether arising before or after the Petition Date, and whether or not specifically enumerated in the Schedule of Retained Causes of Action, shall vest in the Creditor Trust, as applicable. The Creditor Trustee shall have the exclusive right, authority, and discretion to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment such Causes of Action, as appropriate, in accordance with the best interests of the Creditor Trust and no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches, shall apply to such Causes of Action upon, after, or as a consequence of the Confirmation or Consummation.

The Creditor Trustee's authority to pursue Claims and Causes of Action asserted in the Derivative Litigation after the transfer of the Debtors' right, title, and interest therein to the Creditor Trust pursuant to this <u>Article IV.C.10</u> shall be limited solely (a) to pursuit of such Claims and Causes of Action asserted against defendants in the Derivative Litigation that are not Released Parties under this Plan and (b) to the extent of available and applicable Insurance Policies, if any, including D&O Liability Insurance Policies.

**No Person or Entity (other than the Released Parties) may rely on the absence of a specific reference in the Schedule of Retained Causes of Action, the Plan, the Plan Supplement, or the Disclosure Statement to any Cause of Action against it as any indication that the Debtors or if applicable, the Creditor Trustee, will not pursue any and all available Causes of Action against it. The Debtors and the Creditor Trustee expressly reserve all rights to prosecute any and all Causes of Action against any Person or Entity, except as otherwise expressly provided in the Plan, including <u>Article VIII</u> of the Plan.**

## ARTICLE V.
## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

A.      *Assumption and Rejection of Executory Contracts and Unexpired Leases*

On the Effective Date, except as otherwise provided herein or in the Sale Order, each Executory Contract or Unexpired Lease not previously assumed, assumed and assigned, or rejected shall be deemed automatically rejected, pursuant to sections 365 and 1123 of the Bankruptcy Code, unless such Executory Contract or Unexpired Lease:  (1) is identified on the Assumed Executory Contracts and Unexpired Leases Schedule; (2) is the subject of a motion to assume (or assume and assign) such Executory Contract that is pending on the Confirmation Date; (3) is a contract, instrument, release, indenture, or other agreement or document entered into in connection with the Plan; (4) is an Assumed Insurance Policy; (5) is any Sale Transaction Document; or (6) is to be assumed by the Debtors and assigned to the Purchasers in connection with the Sale Transaction and pursuant to the Sale Transaction Documents.

For each Executory Contract and Unexpired Lease identified in the Rejected Executory Contracts and Unexpired Leases Schedule, the rejection effective date shall be the later of (1) the Effective Date; (2) the rejection effective date specified herein with respect to such Executory Contract or Unexpired Lease (or such other date as the Debtors may agree or provide notice of to the applicable counterparty); or (3) solely in the case of an Unexpired Lease for nonresidential real property, the date that the Debtors surrender possession and control of the premises to the landlord and notify the landlord of the same in writing (email being sufficient).

As to each Unexpired Lease of nonresidential real property that is rejected under the Plan, any and all property of the Debtors that is located on the corresponding premises as of the rejection effective date for such Unexpired Lease shall be deemed abandoned under section 554 of the Bankruptcy Code, on an as-is, where-is basis, effective as of such date (such abandoned property, "Abandoned Property").  Following any such abandonment, the landlord may, in its sole discretion, and without further order of the Bankruptcy Court, utilize and/or dispose of any and all Abandoned Property and, to the extent applicable, the automatic stay is modified to allow such disposition.

Entry of the Confirmation Order by the Bankruptcy Court shall constitute a Final Order approving the assumptions, assumptions and assignments, or rejections of the Executory Contracts or Unexpired Leases pursuant to the Plan; *provided* that neither the Plan nor the Confirmation Order is intended to or shall be construed as limiting the Debtors' authority under the Sale Order to assume and assign Executory Contracts and Unexpired Leases to the Purchaser pursuant to the Sale Transaction Documents.  Any motions to assume Executory Contracts or Unexpired Leases pending on the Effective Date shall be subject to approval by the Bankruptcy Court on or after the Effective Date by a Final Order but may be withdrawn, settled, or otherwise prosecuted by the Debtors.

Notwithstanding anything to the contrary in the Plan or the Sale Transaction Documents, the Debtors and the Creditor Trust, as applicable, reserve the right to alter, amend, modify, or supplement the Assumed Executory Contracts and Unexpired Leases Schedule and the Rejected Executory Contracts and Unexpired Leases Schedule identified in this Article V of the Plan and in the Plan Supplement.  The Debtors or the Creditor Trust, as applicable, shall provide notice of any amendments to the Assumed Executory Contracts and Unexpired Leases Schedule or the Rejected Executory Contracts and Unexpired Leases Schedule to the parties to the Executory Contracts or Unexpired Leases affected thereby.  For the avoidance of doubt, this Article V relates to Executory Contracts or Unexpired Leases other than such agreements assumed, assumed and assigned, or rejected in accordance with the terms of the Sale Order.

To the maximum extent permitted by law, to the extent any provision in any Executory Contract or Unexpired Lease assumed or assumed and assigned pursuant to this Plan restricts or prevents, or purports to restrict or prevent, or is breached or deemed breached by, the assumption or assumption and assignment of such Executory Contract or Unexpired Lease (including any "change of control" provision), then such provision shall be deemed modified such that the transactions contemplated by this Plan shall not entitle the non-Debtor party thereto to terminate such Executory Contract or Unexpired Lease or to exercise any other default-related rights with respect thereto. Notwithstanding anything to the contrary in this Plan, the Debtors or the Creditor Trust, as applicable, reserves the right to alter, amend, modify, or supplement the Assumed Executory Contracts and Unexpired Leases Schedule and the Rejected Executory Contracts and Unexpired Leases Schedule at any time up to thirty () days after the Effective Date.

B.      *Claims Based on Rejection of Executory Contracts or Unexpired Leases*

Unless otherwise provided by a Final Order of the Bankruptcy Court, all Proofs of Claim with respect to Claims arising from the rejection of Executory Contracts or Unexpired Leases, pursuant to the Plan or the Confirmation Order, if any, must be Filed with the Bankruptcy Court within thirty days after the later of (1) the date of service of notice of entry of an order of the Bankruptcy Court (including the Confirmation Order) approving such rejection, (2) the effective date of such rejection, or (3) the Effective Date. All Allowed Claims arising from the rejection of the Debtors' Executory Contracts or Unexpired Leases shall be classified as General Unsecured Claims and shall be treated in accordance with Article III of this Plan or such other treatment as agreed to in accordance with Article III.B of this Plan.

C.      *Cure of Defaults for Assumed Executory Contracts and Unexpired Leases*

Any monetary defaults under an assumed Executory Contract or Unexpired Lease, as reflected on the Cure Notice and/or the Assumed Executory Contract and Unexpired Leases Schedule, as applicable, shall be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by payment of the Cure Claim in Cash in accordance with the Sale Order and the Sale Transaction Documents, subject to the limitations described below, or on such other terms as the parties to such Executory Contracts or Unexpired Leases may otherwise agree. In the event of a dispute regarding (1) the amount of any payments to cure such a default, (2) the ability of the Debtors or any assignee, as applicable, to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the Executory Contract or Unexpired Lease to be assumed, or (3) any other matter pertaining to assumption, the cure payments required by section 365(b)(1) of the Bankruptcy Code shall be made following the entry of a Final Order resolving the dispute and approving the assumption.

As set in the Bidding Procedures Order, the deadline to object to, among other things, the Debtors' proposed cure amount with respect to an Unexpired Lease or Executory Contract that was included in the Cure Notice, occurred on the Cure Notice Objection Date. Notwithstanding the Cure Notice Objection Date having passed, counterparties to Executory Contracts and Unexpired Leases will retain the right to object to the assumption of an Executory Contract or Unexpired Lease on the basis of events occurring after the Cure Notice Objection Date, including additional cure amounts that arise from defaults occurring after Cure Notice Objection Date, adequate assurance of performance in light of the transactions contemplated in the Plan, and/or the identity of any entity (or direct or indirect owner of such entity) that the Debtors designate as assuming or becoming the assignor under an Executory Contract or Unexpired Lease. Any counterparty to an Executory Contract or Unexpired Lease that fails to timely object to the proposed assumption or assumption and assignment or cure amount by the objection deadline set forth in the Cure Notice will be deemed to have assented to such assumption or assumption and assignment and cure amount.

Unless otherwise agreed in writing by the parties in the applicable Executory Contract or Unexpired Lease, any objection by a counterparty to an Executory Contract or Unexpired Lease to a proposed

assumption or related Cure amount listed in the Assumed Executory Contracts and Unexpired Leases Schedule must be Filed, served, and actually received by counsel to the Debtors no later than the date and time specified in the notice (which shall not be less than fourteen (14) days after such notice is served). The Debtors or the Creditor Trust, as applicable, may reconcile and settle in the ordinary course any dispute (following a timely filed objection) regarding any Cure or any other matter pertaining to assumption without any further notice to or action, order, or approval of the Bankruptcy Court.

If the Bankruptcy Court determines that the Allowed Cure Claim with respect to any Executory Contract or Unexpired Lease is greater than the amount set forth in the applicable Cure Notice or Assumed Executory Contracts and Unexpired Leases Schedule, as applicable, the Debtors or the Creditor Trust, as applicable, may add such Executory Contract or Unexpired Lease to the Rejected Executory Contracts and Unexpired Leases Schedule, in which case such Executory Contract or Unexpired Lease will be deemed rejected as of the Effective Date.

Assumption of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise shall result in the full release and satisfaction of any Claims or defaults, whether monetary or nonmonetary (solely to the extent agreed between the Debtors and the counterparty to an applicable Executory Contract or Unexpired Lease), including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any assumed Executory Contract or Unexpired Lease at any time before the date that the Debtors assume such Executory Contract or Unexpired Lease. Any Proofs of Claim Filed with respect to an Executory Contract or Unexpired Lease that has been assumed shall be deemed disallowed and expunged, without further notice to or action, order, or approval of the Bankruptcy Court.

D.      *Preexisting Obligations to the Debtors Under Executory Contracts and Unexpired Leases*

Rejection of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise shall not constitute a termination of preexisting obligations owed to the Debtors under such Executory Contracts or Unexpired Leases. In particular, notwithstanding any non-bankruptcy law to the contrary, the Debtors expressly reserve and do not waive any right to receive, or any continuing obligation of a counterparty to provide, warranties or continued maintenance obligations with respect to goods previously purchased by the Debtors pursuant to rejected Executory Contracts or Unexpired Leases.

E.      *Insurance Policies*

Notwithstanding anything to the contrary in the Plan, the Confirmation Order, any other Definitive Document, the Plan Supplement, the Bar Date Order or any bar date notice, any Claim Objection, any other document related to any of the foregoing, or any other order of the Bankruptcy Court (including, without limitation, any other provision that purports to be preemptory or supervening, grants an injunction, discharge, or release, confers Bankruptcy Court jurisdiction, or requires a party to opt out of any releases): (i) on the Effective Date, the Debtors shall be deemed to have assumed all Assumed Insurance Policies, unaltered and in their entireties, pursuant to sections 105 and 365 of the Bankruptcy Code and, after such assumption, all Assumed Insurance Policies shall vest, unaltered and in their entireties, in the Debtors; (ii) on and after the Effective Date, the Debtors shall become and remain liable in full for all of their and the Debtors' obligations under the Assumed Insurance Policies regardless of whether such obligations arise before, on, or after the Effective Date; (iii) Insurers shall not need or be required to file or serve any notice of recoupment or setoff or a request, application, claim, Proof of Claim, or motion for payment or allowance of any Administrative Claim or any objection to a proposed cure amount or Cure Claim and shall not be subject to any Claims Bar Date, Administrative Claims Bar Date, or similar deadline governing cure amounts, Cure Claims, or other Claims; (iv) nothing alters, amends, modifies, waives, releases, diminishes, prejudices, or impairs (a) any of the rights and obligations of the Debtors and their Estates, or of any

Insurers, or of any other individuals or entities under any Insurance Policies; (b) any coverage or benefits provided under any Insurance Policies; (c) the terms and conditions of any Insurance Policies; or (d) the enforceability of any Insurance Policies; (v) nothing in the Plan, the Confirmation Order, or any documents related thereto shall permit or effectuate a sale, assignment, or other transfer of any Insurance Policy, and any and all rights of the Insurers to object to or otherwise oppose any sale, assignment, or other transfer of any Insurance Policy are preserved and, after the Effective Date, nothing shall permit or otherwise effectuate a sale, assignment, or other transfer of any Insurance Policy and/or any rights, benefits, claims, proceeds, rights to payment, or recoveries under and/or relating to any Insurance Policy without the prior express written consent of the applicable Insurer; and (vi) on the Effective Date, the automatic stay of section 362(a) of the Bankruptcy Code and the injunctions set forth in Article VIII.E of the Plan, if and to the extent applicable, shall be deemed lifted without further order of the Bankruptcy Court solely to permit: (A) claimants with valid workers' compensation claims or direct action claims against an Insurer under applicable non-bankruptcy law to proceed with their claims; (B) Insurers to administer, handle, defend, settle, and/or pay, in the ordinary course of business and without further order of the Bankruptcy Court, (I) workers' compensation claims, (II) claims where a claimant asserts a direct claim against any Insurer under applicable non-bankruptcy law, or an order has been entered by the Bankruptcy Court granting a claimant relief from the automatic stay or the injunctions set forth in Article VIII.E of the Plan to proceed with its claim, and (III) all costs in relation to each of the foregoing; and (C) Insurers to cancel any Insurance Policies and take other actions relating to the Insurance Policies (including effectuating a setoff and/or asserting any recoupment or subrogation rights or claims or taking any action against collateral held by the Insurers), in each case in accordance with the terms of such Insurance Policies and applicable non-bankruptcy law.

F.      *Modifications, Amendments, Supplements, Restatements, or Other Agreements*

Unless otherwise provided in the Plan, each Executory Contract or Unexpired Lease that is assumed shall include all modifications, amendments, supplements, restatements, or other agreements that in any manner affect such Executory Contract or Unexpired Lease, and Executory Contracts and Unexpired Leases related thereto, if any, including easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, and any other interests, unless any of the foregoing agreements has been previously rejected or repudiated or is rejected or repudiated under the Plan.

Modifications, amendments, supplements, and restatements to prepetition Executory Contracts and Unexpired Leases that have been executed by the Debtors during the Chapter 11 Cases shall not be deemed to alter the prepetition nature of the Executory Contract or Unexpired Lease, or the validity, priority, or amount of any Claims that may arise in connection therewith.

G.      *Reservation of Rights*

Neither the exclusion nor inclusion of any Executory Contract or Unexpired Lease on the Rejected Executory Contracts and Unexpired Leases Schedule, the Assumed Executory Contracts and Unexpired Leases Schedule, or any other exhibit, schedule or annex, nor anything contained in the Plan or Plan Supplement, shall constitute an admission by the Debtors that any such contract or lease is in fact an Executory Contract or Unexpired Lease or that any Debtor has any liability thereunder. If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection, the Debtors shall have thirty days following entry of a Final Order resolving such dispute to alter their treatment of such contract or lease under the Plan.

H.      *Nonoccurrence of Effective Date*

In the event that the Effective Date does not occur, the Bankruptcy Court shall retain jurisdiction with respect to any request to extend the deadline for assuming or rejecting Unexpired Leases pursuant to section 365(d)(4) of the Bankruptcy Code.

### ARTICLE VI.
### PROVISIONS GOVERNING DISTRIBUTIONS

A.      *Timing and Calculation of Amounts to Be Distributed*

Unless otherwise provided in the Plan or the Confirmation Order, on the Effective Date (or if a Claim is not an Allowed Claim or on the Effective Date, on the date that such Claim becomes an Allowed Claim, or as soon as reasonably practicable thereafter), or as soon as is reasonably practicable thereafter, each Holder of an Allowed Claim (as applicable) shall receive the full amount of the Plan Distributions that the Plan provides for Allowed Claims (as applicable) in the applicable Class.  In the event that any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date.  After such initial distribution, the Creditor Trustee shall make additional Plan Distributions in accordance with the terms of this Plan and the Creditor Trust Agreement.

If and to the extent that there are Disputed Claims, distributions on account of any such Disputed Claims shall be made pursuant to the provisions set forth in <u>Article VII</u> hereof.  Except as otherwise provided in the Plan, Holders of Claims shall not be entitled to interest, dividends, or accruals on Plan Distributions, regardless of whether such distributions are delivered on or at any time after the Effective Date.

B.      *Delivery of Distributions and Undeliverable or Unclaimed Distributions*

1.      <u>Record Date for Distribution</u>

On the Distribution Record Date, the Claims Register shall be closed and any party responsible for making distributions shall instead be authorized and entitled to recognize only those record Holders listed on the Claims Register as of the close of business on the Distribution Record Date.  For the avoidance of doubt, Holders of Claims that were not required to file a Proof of Claim prior to the Claims Bar Date under the Bar Date Order shall not be required to file a Proof of Claim to receive distributions.  If a Claim, other than one based on a publicly traded Security, is transferred twenty or fewer days before the Distribution Record Date, Plan Distributions shall be made to the transferee only to the extent practical and, in any event, only if the relevant transfer form contains an unconditional and explicit certification and waiver of any objection to the transfer by the transferor.

2.      <u>Delivery of Distributions</u>

Except as otherwise provided herein, the Creditor Trustee shall make Plan Distributions to Holders of Allowed Claims (as applicable) as of the Distribution Record Date at the address for each such Holder as indicated on the Debtors' records as of the date of any such Plan Distribution; *provided* that the manner of such Plan Distributions shall be determined at the discretion of the applicable Creditor Trustee; *provided further*, that the address for each Holder of an Allowed Claim shall be deemed to be the address set forth in any Proof of Claim Filed by that Holder.

3.      Minimum Distributions

Notwithstanding any other provision of the Plan, the Creditor Trustee will not be required to make distributions of Cash less than $50 in value, and each such Claim to which this limitation applies shall be discharged pursuant to Article VIII and its Holder is forever barred pursuant to Article VII from asserting that Claim against the Debtors, the Creditor Trust, or their respective property.

4.      Undeliverable Distributions and Unclaimed Property

In the event that any distribution to any Holder of an Allowed Claim (as applicable) is returned as undeliverable, no distribution to such Holder shall be made unless and until the Creditor Trustee has determined the then-current address of such Holder, at which time such distribution shall be made to such Holder without interest; *provided* that such distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of one year from the date of the initial attempted distribution.  After such date, all unclaimed property or interests in property shall revest in the Creditor Trust, as applicable, automatically and without need for a further order by the Bankruptcy Court (notwithstanding any applicable federal, provincial, or state escheat, abandoned, or unclaimed property laws to the contrary), and the Claim of any Holder of Claims to such property in property shall be extinguished and forever barred.

C.      *Compliance with Tax Requirements*

In connection with the Plan, to the extent applicable, the Debtors, the Creditor Trustee, and any applicable withholding agent, as applicable, shall comply with all tax withholding and reporting requirements imposed on them by any Governmental Unit, and all Plan Distributions shall be subject to such withholding and reporting requirements.  Notwithstanding any provision in the Plan to the contrary, such parties shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including liquidating a portion of the Plan Distributions to generate sufficient funds to pay applicable withholding taxes, withholding distributions pending receipt of information necessary to facilitate such distributions, or establishing any other mechanisms they believe are reasonable and appropriate.  The Debtors, the Creditor Trustee, and any applicable withholding agent, as applicable, reserve the right to allocate all Plan Distributions in compliance with applicable wage garnishments, alimony, child support, and other spousal awards, Liens, and encumbrances.

D.      *Allocations*

Distributions in respect of Allowed Claims shall be allocated first to the principal amount of such Claims (as determined for United States federal income tax purposes) and then, to the extent the consideration exceeds the principal amount of the Claims, to the remainder of the Claims, including any Claims for accrued but unpaid interest.

E.      *No Postpetition or Default Interest on Claims*

Unless otherwise specifically provided for in the Plan or the Confirmation Order or required by applicable bankruptcy and non-bankruptcy law, (i) postpetition and/or default interest shall not accrue or be paid on any Claims, and (ii) no Holder of a Claim shall be entitled to (a) interest accruing on or after the Petition Date on any such Claim or (b) interest at the contractual default rate, as applicable.

F.      *Setoffs and Recoupment*

Except as expressly provided in this Plan (including the Plan Supplement), the Debtors, or, after the Effective Date, the Creditor Trust on behalf of the Debtors, may, pursuant to section 553 of the Bankruptcy Code, setoff and/or recoup against any Plan Distributions to be made on account of any Allowed Claim, any and all claims, rights, and Causes of Action (other than Avoidance Actions) that the Debtors or the Creditor Trust, as applicable, may hold against the Holder of such Allowed Claim to the extent such setoff or recoupment is either (1) agreed in amount among the Debtors or the Creditor Trust, as applicable, on the one hand, and the Holder of the Allowed Claim, on the other hand, or (2) otherwise adjudicated by the Bankruptcy Court or another court of competent jurisdiction; *provided*, that neither the failure to effectuate a setoff or recoupment nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtors, the Creditor Trust, or their respective successor of any and all claims, rights, and Causes of Action that the Debtors, the Creditor Trust, or their respective or their successor may possess against the applicable Holder.  Notwithstanding anything to the contrary herein, in no event shall any Holder of a Claim be entitled to setoff any such Claim against the Purchaser following consummation of the Sale Transactions or against TEP Holdings or its subsidiaries following consummation of the Atlas Sale Transaction.

G.      *No Double Payment of Claims*

To the extent that a Claim is Allowed against more than one Debtor's Estate, there shall be only a single recovery on account of that Allowed Claim, but the Holder of an Allowed Claim against more than one Debtor may recover distributions from all co-obligor Debtors' Estates until the Holder has received payment in full on the Allowed Claims.  No Holder of an Allowed Claim shall be entitled to receive more than payment in full of its Allowed Claim, and each Claim shall be administered and treated in the manner provided by the Plan only until payment in full on that Allowed Claim.

H.      *Claims Paid or Payable by Third Parties*

1.      <u>Claims Paid by Third Parties</u>

The Debtors or the Creditor Trust, as applicable, shall reduce in full a Claim, and such Claim shall be disallowed without a Claim Objection having to be Filed and without any notice to or action, order, or approval of the Bankruptcy Court, to the extent that the Holder of such Claim receives payment in full on account of such Claim from a party that is not a Debtor or the Creditor Trust.  Subject to the last sentence of this paragraph, to the extent a Holder of a Claim receives a distribution on account of such Claim and receives payment from a party that is not a Debtor or the Creditor Trust on account of such Claim, such Holder shall, within fourteen days of receipt thereof, repay or return the distribution to the applicable Debtor or the Creditor Trust, to the extent the Holder's total recovery on account of such Claim from the third party and under the Plan exceeds the amount of such Claim as of the date of any such Plan Distribution.  The failure of such Holder to timely repay or return such distribution shall result in the Holder owing the applicable Debtor or the Creditor Trust annualized interest at the Federal Judgment Rate on such amount owed for each Business Day after the fourteen-day grace period specified above until the amount is repaid.

2.      <u>Claims Payable by Third Parties</u>

No Plan Distributions shall be made on account of an Allowed Claim that is payable pursuant to one of the Insurance Policies until the Holder of such Allowed Claim has exhausted all remedies with respect to such Insurance Policy.  To the extent that one or more Insurers pays in full or in part a Claim, then immediately upon such Insurers' payment of such Claim, the applicable portion of such Claim may be

expunged without a Claim Objection having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court.

        3.      <u>Applicability of Insurance Policies</u>

Except as otherwise provided in the Plan (including the Plan Supplement), payments to Holders of Claims covered by Insurance Policies shall be in accordance with the provisions of any applicable Insurance Policy. Nothing contained in the Plan shall constitute or be deemed a waiver of any Cause of Action that the Debtors or any Entity may hold against any other Entity, including Insurers, under any Insurance Policies, nor shall anything contained herein constitute or be deemed a waiver by such Insurers of any rights or defenses, including coverage defenses, held by such Insurers.

**ARTICLE VII.**
**PROCEDURES FOR RESOLVING CONTINGENT,**
**UNLIQUIDATED AND DISPUTED CLAIMS**

*A.*     *Allowance of Claims*

After the Effective Date, each of the Debtors shall have and retain any and all rights and defenses the applicable Debtor had with respect to any Claim or Interest immediately before the Effective Date; *provided, however*, that the Creditor Trust shall have and retain any and all rights and defenses that the Debtors had with regard to any Claim to which they may object, except with respect to any Claim that is Allowed. Except as expressly provided in the Plan or in any order entered in the Chapter 11 Cases before the Effective Date (including the Confirmation Order), no Claim or Interest shall become an Allowed Claim or Interest unless and until such Claim or Interest, as applicable, is deemed Allowed under the Plan or the Bankruptcy Code, or the Bankruptcy Court has entered a Final Order, including the Confirmation Order (when it becomes a Final Order), in the Chapter 11 Cases Allowing such Claim or Interest.

*B.*     *Claims Administration Responsibilities*

Except as otherwise specifically provided in the Plan and notwithstanding any requirements that may be imposed pursuant to Bankruptcy Rule 9019, after the Effective Date, the Creditor Trust shall have the sole authority to: (i) File and prosecute Claim Objections other than Claim Objections related to Unsecured Notes Claims; (ii) settle, compromise, withdraw, litigate to judgment, or otherwise resolve any and all Claim Objections, regardless of whether such Claims are in a Class or otherwise; (iii) settle, compromise, or resolve any Disputed Claim without any further notice to or action, order, or approval by the Bankruptcy Court; and (iv) administer and adjust the Claims Register to reflect any such settlements or compromises without any further notice to or action, order, or approval by the Bankruptcy Court. After the Effective Date, the Creditor Trust shall resolve Disputed Claims in accordance with their fiduciary duties and pursuant to the terms of the Plan. For the avoidance of doubt, except as otherwise provided herein, from and after the Effective Date, the Creditor Trustee shall have and retain any and all rights and defenses the Debtors had immediately prior to the Effective Date with respect to any Disputed Claim or Interest, including the Retained Causes of Action pursuant to <u>Article IV.C.10</u> of the Plan.

The Debtors up to the Effective Date, and the Creditor Trust on and after the Effective Date, shall be responsible and obligated to maintain the Claims Register and to administer and adjust the Claims Register with regard to Allowance of Claims. The Debtors may, as applicable, maintain the retention of the Claims and Noticing Agent.

C.      *Estimation of Claims*

Before, on, or after the Effective Date, the Debtors or Creditor Trust, as applicable, may at any time request that the Bankruptcy Court estimate the amount of any Claim pursuant to applicable law, including, without limitation pursuant to section 502(c) of the Bankruptcy Code for any reason, regardless of whether any party previously has objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall retain jurisdiction under 28 U.S.C. §§ 157 and 1334 to estimate any such Claim, including during the litigation of any objection to any Claim or during the pendency of any appeal relating to such objection.  Notwithstanding any provision to the contrary in the Plan, a Claim that has been expunged from the Claims Register, but that either is subject to appeal or has not been the subject of a Final Order, shall be deemed to be estimated at zero dollars, unless otherwise ordered by the Bankruptcy Court.  In the event that the Bankruptcy Court estimates any Claim, such estimated amount shall constitute a maximum limitation on such Claim for all purposes under the Plan (including for purposes of Plan Distributions) and may be used as evidence in any supplemental proceedings, and the Creditor Trust may elect to pursue any supplemental proceedings to object to any ultimate distribution on such Claim.

D.      *Adjustment to Claims or Interests Without Objection*

Any Claim or Interest that has been paid or satisfied (including through such Claim or Interest being assigned to any third party) may be adjusted or expunged (including on the Claims Register, to the extent applicable) by the Debtors or the Creditor Trust, as applicable, after notice to the Holder of such Claim (or such Holder's known counsel), but without any further notice to or action, order, or approval of the Bankruptcy Court.

E.      *Time to File Objections to Claims*

Any objections to Claims shall be Filed on or before the later of (1) one-hundred eighty days after the Effective Date and (2) such other period of limitation as may be specifically fixed by a Final Order of the Bankruptcy Court, subject to a notice and objection period, for objecting to such Claims.  For the avoidance of doubt, Administrative Claims are subject to the Administrative Claims Objection Bar Date and the period of limitation set forth herein shall not apply to Administrative Claims.

F.      *Disallowance of Claims or Interests*

Except as otherwise expressly set forth herein, and subject to the terms hereof, including Article VIII, and the Final DIP Order, any Claims or Interests held by Entities from which property is recoverable under section 542, 543, 550, or 553 of the Bankruptcy Code, or that is a transferee of a transfer avoidable under section 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code, shall be deemed disallowed pursuant to section 502(d) of the Bankruptcy Code, and Holders of such Claims or Interests may not receive any distributions on account of such Claims until such time as such Causes of Action against that Entity have been settled or a Bankruptcy Court order with respect thereto has been entered and all sums due, if any, to the Debtors by that Entity have been turned over or paid to the Debtors.

G.      *Amendments to Proofs of Claims or Interests*

Except as otherwise provided in the Bar Date Order, on or after the applicable bar date, a Proof of Claim or Interest may not be Filed or amended without the prior written authorization of, as applicable, the Bankruptcy Court, the applicable Debtor, or the Creditor Trust.  Except as otherwise provided in the Bar Date Order, absent such authorization, any new or amended Claim or Interest Filed shall be deemed disallowed in full and expunged without any further action.

H.      *No Distributions Pending Allowance*

Notwithstanding any other provision of the Plan or the Confirmation Order, if any portion of a Claim or Interest is a Disputed Claim or Disputed Interest, as applicable, no payment or distribution provided under the Plan shall be made on account of such Claim or Interest unless and until such Disputed Claim or Disputed Interest becomes an Allowed Claim or Allowed Interest.

I.      *Distributions After Allowance*

To the extent that a Disputed Claim or Disputed Interest ultimately becomes an Allowed Claim or Allowed Interest, distributions (if any) shall be made to the Holder of such Allowed Claim or Allowed Interest (as applicable) in accordance with the provisions of the Plan and the Confirmation Order.  As soon as reasonably practicable after the date that the order or judgment of the Bankruptcy Court Allowing any Disputed Claim or Disputed Interest becomes a Final Order, the Creditor Trustee shall provide to the Holder of such Claim or Interest the distribution (if any) to which such Holder is entitled under the Plan as of the Effective Date, without any interest, dividends, or accruals to be paid on account of such Claim or Interest unless required under applicable bankruptcy law.

**ARTICLE VIII.**
**SETTLEMENT, RELEASE, INJUNCTION, AND RELATED PROVISIONS**

A.      **Release of Liens**

**Except as otherwise provided in the Plan, the Plan Supplement, Confirmation Order, or any contract, instrument, release, or other agreement or document created pursuant to the Plan or Confirmation Order, immediately following the making of all distributions to be made to an applicable Holder pursuant to the Plan and, in the case of a Secured Claim, satisfaction in full of the portion of the Secured Claim that is Allowed as of the Effective Date, except for Other Secured Claims that the Debtors elect to reinstate in accordance with Article III.B.1 hereof, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates shall be fully released, settled, and compromised, and all of the right, title, and interest of any Holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert automatically to the applicable Debtor and its successors and assigns.  Any Holder of such Secured Claim (and the applicable agents for such Holder) shall be authorized and directed to release any collateral or other property of any Debtor (including any cash collateral and possessory collateral) held by such Holder (and the applicable agents for such Holder), and to take such actions as may be reasonably requested by the Debtors or the Creditor Trust, as applicable, to evidence the release of such Lien and/or security interest, including the execution, delivery, and Filing or recording of such releases.  The presentation or Filing of the Confirmation Order to or with any federal, state, provincial, or local agency, records office, or department shall constitute good and sufficient evidence of, but shall not be required to effect, the termination of such Liens.**

**If any Holder of a Secured Claim that has been satisfied or released in full pursuant to the Plan or the Confirmation Order, or any agent for such Holder, has filed or recorded publicly any Liens and/or security interests to secure such Holder's Secured Claim, then as soon as reasonably practicable on or after the Effective Date, such Holder (or the agent for such Holder) shall take any and all steps requested by the Debtors or the Creditor Trust, as applicable that are necessary or desirable to record or effectuate the cancelation and/or extinguishment of such Liens and/or security interests, including the making of any applicable filings or recordings, and the Debtors or the Creditor Trust, as applicable, shall be entitled to make any such filings or recordings on such Holder's behalf.**

40

*B.*      ***Releases by the Debtors*[3]**

**[Notwithstanding anything contained in the Plan or the Confirmation Order to the contrary, pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration, the adequacy of which is hereby confirmed, upon entry of the Confirmation Order and effective as of the Effective Date, to the fullest extent permitted by applicable law, each Released Party is, and is deemed hereby to be, fully, conclusively, absolutely, unconditionally, irrevocably, and forever released by each and all of the Debtors and their Estates, in each case on behalf of themselves and their respective successors, assigns, and representatives, including any Estate representative appointed or selected pursuant to section 1123(b)(3) of the Bankruptcy Code, from any and all Claims, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, whether known or unknown, including any derivative claims, asserted or assertable on behalf of any of the Debtors or their Estates, that any such Entity would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim against or Interest in a Debtor or other Entity, or that any Holder of any Claim against or Interest in a Debtor or other Entity could have asserted on behalf of the Debtors, based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the Debtors' capital structure, management, ownership, or operation thereof or otherwise), the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan (including the Prepetition Loan Documents), the business or contractual arrangements between any Debtor and any Released Party, the Debtors' in or out of court restructuring efforts, the purchase, sale, or rescission of any security of the Debtors, intercompany transactions between or among a Debtor or an affiliate of a Debtor and another Debtor or affiliate of a Debtor, the Chapter 11 Cases, the formulation, preparation, dissemination, solicitation, negotiation, entry into, or filing of the Disclosure Statement, the Plan, the Plan Supplement, the Sale Transactions, or any other Definitive Document, or any contract, instrument, release, or other agreement or document created or entered into in connection with the Disclosure Statement, the Plan, the Plan Supplement, the Sale Transaction, any other Definitive Document, the Chapter 11 Cases, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the administration and implementation of the Plan, or the distribution of property under the Plan, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date, except for any claims arising from or related to any act or omission that is determined in a Final Order by a court of competent jurisdiction to have constituted actual fraud or willful misconduct.**

**Notwithstanding anything to the contrary in the foregoing, this Article VIII.B does not release:  (1) any obligations arising on or after the Effective Date (solely to the extent such obligation does not arise from any acts or omissions prior to the Effective Date) of any party or Entity under the Plan, the Confirmation Order, or any post Effective Date transaction contemplated by the Plan, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan; or (2) the Estate Causes of Action.]**

*C.*      ***Releases by the Releasing Parties*[4]**

**[Except as otherwise expressly set forth in this Plan or the Confirmation Order, effective as of the Effective Date, in exchange for good and valuable consideration, the adequacy of which is hereby confirmed, each Released Party is, and is deemed hereby to be, fully, conclusively, absolutely,**

---

[3]      All release and exculpation provisions are subject to the results of the Independent Investigation and ongoing review and discussion.

[4]      All release and exculpation provisions are subject to the results of the Independent Investigation and ongoing review and discussion.

unconditionally, irrevocably, and forever released by each Releasing Party from any and all claims and Causes of Action, whether known or unknown, including any derivative claims, asserted or assertable on behalf of any of the Debtors or their Estates, that such Entity would have been legally entitled to assert (whether individually or collectively), based on or relating to or in any manner arising from, in whole or in part, the Debtors (including the Debtors' capital structure, management, ownership, or operation thereof or otherwise), the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan (including the Prepetition Loan Documents), the business or contractual arrangements between any Debtor and any Released Party, the Debtors' in or out of court restructuring efforts, the purchase, sale, or rescission of any Security of the Debtors, intercompany transactions, the Chapter 11 Cases, the formulation, preparation, dissemination, solicitation, negotiation, entry into, or filing of the Disclosure Statement, the Plan, the Plan Supplement, the Sale Transaction, or any other Definitive Document, or any contract, instrument, release, or other agreement or document created or entered into in connection with the Disclosure Statement, the Plan, the Plan Supplement, the Sale Transaction, any other Definitive Document, the Chapter 11 Cases, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, or the distribution of property under the Plan, or upon any other related act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date, except for any claims arising from or related to any act or omission that is determined in a Final Order by a court of competent jurisdiction to have constituted actual fraud or willful misconduct.

Notwithstanding anything to the contrary in the foregoing, this Article VIII.C does not release (1) any obligations arising on or after the Effective Date (solely to the extent such obligation does not arise from any acts or omissions prior to the Effective Date) of any party or Entity under the Plan, the Confirmation Order, or any post Effective Date transaction contemplated by the Plan, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan; (2) any obligations relating to, or any rights to enforce, the Atlas Sale Transaction or the ASPA Settlement (as defined in the Atlas Sale Order); (3) any obligations under, or any rights to enforce, the Sale Transaction Documents or the Atlas Sale Transaction Documents; or (4) the rights of any Holder of Allowed Claims to receive distributions under the Plan.]

D.    *Exculpation*[5]

[Except as otherwise specifically provided in the Plan or the Confirmation Order, no Exculpated Party shall have or incur any liability for, and each such party shall be exculpated from any Cause of Action for any claim related to any act or omission occurring between the Petition Date and the Effective Date in connection with, relating to or arising out of the Chapter 11 Cases prior to the Effective Date, the formulation, preparation, dissemination, negotiation, or filing of the Disclosure Statement, the Sale Transactions, the Plan, the Plan Supplement, or any other Definitive Document, or any contract, instrument, release, or other agreement or document created or entered into in connection with the Disclosure Statement, the Plan, the Plan Supplement, the Sale Transaction, any other Definitive Document, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of the Sale Transaction, the pursuit of Consummation, the administration and implementation of the Plan, or the distribution of property under the Plan or any other related agreement, except for claims related to any act or omission that is determined in a Final Order to have constituted gross negligence, willful misconduct, or actual fraud.  Notwithstanding anything to the contrary in the foregoing, the exculpation set forth above does not exculpate any obligations arising on or after the Effective Date of any Person or Entity under the Plan, the Confirmation Order,

---

[5]    All release and exculpation provisions are subject to the results of the Independent Investigation and ongoing review and discussion.

or any post-Effective Date transaction contemplated by the Plan, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan.]

E.      *Injunction*

In accordance with Bankruptcy Code section 1141(d)(3), the Plan does not discharge the Debtors. Section 1141(c) of the Bankruptcy Code nevertheless provides, among other things, that the property dealt with by the Plan is free and clear of all claims and interests of creditors and equity security holders. Except as otherwise expressly provided in the Plan or for obligations issued or required to be paid pursuant to the Plan or the Confirmation Order, all Persons or Entities who have held, hold, or may hold Claims, Interests, or Causes of Action in or against the Debtors or the Creditor Trust shall be precluded and permanently enjoined on and after the Effective Date, from taking any of the following actions against the Debtors, the Creditor Trust (but solely to the extent such action is brought against the Debtors or the Creditor Trust to directly or indirectly recover upon any property of the Estates, upon the Effective Date), the Exculpated Parties, the Released Parties, and any successors, assigns or representatives of such Persons or Entities, solely with respect to any Claims, Interests, or Causes of Action that will be or are treated by the Plan: (a) commencing or continuing in any manner any Claim, action, or other proceeding of any kind; (b) enforcing, attaching, collecting, or recovering by any manner or means of any judgment, award, decree, or order; (c) creating, perfecting, or enforcing any encumbrance of any kind; (d) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property of such Entities unless such holder has Filed a motion requesting the right to perform such setoff on or before the Effective Date, and notwithstanding an indication of a Claim or Interest or otherwise that such holder asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise; and (e) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims, Interests, or Causes of Action released or settled pursuant to the Plan. All Persons or Entities who directly or indirectly have held, hold, may hold, or seek to assert Claims or Causes of Action that (x) have been released in this Plan (the "*Released Claims*") or (y) that are subject to exculpation (the "*Exculpated Claims*"), shall be enjoined from (i) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to the Released Claims and Exculpated Claims; (ii) enforcing, attaching, collecting or recovering by any manner or means any judgment, award, decree, or order on account of or in connection with or with respect to the Released Claims and Exculpated Claims; (iii) creating, perfecting, or enforcing any encumbrance of any kind on account of or in connection with or with respect to the Released Claims and Exculpated Claims; (iv) asserting any right of subrogation on account of or in connection with or with respect to the Released Claims and Exculpated Claims, except to the extent that a permissible right of subrogation is asserted with respect to a timely filed proof of claim; or (v) commencing or continuing in any manner any action or other proceeding on account of or in connection with or with respect to the Released Claims and Exculpated Claims; *provided, however*, that the foregoing injunction shall have no effect on the liability of any person or Entity that results from any act or omission based on or arising out of gross negligence, fraud, or willful misconduct. Notwithstanding anything to the contrary in the Plan, the Plan Supplement, or the Confirmation Order, the automatic stay pursuant to section 362 of the Bankruptcy Code shall remain in full force and effect with respect to the Debtors and any property dealt with by the Plan until the closing of these Chapter 11 Cases. Notwithstanding anything to the contrary in the foregoing, the injunction set forth above does not enjoin the enforcement of any obligations arising on or after the Effective Date of any Person or Entity under the Plan, any post-Effective Date transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan.

**Upon entry of the Confirmation Order, all Holders of Claims and Interests and their respective current and former employees, agents, officers, directors, managers, principals, and direct and indirect Affiliates, in their capacities as such, shall be enjoined from taking any actions to interfere with the implementation or Consummation of the Plan. Each Holder of an Allowed Claim, by accepting, or being eligible to accept, distributions under or Reinstatement of such Claim or Interest, as applicable, pursuant to the Plan, shall be deemed to have consented to the injunction provisions set forth in this Article VIII.E.**

F.    *Protections Against Discriminatory Treatment*

To the maximum extent provided by section 525 of the Bankruptcy Code and the Supremacy Clause of the U.S. Constitution, all Entities, including Governmental Units, shall not discriminate against the Debtors or deny, revoke, suspend, or refuse to renew a license, permit, charter, franchise, or other similar grant to, condition such a grant to, discriminate with respect to such a grant against, the Debtors, or another Entity with whom the Debtors have been associated, solely because each Debtor has been a debtor under chapter 11 of the Bankruptcy Code, has been insolvent before the commencement of the Chapter 11 Cases (or during the Chapter 11 Cases but before the Effective Date), or has not paid a debt that is addressed under the Plan or otherwise in the Chapter 11 Cases.

G.    *Document Retention*

On and after the Effective Date, the Debtors and the Creditor Trust shall preserve all books, records, electronically stored information, and other documents in accordance with their standard document retention policy, as may be altered, amended, modified, or supplemented by the Debtors, and applicable law.

H.    *Reimbursement or Contribution*

If the Bankruptcy Court disallows a Claim for reimbursement or contribution of an Entity pursuant to section 502(e)(1)(B) of the Bankruptcy Code, then to the extent that such Claim is contingent as of the time of Allowance or disallowance, such Claim shall be forever disallowed and expunged notwithstanding section 502(j) of the Bankruptcy Code, unless prior to the Confirmation Date:  (1) such Claim has been adjudicated as non-contingent or (2) the relevant Holder of a Claim has Filed a non-contingent Proof of Claim on account of such Claim and a Final Order has been entered prior to the Confirmation Date determining such Claim as no longer contingent.

I.    *Term of Injunctions or Stays*

Unless otherwise provided in the Plan or in the Confirmation Order, all injunctions or stays in effect in the Chapter 11 Cases pursuant to sections 105 or 362 of the Bankruptcy Code or any order of the Bankruptcy Court, and extant on the Confirmation Date (excluding any injunctions or stays contained in the Plan or the Confirmation Order), shall remain in full force and effect until the Effective Date.  All injunctions or stays contained in the Plan or the Confirmation Order shall remain in full force and effect in accordance with their terms.

J.    *Good Faith Solicitation*

All persons within the definition of Exculpated Parties who solicited votes on the Plan are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code as well as the exculpation and limitation of liability provisions set forth in this Article VIII of the Plan.

**ARTICLE IX.**
**CONDITIONS PRECEDENT TO CONFIRMATION**
**AND CONSUMMATION OF THE PLAN**

*A.      Conditions Precedent to the Effective Date*

It shall be a condition to the Effective Date of the Plan that the following conditions shall have been satisfied or waived pursuant to the provisions of Article IX.B hereof:

1.    the Bankruptcy Court shall have entered the Confirmation Order (and such order shall be a Final Order);

2.    the Debtors shall have obtained all authorizations, consents, regulatory approvals, rulings, or documents that are necessary to implement and effectuate the Plan;

3.    the Debtors shall have paid all Allowed Professional Fee Claims in full in Cash and transferred Cash in an amount equal to the Professional Fee Escrow Amount with respect to any unpaid Professional Fee Claims, whether Allowed or otherwise, to the Professional Fee Escrow Account pending approval of such Professional Fee Claims by the Bankruptcy Court;

4.    contemporaneously with the Effective Date, all accrued and unpaid Unsecured Notes Trustee Fees shall have been paid in full in Cash;

5.    the Administrative / Priority Claims Reserve shall have been funded;

6.    the Creditor Trust Agreement shall have been executed and the Creditor Trust Assets shall have vested or be deemed to have vested in the Creditor Trust; and

7.    the Plan Supplement and all of the schedules, documents, and exhibits contained therein shall have been Filed.

*B.      Waiver of Conditions*

The conditions to Confirmation and to Consummation set forth in Article IX may be waived by the Debtors, without notice, leave, or order of the Bankruptcy Court or any formal action other than proceeding to confirm or consummate the Plan.

*C.      Substantial Consummation*

"Substantial consummation" of the Plan, as defined in sections 1101 and 1127 of the Bankruptcy Code, shall be deemed to occur on the Effective Date.

*D.      Effect of Failure of Conditions*

If the Consummation of the Plan does not occur, the Plan shall be null and void in all respects and nothing contained in the Plan or the Disclosure Statement shall:  (1) constitute a waiver or release of any Claims by the Debtors, any Holders, or any other Entity; (2) prejudice in any manner the rights of the Debtors, any Holders, or any other Entity; or (3) constitute an admission, acknowledgment, offer, or undertaking by the Debtors, any Holders, or any other Entity in any respect.  Notwithstanding the foregoing, the non-Consummation of the Plan shall not require or result in the voiding, rescission, reversal, or

unwinding of the Sale Transactions or the Atlas Sale Transaction or the revocation of the Debtors' authority under the Sale Order or Atlas Sale Order to consummate such Sale Transaction or Atlas Sale Transaction.

## ARTICLE X.
## CREDITOR TRUST

A.      *Creation and Governance of Creditor Trust*

The Creditor Trustee shall be selected by the Debtors in consultation with the Committee. The powers, rights, and responsibilities of the Creditor Trustee shall be specified herein and/or in the Creditor Trust Agreement, as applicable, and shall include the responsibility and requisite power to reconcile Claims, including asserting any objections thereto.

On the Effective Date, the Debtors and the Creditor Trustee shall enter into the Creditor Trust Agreement and the Creditor Trust Assets shall vest or be deemed to be vested in the Creditor Trust automatically without further action by any Person, free and clear of all Claims and Liens, and such transfer shall be exempt from any stamp, real estate transfer, mortgage reporting, sales, use, or other similar tax pursuant to section 1146(a) of the Bankruptcy Code. Under no circumstance shall the Debtors or any other party be required to contribute any assets to the Creditor Trust other than the Creditor Trust Assets. After the Effective Date, neither the Debtors nor any other party shall have any interest in the Creditor Trust Assets except as expressly set forth herein.

The Creditor Trust shall be administered by the Creditor Trustee and governed by the Creditor Trust Agreement, and the Creditor Trustee shall have the sole power and authority to distribute the proceeds of the Creditor Trust Assets to Creditor Trust Beneficiaries in accordance with the treatment set forth in Article III.B of the Plan. The Creditor Trustee shall be the exclusive trustee of the Creditor Trust Assets for purposes of 31 U.S.C. § 3713(b) and section 6012(b)(4) of the Tax Code. The Creditor Trust, acting through the Creditor Trustee, shall be the sole representative of the Estates under section 1123(b)(3) of the Bankruptcy Code with respect to the Creditor Trust Assets (including the Retained Causes of Action). The Creditor Trust, acting through the Creditor Trustee, shall be a party in interest within the meaning of section 1109(b) of the Bankruptcy Code for all purposes in these Chapter 11 Cases. The Confirmation Order shall contain a finding that the Creditor Trust has standing to pursue the Retained Causes of Action on behalf of the Debtors.

To the extent necessary to the performance of the Creditor Trustee's duties and responsibilities, and subject to the Creditor Trust Agreement, the Debtors shall share communications or documents that are subject to the attorney-client privilege, work product protection, or other applicable privilege with the Creditor Trust; the sharing of such information shall not operate as a waiver of any applicable privileges. The Debtors, Committee, and Creditor Trustee, as applicable, shall agree on how to document the sharing of the attorney-client privilege in accordance with the foregoing such that any privilege is preserved (such as through a common interest agreement), and in the absence of such agreement, the Bankruptcy Court shall decide as set forth in the Confirmation Order or any other order(s).

On the Effective Date, the authority, power, and incumbency of the persons acting as directors and officers of each of the Debtors shall be deemed to have been terminated and such persons shall be deemed to have resigned, solely in their capacities as such, and the Creditor Trustee shall be appointed by each Debtor as the sole director and the sole officer of the Debtors and shall succeed to the powers of such Debtor's directors and officers. The Creditor Trustee shall succeed to all rights, powers, and authorities of the Chief Restructuring Officer and any other authorized person of the Debtors solely with regard to such persons' right to consent to or otherwise approve any settlement between the Administrative Agent or any Settling Lender and any Dealer (each as defined in the Atlas Sale Order) that settles, resolves, releases, or otherwise disposes of any Avoidance Action.

B.      *Purpose of Creditor Trust*

The Creditor Trust shall be established for the purpose of winding down the Debtors and their Estates and liquidating the Creditor Trust Assets and distributing the proceeds thereof to the Creditor Trust Beneficiaries in accordance with the terms of the Plan and Creditor Trust Agreement.  The Creditor Trust is intended to qualify as a liquidation trust pursuant to Treasury Regulations section 301.7701-4(d), with no objective to continue or engage in the conduct of a trade or business, except to the extent reasonably necessary and consistent with the purpose of the Creditor Trust.

In furtherance of, and consistent with, the purposes of the Creditor Trust and the Plan, the Creditor Trustee shall, among other things, (a) have the power and authority to hold, manage, sell, invest, liquidate, monetize, and distribute to the Holders of Allowed Claims, the Creditor Trust Net Assets, including any proceeds thereof, (b) hold the Creditor Trust Net Assets for the benefit of the Creditor Trust Beneficiaries, (c) have the power and authority to prosecute and resolve objections to Disputed General Unsecured Claims, and (d) have the power and authority to perform such other functions as are provided for herein and the Creditor Trust Agreement.  For the avoidance of doubt, notwithstanding anything to the contrary in the Plan or the Creditor Trust Agreement, the Creditor Trustee shall not pursue any Claims or Causes of Action against any Released Party.

C.      *Creditor Trust Agreement and Funding of Creditor Trust*

The Creditor Trust Agreement will generally provide for, among other things:  (i) the payment of the Creditor Trust Fees and Expenses; (ii) the retention of counsel, accountants, financial advisors, or other professionals by the Creditor Trust and the payment of their reasonable compensation; (iii) the orderly liquidation of the Creditor Trust Assets; (iv) the disposition of the Retained Causes of Action, which may include the prosecution, settlement, abandonment, sale, or dismissal of any such Retained Causes of Action in accordance with this Plan; and (v) the orderly implementation and consummation of the Wind Down. The Creditor Trust Agreement may include reasonable and customary provisions that allow for indemnification by the Creditor Trust and the Creditor Trustee solely from the proceeds of the Creditor Trust Assets; *provided* that, for the avoidance of doubt, any such indemnification shall be by the Creditor Trust and the Creditor Trustee alone and shall not implicate the Debtors.  In the event of any conflict between the terms of the Plan and the Creditor Trust Agreement, the terms of the Plan shall govern.

D.      *Creditor Trust Professionals; Creditor Trust Fees and Expenses*

The Creditor Trust Fees and Expenses shall be paid from the Creditor Trust Assets in accordance with the Plan and the Creditor Trust Agreement.  The Creditor Trustee, on behalf of the Creditor Trust, may employ, without further order of the Bankruptcy Court, professionals to assist in carrying out its duties hereunder and may compensate and reimburse the reasonable expenses of these professionals without further order of the Bankruptcy Court from the Creditor Trust Assets in accordance with the Plan and the Creditor Trust Agreement.

The Creditor Trustee and all professionals retained by the Creditor Trustee, each in their capacities as such, shall be deemed exculpated and indemnified, except for fraud, willful misconduct, or gross negligence, in all respects by each of the Debtors.  The Creditor Trustee may obtain, at the expense of the Creditor Trust, commercially reasonable liability or other appropriate insurance with respect to the indemnification obligations of the Debtors.  The Creditor Trustee may rely upon written information previously generated by the Debtors.

E.      *GUC Reconciliation Process*

The Creditor Trustee shall have primary responsibility for the GUC Reconciliation Process.  All objections to General Unsecured Claims must be filed by the Creditor Trustee within 180 days of the Effective Date, unless extended by order of the Bankruptcy Court.  Any Quarterly Trustee Fees arising after the Effective Date shall be paid exclusively from the Creditor Trust Assets.  All the Chapter 11 Cases shall be closed as soon as reasonably practicable.  The Creditor Trustee shall have the right to file a motion to reopen one or more of the Chapter 11 Cases, including for purposes of the GUC Reconciliation Process, and to the extent necessary for the Creditor Trustee to make distributions at a later date.  After an Estate has been fully administered, the Creditor Trustee shall seek authority to close the applicable Chapter 11 Case(s).

F.      *Wind Down*

1.    Authority of Creditor Trustee

The Creditor Trustee shall be the sole representative of, and shall act for the Debtors in the same fiduciary capacity as applicable to a board of managers and officers, subject to the provisions hereof (and all certificates of formation, membership agreements, and related documents are deemed amended by the Plan to permit and authorize the same).  For the avoidance of doubt, the foregoing shall not limit the authority of the Creditor Trustee, as applicable, to continue the employment of any former director or officer.

The Creditor Trustee shall have the power and authority to implement the Wind Down in accordance with the Plan.  All Plan Distributions shall be made by the Creditor Trustee.  The Creditor Trustee shall not be required to give any bond or surety or other security for the performance of its duties. The Creditor Trustee shall be entitled to retain the services of attorneys, accountants, and other professionals that, in the discretion of the Creditor Trustee, are necessary to assist the Creditor Trustee in the performance of his or her duties.  The reasonable fees and expenses of such professionals shall be paid by the Creditor Trust as Creditor Trust Fees and Expenses.  The payment of the reasonable fees and expenses of the Creditor Trustee's retained professionals shall be made in the ordinary course of business and shall not be subject to the approval of the Bankruptcy Court.

2.    Debtors' Tax Returns

After the Effective Date, the Creditor Trustee shall complete and file all final or otherwise required federal, state, and local tax returns for each of the Debtors and, pursuant to section 505(b) of the Bankruptcy Code, may request an expedited determination of any unpaid tax liability of such Debtor or its Estate for any tax incurred during the administration of such Debtor's Chapter 11 Case, as determined under applicable tax laws.

3.    Dissolution of the Debtors

Upon a certification to be Filed with the Bankruptcy Court by the Creditor Trustee of all Plan Distributions having been made and completion of all its duties under the Plan and entry of a final decree closing the last of the Chapter 11 Cases, each of the Debtors shall be deemed to be dissolved without any further action by such Debtor, including the filing of any documents with the secretary of state for the state in which each such Debtor is formed or any other jurisdiction.  The Creditor Trustee, however, shall have authority to take all necessary actions to dissolve the Debtors in and withdraw the Debtors from applicable states.

G.     *Creditor Trust Beneficial Interests*

Creditor Trust Beneficial Interests shall be passive and shall not have voting, consent, or other shareholder-like control rights with respect to the Creditor Trust.  The Creditor Trust Beneficial Interests will not be certificated and may not be transferred, sold, pledged, or otherwise disposed of, or offered for sale except in accordance with applicable law.  The Creditor Trust will operate in compliance with applicable federal and state securities laws and SEC staff guidance, including those regarding liquidating trusts, if applicable.

H.     *Cooperation of the Debtors*

The Debtors shall provide commercially reasonable access to the Creditor Trustee and any professionals retained by the Creditor Trustee to records and information relating to the Retained Causes of Action including electronic records, documents, or work product related to the foregoing; *provided* that the Debtors shall not incur any expenses to provide such access to the Creditor Trustee and any professionals retained by the Creditor Trust.

Subject to Article X.A, to the extent the Creditor Trust receives information from the Debtors in connection with the Retained Causes of Action, the Creditor Trust's receipt of such documents, information, or communications shall not constitute a waiver of any privilege.  All privileges shall remain in the control of the Debtors and the Debtors retain the sole right to waive their own privileges.  Reasonable agreements will be made with the Creditor Trustee such that confidential information and privileges are preserved, while permitting the Creditor Trustee to use, as necessary to administer the Creditor Trust, such information and privilege; absent such agreements, either the Creditor Trustee or the Debtors may present the issue to the Bankruptcy Court for resolution.

The Debtors shall transfer all Creditor Trust Materials to the Creditor Trust on the Effective Date.

I.     *Tax Treatment of the Creditor Trust*

To the extent reasonably practicable, the Debtors intend to treat the Creditor Trust as a "liquidating trust" under section 301.7701-4(d) of the Treasury Regulations and a grantor trust under section 671 of the Tax Code.  If such treatment applies, for U.S. federal income tax purposes, the transfer of assets to the Creditor Trust would be deemed to occur as (i) a first-step transfer of the Creditor Trust Assets to the Holders of the applicable Claims, and (ii) a second-step transfer by such Holders to the Creditor Trust. Thus, such Holders would be treated as the grantors and owners of a grantor trust for federal income tax purposes.

No request for a ruling from the IRS will be sought on the classification of the Creditor Trust. Accordingly, there can be no assurance that the IRS would not take a contrary position to the classification of the Creditor Trust.  If the IRS were to successfully challenge the classification of the Creditor Trust as a grantor trust, the federal income tax consequences to the Creditor Trust and the Creditor Trust Beneficiaries could vary from those discussed in the Plan (including the potential for an entity-level tax).  For example, the IRS could characterize the Creditor Trust as a so-called "complex trust" subject to a separate entity-level tax on its earnings, except to the extent that such earnings are distributed during the taxable year.

As soon as possible after the transfer of the Creditor Trust Assets to the Creditor Trust, the Creditor Trustee shall make a good faith valuation of the Creditor Trust Assets.  This valuation will be made available from time to time, as relevant for tax reporting purposes.  Each of the Debtors, the Creditor Trustee, and the Holders of Claims receiving Creditor Trust Beneficial Interests shall take consistent

positions with respect to the valuation of the Creditor Trust Assets, and such valuations shall be utilized for all U.S. federal income tax purposes.

Allocations of taxable income and loss of the Creditor Trust among the Creditor Trust Beneficiaries shall be determined by reference to the Creditor Trust Beneficiaries' economic entitlements in respect of the Creditor Trust, as will be further described in the organizational documents of the Creditor Trust.

Assuming that the tax treatment above applies, the Creditor Trust will file annual information tax returns with the IRS as a grantor trust pursuant to section 1.671-4(a) of the Treasury Regulations that will include information concerning certain items relating to the holding or disposition (or deemed disposition) of the Creditor Trust Assets (e.g., income, gain, loss, deduction and credit). Each Creditor Trust Beneficiary holding a Creditor Trust Beneficial Interest will receive a copy of the information returns and must report on its federal income tax return its share of all such items. The information provided by the Creditor Trust will pertain to Creditor Trust Beneficiaries who receive their Creditor Trust Beneficial Interests in connection with the Plan.

However, notwithstanding the foregoing, with respect to any of the assets of the Creditor Trust that are subject to potential disputed claims of ownership or uncertain distributions, or to the extent "liquidating trust" treatment is otherwise unavailable or not elected to be applied with respect to the Creditor Trust, the Debtors anticipate that such assets will be subject to disputed ownership fund treatment under section 1.468B-9 of the Treasury Regulations, that any appropriate elections with respect thereto shall be made, and that such treatment will also be applied to the extent possible for state and local tax purposes. Under such treatment, a separate federal income tax return would be filed with the IRS for any such account. Any taxes (including with respect to interest, if any, earned in the account) imposed on such account would be paid out of the assets of the respective account (and reductions shall be made to amounts disbursed from the account to account for the need to pay such taxes).

J.      Fiduciary Duties

The Creditor Trustee shall owe fiduciary duties to the Creditor Trust Beneficiaries of the type that an official committee of unsecured creditors would owe to unsecured creditors, and shall have in place under the Creditor Trust Agreement applicable indemnity, limitation of liability, and waiver provisions (payable solely out of proceeds of the Creditor Trust Assets) to protect the Creditor Trustee from being personally liable for any claims or causes of action asserted by any actual or purported Creditor Trust Beneficiaries, except for any claims of fraud, gross negligence, or willful misconduct.

K.      Withholding

The Creditor Trustee may deduct and withhold and pay to the appropriate taxing authority all amounts required to be deducted or withheld pursuant to the Tax Code or any provision of any state, local, or non-U.S. tax Law with respect to any Creditor Trust Beneficiaries, including with respect to any payment or distribution to the Creditor Trust Beneficiaries, any amounts received by, collections of, or earnings of the Creditor Trust and any proceeds from the Creditor Trust Assets. Notwithstanding the above, each Holder of an Allowed Claim that is to receive a Plan Distribution shall have the sole and exclusive responsibility for the satisfaction and payment of any taxes imposed on such Holder by any governmental authority, including income, withholding, and other tax obligations, on account of such distribution or with respect to its ownership of Creditor Trust Beneficial Interests. All such amounts deducted or withheld and timely paid to the appropriate taxing authority shall be treated as amounts distributed to such Creditor Trust Beneficiaries to the extent permitted by applicable law. The Creditor Trustee shall be authorized to collect such tax information from the Creditor Trust Beneficiaries (including social security numbers or other tax identification numbers) as it, in its sole discretion, deems necessary to effectuate the Plan, the Confirmation

Order, and the Creditor Trust Agreement and to determine whether any deduction or withholding applies with respect to a payment to such Creditor Trust Beneficiary and the amount of such deduction or withholding.

As a condition to receiving, or being entitled to receive, Plan Distributions from the Creditor Trust, all Creditor Trust Beneficiaries may be required to identify themselves to the Creditor Trustee and provide tax information and the specifics of their holdings, to the extent requested by the Creditor Trustee, including an IRS Form W-9 or, in the case of non-U.S. Persons for U.S. federal income tax purposes, certification of foreign status on an applicable IRS Form W-8, including all applicable supporting documents.  If a Creditor Trust Beneficiary does not, within ninety days of the Creditor Trustee's first written request, provide sufficient documentation that is, in the Creditor Trustee's reasonable business judgment, necessary to determine the tax withholding and reporting requirements for such Claim, any current or future distribution on such Claim shall be deemed forfeited, the underlying Claim disallowed and expunged in its entirety, and the funds in respect of such present and future distribution(s) shall revert to the Creditor Trust for all purposes including, but not limited to, redistribution to other Creditor Trust Beneficiaries in accordance with the Plan, the Confirmation Order, and the Creditor Trust Agreement.

L.    *Dissolution of Creditor Trust*

The Creditor Trustee and the Creditor Trust shall be discharged or dissolved, as the case may be, at such time as (1) the Creditor Trustee determines that the pursuit of additional Retained Causes of Action is not likely to yield sufficient additional proceeds to justify further pursuit of such claims and (2) all Plan Distributions of Creditor Trust Assets required to be made by the Creditor Trustee have been made, but in no event shall the Creditor Trust be dissolved later than five years from the Effective Date unless the Bankruptcy Court, upon *ex parte* motion made by the Creditor Trustee before such fifth anniversary (and, in the event of further extension, by order of the Bankruptcy Court upon motion made before the end of the preceding extension), determines that a fixed period extension is necessary to facilitate or complete the recovery on, and liquidation of, the Creditor Trust Assets.

Upon dissolution of the Creditor Trust, any remaining proceeds of Creditor Trust Assets shall be distributed to all Holders of Allowed Claims in accordance with the Plan and the Creditor Trust Agreement as appropriate; *provided* that if the Creditor Trustee reasonably determines that such remaining proceeds of Creditor Trust Assets are insufficient to render a further Plan Distribution practicable, the Creditor Trustee may apply to the Bankruptcy Court for authority to (1) reserve any amount necessary to dissolve the Creditor Trust, (2) donate any balance to a charitable organization (A) described in section 501(c)(3) of the Internal Revenue Code, (B) exempt from U.S. federal income tax under section 501(a) of the Internal Revenue Code, (C) not a "private foundation" as defined in section 509(a) of the Internal Revenue Code, and (D) that is unrelated to the Debtors, the Creditor Trust, and any insider of the Creditor Trustee, and (3) dissolve the Creditor Trust.

M.    *Transferred Privileges*

Subject to Article X.A in all events, in respect of Transferred Privileges, the Creditor Trust Agreement shall contain terms substantially reflecting the following: subject to Article X.A, the Creditor Trust may not waive any Transferred Privileges in respect of records, documents, or information related to the Creditor Trust Assets without first providing to the Debtors reasonable advance written notice and an opportunity to protect their respective rights with respect to any subsequent disclosure and the terms of any protective order, confidentiality stipulation, or similar agreement relating to such disclosure.  The Debtors may not make disclosure in a manner that could effectuate a waiver of any Transferred Privilege in respect of records, documents, or information related to the Creditor Trust Assets without first providing to the Creditor Trustee reasonable advance written notice (in no event less than five Business Days) and an

opportunity to protect the Creditor Trust's rights with respect to any subsequent disclosure and the terms of any protective order, confidentiality stipulation, or similar agreement relating to such disclosure. If the Creditor Trustee or the Debtors object to an action proposed to be taken by the other with regard to records, documents, or information related to the Creditor Trust Assets that are covered by the Transferred Privilege (or a disclosure that would result in a waiver), the parties shall be permitted to raise the issue promptly with the Bankruptcy Court. The party providing advance written notice may take its proposed action unless the Bankruptcy Court determines that (1) such action would cause material adverse harm to the other party, or (2) the harm to the objecting party would substantially outweigh the benefit to the party seeking to take the proposed action. The objecting party shall bear the burden of proof. Each of the parties shall bear its own costs and expenses, including attorneys' fees, incurred in connection with such dispute.

## ARTICLE XI.
## MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN

A.    *Modification and Amendments*

Except as otherwise specifically provided in the Plan or the Confirmation Order, the Debtors reserve the right to modify the Plan, whether such modification is material or immaterial, and seek Confirmation consistent with the Bankruptcy Code and, if permissible under section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, not re-solicit votes on such modified Plan. Subject to certain restrictions and requirements set forth in section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019 (as well as those restrictions on modifications set forth in the Plan), the Debtors expressly reserve their respective rights to revoke or withdraw, to alter, amend, or modify the Plan with respect to such Debtor, one or more times, before or after Confirmation, and, to the extent necessary, may initiate proceedings in the Bankruptcy Court to so alter, amend, or modify the Plan, or remedy any defect or omission or reconcile any inconsistencies in the Plan, the Disclosure Statement, or the Confirmation Order, in such matters as may be necessary to carry out the purposes and intent of the Plan. Any modification, alternation, or amendment made pursuant to this Article XI.A, shall be in form and substance acceptable to KKR and the Special Committee of TEP Holdings, in each case solely to the extent such modification, alteration, or amendment adversely affects such Entity or Person.

B.    *Effect of Confirmation on Modifications*

Entry of a Confirmation Order shall mean that all modifications or amendments to the Plan since the solicitation thereof, but before entry of the Confirmation Order, are approved pursuant to section 1127(a) of the Bankruptcy Code and shall constitute a finding that such modifications or amendments to the Plan do not require additional disclosure or re-solicitation under Bankruptcy Rule 3019.

C.    *Revocation or Withdrawal of Plan*

The Debtors reserve the right to revoke or withdraw the Plan before the Confirmation Date and to File subsequent chapter 11 plans. If the Debtors revoke or withdraw the Plan, or if Confirmation or Consummation does not occur, then: (i) the Plan shall be null and void in all respects; (ii) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain of the Claims or Interests or Class of Claims or Interests), assumption or rejection of Executory Contracts or Unexpired Leases effected by the Plan, and any document or agreement executed pursuant to the Plan, shall be deemed null and void; and (iii) nothing contained in the Plan shall: (a) constitute a waiver or release of any Claims or Interests; (b) prejudice in any manner the rights of such Debtor, any Holder, or any other Entity; or (c) constitute an admission, acknowledgement, offer, or undertaking of any sort by such Debtor, any Holder, or any other Entity.

## ARTICLE XII.
## RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, on and after the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of, or related to, the Chapter 11 Cases and the Plan pursuant to sections 105(a) and 1142 of the Bankruptcy Code, including jurisdiction to:

1.        allow, disallow, determine, liquidate, classify, estimate, or establish the priority, Secured, or unsecured status, or amount of any Claim or Interest, including the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the Secured or unsecured status, priority, amount, or allowance of Claims or Interests;

2.        decide and resolve all matters related to the granting and denying, in whole or in part, any applications for allowance of compensation or reimbursement of expenses to Professionals authorized pursuant to the Bankruptcy Code or the Plan;

3.        resolve any matters related to (for the avoidance of doubt, notwithstanding whether such treatment arises under the terms of the Plan or the Sale Orders):  (a) the assumption, assumption and assignment, or rejection of any Executory Contract or Unexpired Lease to which a Debtor is party or with respect to which a Debtor may be liable and to hear, determine, and, if necessary, liquidate, any Claims arising therefrom, including Cure Claims pursuant to section 365 of the Bankruptcy Code; (b) any potential contractual obligation under any Executory Contract or Unexpired Lease that is assumed; (c) the Debtors amending, modifying, or supplementing, after the Effective Date, pursuant to Article V, the Assumed Executory Contracts and Unexpired Leases Schedule or the Rejected Executory Contracts and Unexpired Leases Schedule; and (d) any dispute regarding whether a contract or lease is or was executory, expired, or terminated;

4.        ensure that distributions to Holders of Allowed Claims and Interests are accomplished pursuant to the provisions of the Plan;

5.        adjudicate, decide, or resolve any motions, adversary proceedings, contested or litigated matters, and any other matters, and grant or deny any applications involving a Debtor that may be pending on the Effective Date;

6.        adjudicate, decide, or resolve any and all matters related to section 1141 of the Bankruptcy Code;

7.        enter and implement such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of the Plan and all contracts, instruments, releases, indentures, and other agreements or documents created in connection with the Plan, the Plan Supplement, or the Disclosure Statement;

8.        enter and enforce any order for the sale of property pursuant to sections 363, 1123, or 1146(a) of the Bankruptcy Code;

9.        resolve any cases, controversies, suits, or disputes that may arise in connection with the interpretation of the Sale Order;

10.     resolve any cases, controversies, suits, disputes, or Causes of Action that may arise in connection with Consummation, including interpretation or enforcement of the Plan or any Entity's obligations incurred in connection with the Plan;

11.     issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Entity with Consummation or enforcement of the Plan;

12.     resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the releases, injunctions, and other provisions contained in Article VIII, and enter such orders as may be necessary or appropriate to implement such releases, injunctions, and other provisions;

13.     resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the repayment or return of distributions and the recovery of additional amounts owed by the Holder of a Claim for amounts not timely repaid pursuant to Article VI.H.1;

14.     enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated;

15.     determine any other matters that may arise in connection with or relate to the Plan, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release, indenture, or other agreement or document created in connection with the Plan or the Disclosure Statement;

16.     enter an order or final decree concluding or closing any of the Chapter 11 Cases;

17.     adjudicate any and all disputes arising from or relating to Plan Distributions;

18.     consider any modifications of the Plan, to cure any defect or omission or to reconcile any inconsistency in any Bankruptcy Court order, including the Confirmation Order;

19.     determine requests for the payment of Claims entitled to priority pursuant to section 507 of the Bankruptcy Code;

20.     hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan, the Confirmation Order, or the Sale Order, including disputes arising under agreements, documents, or instruments executed in connection therewith;

21.     hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Wind Down, whether they occur before, on, or after the Effective Date;

22.     hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

23.     hear and determine all disputes involving the existence, nature, scope, or enforcement of any exculpations, injunctions, and releases granted in connection with and under the Plan, including under Article VIII;

24.     enforce all orders previously entered by the Bankruptcy Court; and

25.     hear any other matter over which the Bankruptcy Court has jurisdiction under the Bankruptcy Code.

## ARTICLE XIII.
## MISCELLANEOUS PROVISIONS

A.      *Immediate Binding Effect*

Subject to Article IX.A and notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of the Plan and the Plan Supplement shall be immediately effective and enforceable and deemed binding upon the Debtors, the Creditor Trust, and any and all Holders of Claims against or Interests in the Debtors (irrespective of whether their Claims or Interests are deemed to have accepted the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, and injunctions described in the Plan, each Entity acquiring property under the Plan, and any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtors.

B.      *Additional Documents*

On or before the Effective Date, the Debtors may File with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.  The Debtors, the Creditor Trust, and all Holders receiving Plan Distributions and all other parties in interest may, from time to time, prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.

C.      *Payment of Unsecured Notes Trustee Fees*

All Unsecured Notes Trustee Fees up to and including the Effective Date, shall be paid in full in Cash on the Effective Date; provided that the Unsecured Notes Trustee Fees shall be capped at $[●] in the aggregate.

D.      *Payment of Statutory Fees*

Quarterly Fees due and payable prior to the Effective Date shall be paid by the Debtors on the Effective Date.  After the Effective Date, the Creditor Trust shall be liable to pay any and all Quarterly Fees when due and payable.  The Debtors shall file with the Bankruptcy Court all monthly operating reports due prior to the Effective Date when they become due, using UST Form 11-MOR.  After the Effective Date, the Creditor Trust shall file with the Bankruptcy Court separate UST Form 11-PCR reports when they become due.  Each and every one of the Creditor Trust shall remain obligated to pay Quarterly Fees as and when due to the Office of the U.S. Trustee until the dissolution of the Creditor Trust.  The U.S. Trustee shall not be required to file any request for payment of an Administrative Claim in the case, and shall not be treated as providing any release under the Plan.

E.      *Reservation of Rights*

Except as expressly set forth in the Plan, the Plan shall have no force or effect unless the Bankruptcy Court enters the Confirmation Order, and the Confirmation Order shall have no force or effect if the Effective Date does not occur.  None of the Filing of the Plan, any statement or provision contained in the Plan or the taking of any action by any Debtor with respect to the Plan, the Disclosure Statement, or the Plan Supplement shall be or shall be deemed to be an admission or waiver of any rights of any Debtor with respect to the Holders unless and until the Effective Date has occurred.

F.      *Successors and Assigns*

        The rights, benefits, and obligations of any Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor or assign, Affiliate, officer, director, agent, representative, attorney, beneficiaries, or guardian, if any, of each Entity.

G.      *Notices*

        To be effective, all notices, requests and demands to or upon the Debtors shall be in writing.  Unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered, addressed to the following:

        1.   <u>If to the Debtors, to:</u>

                Sunnova Energy International Inc.
                20 East Greenway Plaza
                Suite 540
                Houston, Texas 77046
                Attention:      David Searle
                Email address:  David.searle@sunnova.com

                with copies (which shall not constitute notice) to:

                Kirkland & Ellis LLP
                333 West Wolf Point Plaza
                Chicago, Illinois 60654
                Attention:      Anup Sathy, P.C.
                Email address:  anup.sathy@kirkland.com

                -and-

                Kirkland & Ellis LLP
                601 Lexington Avenue
                New York, New York 10022
                Attention:      Brian Schartz, P.C.
                                Ciara Foster
                                Margaret Reiney
                Email address:  brian.schartz@kirkland.com
                                ciara.foster@kirkland.com
                                Margaret.reiney@kirkland.com

                -and-

Bracewell LLP
711 Louisiana Street, Suite 2300
Houston, TX 77002-2770
Attention:        Jason Cohen
                  Jonathan Lozano
Email address:  Jason.cohen@bracewell.com
                  Jonathan.lozano@bracewell.com


2.   Если to the Creditor Trust or Creditor Trustee, to:

[●]
[ADDRESS]
[ADDRESS]
Attention:        [●]
Email address:  [●]

with copies (which shall not constitute notice) to:

Willkie Farr & Gallagher LLP
787 Seventh Avenue
New York, NY 10019-6099
Attention:        Dennis Jenkins
Email address:  DJenkins@willkie.com

-and-

Blank Rome LLP
One Logan Square
130 North 18th Street
Philadelphia, PA 19103
Attention:        Matthew Kaslow

Email address:  matt.kaslow@blankrome.com


After the Effective Date, the Debtors may notify Entities that, to continue to receive documents pursuant to Bankruptcy Rule 2002, such Entity must File a renewed request to receive documents pursuant to Bankruptcy Rule 2002. After the Effective Date, the Debtors are authorized to limit the list of Entities receiving documents pursuant to Bankruptcy Rule 2002 to those Entities who have Filed such renewed requests.

*H.    Entire Agreement*

Except as otherwise indicated, the Plan and the Plan Supplement supersede all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan.

I.      Exhibits

All exhibits and documents included in the Plan Supplement are incorporated into and are a part of the Plan as if set forth in full in the Plan.  After the exhibits and documents are Filed, copies of such exhibits and documents shall be available upon written request to the Debtors' counsel at the address above or by downloading such exhibits and documents from the website of the Claims and Noticing Agent at https://restructuring.ra.kroll.com/Sunnova or the Bankruptcy Court's website at http://www.txs.uscourts.gov/.  To the extent any exhibit or document is inconsistent with the terms of the Plan, unless otherwise ordered by the Bankruptcy Court, the non-exhibit or non-document portion of the Plan shall control.

J.      Non-Severability of Plan Provisions

The provisions of the Plan, including its release, injunction, exculpation, and compromise provisions, are mutually dependent and non-severable.  The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is:  (i) enforceable pursuant to its terms; (ii) integral to the Plan and may not be deleted or modified without the consent of the Debtors, consistent with the terms set forth herein; and (iii) non-severable and mutually dependent.

K.      Closing of Chapter 11 Cases

The Creditor Trustee shall, promptly after the full administration of the Chapter 11 Cases, File with the Bankruptcy Court all documents required by Bankruptcy Rule 3022 or by Local Rule 3002-1, including the motion required by Local Rule 3002-1, and any applicable order necessary to close the Chapter 11 Cases.

L.      Conflicts

In the event of an inconsistency between the Plan and the Disclosure Statement, the terms of the Plan shall control in all respects.  In the event of an inconsistency between the Plan and the Plan Supplement, the terms of the relevant provision in the Plan Supplement shall control (unless stated otherwise in such Plan Supplement document or in the Confirmation Order).  In the event of an inconsistency between the Confirmation Order and the Plan or Plan Supplement, the Confirmation Order shall control.

M.      SEC Carve Out

Notwithstanding any language to the contrary in the Disclosure Statement, the Plan, and/or the Confirmation Order, no provision therein shall (1) preclude the SEC from enforcing its police or regulatory powers; or (2) enjoin, limit, impair, or delay the SEC from commencing or continuing any claims, causes of action, proceedings, or investigations against any non-Debtor person or non-Debtor entity in any forum.

Respectfully submitted,

Date:  August 14, 2025

Sunnova Energy International Inc.
on behalf of itself and all other Debtors

By:      */s/ Ryan Omohundro*
Name:  Ryan Omohundro
Title:   Chief Restructuring Officer
          Sunnova Energy International Inc.