IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

|  |  |  |
|---|---|---|
| In re: | ) ) | Chapter 11 |
| SUNNOVA ENERGY INTERNATIONAL INC., *et al.*,[1] | ) ) ) ) | Case No. 25-90160 (ARP) |
| Debtors. | ) ) ) | (Jointly Administered) |

**PURCHASER'S AND AD HOC GROUP'S OBJECTION TO ENTERPRISE BANK & TRUST'S EMERGENCY MOTION, AND JOINDER TO DEBTORS' OBJECTION**

Solaris Assets, LLC, Solaris ABS, LLC, and Solaris Borrower, LLC (collectively, together with any successors, permitted assigns, or designees, the "Purchaser"), as purchaser under the WholeCo Stalking Horse Agreement (such agreement, as amended, the "APA") and the Ad Hoc Group of DIP Lenders (the "Ad Hoc Group")[2] hereby submit this objection (the "Objection")[3] to the *Emergency Motion to Reconsider and, Alternatively, for Relief from Order Authorizing Sale of Assets* [Docket No. 691] (the "Motion") filed by Enterprise Bank & Trust ("Enterprise") and respectfully state as follows:

**PRELIMINARY STATEMENT**

1. Enterprise's request to reconsider the Sale Order or for relief therefrom should be denied. Enterprise cannot meet the extraordinary burden required to establish that reconsideration

---

[1] A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/Sunnova. The location of Debtor Sunnova Energy International Inc.'s corporate headquarters and the Debtors' service address in these chapter 11 cases is 20 East Greenway Plaza, Suite 540, Houston, Texas 77046.

[2] *See Verified Statement Pursuant to Bankruptcy Rule 2019 of Ad Hoc Group of DIP Lenders* [Docket No. 135]. Each member of the Ad Hoc Group of DIP Lenders files this Objection exclusively on its own behalf and does not assume any fiduciary or other duties to any other member or to any other entity or individual.

[3] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the APA, or the Sale Order, as applicable.

of the Sale Order under Rule 59 is necessary or proper. As set forth in the *Debtors' Objection to the Emergency Motion to Reconsider and, Alternatively, for Relief from Order Authorizing Sale of Assets* [Docket No. 712] (the "Debtors' Objection"), Enterprise received extensive notice regarding the Debtors' bankruptcy filing, bidding process, proposed Sale Transaction with the Purchaser, and the potential ramifications to Enterprise. As a party to a Tax Credit Purchase Agreement ("the "TCPA") with the Debtors under which Enterprise paid over $30 million to purchase investment tax credits ("ITCs"), Enterprise had the ability to submit information requests to the Debtors and to timely object to the Sale Transaction. Enterprise failed to do so. It similarly now fails to carry its heavy burden of establishing newly discovered facts, manifest errors of law, or any other grounds warranting reconsideration of, or relief from, the Court's Sale Order. And, as the Debtors' point out in their own objection, if the Court granted Enterprise's request to reconsider or vacate the Sale Order, the results would be catastrophic to the Debtors' estates and all of their stakeholders, including the DIP Lenders. All of these deficiencies are described in the Debtors' Objection, which the Purchaser and Ad Hoc Group join in full.

2. The Motion also must be denied because it mischaracterizes the APA and its ramifications regarding potential tax recapture. Contrary to Enterprise's assertions, any sophisticated tax equity investor would conclude (or reasonably should have concluded) that the APA, on its face, could trigger recapture with respect to ITCs previously sold by the Debtors, and that the Debtors are solely responsible for any indemnity or guarantee claims stemming from any such recapture.

3. This Court should not countenance Enterprise's late and misguided attempt to avoid the value maximizing results of the Sale Order and APA. The Motion should be denied.

**BACKGROUND**

4. On June 1, 2025, Debtor Sunnova TEP Developer, LLC ("TEP Developer") filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code"). On June 8, 2025, Debtors Sunnova Energy Corporation ("SEC"), Sunnova Energy International ("SEI"), and Sunnova Intermediate Holdings, LLC ("SIH," and collectively with TEP Developer, SEC, and SEI, the "Debtors") each filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

5. On June 12, 2025, the Debtors filed their *Emergency Motion for Entry of an Order (I) Approving the Bidding Procedures, (II) Scheduling Certain Dates with Respect Thereto, (III) Approving the Form and Manner of Notice Thereof, (IV) Approving the WholeCo Stalking Horse Agreement and Expense Reimbursement, (V) Establishing Notice and Procedures for the Assumption and Assignment of Executory Contracts and Unexpired Leases, (VI) Authorizing the Assumption and Assignment of Assumed Executory Contracts and Unexpired Leases, (VII) Authorizing the Sale of Assets, and (VIII) Granting Related Relief* [Docket No. 113] (the "Sale Motion").

6. On June 20, 2025, the Debtors filed the *Notice of Filing of WholeCo Stalking Horse Agreement and Proposed Sale Order* [Docket No. 238], including a copy of the APA attached thereto.

7. After the Debtors conducted a thorough marketing process, culminating in a multi-day competitive Auction, on July 29, 2025, the Debtors filed the *Notice of (I) Conclusion of the Auction, (II) Designation of the Successful Bidder, and (III) Filing of Amendment to WholeCo Stalking Horse Purchase Agreement* [Docket No. 560].

8. On July 31, 2025, the Court entered the *Order (I) Authorizing the Sale of Certain of the Debtors' Assets to the Stalking Horse Bidder Free and Clear of All Liens, Claims,*

3

*Encumbrances, and Interests, (II) Authorizing the Debtors to Perform Their Obligations Under the Asset Purchase Agreement, (III) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, and (IV) Granting Related Relief* [Docket No. 599] (the "Sale Order"), approving the sale transaction (the "Sale Transaction") whereby the Purchaser would purchase the Acquired Assets (as defined in the APA) pursuant to the terms and conditions of the Sale Order and APA.

9. On August 14, 2025, Enterprise filed the Motion seeking reconsideration of the Sale Order on the grounds that neither it, nor the Court, were provided notice of the potential for recapture of certain ITCs from non-debtor third parties as a result of the Sale Transaction. Enterprise also incorrectly argues that the APA and Sale Order are ambiguous as to whether the Purchaser will pay for any losses resulting from such ITC Recapture.

## REPLY

### I. Enterprise Was on Notice of the Risk of Potential Tax Recapture

10. Enterprise is a sophisticated financial institution that was familiar enough with ITCs and related tax law to purchase more than $30 million of ITCs from Debtor TEP Developer. As explained below, any sophisticated tax equity investor such as Enterprise reasonably should have concluded that the APA, on its face, could result in recapture with respect to ITCs sold by the Debtors.

11. Here, Debtor TEP Developer is the taxpayer that minted and sold the relevant ITCs to Enterprise. *See* TCPA § 3.1(b)(vi) ("[F]or federal income tax purposes, Seller was a C Corporation and owned each PIS Project at the time it was Placed in Service[.]"). Pursuant to federal tax law, any direct or indirect sale of the solar assets underlying such ITCs to an entity outside the Sunnova group has the potential to give rise to recapture liability.[4]

---

[4] Federal tax law provides that recapture can be triggered if a taxpayer that previously sold an ITC directly or indirectly sells the underlying asset used to create such ITC. *See* 26 U.S.C. § 50(a)(1)(A) ("If, during any taxable year,

4

12. As set forth in the Debtors' Objection, the Debtors provided Enterprise with substantial notice that the Debtors sought to sell substantially all of their direct and indirect assets pursuant to the APA, and that the equity interests of TEP Developer were not being sold.[5] As a sophisticated tax equity investor, Enterprise should have concluded that: (a) the assets underlying its ITCs were likely part of the Acquired Assets to be sold to the Purchaser; and (b) pursuant to the applicable federal tax law discussed above, Enterprise would face potential recapture as a result of the transactions contemplated by the APA.

13. At minimum, Enterprise should have requested more information regarding the APA and the related Sale Transaction prior to the entry of the Sale Order. Enterprise chose not to do so, and neither the Debtors nor the Purchaser have any obligation to perform Enterprise's diligence or legal analysis for it. Enterprise has no valid basis for now claiming that its own neglect should be excused or that the Sale Order should be vacated or modified.

II. **The APA Provides that the Purchaser Is Not Assuming Enterprise's Potential Tax Recapture Liabilities or Any Related Claims Against the Debtors**

14. Enterprise also argues that the APA is ambiguous as to whether the Purchaser will assume any indemnification and guaranty liabilities of the Debtors with respect to Enterprise's recapture. *See* Mot. ¶ 19. In reality, the APA unambiguously provides that the Purchaser is not

---

investment credit property is disposed of, or otherwise ceases to be investment credit property with respect to the taxpayer, before the close of the recapture period, then the tax under this chapter for such taxable year shall be increased by the recapture percentage of the aggregate decrease in the credits allowed under section 38 for all prior taxable years . . . ."); Treasury Regulations § 301.7701-3(a) (providing that a limited liability company that is wholly owned by a taxpayer is disregarded as separate from the taxpayer for U.S. federal income tax purposes, and thus the taxpayer is treated as owning its assets directly unless an election is made to treat such limited liability company as a corporation for U.S. federal income tax purposes); *see also Wiggins* v. *C.I.R.*, 904 F.2d 311, 315 (5th Cir. 1990) ("But the tax from investment credit recapture has long been required if a taxpayer disposes of property for which a credit was previously taken before the end of the property's useful life.").

[5] APA § 1.2(a) ("Notwithstanding anything to the contrary in this Agreement, in no event shall Sellers be deemed to sell, transfer, assign, convey or deliver . . . Equity Interests of Sellers or any of their respective Subsidiaries, . . . including for the avoidance of doubt, equity interests in Sunnova TEP Developer, LLC.").

5

assuming Enterprise's potential recapture liabilities or any related claims of Enterprise against the Debtors.

15.     *First*, the APA has specific provisions defining Excluded Liabilities, which the "Purchaser[] shall not assume, be obligated to pay, perform or otherwise discharge or in any other manner be liable or responsible for[.]"  APA § 1.4.  Section 1.4(m) of the APA defines "Excluded Liabilities" to broadly include "all Liabilities of the Sellers or any of their Subsidiaries incurred in connection with or arising out of the sale of ITCs to any third party, including any indemnification obligations arising with respect to such sales, including as a result of the recapture of any such ITCs," subject to a limited exception:  "Liabilities arising as a result of ***an action taken by or***, to the extent reasonably expected to result in recapture of any ITCs, ***an inaction of Purchaser[] or the Acquired Entities after the Closing***" (emphasis added).[6]

16.     Enterprise's Motion acknowledges that its recapture guaranty and indemnification claims against the Debtors arise in connection with Debtor TEP Developer's sale of ITCs to Enterprise, and Enterprise's potential recapture does not fall within the limited exception set forth in Section 1.4(m) of the APA.  Pursuant to the Internal Revenue Code, if recapture occurs in connection with the Sale Transaction, it will be because of the applicable *Seller's* disposition of the underlying assets—not any action or inaction taken by the Purchaser or the Acquired Entities.  *See* 26 U.S.C. § 50(a)(1)(A) ("If during any taxable year, investment credit ***is disposed of***, or otherwise ceases to be investment credit property . . . .") (emphasis added); 26 U.S.C. § 6418 (extending the application of § 50(a)(1)(A) to tax credits sold to third parties).  Furthermore, such disposition will occur *at* Closing—not *after* the Closing as required by Section 1.4(m)'s limited exception.  Any

---

[6]   In addition, Section 1.4(e) of the APA defines "Excluded Liabilities" to include, among other things, "all Taxes of Sellers and all Taxes of or relating to the Excluded Assets for any Tax Period[.]"

6

claims that Enterprise may have in connection with its recapture are therefore unambiguously Excluded Assets pursuant to Section 1.4(m).

17. *Second*, Enterprise incorrectly asserts that its recapture guaranty and indemnification claims against the Debtors constitute a "[l]iability for Taxes with respect to an Acquired Asset" within the meaning of Section 1.3(c) of the APA (part of the APA's definition of Assumed Liabilities). They do not. Section 1.3(c) of the APA addresses indirect taxes that attach to a specific asset upon a transfer, such as sales tax or property tax. Enterprise's recapture guaranty and indemnification claims against the Debtors do not attach to an Acquired Asset. Moreover, ITC recapture claims are specifically addressed and governed by Section 1.4(m) of the APA (discussed above). *See*, *e.g.*, *In re Tucker*, 391 B.R. 404, 409 (Bankr. S.D. Tex. 2009) ("If there is a general provision and a specific provision, the more specific provision controls.").

18. *Third*, even if Enterprise's recapture claims constitute "Taxes with respect to an Acquired Asset" (which they do not), Section 1.3(c) of the APA provides that such taxes only constitute Assumed Liabilities if they are "for a taxable period (or portion thereof) beginning ***after the Closing Date***" (emphasis added). Section 9.5 of the APA provides that taxes are allocable between the pre- and post-Closing tax periods based on a closing of the books at the ***end of the day on the Closing Date***. *See* APA § 9.5 ("[A]ll Taxes not allocated under clause (a) shall be allocated to the Pre-Closing Tax Period on the basis of a 'closing of the books,' as if such taxable period ended as of the end of the day on the Closing Date"); APA at 11.1(iiii) (defining "Pre-Closing Tax Period" as "any Tax period ending on or before the Closing Date and the portion of any Straddle Period through the end of the Closing Date"). As discussed above, Enterprise's potential recapture liabilities and its related guaranty and indemnity claims are triggered by the disposition of the assets underlying its ITCs. Under Section 50(a)(1)(A) of the Internal Revenue Code, recapture liabilities arise in the

7

taxable period in which the disposition occurs. The disposition contemplated by the APA occurs on—rather than after—the Closing date, and thus any resulting taxes are not allocable to the Purchaser under the APA.

19. *Fourth*, contrary to Enterprise's attempts to "enforce" its mischaracterized version of the APA, the APA provides that, subject to narrow inapplicable exceptions, there are no third party beneficiaries of the APA. *See* APA § 10.6 ("nothing expressed or referred to in this Agreement will be construed to give any Person other than . . . the Parties hereto and such permitted assigns, any legal or equitable right, remedy, or claim under or with respect to this Agreement or any provision of this Agreement").

20. The Court should accordingly deny Enterprise's request to modify the Sale Order to provide that the Purchaser is assuming its potential recapture tax liabilities or any related claims Enterprise may have against the Debtors.

### III. The Sale Order Does Not Expand the Scope of Section 363(m) of the Bankruptcy Code.

21. Finally, Enterprise argues that the Sale Order "on its face . . . is improper because it affords the Purchaser the protections of Section 363(m) by authorizing the APA, which includes assets owned by non-debtor affiliates." Mot. ¶ 36. This is yet another example of Enterprise mischaracterizing unambiguous language.

22. The Sale Order neither expands nor modifies section 363(m)—it simply provides that the Purchaser is entitled to the protections thereunder, whatever they are. *See* Sale Order ¶¶ JJ ("The Purchaser is a good-faith purchaser under section 363(m) of the Bankruptcy Code and, as such, is entitled to all of the protections afforded thereby."), KK ("The Purchaser is . . . entitled to all of the protections afforded under section 363(m) of the Bankruptcy Code."), 32 ("The Purchaser is a

good-faith purchaser of the Acquired Assets, and is entitled to all of the protections afforded by section 363(m) of the Bankruptcy Code.")

## JOINDER

23. The Purchaser joins in and incorporates by reference the arguments and assertions set forth by the Debtors in the Debtors' Objection.

## CONCLUSION

24. For all of the reasons set forth above and in the Debtors' Objection, the Motion should be denied.

[*Remainder of page intentionally blank*]

WHEREFORE, the Purchaser and the Ad Hoc Group respectfully request that the Court (a) deny the Motion and (b) grant such other and further relief as the Court may deem just and proper.

| | |
|---|---|
| Dated: August 18, 2025<br>Houston, Texas | */s/ John F. Higgins*<br>John F. Higgins<br><br>**PORTER HEDGES LLP**<br>John F. Higgins (TX Bar No. 09597500)<br>Megan Young-John (TX Bar No. 24088700)<br>James A. Keefe (TX Bar No. 24122842)<br>Jack M. Eiband (TX Bar No. 24135185)<br>1000 Main Street, 36th Floor<br>Houston, Texas 77002<br>Telephone: (713) 226-6000<br>Facsimile:  (713) 228-1331<br>Email:     jhiggins@porterhedges.com<br>               myoung-john@porterhedges.com<br>               jkeefe@porterhedges.com<br>               jeiband@porterhedges.com<br><br>-and-<br><br>**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**<br>Andrew N. Rosenberg (admitted *pro hac vice*)<br>Robert A. Britton (admitted *pro hac vice*)<br>Michael J. Colarossi (admitted *pro hac vice*)<br>Zachary W. Singer (admitted *pro hac vice*)<br>Lindsay A. Wasserman (admitted *pro hac vice*)<br>1285 Avenue of the Americas<br>New York, NY 10019<br>Telephone: (212) 373-3000<br>Facsimile:  (212) 757-3990<br>Email:     arosenberg@paulweiss.com<br>               rbritton@paulweiss.com<br>               mcolarossi@paulweiss.com<br>               zsinger@paulweiss.com<br>               lwasserman@paulweiss.com<br><br>*Co-Counsel to the Ad Hoc Group and Purchaser* |

**CERTIFICATE OF SERVICE**

I hereby certify that on August 18, 2025, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

/s/  *John F. Higgins*
John F. Higgins