**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

|  |  |  |
|---|---|---|
| In re: | ) ) | Chapter 11 |
| SUNNOVA ENERGY INTERNATIONAL INC., *et al.*,[1] | ) ) ) ) | Case No. 25-90160 (ARP) |
| Debtors. | ) ) ) | (Jointly Administered) (Emergency Hearing Requested) |

**DEBTORS' EMERGENCY MOTION FOR ENTRY OF AN ORDER (I) AUTHORIZING AND APPROVING THE SETTLEMENT BY AND AMONG THE COMPANY PARTIES, THE TEPH PARTIES, THE ATLAS SETTLING PARTIES, AND THE COMMITTEE AND (II) GRANTING RELATED RELIEF**

> **Emergency relief has been requested. Relief is requested not later than 9:00 a.m. (prevailing Central Time) on September 5, 2025.**
>
> **If you object to the relief requested or you believe that emergency consideration is not warranted, you must appear at the hearing if one is set, or file a written response prior to the date that relief is requested in the preceding paragraph. Otherwise, the Court may treat the pleading as unopposed and grant the relief requested.**
>
> **A hearing will be conducted on this matter on September 5, 2025, at 9:00 a.m. (prevailing Central Time) in Courtroom 400, 4th floor, 515 Rusk Street, Houston, Texas 77002. Participation at the hearing will only be permitted by an audio and video connection.**
>
> **Audio communication will be by use of the Court's dial-in facility. You may access the facility at (832) 917-1510. Once connected, you will be asked to enter the conference room number. Judge Pérez's conference room number is 282694. Video communication will be by use of the GoToMeeting platform. Connect via the free GoToMeeting application or click the link on Judge Pérez's homepage. The meeting code is "judgeperez." Click the settings icon in the upper right corner and enter your name under the personal information setting.**
>
> **Hearing appearances must be made electronically in advance of both electronic and in-person hearings. To make your appearance, click the "Electronic Appearance" link on Judge Pérez's homepage. Select the case name, complete the required fields and click "Submit" to complete your appearance.**

---

[1] A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/Sunnova. The location of Debtor Sunnova Energy International Inc.'s corporate headquarters and the Debtors' service address in these chapter 11 cases is 20 East Greenway Plaza, Suite 540, Houston, Texas 77046.

The above-captioned debtors and debtors in possession (collectively, the "Debtors") state the following in support of this motion (this "Motion"):[2]

**Preliminary Statement**

1. The Debtors commenced these Chapter 11 Cases to facilitate a sale of all or substantially all their assets, followed by distributions to creditors of their remaining assets and the wind down of their estates. To date, the Debtors have done exactly that, including through the recent approval and consummation of the sale (the "WholeCo Sale") of their securitization business ("AssetCo") and servicing and management business ("ServiceCo," and together with AssetCo, "WholeCo") to an ad hoc group the Debtors' DIP Lenders (the "WholeCo Purchaser"). The WholeCo Sale is the culmination of numerous other transactions over the course of these chapter 11 cases that, at various times, provided critical liquidity and other benefits to allow the Debtors to administer these chapter 11 cases and market, negotiate, and consummate the value-maximizing WholeCo Sale.

2. Among these transactions, the week-one sale of Solar Systems and related rights (the "TEPH Sale") to non-Debtor TEP Holdings, LLC ("TEP Holdings") and the settlement among the Debtors, TEP Holdings, Atlas Securitized Products Administration L.P. ("ASPA"), as administrative agent under the TEPH Facility (as defined herein), and certain lenders thereunder (the "First ASPA Settlement," and, together with the TEPH Sale, the "Initial TEPH Transactions")

---

[2] A description of the Debtors, their business, and the facts and circumstances supporting this Motion and the Debtors' chapter 11 cases is set forth in greater detail in the *Disclosure Statement for the Joint Chapter 11 Plan of Sunnova Energy International Inc. and Its Debtor Affiliates* [Docket No. 694] (the "Disclosure Statement"). Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Disclosure Statement, the *Emergency Motion of Sunnova TEP Holdings, Sunnova TEP Holdings Subsidiary LLC, WHCO International Subco DAC and AGF WHCO 1-A1 LP to Enforce the ASPA Sale Order* [Docket No. 721] (the "Emergency Motion"), or the *Debtors' Objection to the Emergency Motion of Sunnova TEP Holdings, Sunnova TEP Holdings Subsidiary LLC, WHCO International Subco DAC and AGF WHCO 1-A1 LP to Enforce the ASPA Sale Order* [Docket No. 776] (the "Debtors Objection").

1

were particularly important to the results the Debtors have achieved to date. The Initial TEPH Transactions provided the Debtors with significant, timely capital to bridge to the negotiation and approval of the DIP Facility and facilitated the process by which ASPA, TEP Holdings, and TEP Holdings' affiliates have begun settling with Dealers, completing Solar Systems, and maximizing the value of TEP Holdings and its affiliates.

3. Following the consummation of the TEPH Sale and First ASPA Settlement, a dispute arose with regard to the scope of the Solar Systems intended to be subject to the TEPH Sale. When the Debtors, ASPA, and TEP Holdings reached an impasse in their attempts to resolve that dispute, ASPA and TEP Holdings filed the Emergency Motion. After more than a week of hard-fought negotiations, the parties have reached a settlement of those issues.

4. The settlement (the "Settlement" or the "Second ASPA Settlement") set forth herein, in the settlement term sheet (the "Settlement Term Sheet") attached as Exhibit A to the Order and included in the *Notice of Settlement Term Sheet* [Docket No. 781] (the "Settlement Notice"), consensually resolves all outstanding disputes and claims among the Debtors, Sunnova TE Management, LLC (together, with the Debtors, the "Company Parties"), TEP Holdings, Sunnova TEPH Holdings Subsidiary, LLC ("TEPH Sub," and together with TEP Holdings, the "TEPH Parties"), ASPA, WHCO Inter WHCO International SubCo DAC ("WHCO International"), AGF WHCO 1-A1 LP (together with ASPA and WHCO International, the "Atlas Settling Parties"), and the Official Committee of Unsecured Creditors (the "Committee," and together with the Company Parties, the TEPH Parties, and the Atlas Settling Parties, the "Parties"). The Settlement contemplates upfront and future payments to fund the Debtors' chapter 11 cases and distributions to the Debtors' creditors. The Settlement maximizes the value of the Debtors' estates and permits the Debtors to proceed with a streamlined solicitation and confirmation process.

2

For these reasons and the reasons set forth below, the Settlement is fair, reasonable, and in the best interest of the Debtors' Estates, represents a sound exercise of the Debtors' business judgment, and should be approved.

## Relief Requested

5. The Debtors seek entry of an order, substantially in the form attached hereto (the "Order"): (a) authorizing the Debtors to enter into the Settlement on the terms set forth in the Settlement Term Sheet; (b) authorizing the Parties to perform any and all obligations contemplated by the Settlement; and (c) granting related relief.

## Jurisdiction and Venue

6. The United States Bankruptcy Court for the Southern District of Texas (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Order of Reference to Bankruptcy Judges* from the United States District Court for the Southern District of Texas, entered May 24, 2012. This is a core proceeding pursuant to 28 U.S.C. § 157(b). The Debtors confirm their consent to the Court's entry of a final order in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

7. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

8. The bases for the relief requested herein are sections 105(a), 362, and 363(b) of title 11 of the United States Code (the "Bankruptcy Code"), rules 2002, 4001, 6004 and 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and rule 1075-1 of the Bankruptcy Local Rules for the Southern District of Texas (the "Bankruptcy Local Rules").

**Background**

9. On June 1, 2025, Debtor Sunnova TEP Developer, LLC ("TEP Developer") filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. On the date hereof (the "Petition Date"), Debtors Sunnova Energy Corporation ("SEC"), Sunnova Energy International Inc., and Sunnova Intermediate Holdings, LLC each filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. These chapter 11 cases are being jointly administered for procedural purposes only pursuant to rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and rule 1015-1 of the Bankruptcy Local Rules of the United States Bankruptcy Court for the Southern District of Texas (the "Local Rules"). No trustee or examiner has been appointed in these chapter 11 cases.

10. Pursuant to that certain Third Amended and Restated Credit Agreement, dated June 8, 2025 (as amended, restated, amended and restated, or otherwise modified from time to time, the "TEPH Credit Agreement"), by and among TEPH, as borrower, ASPA, as administrative agent, the lenders from time to time party thereto (the "TEPH Lenders"), and the other parties thereto, the TEPH Lenders provided an asset-based lending facility (the "TEPH Facility"), the proceeds of which were used in part to finance SEC's operations in partnership with its network of third-party dealers and installers ("Dealers").

11. On June 9, 2025, the Debtors filed the *Debtors' Emergency Motion for Entry of an Order (I) Authorizing and Approving the Private Sale of the Eligible Systems Assets Free and Clear of Liens, Claims, Encumbrances, and Other Interests, (II) Approving the Assumption and Assignment of Executory Contracts and Unexpired Leases; (III) Approving the ASPA Settlement and (IV) Granting Related Relief* [Docket No. 24] (the "TEPH Sale Motion"). Through the TEPH

Sale Motion, the Debtors requested approval of a sale of certain Solar Systems and related rights to TEPH, in exchange for $15 million cash. In addition, the Debtors requested approval of a settlement among the Parties, pursuant to which the Debtors assigned their rights to negotiate settlements with Dealers and facilitate the resumption of work on Solar Systems, to ASPA. After a hearing on June 9, continued to June 11, the Court entered an order approving the TEPH Sale Motion (the "TEPH Sale Order").

12. The Debtors and TEP Holdings consummated the TEPH Sale on or around June 13, 2025. Thereafter, ASPA facilitated TEP Holdings' and TEPH Sub's entry into settlement agreements with numerous Dealers and the TEPH Lenders began advancing funds to facilitate the completion of certain of the purchased Solar Systems. In early August 2025, ASPA contacted the Debtors and asserted that several thousand Solar Systems that the Debtors asserted were owned by TEP Developer and its affiliates were subject to the TEPH APA and should have been transferred to TEP Holdings pursuant thereto. The Debtors and ASPA engaged in discussions regarding the dispute. On August 20, 2025, TEP Holdings, TEPH Sub, and the Atlas Settling Parties filed the Emergency Motion (a) alleging the Debtors violated the TEPH Sale Order by, among other things, declining to transfer 2,692 Solar Systems (the "Disputed Systems")[3] pursuant to the TEPH APA and (b) seeking a Court order directing the Debtors to transfer the Disputed Systems and any other Solar Systems that were allegedly Purchased Assets (as defined in the TEPH APA).

13. On August 28, 2025, the Debtors filed the Debtors' Objection. On the same day, the Committee filed the *Preliminary Objection of the Official Committee of Unsecured Creditors*

---

[3] As discussed in the Emergency Motion and the Debtors Objection, an additional 5,944 Solar Systems (the "Additional Systems") were subject to the dispute among the Debtors, ASPA, and TEP Holdings. On August 29, 2025, the Court authorized the transfer of the Additional Systems pursuant to the TEPH Sale Order and the TEPH APA. To the extent that the relief sought herein is required for the transfer of the Additional Systems, references to the Disputed Systems herein shall be deemed to include the Additional Systems.

to *Emergency* Motion of Sunnova TEP Holdings, Sunnova TEP Holdings Subsidiary LLC, WHCO International SubCo DAC and AGF WHCO 1-A1 LP to Enforce the ASPA Sale Order [Docket No. 773] (the "Committee Objection").

14. On August 29, 2025, the Debtors filed the Settlement Notice, to which the Debtors attached the Settlement Term Sheet. On the same day, at a hearing on the Emergency Motion, the Parties informed the Court that they had reached a settlement with respect to all outstanding disputes (the "Disputes"), on the terms set forth in the Settlement Term Sheet. At that hearing, the Parties discussed their intention to file a stipulation and proposed order approving the Settlement for the Court's approval. However, in light of the Court's comments regarding the scope of the Settlement vis-à-vis the scope of the Emergency Motion and the TEPH Sale Order, the Parties elected to file this Motion in an abundance of caution and to ensure that the Debtors' stakeholders have additional notice of the proposed Settlement.

## The Settlement

15. The following table summarizes certain material terms of the Settlement Term Sheet:[4]

| Summary of Principal Terms of the Settlement Term Sheet[5] ||
|---|---|
| **Transfer of Solar Systems**<br><br>*See* Article I | • Debtors agree to immediately transfer and vest TEPH Sub with all rights, title, and interests of the Debtors in:<br><br>   ○ All Solar Systems set forth in the certification provided with the Notice of Borrowing and Borrowing Base Certificate dated March 17, 2025, attached as Schedule 1 to the Settlement Term Sheet, that have purportedly not been otherwise transferred to TEPH or its subsidiaries, including 8,636 solar assets composed of: |

---

[4] This summary is provided for convenience and is subject in all respects to the terms of the Settlement Term Sheet. In the event of any inconsistency or conflict between this Motion, including this summary, and the Settlement Term Sheet, the terms of the Settlement Term Sheet shall control.

[5] Capitalized terns used but not defined in the summary shall have the meaning ascribed to them in the Settlement Term Sheet.

|  | <ul><li>- the 5,944 Solar Systems that TEP Developer transferred to ASPA on or around August 15, 2025;</li><li>- the 2,692 Disputed Systems; and</li><li>- all Solar Systems designated as "Cancelled Systems" by the Debtors that (i) are proposed to be completed by a Dealer pursuant to a Dealer settlement agreement and (ii) were funded with proceeds of the TEPH Facility, which are the Solar Systems identified on Schedule 4 to Settlement Term Sheet, as may be updated by the Atlas Settling Parties from time to time; *provided* that any amendment to Schedule 4 that adds 1,000 or more Solar Systems shall require the consent of the Debtors. For the avoidance of doubt, Cancelled Assets do not include New Home Systems or Additional New Homes WIP Assets.</li><li>• The parties agree to use commercially reasonable efforts to structure the transfer of Solar Systems in a manner to avoid recapture of tax credits.</li><li>• The Debtors agree to provide an accounting of all Solar Systems (the "Subject Solar Assets") that they assert are owned by Debtor entities and any categories of assets that were not funded with the proceeds of the TEPH Facility within 5 business days of entry of the Order and shall promptly meet and confer with the Atlas Settling Parties, the Purchaser, and the Committee regarding any such assets that are Purchased Assets under the Atlas APA. Any other solar assets that were funded with amounts borrowed from the TEP Facility or where payments were made to any affiliated of the Debtors in respect of such solar systems by TEP Holdings or any of its subsidiaries, including the Project Companies (as such term is defined in the Settlement Term Sheet), shall be promptly transferred to TEP Sub. For the avoidance of doubt, 737 items of New Home WIP open inventory identified in the schedule shared with the Atlas Parties are Subject Solar Assets.</li></ul> |
| **Consideration**<br><br>*See* Article 2.1(a)–(c) | <ul><li>• Upfront Fee: $3.0 million payable upon entry the Order and transfer of the Subject Solar Assets.<ul><li>○ The Debtors will remain obligated to perform under the Transition Employee Agreement ("TEA") dated August 1, 2025, by and between SEC, TEPH, and TEPH Sub, for a period of 4 months starting September 1, 2025, however, no additional amounts shall be owed or paid by TEPH on account of the TEA after the payment of the $3.0 million referenced above; *provided* that any payment made to the Debtors' estate on account of the TEA after September 1, 2025, shall reduce the $3.0 million on a dollar-for-dollar basis.</li></ul></li><li>• Completion Fee: $6.0 million payable by TEP Holdings in three installments:<ul><li>○ Installment 1: $2.5 million upon (1) the completion of all amendments and other agreements related to the TEPs that are indirect subsidiaries of TEPH, (2) the completion of all tranching and retranching of Solar Systems in line with the completion plan presented to the Debtors by the Atlas Settling Parties (the "Completion Plan"), (3) the Debtors' preparation and filing of all tax returns with respect to TEPH, its other</li></ul></li></ul> |

7

| | |
|---|---|
| | subsidiaries, and the Project Companies, and (4) the Debtors providing all documents reasonably requested by ASPA and TEPH with respect to the ownership of Solar Systems that generated balance sheet ITCs at TEP Developer; *provided* that the failure to execute an amendment or other agreement with respect to a TEP that is not being completed at the election of the Atlas Settling Parties or the Class A Member of the relevant TEP will not be grounds for withholding payment under this first installment.<br><br>○ <u>Installment 2</u>:  $2.5 million upon (1) the provision of all customer contracts, lien waivers, and other required documentation with respect to Solar Systems in the Completion Plan to the Atlas Settling Parties and U.S. Bank, in its capacity as verification agent and (2) completion and release of all claims and liens with respect to the 8,101 WIP systems in the Completion Plan (as such Completion Plan may be amended, modified, or otherwise revised in writing delivered to the Debtors (email being sufficient)), as certified by Goodleap, LLC as required under the settlement agreements with the Dealers.<br><br>○ <u>Installment 3</u>:  $1.0 million upon the completion of a successful ABS takeout transaction that includes the 762 additional New Homes WIP assets ("<u>Additional New Homes WIP Assets</u>") to the extent the Debtors elect to transfer such assets to SAP IV and borrow against such assets or the pro rata amount of such third installment payment based on the amount of assets transferred over the total Additional New Homes WIP Assets.<br><br>• <u>ITC Proceeds</u>:  Described below. |
| **Preferred Equity Consideration**<br><br>*See* Article 2.1(d) | • $10.0 million in preferred equity of TEP Holdings (the "<u>Preferred Equity</u>"), which shall receive no recovery until all amounts under the TEPH Facility are paid in full.[6] |
| **ITC Sales** | • The proceeds from the sale of ITCs for New Home Systems and Additional New Homes WIP Assets in three tranches:<br><br>○ <u>Tranche 1</u>:  Proceeds of $7.2 million for placed-in-service New Home Systems;<br><br>○ <u>Tranche 2</u>:  Proceeds of $3.4 million for "work in progress" New Home Systems; and<br><br>○ <u>Tranche 3</u>:  Additional New Homes WIP Assets. |

---

[6]  The terms of the Preferred Equity are subject to ongoing negotiations, and the Parties have agreed to use commercially reasonable efforts to negotiate the definitive documentation related thereto.  To date, the Parties have agreed in principle that the Preferred Equity will not include any governance rights, put right, or contractual right to payment of fees or interest.  Rights to distributions on account of the Preferred Equity shall be set forth in the definitive documentation and remain subject to ongoing negotiations among the Parties.  Following completion of the WholeCo Sale transaction there will be a continuing event of default under the TEPH Facility and the TEPH Lenders have reserved all rights with respect thereto.

|  |  |
|---|---|
|  | - Such ITC proceeds are provided and are available on an "as-is, where-is" basis with no guarantee of sale, backstop, or representations and warranties by TEP Holdings or the Atlas Settling Parties. |
| **Other Terms** | - ASPA, in its capacity as administrative agent under the TEPH Facility, agrees to withdraw with prejudice all proofs of claims filed against the Debtors. ASPA, in its capacity as administrative agent under the TEPH Facility, will not, directly or indirectly, object, or cause or direct any other entity to object, to such plan.<br><br>- Pursuant to an agreement between the WholeCo Purchaser and ASPA regarding the ITCs that were to be Purchased Assets under section 1.1(n) of the WholeCo APA (the "WholeCo APA ITCs"), the WholeCo APA will be amended to provide that a total of $15.0 million of 2024 and 2025 ITCs minted at TEP Developer in respect of systems moved into Sunnova SAP IV, LLC before April 21, 2025 (the "Transferred ITCs") will be purchased by the WholeCo Purchaser in connection with the closing of the Sale Transaction (as defined in the Disclosure Statement).<br><br>- The Debtors will use reasonable best efforts to transfer the Transferred ITCs to the WholeCo Purchaser as soon as possible following the closing of the sale under the WholeCo APA.<br><br>- The Debtors agree to use commercially reasonable efforts to provide all available documentation reasonably requested by the Atlas Settling Parties and the WholeCo Purchaser to establish where the ITCs were minted any transfers of the solar assets associated with such ITCs. The Debtors will use commercially reasonable efforts to cooperate with the Atlas Lenders to run a sale process with respect to ITCs subject to the WholeCo APA (other than the Transferred ITCs) and any other ITCs owned by TEP Holdings and its subsidiaries, and procure insurance with respect to such ITCs; *provided*, however, that nothing in the Settlement Term Sheet shall require the Debtors to consummate any transaction that will result in an adverse tax consequence (including an asserted associated claim or otherwise).<br><br>- For the avoidance of doubt, the Debtors' rights and obligations with respect to the Settlement will be transferred to an Estate representative under the Plan, including, without limitation, the Creditor Trustee. |

## Basis for Relief

### I. The Settlement Is Fair, Reasonable, in the Best Interest of the Debtors' Estates, and Should Be Approved.

16. Under Bankruptcy Rule 9019(a), "on motion by the [debtor in possession] and after notice and a hearing, the court may approve a compromise or settlement." Fed. R. Bankr. P. 9019(a). "To minimize litigation and expedite the administration of a bankruptcy estate, [c]ompromises are favored in bankruptcy." *Myers v. Martin (In re Martin)*, 91 F.3d 389, 393 (3d

9

Cir. 1996) (citing 9 Collier on Bankruptcy ¶ 9019.03[1] (15th ed. 1993)).  Settlements are considered a "normal part of the process of reorganization" and a "desirable and wise method[] of bringing to a close proceedings otherwise lengthy, complicated, and costly."  *Rivercity v. Herpel (In re Jackson Brewing Co.)*, 624 F.2d 599, 602 (5th Cir. 1980) (citations omitted).

17. Pursuant to Bankruptcy Rule 9019(a), a bankruptcy court may, after notice and a hearing, approve a compromise or settlement so long as the proposed settlement is fair, reasonable, and in the best interest of the estate.  *See In re Age Ref. Inc.*, 801 F.3d 530, 540 (5th Cir. 2015).  Generally, the role of the bankruptcy court is not to decide the issues in dispute when evaluating a settlement.  *Watts v. Williams*, 154 B.R. 56, 59 (S.D. Tex. 1993).  Instead, the court should determine whether the settlement as a whole is fair and equitable.  *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968).  Ultimately, "the decision to approve a compromise lies within the sound discretion of the bankruptcy court." *United States v. AWECO, Inc. (In re AWECO, Inc.)*, 725 F.2d 293, 298 (5th Cir. 1984); *see also Jackson Brewing Co.*, 624 F.2d at 602–03 (same).

18. Courts in this circuit use a three-factor balancing test to analyze whether a proposed settlement is fair, reasonable, and in the best interests of the estate:  "(1) the probability of success in litigating the claim subject to settlement, with due consideration for the uncertainty in fact and law; (2) the complexity and likely duration of litigation and any attendant expense, inconvenience, and delay; and (3) all other factors bearing on the wisdom of the compromise." *Age Ref. Inc.*, 801 F.3d at 540.  In connection with the third factor, courts should also consider "the paramount interest of creditors with proper deference to their reasonable views" and the "extent to which the settlement is truly the product of arm's-length bargaining, and not of fraud or collusion." *Conn.*

*Gen. Life Ins. Co. v. United Cos. Fin. Corp. (Matter of Foster Mortg. Corp.)*, 68 F.3d 914, 917–918 (5th Cir. 1995); *see also Age Ref. Inc.*, 801 F.3d at 540.

19. The Settlement satisfies these standards. **First**, litigating the Emergency Motion would be a significant loss to the Debtors' estates. The trial would have included significant testimony and evidentiary issues and would have imposed additional fees on the Debtors' estates through the participation of both the Debtors' and the Committee's advisors.

20. Moreover, the issues raised in the Emergency Motion are fact-intensive and complex. Although the Parties were prepared to proceed on the papers, the Committee communicated its desire to serve extensive discovery. *See* Committee Obj. ¶¶ 5 (requesting "sufficient time to take discovery concerning the myriad allegations in the [Emergency] Motion"), 7 (noting that the "magnitude" of the Emergency Motion "demands full discovery"), 28 ("These issues require broad, in-depth discovery, including the collection, production, and review of thousands of documents and the scheduling of additional depositions."). The Debtors' estates lack the financial wherewithal to withstand the cost of discovery on and prosecution the Emergency Motion at this stage in the chapter 11 cases. The Settlement avoids the risk and will significantly reduce the amount of Debtor (and Court) time and resources required to resolve it.

21. **Second**, the Settlement provides substantial benefit to the Debtors' Estates through the comprehensive and consensual resolution of Disputes among the Debtors, TEP Holdings and the Atlas Lenders. An open, prolonged dispute with ASPA and TEP Holdings would imperil these cases, which could not be funded without the proceeds of the Additional New Homes WIP Assets. No sale could have been consummated until the Emergency Motion was determined. Even if the Debtors and Committee prevailed, there would be more litigation regarding who actually owned the Disputed Systems, many of which are purportedly owned by third-party partnerships. The

Settlement avoids those disputes and provides the Debtors' estate with aligned incentives to maximize the workout of the TPEH Facility. Under the Settlement, the Debtors' estates will receive the $10 million of Preferred Equity in TEP Holdings. They may also contribute eligible, completed Additional New Homes WIP Assets, and in turn, both receive additional financing secured by those assets and benefit via the Preferred Equity from an improved collateral pool.

22. Even if the Debtors prevailed on the Emergency Motion, there is no guarantee that they could, whether through contribution to the Creditor Trust or other monetization, realize anywhere near the economic value that ASPA and TEP Holdings have agreed to provide under the Settlement. The Settlement includes up to nearly $30 million of cash consideration to the Debtors' estates. In addition, the Atlas Lenders will help monetize the tax credits generated from the Additional New Homes WIP Assets. The benefits the Settlement provides significantly outweigh the open conflict and uncertainty of litigating the Emergency Motion.

23. ***Finally***, the Settlement is the product of good-faith, arm's-length negotiation among the Parties, each of which is a sophisticated party represented by separate counsel. Importantly, the Committee, as a fiduciary on behalf of all the Debtors' unsecured creditors, not only supports the Settlement, but is a party to the Settlement Term Sheet. The Committee was closely involved in the negotiation of the Settlement and the Settlement Term Sheet, and their terms reflect substantial input from the Committee.

**II.     The Debtors' Entry into, and Performance Under, the Settlement Is a Sound Exercise of the Debtors' Business Judgment.**

24. Section 363(b)(1) of the Bankruptcy Code authorizes a debtor in possession to "use, sell, or lease, other than in the ordinary course of business, property of the estate," after notice and a hearing. 11 U.S.C. § 363(b)(1). It is well-established in this jurisdiction that a debtor may use property of the estate outside the ordinary course of business under this provision if there is a good

business reason for doing so. *See, e.g.*, *ASARCO, Inc. v. Elliott Mgmt. (In re ASARCO, L.L.C.)*, 650 F.3d 593, 601 (5th Cir. 2011) ("[F]or the debtor-in-possession or trustee to satisfy its fiduciary duty to the debtor, creditors, and equity holders, there must be some articulated business justification for using, selling, or leasing the property outside the ordinary course of business.") (quoting *In re Cont'l Air Lines, Inc.*, 780 F.3d 1223, 1226 (5th Cir. 1986)); *GBL Holding Co., Inc. v. Blackburn/Travis/Cole, Ltd. (In re State Park Bldg. Grp., Ltd.)*, 331 B.R. 251, 254 (Bankr. N.D. Tex. 2005); *In re Filene's Basement, LLC*, No. 11-13511 (KJC) (Bankr. D. Del. Apr. 29, 2014) (stating that, under the business judgment standard, once the debtor presents "a reasonable basis for its business decisions . . . courts will generally not entertain objections to the debtor's conduct").

25. As discussed above, the Debtors believe that the transfers from the Debtors' estates contemplated in the Settlement Term Sheet fall within the authority the Court granted to the Debtors under the TEPH Sale Order. Further, the Settlement is (a) consistent in part with the scope of relief requested in the Emergency Motion, and (b) reflected in the Settlement Term Sheet filed on August 29, 2025, the details of which were shared at the hearing the same day, without objection or reservation by any party. Nevertheless, to the extent that any transfer, including the transfer of the Additional New Homes WIP Assets, is determined to be (x) beyond the scope of the TEPH Sale Order and (y) a transfer of estate property outside the ordinary course of business, the Debtors respectfully submit that relief under section 363(b) of the Bankruptcy Code is warranted.

26. Entering into the Settlement is a sound exercise of the Debtors' business judgment. As discussed above, transferring the Disputed Systems and the Additional New Homes WIP Assets to TEPH Sub and SAP IV for nearly $30 million of value, ASPA's withdrawal of proofs of claim totaling more than $1 billion, and ASPA's support for the Plan will provide substantial benefits to

13

the Debtors' estates. Absent entry into the Settlement, the Debtors risk losing ownership of the Disputed Systems without any consideration, and even if the Debtors were to retain ownership, the Debtors could ultimately receive less economic consideration for the Disputed Systems than that provided by the Settlement, and the Debtors *would* lose the non-economic consideration. Finally, any benefit the Debtors may obtain from a non-consensual approach will be dwarfed by the attendant costs and the damage in their relationships with parties that are actively settling with Dealers to the Debtors' and other stakeholders' benefit.

**Waiver of Bankruptcy Rules 4001(a)(4), 6004(a), and 6004(h)**

27.  To implement the Settlement, the Debtors request that the Court enter an order providing that notice of the relief requested herein satisfies Bankruptcy Rule 6004(a) and that the Debtors have established cause to exclude such relief from the fourteen-day stay period under Bankruptcy Rule 6004(h). Similarly, to the extent of any modification of the automatic stay is necessary to effectuate the Settlement, the Debtors request waiver of the customary fourteen-day stay period under Bankruptcy Rule 4001(a)(4).

**Reservation of Rights**

28.  Unless expressly set forth herein, nothing contained in this Motion or any actions taken pursuant to any order granting the relief requested by this Motion is intended as or should be construed or deemed to be: (a) an implication or admission as to the amount of, basis for, priority, or validity of any claim against a Debtor entity under the Bankruptcy Code or other applicable nonbankruptcy law; (b) a waiver of the Debtors' right to dispute any claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Motion or any order granting the relief requested by this Motion or a finding that any particular claim is an administrative expense

claim or other priority claim; (e) a request or authorization to assume, adopt, or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) an admission as to the validity, priority, enforceability, or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' Estates; (g) a waiver or limitation of the Debtors' rights under the Bankruptcy Code or any other applicable law; (h) a concession that any liens (contractual, common law, statutory, or otherwise) that may be satisfied pursuant to the relief requested in this Motion are valid, and the rights of all parties in interest are expressly reserved to contest the extent, validity, or perfection or seek avoidance of all such liens; (i) a waiver of the obligation of any party in interest to file a proof of claim; or (j) otherwise affecting the Debtors' rights under section 365 of the Bankruptcy Code to assume or reject any executory contract or unexpired lease.

## **Emergency Consideration**

29.     Pursuant to Bankruptcy Local Rule 9013-1, the Debtors request emergency consideration of this Motion. ASPA has entered into numerous settlement agreements with Dealers, the consummation of which requires the transfer of the Disputed Systems and the Additional New Homes WIP Assets in the near term. The Settlement will provide significant recoveries to the Debtors creditors under the proposed Plan. The Plan and Disclosure Statement will need to be amended to account for the Settlement. The motion to approve the Disclosure Statement is set to be heard on Friday September 5, 2025. The Settlement should be heard in connection therewith, to ensure (a) the Disclosure Statement provides adequate information to all the Debtors' creditors and (b) the expense to the Debtors estates from further delays are avoided. Given the Settlement represents a consensus among many of the Debtors' key constituents,

including the Committee on behalf of all unsecured creditors, there is no reason to delay its approval and consummation.

## Notice

30. The Debtors will provide notice of this Motion to the following parties or their respective counsel: (a) the Office of the United States Trustee for the Southern District of Texas; (b) the holders of the thirty largest unsecured claims against the Debtors (on a consolidated basis); (c) Paul, Weiss, Rifkind, Wharton & Garrison LLP, counsel to the Ad Hoc Group; (d) Norton Rose Fulbright US LLP, counsel to GoodFinch Management, LLC; (e) Arnold & Porter Kaye Scholer LLP, counsel to the DIP Agent; (f) White & Case LLP, counsel to WHCO International SubCo DAC and AGF WHCO 1-A1 LP; (g) Milbank LLP, counsel to the KKR Term Loan Lenders; (h) Davis Polk & Wardwell LLP, counsel to the Ad Hoc Group of ABS Lenders; (i) McDermott Will & Schulte LLP, counsel to the Special Committee of the Board of Directors of TEP Holdings, and co-counsel to TEP Holdings and its subsidiaries; (j) the United States Attorney's Office for the Southern District of Texas; (k) the Internal Revenue Service; (l) the United States Securities and Exchange Commission; (m) the state attorneys general for states in which the Debtors conduct business; and (n) any party that has requested notice pursuant to Bankruptcy Rule 2002.

The Debtors request that the Court enter the Order granting the relief requested herein and such other relief as the Court deems appropriate under the circumstances.

Houston, Texas
September 2, 2025

/s/ *Jason G. Cohen*

| | |
|---|---|
| **BRACEWELL LLP** | **KIRKLAND & ELLIS LLP** |
| Jason G. Cohen (TX Bar No. 24050435) | **KIRKLAND & ELLIS INTERNATIONAL LLP** |
| Jonathan L. Lozano (TX Bar No. 24121570) | Anup Sathy, P.C. (admitted *pro hac vice*) |
| 711 Louisiana Street, Suite 2300 | 333 West Wolf Point Plaza |
| Houston, Texas 77002 | Chicago, Illinois 60654 |
| Telephone: (713) 223-2300 | Telephone: (312) 862-2000 |
| Facsimile: (800) 404-3970 | Facsimile: (312) 862-2200 |
| Email: jason.cohen@bracewell.com | Email: anup.sathy@kirkland.com |
| jonathan.lozano@bracewell.com | |
| | -and- |
| | **KIRKLAND & ELLIS LLP** |
| | **KIRKLAND & ELLIS INTERNATIONAL LLP** |
| | Brian Schartz, P.C. (TX Bar No. 24099361) |
| | Ciara Foster (admitted *pro hac vice*) |
| | Margaret Reiney (admitted *pro hac vice*) |
| | 601 Lexington Avenue |
| | New York, New York 10022 |
| | Telephone: (212) 446-4800 |
| | Facsimile: (212) 446-4900 |
| | Email: brian.schartz@kirkland.com |
| | ciara.foster@kirkland.com |
| | margaret.reiney@kirkland.com |
| *Co-Counsel to the Debtors and Debtors in Possession* | *Co-Counsel to the Debtors and Debtors in Possession* |

**Certificate of Accuracy**

  I certify that the foregoing statements are true and accurate to the best of my knowledge. This statement is being made pursuant to Bankruptcy Local Rule 9013-1(i).

  */s/ Jason G. Cohen*
  Jason G. Cohen

**Certificate of Service**

  I certify that on September 2, 2025, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

  */s/ Jason G. Cohen*
  Jason G. Cohen